Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

# UNITED STATES DISTRICT COURT

## DISTRICT OF MONTANA

## MISSOULA DIVISION

| | | |
|---|---|---|
| TANYA GERSH, | ) | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | ) | |
| vs. | ) | **DEFENDANT ANDREW ANGLIN'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| ANDREW ANGLIN, | ) | |
| Defendant. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... II

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

1.0   LEGAL STANDARD ................................................................. 3

2.0   FACTUAL BACKGROUND ........................................................... 5

3.0   PLAINTIFF'S ATTEMPTS AT SERVICE OF PROCESS ..................................... 11

4.0   ANALYSIS ...................................................................... 12

    4.1   Plaintiff Failed to Serve Defendant, Timely or Otherwise .................... 12

    4.2   This Court lacks Subject Matter Jurisdiction over the Action ............... 16

    4.3   Plaintiff Failed to State a Claim Overriding Defendant's
          Constitutionally Protected Speech ...................................... 17

       4.3.1  The Articles are Not Fighting Words ................................ 18

       4.3.2  The Articles are Not True Threats .................................. 19

       4.3.3  The Articles are Not Incitement .................................... 20

       4.3.4  No New Category of Unprotected Speech Should be Created .......... 21

       4.3.5  Defendant Cannot be Held Liable for the Acts of Third Parties ...... 24

    4.4   Plaintiff Fails to State a Viable Cause of Action ......................... 25

       4.4.1  Defendant is Not Liable for Invasion of Privacy ................... 25

       4.4.2  Defendant is Not Liable for Intentional Infliction of Emotional
            Distress ........................................................ 27

       4.4.3  Defendant did not Harass or Intimidate Plaintiff ................. 29

5.0   CONCLUSION ................................................................... 31

# TABLE OF AUTHORITIES

**CASES**

*Argent Mortg. Co. v. Sellers*,
   2010 Ohio Misc. LEXIS 15636 (Ohio Ct. Com. Pl. Nov. 10, 2010) .................. 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 4

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) ........................................................................................... 3

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ............................................................................... 4

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) ...................................................................................... 2, 20

*Brimm v. Genao-Gomez*,
   2014 U.S. Dist. LEXIS 152574 (D. Mont. Oct. 28, 2014) ................................ 16

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ............................................................................. 4

*Butler v. Domin*,
   2000 MT 312, 302 Mont. 452, 15 P.3d 1189 (2010) ........................................ 24

*Cardan v. N.Y. Life Ins. Co.*,
   2016 U.S. Dist. LEXIS 140731 (D. Mont. Oct. 11, 2016) .................................. 4

*Collin v. Smith*,
   578 F.2d 1197 (7th Cir. 1978) .......................................................................... 20

*Conn v. Zakharov*,
   667 F.3d 705 (6th Cir. 2012) ............................................................................ 14

*Fairbank v. Underwood*,
   986 F. Supp. 2d 1222 (D. Or. 2013) ................................................................... 4

*Gertz v. Robert Welch,*
    418 U.S. 323 (1974) ........................................................................... 29

*Goldstein v. Christiansen,*
    70 Ohio St. 3d 232, 638 N.E.2d 541 (1994) ...................................... 14

*Gooding v. Wilson,*
    405 U.S. 518 (1972) ........................................................................... 18

*Haines Pipeline Constr. v. Mont. Power Co.,*
    251 Mont. 422, 830 P.2d 1230 (1991) ............................................... 11

*Hastetter v. Behan,*
    196 Mont. 280, 639 P.2d 510 (1982) ................................................. 26

*Hustler Magazine v. Falwell,*
    485 U.S. 46 (1988) ............................................................................. 29

*In re Estate of NEWCOMB,*
    192 N.Y. 238, 84 N.E. 950 (1908) ..................................................... 17

*Judd v. Burlington N. & Santa Fe Ry.,*
    2008 MT 181, 343 Mont. 416, 186 P.3d 214 (2008) .......................... 28

*Katzenbach v. Grant,*
    2005 U.S. Dist. LEXIS 46756 (E.D. Cal. June 7, 2005) .................... 26

*Koepplin v. Zortman Mining,*
    267 Mont. 53, 881 P.2d 1306 (1994) ................................................. 27

*Lew v. Moss,*
    797 F.2d 747 (9th Cir. 1986) ....................................................... 16, 17

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995) ............................................................................. 3

*Miller v. Great Falls Ath. Club, LLC,*
    2010 MT 171N (2010) ......................................................................... 25

*Miss. Publ'g Corp. v. Murphree,*
    326 U.S. 438 (1946) ............................................................................. 4

RANDAZZA | LEGAL GROUP

*Mont. Chamber of Commerce v. Argenbright*,
   28 F. Supp. 2d 593 (D. Mont. 1998) ................................................... 3

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .......................................................................... 2

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ..................................................................... 2, 25

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989) ........................................................................ 16

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016) ......................................................22, 23

*Omni Capital Int'l v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ....................................................................... 3, 4

*Padgett v. Auburn Univ.*,
   2017 U.S. Dist. LEXIS 74076 (M.D. Ala. Apr. 18, 2017) .................... 1

*Peschel v. City of Missoula*,
   2008 U.S. Dist. LEXIS 98651 (D. Mont. Dec. 5, 2008) .................... 11

*Peschel v. City of Missoula*,
   2009 U.S. Dist. LEXIS 14442 (D. Mont. Jan. 5, 2009) ..................... 11

*Puente Ariz. v. Arpaio*,
   821 F.3d 1098 (9th Cir. 2016) ......................................................... 23

*Realty Holding Co. v. Donaldson*,
   268 U.S. 398 (1925) ........................................................................ 16

*Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*,
   605 F.3d 703 (9th Cir. 2009) ........................................................... 22

*Sacco v. High Country Indep. Press*,
   271 Mont. 209, 896 P.2d 411 (1995) ............................................... 27

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001) ............................................................ 22

RANDAZZA | LEGAL GROUP

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................. 3

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ............................................................... 3

*Shoemaker v. Taylor*,
  730 F.3d 778 (9th Cir. 2013) ............................................................... 18

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ............................................................................ 28

*Stamey v. Howell*,
  2016 U.S. Dist. LEXIS 169318 (D. Mont. Dec. 7, 2016) ..................... 4

*State ex rel. Copeland v. State Med. Bd.*,
  107 Ohio St. 20, 140 N.E. 660 (1923) ................................................ 15

*State ex rel. Hadley v. Pike*,
  2014-Ohio-3310 (Ohio Ct. App. 2014) ............................................... 15

*State v. Cooney*,
  271 Mont. 42, 894 P.2d 303 (1995) .................................................... 22

*State v. Dugan*,
  2013 MT 38, 369 Mont. 39, 303 P.3d 755 (2013) ............................... 19

*State v. Lance*,
  222 Mont. 92, 721 P.2d 1258 (1986) ................................................... 30

*State v. Nye*,
  283 Mont. 505, 943 P.2d 96 (1997) .................................................... 22

*Stevens v. Sec. Pac. Nat'l Bank*,
  538 F.2d 1387 (9th Cir. 1976) ............................................................... 4

*Strong v. Countrywide Home Loans, Inc.*,
  2017 U.S. App. LEXIS 15559 (9th Cir. Aug. 17, 2017) ........................ 3

*United States v. Alvarez*,
  567 U.S. 709 (2012) ..................................................................... 18, 21

RANDAZZA | LEGAL GROUP

*United States v. Cassel*,
    408 F.3d 622 (9th Cir. 2005) ................................................................. 29

*United States v. Dahlstrom*,
    713 F.2d 1423 (9th Cir. 1983) ............................................................... 20

*United States v. Orozco-Santillan*,
    903 F.2d 1262 (9th Cir. 1990) ............................................................... 19

*United States v. Poocha*,
    259 F.3d 1077 (9th Cir. 2001) ............................................................... 18

*United States v. Stevens*,
    559 U.S. 460 (2010) ............................................................................... 23

*Virginia v. Black*,
    538 U.S. 343 (2003) ............................................................................... 19

*Washington County Dep't of Human Servs. v. Rutter*,
    100 Ohio App.3d 32, 651 N.E.2d 1360 (4th Dist.1995) ...................... 15

*Watts v. United States*,
    394 U.S. 705 (1969) ............................................................................... 19

*Weible v. United States*,
    244 F.2d 158 (9th Cir. 1957) ................................................................. 17

*West Virginia State Board of Education v. Barnette*,
    319 U.S. 624 (1943) ............................................................................... 32

*Widmar v. Vincent*,
    454 U.S. 263 (1981) ............................................................................... 23

*Williams v. Moody*,
    1999 U.S. Dist. LEXIS 527 (E.D. Pa. Jan. 22, 1999) .......................... 14

*Worrell-Payne v. Gannett Co.*,
    49 F. App'x 105 (9th Cir. 2002) ........................................................... 29

RANDAZZA | LEGAL GROUP

**STATUTES**

28 U.S.C. § 1332 ................................................................................. 15, 16

Mont. Code Ann. § 31-1-316 .................................................................. 7

Mont. Code Ann. § 27-1-1503 ..................................................... 22, 28, 29

Mont. Code Ann. § 28-10-103 ................................................................ 24

Mont. Code Ann. § 28-10-602 ................................................................ 23

Mont. Code Ann. § 45-5-203 ........................................................... 22, 29

Mont. Code Ann. § 45-7-102 ........................................................... 22, 29

Mont. Code Ann. §27-1-221 ............................................................ 11, 28

Mont. Code Ann. §37-51-313 .................................................................. 7

Ohio Rev. Code Ann. § 2307.382 ........................................................... 14

**RULES**

Fed. R. Civ. P. 12 ......................................................................... 3, 4, 5

Fed. R. Civ. P. 4 ..................................................................... 11, 13, 15

OHIO R. CIV. P. 4 ............................................................... 11, 12, 13, 14

RANDAZZA | LEGAL GROUP

**OTHER AUTHORITIES**

"The American President," Aaron Sorkin (1995)..................................................... 1

Admin. R. Mont. 24.210.641 ...................................................................... 7

Christine Hauser, "After Neo-Nazi Posting, Police in Whitefish, Mont., Step Up
    Patrols," NEW YORK TIMES (Dec. 20, 2016) ......................................... 8

Joseph Goldstein, "Alt-Right Exults in Donald Trump's Election with a Salute:
    'Heil Victory'", NEW YORK TIMES (Nov. 20, 2016) ............................... 1

Ohio Gov. Bar R. XII............................................................................... 14

Whitefish City Council Res. No. 14-57 (adopted Dec. 1, 2014) ............................ 2

RANDAZZA | LEGAL GROUP

## MEMORANDUM OF POINTS AND AUTHORITIES

*"America isn't easy.  America is advanced citizenship.
You've gotta want it bad, 'cause it's gonna put up a fight.
It's gonna say, 'You want free speech?  Let's see you
acknowledge a man whose words make your blood boil,
who's standing center stage and advocating at the top of
his lungs that which you would spend a lifetime opposing
at the top of yours.'"*[1]

Plaintiff describes Richard Spencer as "an infamous white nationalist." Complaint at ¶15.  Mr. Spencer has certainly been labeled as such.  *See Padgett v. Auburn Univ.*, 2017 U.S. Dist. LEXIS 74076, at *1-2 (M.D. Ala. Apr. 18, 2017) ("The court takes judicial notice that Richard Spencer is a white nationalist member of the far right who subscribes to what he describes as 'identitarian' politics.")  In fact, Mr. Spencer coined the term "alt-right."  Joseph Goldstein, "Alt-Right Exults in Donald Trump's Election with a Salute: 'Heil Victory'", NEW YORK TIMES (Nov. 20, 2016).  Following the election of President Trump, Mr. Spencer received national attention for a speech in which he stated "Hail Trump! Hail our people! Hail victory!".  *Id.* and Complaint at ¶15.

Spencer's mother lives in Whitefish, Montana – where Plaintiff, Tanya Gersh lives and has a real estate practice.  Because of Spencer's notoriety, Gersh, injected herself into a public dispute involving Spencer's mother.  Mrs. Spencer claimed, publicly, that Gersh sought to drive her out of her home and business because of Richard.  *See* Exhibit 1.

---

[1]   "The American President," Aaron Sorkin (1995).

Plaintiff is affiliated with the Whitefish, Montana organization "Love Lives Here." *See id.* That organization has fought Richard Spencer for years. *See* Whitefish City Council Res. No. 14-57 (adopted Dec. 1, 2014); Complaint at ¶¶52-53. Plaintiff does not deny that she attempted to convince Ms. Spencer to sell her property and issue a public statement denouncing her son. Complaint at ¶21.

Defendant Andrew Anglin is alleged to be the publisher of the Daily Stormer – a white nationalist website. Complaint at ¶¶ 3 & 9. "White Nationalism" is irrelevant to these proceedings as its the only purpose to use that term is inflammatory. The First Amendment is blind to viewpoint. Accordingly, the Court should only consider that Mr. Anglin is the publisher of a news website. In that role, Anglin looked at the public dispute between Gersh and Mrs. Spencer and took an editorial position. This position was "It is clear and obvious extortion." *See* Exhibit 2.

Mr. Anglin had every right to do so. If a local business were polluting the environment, any editor could to rally his readers to write to that business in protest. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 909 (1982); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964). If a local business were discriminating against black customers, the NAACP can exhort its members to send correspondence to it. *See NAACP v. Claiborne Hardware Co.*, *supra*. And, conversely, the KKK can ask its members to send letters of protest to an establishment that treated all races equally. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969).

"In order to promote open and informed discussion of public affairs, the First Amendment seeks to 'protect unpopular individuals from retaliation – and their ideas from suppression--at the hand of an intolerant society.'" *Mont. Chamber of Commerce v. Argenbright*, 28 F. Supp. 2d 593, 600 (D. Mont. 1998) quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995). Every word uttered by Mr. Anglin in this public dispute is protected by the First Amendment, no matter how many people find those views intolerable. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 660 (2000) ("[T]he fact that an idea may be embraced and advocated by increasing numbers of people is all the more reason to protect the First Amendment rights of those who wish to voice a different view.") Thus, Defendant moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), (5), & (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process, and failure to state a claim.

**1.0    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating that [personal] jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also Strong v. Countrywide Home Loans, Inc.*, 2017 U.S. App. LEXIS 15559, at *4 (9th Cir. Aug. 17, 2017)

citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-445 (1946) ("[S]ervice of summons is the procedure by which a court … asserts jurisdiction over the person of the party served."). A federal court lacks personal jurisdiction over a defendant if service of process is insufficient. *See Omni Capital Int'l, supra*. Thus, under Fed. R. Civ. P. 12(b)(5), "[o]nce service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process." *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013). Plaintiff failed to effect proper service and the matter must be dismissed for insufficient process and want of personal jurisdiction.

The Complaint otherwise fails to state a claim. "In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Cardan v. N.Y. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 140731, at *5 (D. Mont. Oct. 11, 2016) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "if a complaint specifically refers to a document whose authenticity is not questioned by the parties, a court may consider the document when ruling on the motion." *Stamey v. Howell*, 2016 U.S. Dist. LEXIS 169318, at *1 (D. Mont. Dec. 7, 2016) citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Even in the

light most favorable to Plaintiff, none of the allegations in the Complaint survive First Amendment scrutiny or are otherwise sufficient.

## 2.0    Factual Background

Assuming Ms. Gersh's recitation is true,[2] Plaintiff seeks to hold Mr. Anglin accountable for the speech of third parties.  Following the 2016 presidential election, Richard Spencer gave a speech lauding the results. Dkt. No. 1 at ¶¶15-16 & 45.  Mr. Spencer's mother, Sherry Spencer, is a resident of Whitefish, Montana. *Id.* at ¶¶15 & 42.  Following the speech, members of the Whitefish community planned a protest outside his mother's property on Lupfer Avenue.  *Id.* at ¶¶17, 46-48, & 56.

Plaintiff voluntarily participated in the planning meeting to protest and boycott Mrs. Spencer's tenants' businesses.  *Id.* at ¶¶56-58.  Then, Plaintiff voluntarily contacted Mrs. Spencer's tenants to "warn them" of the impending protest.[3]  *Id.* at ¶¶18 & 58-59.  Thereupon, Plaintiff voluntarily agreed to participate in a direct call with Mrs. Spencer.  *Id.* at ¶¶19-20 & 59-60.  Plaintiff recommended that Mrs. Spencer "sell the building, make a donation [of the proceeds], and issue a statement disavowing her son's views."  *Id.* at ¶21.  Plaintiff then alleges she agreed to act as Mrs. Spencer's real estate agent to sell the building.  *Id.* at ¶¶22 & 62-67.  A few weeks later, Mrs. Spencer terminated Plaintiff's services.  *Id.* at ¶¶23 & 71.

---

[2]    The assumption does not include allegations as to Defendant's alleged residency or domicile under Rule 12(b)(1), (2), or (5).
[3]    Plaintiff does not state whether the contact was altruistic or to use the tenants to exert financial pressure on Mrs. Spencer.

Approximately two weeks after Mrs. Spencer ended her relationship with Plaintiff, Mrs. Spencer published an article on the Medium.com blog website describing what happened.  *Id.* at ¶¶ 25 & 74; *see also* <u>Exhibit 1</u>.  Mrs. Spencer wrote:

> I had no intention of selling . . . until I started receiving terrible threats in the last couple of weeks.
>
> These threats came from Tanya Gersh, a local realtor with links to "human rights" organizations Love Lives Here and the Montana Human Rights Network.
>
> On November 22, Gersh and I spoke on the phone.  She relayed to me that if I did not sell my building, 200 protesters and national media would show up outside—which would drive down the property value—until I complied.  Gersh's other conditions included that I make a public denunciation of my son in a statement written by the Montana Human Rights Network and that I make a donation to this organization from the sale of the property.  As Gersh announced on Facebook, she was "spear heading" the campaign.
>
> Gersh followed up on her conditions in a number of emails, which I've just made public.  She even shamelessly suggested that she act as my realtor!  In other words, she and the local "human rights" organizations appeared to seek financial benefit from threats of protests and reputation damage.

<u>Exhibit 1</u>, and Complaint at ¶¶76-79.  As part of her article, Mrs. Spencer published communications, primarily from Ms. Gersh.  <u>Exhibit 2</u>.

Mr. Anglin republished Mrs. Spencer's claims and "call[ed] for a troll storm against" Plaintiff, as the first of thirty articles disapproving Plaintiff's actions. Complaint at ¶¶26-27.  Mr. Anglin characterized Plaintiff's actions as extortionate. *Id.* at ¶82; *see also* <u>Exhibit 2</u>.  Gersh alleges that the "troll storm" was an invitation for readers to protest Ms. Gersh directly and through her family.  Complaint at

RANDAZZA | LEGAL GROUP

¶¶83-86, 88-89, 91.  This is analogous to how the Whitefish residents protested against Mr. Spencer by targeting his mother.

Thereafter, Plaintiff and her family allegedly received hundreds of communications from third parties.  *Id.* at ¶93-124.  None of them mentioned Defendant or his publication,[4] though one was directly from Mr. Spencer.  *Id.*

The following day, Defendant published a second article again accusing Ms. Gersh of extorting Mrs. Spencer.  *Id.* at ¶125; *see also* Exhibit 4.  In it, Defendant encouraged readers to place calls and send e-mails.  Complaint at ¶128. Plaintiff does not allege any reader specifically acted in response thereto.

On December 19, 2016, Mr. Anglin published a third article asking readers to contact Ms. Gersh.  *Id.* at ¶ 130; *see also* Exhibit 5.  Defendant specifically disclaims calling for threats or harassment, but rather for a "*campaign of making our voices heard,*" which is why he states he purposefully left out home addresses.[5] Exhibit 5.  No specific response from Defendant's readers is alleged.

On December 21, 2016, Mr. Anglin encouraged lawful confrontation. Complaint at ¶¶132-133; *see also* Exhibit 6.  He published a second article that day regarding what he believed to be Ms. Gersh's unethical practices.[6]  Complaint at

---

[4]    Although Plaintiff uses the expression "[a]s a result of Mr. Anglin's troll storm," *see*, *e.g.*, Complaint at ¶¶110-111, no facts suggest causation.

[5]    Plaintiff's contact information was publicly available, as at least one person is alleged to have sent information to her home, despite such address being withheld by Mr. Anglin.  *See* Complaint at ¶105.  Plaintiff does not actually claim any of the third parties specifically obtained her contact information from Defendant.

[6]    As a real estate agent, Ms. Gersh violated her professional obligations to Mrs. Spencer.  First, Plaintiff failed to abide Mont. Code Ann. §37-51-313(2)(a), to

¶¶134 & 137; *see also* <u>Exhibit 7</u>.  In it, Mr. Anglin encourages the same communications that Ms. Gersh's supporters encourage, the only difference being the content thereof.  *See* <u>Exhibit 7</u>.  He also relayed a *New York Times* report that the Whitefish Police Department found **none** of the alleged communications from the third-parties constituted a true threat.  *See id.* quoting Christine Hauser, "After Neo-Nazi Posting, Police in Whitefish, Mont., Step Up Patrols," NEW YORK TIMES (Dec. 20, 2016).  No specific response from Defendant's readers as to either article is alleged.

On December 22, 2016, Mr. Anglin encouraged calls and e-mails without threats or suggestions of violence.  Complaint at ¶¶138-140; *see also* <u>Exhibit 8</u>. He also outlined plans for a lawful protest.[7]  Complaint at ¶141 and <u>Exhibit 8</u>. No specific response from Defendant's readers is alleged.

On December 23, 2016, Mr. Anglin reported that an organization with which Ms. Gersh was affiliated appeared to have repudiated her.  Complaint at ¶144; *see also* <u>Exhibit 9</u>.  Again, Defendant allegedly asked readers to contact people by telephone, email, or social media.  Complaint at ¶145.  That same day, Mr. Anglin expressed schadenfreude regarding a motor vehicle accident, without encouraging

---

"act solely in the best interests of the seller", where she was coercing Mrs. Spencer to not only sell the property, but disgorge the proceeds of that sale.  Second, in the same way, she failed to "comply with the generally accepted standards of practice."  Admin. R. Mont. 24.210.641(1); *see also* Mont Code Ann. §31-1-316(18).  This includes Code of Ethics of the National Association of Realtors Art. 1 ("to protect and promote the interests of their client").

[7]     Although Ms. Gersh also claims to have received a threatening e-mail from an "AA," there is no allegation that it came from Defendant.  Complaint at ¶142.

violence.  *Id.* at ¶¶147-148; *see also* <u>Exhibit 10</u>.  Additionally, another article, bearing the byline of a different author, referenced using Mrs. Spencer to influence her son.  Complaint at ¶¶147 & 149; *see also* <u>Exhibit 11</u>.  No specific response from Defendant's readers is alleged as to any of these articles.

On December 27, 2016, Mr. Anglin recounted his belief on the David Duke Show that Ms. Gersh extorted Mrs. Spencer.[8]  Complaint at ¶¶155-156; *see also* <u>Exhibit 12</u>.  The following day, Mr. Anglin again addressed Ms. Gersh's conduct, finding it so offensive as to liken it to that of a terrorist group.  Complaint at ¶¶157-158; *see also* <u>Exhibit 13</u>.  No specific response from Defendant's readers is alleged as to either article or the radio show.

The following week, on January 5, 2017, Mr. Anglin described plans for a lawful protest.  Complaint at ¶¶159-165; *see also* <u>Exhibit 14</u>.  The protest was not to confront Ms. Gersh.  Complaint at ¶161.  No specific response from Defendant's readers is alleged.

On January 6, 2017, a different author published a "year in review," mentioning Ms. Gersh.  Complaint at ¶166; *see also* <u>Exhibit 15</u>.  On January 8, 2017, a different author also criticized attacks on Mrs. Spencer.  Complaint at ¶169-170; *see also* <u>Exhibit 16</u>.  No specific response from Defendant's readers is alleged.

---

[8]   Plaintiff also alleges encouragement to listen to Mr. Spencer's appearance on the David Duke Show in which they discuss his mother and Ms. Gersh. Complaint at ¶¶150-154.  No specific response from Defendant's readers is alleged.

On January 8, 2017, Mr. Anglin condemned potential governmental interference with the planned protest march based on viewpoint discrimination. Complaint at ¶171; *see also* <u>Exhibit 17</u>.  Mr. Anglin specifically insisted that it be lawful and peaceful.  Complaint at ¶175 and <u>Exhibit 17</u>.  No specific response from Defendant's readers is alleged.

On January 10, 2017, David Duke linked to an interview he had with Mr. Spencer.  Complaint at ¶¶177-184 and <u>Exhibit 18</u>.  Plaintiff makes no allegation Mr. Anglin contributed to the interview, only that Mr. Duke and Mr. Spencer also characterized her actions as extortionate.  Complaint at ¶¶177-184. Also, on January 10, 2017, Mr. Anglin complained of what he claimed to be viewpoint discrimination by the City of Whitefish precluding the issuance of the permit for the march.  Complaint at ¶¶185-187; *see also* <u>Exhibit 19</u>.  The following day, Mr. Anglin announced the march would be postponed because Whitefish did not issue the permit.  Complaint at ¶188; *see also* <u>Exhibit 20</u>.  No specific response from Defendant's readers is alleged regarding those publications.

On January 18, 2017, a different author reported on supporters of Ms. Gersh coming out in her support on the day the protest march was to have occurred.[9] Complaint at ¶¶189-190; *see also* <u>Exhibit 21</u>.  The following day, Mr. Anglin decried an effort to have his publication classified as a terrorist group.  Complaint at ¶191; *see also* <u>Exhibit 22</u>.  Although the article states "Hitler was right," it also calls the Holocaust a hoax and disclaims making any threat.  Complaint at ¶¶193-

---

[9]    Although Plaintiff credits the article to Mr. Anglin, the byline belongs to Eric Striker.  Compare Complaint at ¶189 with <u>Exhibit 21</u>.

197 and Exhibit 22.  Later that day, Mr. Anglin discussed the merits of peaceful

protest.  Complaint at ¶198; *see also* Exhibit 23.  A third article of January 19,

2017, by a different author, again spoke out against Ms. Gersh's extortion of Mrs.

Spencer.  Complaint at ¶¶199-200; *see also* Exhibit 24.  No specific response from

Defendant's readers is alleged regarding those publications.

Finally, in an editor's note on a February 3, 2017 article, Mr. Anglin

deplored the failure of the ACLU to help him obtain a permit.  Complaint at ¶¶201-

202; *see also* Exhibit 25.  There is no allegation there was any response from his

readers to this publication.  Complaint at ¶¶142 & 202-203.

### 3.0    Plaintiff's Attempts at Service of Process

On April 18, 2017, Plaintiff filed a Complaint for Invasion of Privacy,

Intentional Infliction of Emotional Distress, and Violations of the Anti-

Intimidation Act. [10]  (Dkt. No. 1).  A Summons and a Preliminary Pretrial

Conference Order were issued.  (Dkt. Nos. 2 & 6).

Nearly three months later, on July 7, 2017, Plaintiff filed a Motion for

Extension of Time to Effect Service and to Vacate Order Setting Preliminary

Pretrial Conference.  (Dkt. No. 13).  Plaintiff averred her failure to serve Defendant

pursuant to Fed. R. Civ. P. 4(e)(2).  (Dkt. No.  13 at p. 3, and Dkt. No. 13-2).

---

[10]    Plaintiff also makes a fourth claim for "malice" under Mont. Code Ann.
§27-1-221.  That is not an independent cause of action, but a measure of damages.
*See Peschel v. City of Missoula*, No. CV-08-79-M-RFC, 2009 U.S. Dist. LEXIS
14442, at *3 (D. Mont. Jan. 5, 2009), adopting 2008 U.S. Dist. LEXIS 98651, at
*45 (D. Mont. Dec. 5, 2008); *Haines Pipeline Constr. v. Mont. Power Co.*, 251
Mont. 422, 434, 830 P.2d 1230, 1238 (1991).

Thus, she wished to try to serve Defendant under Fed. R. Civ. P. 4(e)(1), following state procedures. (Dkt. No. 13 at pp. 3-4 and Dkt. No. 13-1). She sought an additional 60 days to serve, due to the timing requirements of Ohio R. Civ. P. 4.4(A)(1). (Dkt. No. 13 at p. 6). On July 10, 2017, the Court allowed the motion, setting a deadline of September 15, 2017. (Dkt. No. 14).

The day service was due, Plaintiff filed a second motion for extension of time. (Dkt. No. 15). However, she did not correctly attempt service under Ohio procedures in a timely manner. *Id*. at p. 3. On September 18, 2017, the Court allowed a second extension to October 27, 2017. (Dkt. No. 17). On October 27, 2017, Plaintiff informed the Court that errors in the publication necessitated completion of the process on November 9, 2017, but no third extension was sought. (Dkt. No. 19)

## 4.0   Analysis

### 4.1   Plaintiff Failed to Serve Defendant, Timely or Otherwise

Plaintiff failed to make diligent efforts to serve Defendant. According to a review of the online docket in *Tanya Gersh v. Andrew Anglin,* Case No. 17-MS-000343 (Franklin Cty., Oh., Comm. Pleas.), it appears that service by certified mail, per Ohio R. Civ. P. 4.1(A)(1)(a), was requested by Plaintiff's counsel on May 18, 2017, issued on May 19, 2017, and deemed to have failed between June 6 & 14, 2017. *See* Exhibit 26. Thereupon, on July 6, 2017, just one day before her motion filed in this Court, Plaintiff's counsel filed a request for service by ordinary

mail, per Ohio R. Civ. P. 4.6(D).[11]  *See id.*  The service was issued on July 7, 2017, and it was deemed to have failed between July 26, 2017 and August 21, 2017.  *See id.*

Under Ohio R. Civ. P. 4.4(A)(1), service is complete "at the date of the last publication" following six successive weeks.  Plaintiff knew this when she filed her motion and she specifically anticipated utilizing this process.  (Dkt. No. 13 at p. 6; Dkt. No. 13-1 at ¶15).  Thus, Plaintiff was required to ensure publication began by August 11, 2017.  Yet, Plaintiff did not even request it until two weeks thereafter.  *See* Exhibit 26.  As a result, Plaintiff cannot be deemed to have been diligent and the service, to the extent it is valid, is untimely under this Court's Order.  Neither is there any justification for the completion of the alleged service on November 9, rather than by this Court's October 26, 2017 deadline.  Thus, the action must be dismissed.

Beyond lack of diligence and untimeliness, the purported service by publication under Ohio R. Civ. P. 4.4(A)(1) and Fed. R. Civ. P. 4(e)(1) was ineffective and insufficient.  As Defendant was not served, this Court lacks personal jurisdiction over him.

First, under Rule 4(e)(1) Plaintiff may only serve Defendant in a judicial district of the United States under the state law in "courts of general jurisdiction" where the district is located.  Fed. R. Civ. P. 4(e)(1).  It is axiomatic that those state courts must have personal jurisdiction over the defendant.  Plaintiff alleges that

---

[11]   Counsel for Plaintiff stated it was requested on June 27, 2017 (Dkt. No. 13-1 at ¶11), but it was not filed until 9 days later.

"Defendant Andrew Anglin is a resident of Ohio."  Complaint at ¶39.  He is not

and Plaintiff cannot prove as much.  In fact, Plaintiff's counsel admitted that

"Defendant Anglin's residence is unknown."  Dkt. No. 13-1 at ¶7.  Thus, the

alleged service in Ohio was ineffective.

There are no allegations in the Complaint that Plaintiff took any action in the

state of Ohio, thus there is no specific jurisdiction under the Ohio long-arm statute,

Ohio Rev. Code Ann. § 2307.382.[12]  Further, unlike many states, "Ohio law does

not appear to recognize general jurisdiction over non-resident defendant."  *Conn v.

Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012).  As a result, no matter what contacts

Mr. Anglin has with Ohio, he is not subject to the general jurisdiction of the courts

therein.  Thus, service in Ohio does not comport with Rule 4(e)(1) and this matter

should be dismissed for insufficient service.[13]

Second, the purported service was unlawfully procured, rendering it a

nullity, leaving this Court without personal jurisdiction over Defendant.  Plaintiff's

counsel, Mr. Dinielli, is the one who made the service requests.  Mr. Dinielli is not

admitted to practice law in Ohio, and the Ohio docket identifies him as an out of

state attorney.  *See* Exhibit 26.  Under Ohio Gov. Bar R. XII – Pro Hac Vice

Admission, out of state attorneys must seek permission to practice *pro hac vice* in a

---

[12]   Notably, the Ohio long-arm statute is not extended to the limits of due
process.  *See Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 238 n. 1, 638 N.E.2d
541, 545 (1994).
[13]   In fact, because Defendant is not a resident of Ohio, he should have been
served under Rule 4(f), not Rule 4(e)(1).  *See Williams v. Moody*, 1999 U.S. Dist.
LEXIS 527, at *3 (E.D. Pa. Jan. 22, 1999).

"proceeding."  *See* Ohio Gov. Bar R. XII at § 2(A).  A "proceeding" is an "adjudicative matter pending before a tribunal," which includes a "court."  *Id.* at § 1.  Although service by certified or ordinary mail may be ministerial—the clerk issues and serves the summons upon request—service by publication is not.  Service by publication only can occur upon the filing of an affidavit.  Ohio R. Civ. P. 4.4(A)(1).  The determination by a public official as to whether an affidavit is sufficient is a judicial, not ministerial function.  *See State ex rel. Copeland v. State Med. Bd.*, 107 Ohio St. 20, 140 N.E. 660 (1923).  Thus, the judges of Ohio will issue orders for service by publications.  *See, e.g., Argent Mortg. Co. v. Sellers*, 2010 Ohio Misc. LEXIS 15636 (Ohio Ct. Com. Pl. Nov. 10, 2010).  Moreover, "the preparation and filing of a pleading in court is an act of advocacy which must be undertaken by an attorney admitted to the bar and licensed to practice law in this state."  *Washington County Dep't of Human Servs. v. Rutter*, 100 Ohio App.3d 32, 36, 651 N.E.2d 1360 (4th Dist.1995).  Thus, Plaintiff's counsel could not act without first moving to appear *pro hac vice*.

The request for service by publication was invalid and the purported service by publication is a legal nullity.  *See State ex rel. Hadley v. Pike*, 2014-Ohio-3310, ¶¶16-17 (Ohio Ct. App. 2014) (pleading by unlicensed out-of-state attorney deemed "void *ab initio*").  Plaintiff did not follow state law for serving a summons in Ohio, as required by Fed. R. Civ. P. 4(e)(1).  Service was not accomplished, this Court lacks jurisdiction over Defendant, and the Complaint must be dismissed.

**4.2     This Court lacks Subject Matter Jurisdiction over the Action**

Plaintiff alleges subject matter jurisdiction under 28 U.S.C. § 1332, claiming diversity of citizenship.  *See* Complaint at ¶32.  Although Plaintiff did not specify which subsection is invoked, the later allegation that Defendant is a "resident of Ohio" implicates 28 U.S.C. § 1332(a)(1), for actions involving "citizens of different States."  *See* Complaint at ¶39.  Mr. Anglin, however, is not a citizen of the State of Ohio; Plaintiff does not have any basis to suggest as much.  *See* Dkt. No. 13-1 at ¶7 ("Defendant Anglin's residence is unknown.")

In *Brimm v. Genao-Gomez*, this Court observed that "[a] United States citizen who is domiciled abroad is 'stateless' for purposes of subject matter jurisdiction and cannot sue or be sued in federal court based on diversity jurisdiction."  2014 U.S. Dist. LEXIS 152574, at *2 (D. Mont. Oct. 28, 2014) (Christensen, U.S.D.J.) citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).  This is because "[t]o be a citizen of a state within the meaning of Title 28 U.S.C. § 1332, a person must be domiciled within the state."  *Id*. at *3 citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  Plaintiff bears the burden of proof in establishing Defendant's domicile.[14]  *Id*.

"An individual's domicile is the 'location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'  Courts evaluate domicile 'in terms of objective facts,

---

[14]     Merely alleging residency is not sufficient to allege citizenship for diversity purposes.  *See Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399 (1925).

RANDAZZA | LEGAL GROUP

and statements of intent are entitled to little weight when in conflict with facts.'"[15]

*Id.* quoting *Lew*, *supra* at 749-750 (internal quotation marks and citations omitted).

Plaintiff participated in a CNN report that highlighted Defendant stating that "he

now lives in Lagos, Nigeria." *See* Exhibit 27.  As Defendant is not a citizen of any

State, this Court lacks subject matter jurisdiction.

### 4.3    Plaintiff Failed to State a Claim Overriding Defendant's Constitutionally Protected Speech

Notwithstanding this Court's lack of personal and subject matter

jurisdiction, the Plaintiff fails to state a claim.  Plaintiff makes claims for invasion

of privacy, intentional infliction of emotional distress, and statutory intimidation

based on Defendant's alleged speech.  This speech was made on a website to spur

others to express their opinions to Plaintiff and her associates, *i.e.* to contribute

more speech to the marketplace of ideas.  It did not command compliance.  It did

not tell the third parties what to say.  And none of the statements of the third

parties to Plaintiff or her associates are alleged to have been directed by or

---

[15]    In *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957), the Ninth Circuit quoted, with approval, *In re Estate of NEWCOMB*, 192 N.Y. 238, 250, 84 N.E. 950, 954 (1908), which explained:

> 'Residence' means living in a particular locality, but 'domicile' means living in the locality with intent to make it a fixed and permanent home.  'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place, and also an intention to make it one's domicile.

Plaintiff cannot show Defendant's intent to make Ohio his domicile, let alone living or having bodily presence in Ohio necessary to establish residency.

otherwise proximately caused by Defendant.  Such a complaint cannot pass constitutional muster.

Defendant's speech does not fall into any category speech of unprotected under the First Amendment.  As set forth by the Ninth Circuit Court of Appeals:

> if speech does not squarely fall within a category of unprotected speech, … the court checks whether the speech falls within any unprotected category and, if so, confines the perimeters of the unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.

*Shoemaker v. Taylor*, 730 F.3d 778, 787 (9th Cir. 2013) (internal citations and quotation marks omitted).  "Content-based restrictions on speech have been permitted only for a few historic categories of speech, including incitement, obscenity, defamation, speech integral to criminal conduct, so-called 'fighting words,' child pornography, fraud, true threats, and speech presenting some grave and imminent threat the Government has the power to prevent."  *United States v. Alvarez*, 567 U.S. 709, 709 (2012).  Defendant's alleged speech does not fit into any of those historic categories.  Plaintiff may attempt to shoehorn the speech as incitement, fighting words, or true threats, but such attempts fail.

### 4.3.1    The Articles are Not Fighting Words

Defendant's speech does not constitute fighting words.  "To characterize speech as actionable 'fighting words,' the [plaintiff] must prove that there exist 'a likelihood that the person addressed would make an immediate **violent** response.'" (emphasis added) *United States v. Poocha*, 259 F.3d 1077, 1080-81 (9th Cir. 2001) quoting *Gooding v. Wilson*, 405 U.S. 518, 528 (1972).  Here, Defendant is not

Case 9:17-cv-00050-DLC-JCL   Document 32   Filed 11/30/17   Page 28 of 44

alleged to be addressing Plaintiff, but rather addressing third parties.  There is no likelihood that Ms. Gersh would make an immediate violent response to Mr. Anglin, far away, typing on a computer.  Accord *State v. Dugan*, 2013 MT 38, ¶43, 369 Mont. 39, 54, 303 P.3d 755, 767 (2013) ("Words spoken over the telephone are not proscribable under the 'fighting words' doctrine because the person listening on the other end of the line is unable to react with imminent violence against the caller.")  Even the speech of the third parties to Ms. Gersh, no matter how offensive, would not provoke an immediate violent response, as all of it was remote, *i.e.*, by telephone, e-mail, and social media.

### 4.3.2    The Articles are Not True Threats

As determined by law enforcement, Defendant's speech does not constitute a *true threat* and Plaintiff does not allege as much. "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).  "A true threat [is] where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person[.]" *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265-66 (9th Cir. 1990).  None of Defendant's statements involve an expression, serious or otherwise, of an intent to commit an act of violence.  Instead, they all expressly disclaim violence and direct his readers against actual or threatened violence.  Political hyperbole is not a true threat.  *See Watts v. United States*, 394 U.S. 705, 708 (1969) (reversing conviction for

- 19 -
Brief in Support of Motion to Dismiss
9:17-cv-50-DLC-JCL

statement regarding shooting President Johnson if drafted).  The third parties'
statements are generally recognized anti-Semitic tropes, without actual harm
reasonably to be construed.  And, even Nazi expression, no matter the psychic
harm on Jewish residents, is nonetheless protected speech.  *See Collin v. Smith*,
578 F.2d 1197, 1205-06 (7th Cir. 1978) (permitting Nazi march on Village of
Skokie).  Thus, there was no true threat.

### 4.3.3    The Articles are Not Incitement

Finally, there is no incitement.  "Nothing should be clearer at this stage in
the development of first amendment jurisprudence than 'the principle that the
constitutional guarantees of free speech and free press do not permit a State to
forbid or proscribe advocacy … of law violation except where such advocacy is
directed to inciting or producing imminent lawless action and is likely to incite or
produce such action.'"  *United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir.
1983) quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (*per curiam*).  As
Plaintiff concedes, Defendant specifically implored his readers away from
violence, stating:

> AND AS ALWAYS: ABSOLUTELY NO THREATS OF
> VIOLENCE, SUGGESTIONS OF VIOLENCE OR ACTS OF
> VIOLENCE.  DON'T DO IT.

Complaint at ¶140.  Even assuming *arguendo* that the communications to Ms.
Gersh from the third parties was somehow unlawful, merely giving instruction to
an audience as to how to violate the law does not constitute incitement.  *See*
*Dahlstrom, supra* (instruction as to setting up illegal tax shelter was not

incitement).  As a result, Defendant's speech does not fit into any historic category of unprotected speech.

### 4.3.4   No New Category of Unprotected Speech Should be Created

The speech at issue is very unpopular, and thus there is an allure to seeking a way to prohibit it.  This court should not create a new category of unprotected speech.[16]  In overturning the Ninth Circuit's decision that the Stolen Valor Act could constitutionally prohibit false speech, the Supreme Court observed:

> While there may exist some categories of speech that have been historically unprotected, but that the Court has not yet specifically identified or discussed, the Government has not demonstrated that false statements should constitute a new category.

*Alvarez*, 567 U.S. at 710 (internal citation and quotation marks omitted).  Neither should speech to third parties asking them to make politically motivated speech to another be another new category.  If such a new category were created, what hope would there be for *any* advocacy by *any* organization?  In fact, the Southern Poverty Law Center, the very organization driving this litigation, would likely be one of the first victims of any such restriction on freedom of expression.[17]

---

[16]   Although many of the cases addressing Freedom of Speech arise in the criminal context, "civil actions … must be limited to the same extent that a state would be limited in imposing criminal sanctions, because 'fear of damage awards … may be markedly more inhibiting than the fear of prosecution under a criminal statute.'"  *Sierra Club v. Butz*, 349 F. Supp. 934, 937 (N.D. Cal. 1972) quoting *New York Times Co.*, 376 U.S. at 277, 84 S. Ct. at 724.

[17]   The undersigned attorneys as well as their client would be just as opposed to such a restriction being imposed on the SPLC.

The Supreme Court of Montana carved out a new category of unprotected speech, holding "that free speech does not include the right to cause substantial emotional distress by harassment or intimidation." *State v. Cooney*, 271 Mont. 42, 894 P.2d 303, 307 (1995); *see also State v. Nye*, 283 Mont. 505, 513, 943 P.2d 96, 101 (1997) ("Activities which are intended to embarrass, annoy or harass, as was the case here, are not protected by the First Amendment"). The Montana Supreme Court was wrong to do so. It is, therefore, unsurprising that no Federal court has agreed. This Court should not be the first. In fact, the Ninth Circuit has generally repudiated it, stating it "is axiomatic that the government may not silence speech because the ideas it promotes are thought to be offensive." *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2009). Rather, "[t]here is no categorical 'harassment exception' to the First Amendment's free speech clause." *Id*. quoting *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001).

Although the Ninth Circuit recognized that a regulation prohibiting "harassment" and "intimidation" might not be overbroad under the First Amendment, that regulation required that it "threaten[] or endanger the health or safety of another." *O'Brien v. Welty*, 818 F.3d 920, 930 (9th Cir. 2016) (internal citation and quotation marks omitted). In contrast, the Montana Anti-Intimidation Act, as invoked by Plaintiff (Complaint at ¶228), states:

> An individual or organization who is attempting to exercise a legally protected right and who is injured, harassed, or aggrieved by a threat or intimidation has a civil cause of action against the person engaging in the threatening or intimidating behavior.

Mont. Code Ann. § 27-1-1503(2). This statute is overbroad.

In contrast to Mont. Code Ann. § 27-1-1503(1), the language at Mont. Code Ann. § 27-1-1503(1) does not incorporate the definitions of "intimidation" or "threaten" set forth at Mont. Code Ann. §§ 45-5-203 & 45-7-102 respectively. "In the First Amendment context, the Supreme Court recognizes a type of facial challenge in which a statute will be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010).  Under the statute, a pizza-delivery person could be liable for "threatening" a consumer that snow might delay dinner; a professor could be liable for "threatening" a midterm; and siblings could sue each other for "threatening" to tattle.  In fact, under the plain language of the statute, Mr. Anglin and Ms. Spencer would have claims against Ms. Gersh.  Due to the scope of anyone "aggrieved" being able to make a claim, the statute is facially unconstitutional.

As applied, the internet is a public forum; there is no compelling state interest for Montana to regulate what Defendant might say in Ohio or anywhere else, even if it involves a Montanan.  *See Widmar v. Vincent*, 454 U.S. 263, 269-70 (1981) (requiring narrowly drawn regulation with compelling state interest to justify speech restriction in public forum).  Unlike the regulation in *O'Brien,* there is no requirement of a threat to health or safety.  And, as set forth above, there is no "true threat" involved.

A new category of unprotected speech is ripe for abuse.  Defendant's speech
is political.  It arose from a political rally in support of President Trump's election.
Ms. Gersh voluntarily injected herself into national politics.  To permit Defendant
to be sued for his political speech because it is "harassment" or "intimidation"
means that anyone, Democrat, Republican, or independent, whose speech has
political support, could be subject to liability.  The First Amendment will not abide
such a result, nor should it.

### 4.3.5     Defendant Cannot be Held Liable for the Acts of Third Parties

Although all of the third-parties' speech is itself protected, even if it were
not, Defendant cannot be held liable for it.  In Montana, "[a] principal is not
responsible for other wrongs committed by the principal's agent … unless the
principal has authorized or ratified the acts, even though they are committed while
the agent is engaged in the principal's service."  Mont. Code Ann. § 28-10-602(2).
However, "[a]ctual agents are statutorily defined as persons who are 'really
employed by the principal.'"  *Butler v. Domin*, 2000 MT 312, ¶28, 302 Mont. 452,
459, 15 P.3d 1189, 1194 (2010) quoting Mont. Code Ann. § 28-10-103.  There is
no allegation Defendant really employs any of the third parties; in fact, none are
identified.

To adjudge Defendant liable for the acts of his readers would similarly
violate his First Amendment rights.  "Civil liability may not be imposed merely
because an individual belonged to a group, some members of which committed
acts of violence. For liability to be imposed by reason of association alone, it is

necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 920 (1982).  There were no unlawful goals and Defendant had no specific intent to further same.  Thus, this action must be dismissed as Defendant has no constitutional liability.

### 4.4     Plaintiff Fails to State a Viable Cause of Action

Even if Plaintiff's suit were not constitutionally infirm, there is no merit to it and should be dismissed for failure to state a claim.  Defendant did not invade her privacy, intentionally inflict emotional distress, or harass her.

#### 4.4.1     Defendant is Not Liable for Invasion of Privacy

Plaintiff's first count, for Invasion of Privacy, alleges that Defendant posted stories and contact information about Plaintiff, giving them instruction and encouragement, causing harm thereby.  Complaint at ¶¶214-216.  The Montana Supreme Court:

> has defined the common law cause of action for invasion of privacy as a wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Miller v. Great Falls Ath. Club, LLC*, 2010 MT 171N, ¶7 (2010) (internal citations and quotation marks omitted).  Defendant did not intrude, he did not do anything wrongful, her activities were not private, and he did not proximately cause her alleged suffering.

Instead, he is alleged to have responded to and republished what Mrs. Spencer originally provided publicly, which included largely information

RANDAZZA | LEGAL GROUP

Ms. Gersh provided to Mrs. Spencer.  This occurred in the context of a very public

planned boycott and protest to harass and intimidate Mrs. Spencer into selling her

building, rather than simply involving private activity.  All of the information

Defendant allegedly published about Ms. Gersh was publicly available.  *See*

*Hastetter v. Behan*, 196 Mont. 280, 283, 639 P.2d 510, 513 (1982) ("an

individual's right of privacy protects only matters which can reasonably be

considered private.")  Her address and phone number, as well as Twitter account,[18]

were publicly available and the type of information that appears in a phone book or

other directory.  There is no reasonable expectation of privacy in such information

or her communications with Mrs. Spencer.

Neither did such publication directly or proximately caused harm to

Ms. Gersh.  First, Plaintiff does not allege any specific third party did so because

of Mr. Anglin.  Second, Mr. Anglin's publication itself caused no alleged harm;

rather, to the extent that any communications caused harm – these communications

were third party communications.  If, instead of condemnation, Plaintiff took her

side and published her contact information to give her love and support, it would

be obvious that mere publication of it cannot cause harm.

Plaintiff seeks to hold Defendant liable not for the act of publication, then,

but for the speech of third parties.  This is not invasion of privacy.  Even if it were,

they are not his agents.  In the absence of an agency relationship, there is no

---

[18]   A Twitter account is, in essence, a website link.  "[T]here is no privacy
interest in a website link. A reasonable individual would not expect that links to a
website are private because the Internet is a public forum." *Katzenbach v. Grant*,
2005 U.S. Dist. LEXIS 46756, at *54 (E.D. Cal. June 7, 2005).

RANDAZZA | LEGAL GROUP

invasion of privacy proximately caused by Defendant.  *See Koepplin v. Zortman Mining*, 267 Mont. 53, 62, 881 P.2d 1306, 1311-12 (1994).  Thus, this count must be dismissed.

### 4.4.2    Defendant is Not Liable for Intentional Infliction of Emotional Distress

In Plaintiff's second count, she recites the rote elements of a claim for intentional infliction of emotional distress.  In Montana:

> [a]n independent cause of action for infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission.

*Sacco v. High Country Indep. Press*, 271 Mont. 209, 896 P.2d 411, 429 (1995).  Although Plaintiff claims that "Mr. Anglin could reasonably foresee the consequences of his conduct" (Complaint at ¶221), such is a legal conclusion; nothing in the Complaint otherwise sets forth a factual basis for such foreseeability.  Ms. Gersh was involved with planning a boycott and protest of Mrs. Spencer's business.  Complaint at ¶18.  Thus, Ms. Gersh condones collective action to express a political opinion – so long as that political opinion is one that she favors.

In the face of that, there is no reason to foresee Ms. Gersh would not similarly condone others engaged in collective expression.  With the exception of the particular words used, there is no difference between her participation in the collective actions against Mrs. Spencer (*i.e.* protest and boycott) and Mr. Anglin's participation in the protest against Plaintiff.  Both invoked community outrage.  It

RANDAZZA | LEGAL GROUP

is not reasonably foreseeable that she would not condone it when directed at her. She may not, in retrospect, like that her political speech gave rise to opposing political speech.  But, the same First Amendment that protects her ability to organize a protest against Mrs. Spencer gives Mr. Anglin the right to call upon his readers to share their views about it.  Presumably, she would not concede Mrs. Spencer has a foreseeable IIED claim against her.  Thus, similarly, the alleged consequences were not reasonably foreseeable by Defendant.

There is no actionable conduct by Defendant.  In Montana, "an actor does not engage in outrageous or extreme conduct simply by exercising a legal right…. [A] privileged action cannot become the basis for such a claim" for intentional infliction of emotional distress.  *Judd v. Burlington N. & Santa Fe Ry.*, 2008 MT 181, ¶¶30-31, 343 Mont. 416, 423, 186 P.3d 214, 218 (2008).  Plaintiff has not pled that Defendant was not exercising his legal rights (nor could she). Defendant's conduct was legal—he was engaged in political speech.  Notably, "[t]he Free Speech Clause of the First Amendment — 'Congress shall make no law … abridging the freedom of speech'— can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress."  *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citation omitted).  That the speech is particularly emotionally hurtful and causes anguish does not strip it of First Amendment protection.  *See id.* at 456.  Further, as the Ninth Circuit recognizes:

> when the definition of a crime or tort embraces any conduct that
> causes or might cause a certain harm, and the law is applied to speech
> whose communicative impact causes the relevant harm, we treat the
> law as content-based. *See, e.g., Hustler Magazine v. Falwell*, 485 U.S.

> 46, 99 L. Ed. 2d 41, 108 S. Ct. 876 (1988) (holding that "public
> figures and public officials" must show actual malice to prevail on a
> state-law tort claim for intentional infliction of emotional distress
> based on the defendant's speech).

*United States v. Cassel*, 408 F.3d 622, 626 (9th Cir. 2005).  Here, Mr. Anglin's

publications were privileged and he acted without actual malice.  Having

"voluntarily inject[ed]" herself into the controversy, she is a limited purpose public

figure.  *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974).  Although Plaintiff

makes a naked assertion of "actual malice" in her Fourth claim, she fails to assert a

false statement of fact made with actual malice.  *Worrell-Payne v. Gannett Co.*, 49

F. App'x 105, 109 (9th Cir. 2002); accord Mont. Code Ann. § 27-1-221(2).  Thus,

this claim (and the Fourth claim) must be dismissed.

### 4.4.3   Defendant did not Harass or Intimidate Plaintiff

As discussed above, to state a claim under Mont. Code Ann. § 27-1-1503(2),

as is Plaintiff's third count, Defendant must have "injured, harassed, or aggrieved"

her "by a threat or intimidation," while she is "attempting to exercise a legally

protected right."  The only right Plaintiff asserts she "was attempting to exercise"

was, ironically, her right to free speech.  Complaint at ¶226.  Defendant's actions

related to Ms. Gersh's past speech.  The statute, however, does not speak to past

exercise, but rather present attempts to exercise rights.  The Complaint identifies

no rights Ms. Gersh was attempting to exercise when Defendant allegedly harmed

her.

Neither did Defendant commit an actionable threat or act of intimidation.

As discussed above, the statute is overbroad, with those terms undefined.  But the

claim fails even if the criminal statutory definitions are incorporated, despite their omission.  The so-called "troll storm," the only allegation of conduct under the anti-intimidation act (Complaint at ¶227), is not actionable thereunder.  Defendant did not "threaten" Plaintiff within the meaning of Mont. Code Ann. § 45-7-102, to the extent it is incorporated into section 27-1-1503(2).  There was no threat of harm; there was no private address to a public servant; and Ms. Gersh was neither a juror nor public servant.

Similarly, under the definition of "intimidation" in Mont. Code Ann. § 45-5-203, the claim fails.  Defendant did not threaten to inflict physical harm, confine or restrain her, or commit a felony, or report a fire, explosion, or disaster.  "Mere advocacy of the use of force or violence to accomplish some end also does not constitute a threat under [45-5-203] since that form of expression is protected by the First Amendment.  Rather, only serious expressions of an intention to take a hostage, murder, inflict serious injuries on persons or property, or commit a felony, for the purpose of accomplishing some end constitute a threat punishable under the statute."  *State v. Lance*, 222 Mont. 92, 104, 721 P.2d 1258, 1266-67 (1986) (internal citations omitted).  In this case, there was *no* advocacy of the use of force or violence *at all*.  However, even if there were, it would not have been actionable.  Just as Plaintiff would not concede she threatened or intimidated Mrs. Spencer,[19]

---

[19]   The only difference between a protest of Mrs. Spencer and a protest of Plaintiff is the viewpoint.  However, unlike the statutory and regulatory duties owed by Plaintiff to Mrs. Spencer, Defendant owed Plaintiff no such duties.

she cannot claim Defendant threatened or intimidated her.  In the absence of an actionable threat or intimidation, this count must be dismissed.

**5.0     Conclusion**

There is no subject matter jurisdiction because Mr. Anglin is not a citizen of any state for diversity purposes.  He is not a resident of Ohio, thus service (otherwise invalid due to unauthorized practice of law) was ineffective and there is no personal jurisdiction over him.  His speech does not fall into any category of unprotected speech and there is no good cause to carve out a new one.  Moreover, none of the actual claims are meritorious.  He did not invade Plaintiff's privacy by publishing already public information.  He could not reasonably foresee her distress when she involved herself in a public dispute and endorsed collective action.  And he neither threatened nor intimidated Plaintiff.  Defendant is not liable for any action of any third party, no matter how much the Plaintiff or her counsel wish.[20]  In light of the foregoing, the Complaint must be dismissed.

The messages Ms. Gersh allegedly received were (in the undersigned's opinion) mean-spirited, nasty, brutish, and uncalled for, and it is easy to feel sympathy for her.  But the undersigned's opinion is nothing more than a commentary on taste – not law.  The messages were allegedly received from a highly-disfavored group – neo-Nazis.  And this gives some melody to the siren's song of censorship – after all, who cares about Nazis?  But that is not the test under

---

[20]   Counsel for Plaintiff, in fact, specifically disclaim liability for the acts of their supporters.  *See* <u>Exhibit 28</u> (SPLC President distancing the group from its supporter who allegedly shot Congressman Scalise).

our Constitution.  If we are to reject speech because it comes from an unorthodox group, we do violence to the very underpinnings of our notions of liberty.  Nazis are "unorthodox" in America.  Yet the rule of law must govern.  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

It is easy to wish to sympathize with Ms. Gersh and against self-avowed Nazis.  But, "*America isn't easy*" rings true – even in this case.  The Court must not look to orthodoxy, or a test of taste, nor even (most likely) into its own heart.  The Court must look to the Constitution – and understand that if we chip away at it because we disfavor a speaker, or his speech, then we do not want free speech at all – much less, do we *want it bad.*

Dated: November 30, 2017.   Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147

/s/ Jay M. Wolman
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Mathew M. Stevenson
Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
*Attorneys for Defendant,*
*Andrew Anglin*


Case No. 9:17-cv-50-DLC-JCL

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2)(E), undersigned counsel hereby certifies compliance with the said Rule and states that the number of words in this brief, as per the count of Microsoft Word, is 8,667.

/s/ Marc J. Randazza
Marc J. Randazza


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 30, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza

## INDEX OF EXHIBITS

| Exh. No. | Exhibit Description |
|---|---|
| 1 | Sherry Spencer post on Medium dated Dec. 15, 2016 |
| 2 | Andrew Anglin post on Daily Stormer dated Dec. 6, 2016 |
| 3 | Gersh communications published by Sherry Spencer |
| 4 | Andrew Anglin post on Daily Stormer dated Dec. 17, 2016 |
| 5 | Andrew Anglin post on Daily Stormer dated Dec. 19, 2016 |
| 6 | Eric Striker post on Daily Stormer dated Dec. 21, 2016 |
| 7 | Andrew Anglin post on Daily Stormer dated Dec. 21, 2016 |
| 8 | Andrew Anglin post on Daily Stormer dated Dec. 22, 2016 |
| 9 | Andrew Anglin post on Daily Stormer dated Dec. 23, 2016 |
| 10 | Andrew Anglin post on Daily Stormer dated Dec. 23, 2016 |
| 11 | Jez Turner post on Daily Stormer dated Dec. 23, 2016 |
| 12 | Andrew Anglin post on Daily Stormer dated Dec. 27, 2016 |
| 13 | Andrew Anglin post on Daily Stormer dated Dec. 28, 2016 |
| 14 | Andrew Anglin post on Daily Stormer dated Jan 5, 2017 |
| 15 | Lawrence Murray post on Daily Stormer dated Jan. 6, 2017 |
| 16 | Ben Richards post on Daily Stormer dated Jan. 8, 2017 |
| 17 | Andrew Anglin post on Daily Stormer dated Jan. 8, 2017 |
| 18 | David Duke post on Daily Stormer dated Jan. 10, 2017 |
| 19 | Andrew Anglin post on Daily Stormer dated Jan. 10, 2017 |
| 20 | Andrew Anglin post on Daily Stormer dated Jan. 11, 2017 |
| 21 | Andrew Anglin post on Daily Stormer dated Jan. 18, 2017 |
| 22 | Andrew Anglin post on Daily Stormer dated Jan. 19, 2017 |
| 23 | Andrew Anglin post on Daily Stormer dated Jan. 19, 2017 |
| 24 | Eric Striker post on Daily Stormer dated Jan. 19, 2017 |
| 25 | Eric Striker post on Daily Stormer dated Feb. 3, 2017 |

RANDAZZA | LEGAL GROUP

| Exh. No. | Exhibit Description |
|---|---|
| 26 | Docket – Franklin County, Ohio – Case No. 17 MS 000343 |
| 27 | Mallory Simon and Sara Sidner, "An avalanche of hate: How a Montana mom became the target of a neo-Nazi troll storm", CNN (Jul. 11, 2017) |
| 28 | Richard Cohen, "Attack on GOP Congressman is Assault on Democracy," SPLC (Jun. 14, 2017) |
| 29 | Declaration of Jay M. Wolman |

**RANDAZZA** | LEGAL GROUP