John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW ANGLIN, publisher of the *Daily Stormer*,<br><br>    Defendant. | Case No.:  9:17-cv-00050-DLC-JCL<br><br>Plaintiff's Preliminary Pretrial Statement |

A.     **Brief Factual Outline of Case**

On December 16, 2016, Defendant Andrew Anglin posted the first of a series of thirty articles on his white nationalist website, the *Daily Stormer*, in which he exhorted his followers to harass Plaintiff Tanya Gersh, using the contact information that he provided, in what he dubbed a "troll storm."

1

Mr. Anglin repeatedly posted Ms. Gersh's contact information, the contact information of Ms. Gersh's husband, the social media handles of Ms. Gersh's 12-year old son, the contact information of Ms. Gersh's associates, and the contact information of other members of the Whitefish, Montana community due to their perceived connection to Ms. Gersh, with the intention of causing those listed to be harassed on the basis of their Jewish identity.  And he succeeded.

Immediately following the publication of Mr. Anglin's December 16th article, Ms. Gersh and her family received a voluminous onslaught of harassing phone calls, text messages, e-mails, and social media messages that placed Ms. Gersh in fear of her and her family's safety.  Just as Mr. Anglin intended, the hateful messages affected Ms. Gersh's private life and were not received in a public forum or amidst a public debate.  The speech was received privately at Mr. Anglin's behest.  Several of the messages menacingly promised Ms. Gersh that the sender would pay her an in-person visit, which prompted Ms. Gersh and her husband to seriously consider leaving their home in the middle of the night out of fear for the safety of their family.

Ms. Gersh and her family have received over 700 harassing messages, including death threats, at all times of the day and night with noticeably more messages being received immediately following the publication of each of Mr. Anglin's articles.  The content of the messages that Ms. Gersh received included

"You will be driven to the brink of suicide. & We will be there to take pleasure in your pain & eventual end" as well as such anti-Semitic epithets as "This is the goylash.  You remember the last goylash, don't you Tanya?  Merry Christmas, you Christ killing Jew."  This epithet, which was sent to Ms. Gersh via email on December 17th, directly models the language that Mr. Anglin used in his December 17th article.  In that article, he wrote, "This is the goylash.  You remember the last goylash, don't you Tanya?"

  This is not the only such example of troll storm participants using Mr. Anglin's language.  In his December 16th article, Mr. Anglin wrote, "Tell them you are sickened by their Jew agenda to attack and harm the mother of someone whom they disagree with."  Ms. Gersh then received an email containing the message, "We Goyim are absolutely sick of your tribe's hostility & actions towards us, such as yours towards Sherry, within our Country nonetheless.  You are a disgusting, vile Jew.  You filthy & depraved Jews never learn; it is your peoples' behavior responsible for our resentment of you, which pales in comparison to your hatred for us."  That email was one of many.  Mr. Anglin also told his readers that when they submit fake reviews of Ms. Gersh's business to "perhaps note that it is front for an extortion racket."  His followers heeded Mr. Anglin's instruction.  One of the fake business complaints that Ms. Gersh received contained a message asking, "[H]ow do you sleep knowing you are basically an extortion front for

3

Jewish interests...?" At least some of those messages also included links to the Daily Stormer articles about Ms. Gersh.

Mr. Anglin's attack on Ms. Gersh began the day after the mother of white nationalist Richard Spencer published a piece in *Medium* in which she falsely accused Ms. Gersh of improperly pressuring her to sell her business. Mr. Anglin then spun the narrative of that article into a false tale of Ms. Gersh running a Jewish racketeering and extortion ring in Whitefish, Montana. He then implored his readers to contact Ms. Gersh and her family in order to "make them feel the kind of pressure they are making us feel." In article after article, he encouraged his followers to "keep up the pressure" with the goal and intent that this "troll storm" would impact every aspect of Ms. Gersh's private life.

Mr. Anglin further encouraged his followers to contact and harass Ms. Gersh by responding to comments left by his followers in the Daily Stormer forums associated with the articles. For example, when a follower posted a comment expressing concern about placing a call to the Gershes, Mr. Anglin responded to the comment by writing, "Just do it." Another follower expressed uneasiness after having called Ms. Gersh's husband's place of employment, and Mr. Anglin responded that the uneasiness was a result of the follower's female identity. Mr. Anglin responded "YES!!" to another follower who stated that they contacted the clients of Ms. Gersh's husband to tell them they were concerned that their

attorney's wife was "involved in terrorist activities." Mr. Anglin deliberately initiated a systematic campaign of harassment of Ms. Gersh.

### B. Basis for Federal Jurisdiction and Venue

This action arises under Montana state law. This Court has jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship. This Court has personal jurisdiction over Mr. Anglin because he purposefully directed conduct that resulted in the accrual of a tort action at a resident of Montana, thereby injecting himself into the state's affairs.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Whitefish, Montana. Intra-district assignment to the Missoula Division is appropriate because a substantial part of the events or omissions which give rise to the claim occurred in Whitefish, Montana.

### C. Factual Basis of Each Claims Advanced by Plaintiff

1. **Count One:** *Invasion of Privacy*. Mr. Anglin posted Ms. Gersh's contact information and directed his followers to harass Ms. Gersh in a manner that would prevent her from withdrawing or from being able to tune out the speech. He intended to invade her privacy in all aspects of her life.

He intended that his followers harass and hound Ms. Gersh through phone calls, messages, in-person visits, and false business reviews in a manner that she could not escape or ignore and that would disrupt her personal and family life and cause fear and mental anguish.  He intended that his followers – known as his "Stormer Troll Army" – also harass persons closest to Ms. Gersh in an effort to infect her personal relationships with others, including her family.  He provided substantial assistance to enable his followers to engage in this tortious conduct, and as a result, Ms. Gersh received over 700 phone calls and voicemails, handwritten messages delivered through the mail, social media messages, text messages, emails, business reviews, fraudulent mail subscriptions, and other communications.

2.  **Count Two:** *Intentional Infliction of Emotional Distress*.  Mr. Anglin intended and knew that his launching a "troll storm" on Ms. Gersh would result in her suffering serious and severe emotional distress.

Mr. Anglin launched several other "troll storms" before he chose to focus on Ms. Gersh.  He had knowledge and warning that those other troll storms resulted in the victim's receiving death threats and suffering severe emotional harm and psychic disturbance based on the receipt of numerous hate-filled messages.  In addition, even after it was reported in several major news publications that Ms. Gersh and her family were in receipt of hundreds of violent and threatening messages as a direct result of his troll storm, Mr. Anglin kept writing and asking

6

for his followers to harass Ms. Gersh.  He even published more names and contact information for Ms. Gersh's associates.

As a result of his conduct, Ms. Gersh has experienced panic attacks, startles easily, feels anxiety and discomfort in crowded places, has had trouble leaving her home, and fears answering her phone.  Her physical appearance has changed, and she has sought out medical care and been prescribed antidepressants and anxiety medication.  She also attended trauma therapy twice a week and eye movement desensitization and reprocessing (EMDR) therapy once a week.

Ms. Gersh's distress was a reasonably foreseeable consequence of Mr. Anglin's conduct. Mr. Anglin directed his message toward an audience that was primed to respond quickly and aggressively—a group of radical believers in his hateful ideology who are known for their "troll storm" tactics.

3.     **Count Three:** *Montana Anti-Intimidation Act*.  Mr. Anglin intended that Ms. Gersh feel threatened and intimidated through his actions and the actions of his followers, especially in light of the similarly-motivated violent actions perpetuated by members of the white supremacist movement who were active subscribers to Mr. Anglin's website.  Mr. Anglin sought to intimidate Ms. Gersh by encouraging readers to harass her by employing hateful and prejudiced imagery and symbols historically employed during the Holocaust.  He intended that she feel

7

harassed and terrorized, and he behaved in a threatening and intimidating manner in order to elicit this reaction.

    4.    **Count Four**: *Malice*.  Mr. Anglin falsely accused Ms. Gersh of running a Jewish extortionist ring with no evidence but with knowledge that by his doing so, in combination with his instructing his readers to act, would result in Ms. Gersh receiving hundreds of hate messages that cause Ms. Gersh harm.  He acted with deliberate indifference by encouraging his readers to keep harassing Ms. Gersh and her family and acquaintances even knowing the effect his instructions had on Ms. Gersh's private life.  In addition, knowing his statements were false, he labeled Ms. Gersh a criminal and a member of a cartel.  Mr. Anglin did not merely state an opinion, but rather he lied and made up statements he passed off as fact.

    **D.**    **Legal Theory Underlying Each Claim**

1.    **Count One: *Invasion of Privacy*.**  A person can be held liable "[f]or harm resulting to a third person from the tortious conduct of another" if he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."  *Sloan v. Fauque*, 784 P.2d 895, 896 (Mont. 1989) (quoting Restatement (Second) of Torts § 876 (1979)).  Mr. Anglin knowingly provided substantial assistance to others so that they would invade Ms. Gersh's privacy in an unlawful manner, and his followers did invade Ms. Gersh's privacy.  The tort of invasion of privacy through intrusion

8

on solitude consists of a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *State Bd. of Dentistry v. Kandarian*, 886 P.2d 954, 957 (Mont. 1994). Repeated and frequent telephone calls, amounting to "a course of hounding the plaintiff" which "becomes a substantial burden to his existence" constitutes a tortious intrusion on solitude. Restatement (Second) of Torts § 652B cmt. d.

    2.    **Count Two:** *Intentional Infliction of Emotional Distress.* An intentional infliction of emotional distress claim "arises when a plaintiff suffers serious and severe emotional distress as a reasonably foreseeable consequence of a defendant's intentional act or omission." *Czajkowski v. Meyers*, 172 P.3d 94, 101 (Mont. 2007); *see also Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 418 (Mont. 1995) (establishing the availability of IIED claims in Montana). The Montana Supreme Court has expressly rejected any physical injury requirement, *Sacco*, 896 P.2d at 426, instead requiring that the emotional distress be "so severe that no reasonable person could be expected to endure it." *Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 663 (Mont. 2009) (quoting Restatement (Second) of Torts § 46). To determine severity, the Montana Supreme Court has considered the duration and intensity of the distress, the "circumstances under which the infliction

occurred, and the party relationships involved." *Renville v. Fredrickson*, 101 P.3d 773, 776 (Mont. 2004).

3.    **Count Three:** *Montana Anti-Intimidation Act.* The Anti-Intimidation Act, passed in 1996 by referendum, "seeks to address the growing problem of harassing and threatening behavior being undertaken by extremist individuals and groups in Montana." Mont. Code Ann. § 27-1-1502. The statute creates a civil cause of action for any individual "who is attempting to exercise a legally protected right and who is injured, harassed, or aggrieved by a threat or intimidation." *Id.* § 27-1-1503(2). In order to recover, it must be shown that the defendant engaged in "threatening or intimidating behavior." *Id.*

4.    **Count Four:** *Malice.* "[R]easonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice." Mont. Code Ann. § 27-1-221(1). "A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:  (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff." Mont. Code Ann. § 27-1-221(2). Liability for punitive damages must be determined by the trier of fact, whether judge or jury. Mont. Code Ann. § 27-1-221(6).

### E.     Computation of Damages

The tortious conduct of Mr. Anglin has led to Plaintiff's injuries including, but not limited to: harm to Ms. Gersh's interests in privacy and Ms. Gersh's severe mental distress. Plaintiff is also entitled to punitive damages because Mr. Anglin acted with actual malice. The damages are in excess of $75,000, with the exact amount to be decided by the jury. In addition, Plaintiff intends to seek attorney fees, costs, and disbursements, to the extent permitted by law.

Plaintiff also asks the Court to enjoin Mr. Anglin from continuing to harass Ms. Gersh and to remove the harassing material from his website.

### F.     Pendency or Disposition of Any Related State or Federal Litigation

There is no related state or federal litigation.

### G.     Proposed Additional Stipulations of Fact

None.

### H.     Proposed Deadlines Relating to Joinder of Parties or Amendment of the Pleadings

June 21, 2018.

### I.     Identification of Controlling Issues of Law Suitable for Pretrial Disposition

None.

**J.    Name and City and State of Current Residence of Each Individual Known or Believed to Have Information that may be used in Proving or Denying any Party's Claims or Defenses, and a Summary of that Information**

Tanya Gersh, Whitefish, Montana

Andrew Anglin, Worthington, Ohio

Judah Gersh, Whitefish, Montana

J.G., a minor child of Plaintiff and Judah Gersh, Whitefish, Montana

Eric Striker, residence unknown – believed to have contributed research to the articles regarding Ms. Gersh and has knowledge of events that give rise to lawsuit, including decision to harass Ms. Gersh

Dr. Mark Colonna, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Erin Boedeker, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Dr. Raymond Garth, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Dr. Patricia Cole, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Dr. John Kalbfleisch, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Melissa Hartman, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Scott Ruta, Whitefish, Mont. – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Dr. J. Douglas Muir, Whitefish, Montana – Ms. Gersh's medical provider who has knowledge of Ms. Gersh's injuries and medical treatment

Francine Roston, Whitefish, Mont. – Another victim of Mr. Anglin's troll storm who has knowledge of events that give rise to lawsuit including Ms. Gersh's injuries

Allen Secher, Whitefish, Montana – Has knowledge of events that give rise to lawsuit including Ms. Gersh's injuries

Ina Albert, Whitefish, Montana – Victim of Mr. Anglin's troll storm who has knowledge of events that give rise to lawsuit including Ms. Gersh's injuries

Sean Averill, Whitefish, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Scott Strellenauer, Whitefish, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Laura O'Connor, Whitefish, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Erin Schrode, residence unknown – Prior troll storm victim of Mr. Anglin who has knowledge relating to Mr. Anglin's knowledge of the likely the impact of his calling for a troll storm

Taylor Dumpson, residence unknown – Prior troll storm victim of Mr. Anglin's who has knowledge that Mr. Anglin continues to act in a tortious manner despite having knowledge of impact

Steve Candler, Bozeman, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Jeri Moon, Helena, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Jennifer Stalkamp, Helena, Montana – Has knowledge of events that give rise to lawsuit as it relates to the harassment directed towards Ms. Gersh in her professional capacity

Sherry Spencer, Whitefish, Montana – Has knowledge of her own communications with Ms. Gersh, the process by which Ms. Spencer drafted her Medium post, including whether she received assistance in drafting that post

Richard Spencer, residence unknown – Has knowledge relating to ownership of commercial building in Whitefish Montana operated by Sherry Spencer

Sara Torgerson, Whitefish, Montana – Tenant in Ms. Spencer's commercial building with knowledge of her own communications with Ms. Gersh and with Ms. Spencer

Craig Mungus, Whitefish, Montana – Tenant in Ms. Spencer's commercial building with knowledge of communications with Ms. Gersh

Courtney Laabs, Whitefish, Montana – Tenant in Ms. Spencer's commercial building with knowledge of communications with Ms. Gersh

All persons (identities and locations unknown) who sent messages of any sort to Ms. Gersh or her family or other Whitefish residents relating to the accusations and directions published by Mr. Anglin

All persons (identities and locations unknown) who posted messages or reactions on the Daily Stormer Message Board or elsewhere relating to articles posted on the Daily Stormer by Mr. Anglin or others about Ms. Gersh

**K.    Substance of Any Insurance Agreement that May Cover any Resulting Judgment**

Plaintiff is not aware of any.

**L.    Status of Any Settlement Discussions and Prospects for Compromise of the case**

Plaintiff remains open to settlement discussions; however, none are proposed at this time.

**M.   Suitability of Special Procedures**

None.

**N.   Issues Relating to Discovery or Disclosure of Electronically Stored Information including (a) issues pertaining to the preservation of such information and (b) issues relating to the form or forms in which such information should be produced.**

Defendant has raised the possibility of difficulty in obtaining and producing certain electronically stored information due to the Daily Stormer's repeated loss of domain registration. The parties do not yet know the extent of any such difficulty or the possible solutions (which Plaintiff believes could include, for example, the need to examine personal hard drives).  Plaintiff does not anticipate any issues regarding the disclosure of electronically stored information she has maintained.  Parties agree that all ESI will be produced in native format.

DATED December 7, 2017.

/s/David C. Dinielli
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff


/s/ John Morrison
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

on this December 7, 2017.

/s/ David C. Dinielli
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff