John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
James M. Knoepp*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

TANYA GERSH,

Plaintiff,

vs.

ANDREW ANGLIN, publisher of the *Daily Stormer*,

Defendant.

Case No. 9:17-cv-00050-DLC-JCL

PLAINTIFF'S RESPONSE TO DEFENDANT'S PURPORTED "ERRATA" AND ACCOMPANYING DECLARATION

Defendant's production shows nothing more than a tourist wandering through Southeast Asia in 2017, with motorcycle rides through Laos, Thailand, and Cambodia, extended visas to ease travel between them, and comfortable stays at seemingly lavish yet affordable hotels. But it certainly does not show that Defendant, a United States citizen, changed his domicile to any foreign country

such that he can escape this Court's jurisdiction. In his fourth submission challenging this Court's subject matter jurisdiction, Defendant fails again to produce objective evidence of a change in domicile to defeat Plaintiff's proof of his Ohio domicile.

**SUMMARY OF ARGUMENT**

Defendant again admits he was, at least at one point, domiciled in Ohio. The law is well settled that he does not lose his Ohio domicile until he establishes a new one elsewhere—however much he disowns Ohio today and however long he dubiously claims it has been since he was last there. Defendant has failed to produce the substantial evidence necessary to show, as he asserts, he lost his United States domicile by establishing new ones in the Philippines, Greece, and Cambodia by being physically present there with an intent to remain permanently or indefinitely.

Defendant has produced nothing to show he lawfully could have remained in the Philippines, Greece, or Cambodia indefinitely, much less permanently. Defendant's uncorroborated assertions about intent and employment simply are insufficient, especially when his other assertions, such as the assertion that he purchased a motorcycle and stayed in a hotel in Cambodia, describe conduct that is more typical of a traveler than of a permanent resident who has established a fixed abode. In fact, the very "excerpts" of his passport that he selectively produced and

partially redacted show no more than that he visited Cambodia as a tourist. Over a span of just months, he visited Thailand, Laos, and Cambodia on temporary nonimmigrant visas with fixed departure dates, and entered Cambodia on a one-month nonimmigrant visa a mere four days before Plaintiff filed her complaint.

In all, Defendant spent a total of just four months and four days in Cambodia before departing from an international airport in August. Defendant has now been absent from Cambodia for more than five months, which is longer than the short time he was present there. This timeline undermines Defendant's self-serving assertion that he arrived in Cambodia intending to remain there indefinitely, especially given that Defendant has been spotted at least twice in Columbus, Ohio, including as recently as seven days ago.

Defendant's motion to dismiss for lack of subject matter jurisdiction should be denied.

## ARGUMENT

### I. Legal Standard

Defendant is domiciled where he "has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (alteration in original) (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940)). A "fixed abode" is "a permanent home or place of residence." *Fixed Abode*, Black's Law

Dictionary (10th ed. 2014). "Indefinitely" means "for a time to which [Defendant] did not then contemplate an end." *Williamson v. Osenton*, 232 U.S. 619, 625 (1914); *accord Indefinitely*, Black's Law Dictionary (10th ed. 2014) ("For a length of time with no definite end.").

Defendant's "old domicile is not lost until a new one is acquired," *Lew*, 797 F.2d at 750, and "courts have created a presumption in favor of an established domicile as against a newly acquired one," *id.* at 751. His "[m]ere absence" from his place of domicile "however long continued, cannot work the change." *Mintzis v. Scott*, No. 2:14-cv-01799, 2014 WL 3818104, at *5 (C.D. Cal. July 30, 2014) (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)). Nor, in fact, can his mere "depart[ure] from his state of domicile intending never to return." *Carter v. McConnel*, 576 F. Supp. 556, 558 (D. Nev. 1983).

Defendant bears a burden of production to "present substantial evidence to support his contention that his domicile had changed." *Lew*, 797 F.2d at 752. He must show with objective facts "the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.* at 750.

Defendant must produce "[m]ore evidence" "to establish a change of domicile from one nation to another than from one state to another." *Strabala v. Zhang*, 318 F.R.D. 81, 104 (N.D. Ill. 2016) (quoting *Maple Island Farm v. Bitterling*, 196 F.2d 55, 59 (8th Cir. 1952)). His uncorroborated declarations

concerning domicile are insufficient, *see Branon v. Debus*, 289 F. App'x 181, 183 (9th Cir. 2008), and "should be treated with some skepticism," *McNatt v. Allied-Signal, Inc.*, 972 F.2d 1340, *4 (9th Cir. 1992). Defendant's "statements of intent are entitled to little weight when in conflict with facts." *Lew*, 797 F.2d at 750 (quoting *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)). And even if corroborated, his mere residence or employment in a place is insufficient to establish a new domicile there. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (residence); *McNatt*, 972 F.2d at *4 (employment). Nor can Defendant form the requisite intent to remain indefinitely in a foreign country if his presence there is authorized only by a temporary nonimmigrant visa with a fixed expiration date. *See, e.g.*, *Elkins v. Moreno*, 435 U.S. 647, 665–66 (1978); *Carlson v. Reed*, 249 F.3d 876, 880 (9th Cir. 2001).

Because Defendant's relevant domicile is the one he had on April 18, 2017, the day Plaintiff filed her complaint, *see Lew*, 797 F.2d at 750, post-filing evidence introduced to disprove diversity should be accorded little to no weight, *see Strabala*, 318 F.R.D. at 98. Once "the jurisdictional requisites are present when the action begins, subsequent events will not ordinarily defeat the district court's jurisdiction." *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980). Defendant's post-filing evidence is "more likely to show a post-filing attempt by [Defendant] to

[avoid] jurisdiction rather than a bona fide pre-existing intent regarding his domicile." *Strabala*, 318 F.R.D. at 98.

## II. Defendant Was Domiciled in Ohio

Defendant again admits his last domicile in the United States was in Ohio, which explains why he voted in the 2016 General Election by absentee ballot in Franklin County, Ohio. *See* Anglin Decl. ¶ 20, ECF 64-1; *see also* Reply at 10, 12, ECF 59. Plaintiff's response corroborated this fact with undisputed objective evidence. *See* Resp. at 5–8, ECF 50. To this day, Defendant maintains the business, familial, and civic ties to Ohio that he had before Plaintiff filed. *See id.*; *see also* Moonbase Holdings Agent Address Change, Ex. A. He also might currently be in Ohio, *see Huffington Post* Article, Ex. B (Jan. 2018); Cremeans Decl., ECF 50-22 (Dec. 2017); Video, Reply Ex. 6, ECF 59-6 (same), which suggests he always intended to return to Ohio even while traveling abroad. Defendant therefore is presumed a domiciliary of Ohio until shown otherwise. *See Lew*, 797 F.2d at 751.

## III. Defendant Did Not Lose His Ohio Domicile

Defendant's declaration falls far short of the "substantial evidence" needed "to support his contention that his domicile had changed from" Ohio to the Philippines, Greece, Cambodia, or anywhere else. *Id.* at 752. Defendant's declaration boils down to uncorroborated assertions about intent to remain in those

countries "permanently," Anglin Decl. ¶¶ 21–22, 26, ECF 64-1, an uncorroborated assertion about employment in Greece, *see id.* ¶ 24, an uncorroborated assertion about living in a hotel in Cambodia, *see id.* ¶ 27,[1] and an uncorroborated assertion about the purchase of a motorcycle in Cambodia, *see id.* ¶ 28. He also appends five partially redacted and selective "excerpts" of his passport, which merely purport to show physical presence in certain countries on certain dates and permission to stay for limited periods of time on nonimmigrant visas. *See* Anglin Decl. Ex. A, ECF 64-1.

Had Defendant truly moved to the Philippines, Greece, or Cambodia with his stated intention to make the country his permanent home, *see*, *e.g.*, Anglin Decl. ¶ 25, ECF 64-1, this Court would reasonably expect a whole host of evidence that is entirely absent from his submissions. For example, Defendant would be able to produce evidence of his residence, personal and real property, brokerage and bank accounts, spouse and family, membership in unions and other organizations, employment or business, driver's license and automobile registration, and payment of taxes. *See Lew*, 797 F.2d at 750.

This dearth of evidence can be explained by Defendant's actual and legal inability to intend to stay in those countries permanently or indefinitely. Defendant's temporary nonimmigrant visa status in each country prevented him

[1] *See also* Damnak Villa Boutique, Ex. C.

from staying indefinitely and thus prevented him from forming the requisite intention to stay indefinitely. *See, e.g.*, *Elkins*, 435 U.S. at 665–66; *Carlson*, 249 F.3d at 880. Defendant has failed again to show a change in domicile by the time Plaintiff filed her complaint.

**A. Defendant Did Not Lose His Ohio Domicile Simply by Leaving**

Defendant seems to suggest he lost his Ohio domicile sometime "[b]efore 2010" by leaving the state "with no intent to live there permanently again," Anglin Decl. ¶ 7, ECF 64-1, purportedly visiting shortly only a few times before 2010, *see id.* ¶ 8, purportedly leaving for the last time in July 2013, *see id.* ¶ 10, and purportedly never returning since, *see id. But see* Cremeans Decl., ECF 50-22 (Dec. 2017); Video, Reply Ex. 6, ECF 59-6 (same); *Daily Stormer* Article at *10, Ex. D (Feb. 2017); *Huffington Post* Article, Ex. B (circa 2015; Jan. 2018).[2] But even assuming Defendant left Ohio honestly intending never to return, that alone does not destroy his Ohio domicile for purposes of diversity jurisdiction. *See Carter*, 576 F. Supp. at 558. And Defendant's "[m]ere absence from" Ohio, "however long continued, cannot work the change." *Mintzis*, 2014 WL 3818104, at *5. Thus, Defendant's litany of denials about his current lack of ties to Ohio, *see*

---

[2] Pinpoint citations preceded by an asterisk refer to the page number generated by ECF.

Anglin Decl. ¶¶ 10–19, ECF 64-1, even if true, are insufficient to show he lost his Ohio domicile by establishing domicile in some other country.

### B. Defendant Did Not Change His Domicile to the Philippines

Defendant's mere self-serving assertion, uncorroborated by objective facts, that he "took up residency" in the Philippines "[b]efore 2010" with the intention to remain permanently, *id.* ¶ 21, is insufficient to show he established a new domicile there, *see Branon*, 289 F. App'x at 183, and this Court should regard it with skepticism, *see McNatt*, 972 F.2d at *4. Defendant's pre-2013 passport would at best meet only half his burden by suggesting physical presence in the Philippines; it could not on its own objectively show Defendant's asserted intent to remain permanently. Defendant has not even asserted that he qualified for and received a visa that would have permitted him to reside in the Philippines permanently or at least indefinitely. Defendant's declaration thus fails to support a change in domicile from Ohio to the Philippines.

### C. Defendant Did Not Change His Domicile to Greece

Defendant's suggestion of domicile in Greece should be treated with similar skepticism. Defendant asserts without corroboration that he moved to Greece in 2013 with the intent to live there permanently, *see* Anglin Decl. ¶ 22, ECF 64-1, and attempts to objectively show this intent with only the uncorroborated assertion

that he worked in Greece as a tour guide, *see id.* ¶ 24. Yet even if corroborated, employment alone is insufficient to show a change in domicile. *See McNatt*, 972 F.2d at *4.

Further undermining Defendant's asserted intent to make Greece his new home, he admits he was advised to enroll in an academic program in Greece to obtain the most useful visa but declined to do so. *See* Anglin Decl. ¶¶ 23–24, ECF 64-1; *cf. Jes Solar Co. v. Matinee Energy, Inc.*, No. CV 12-626, 2015 WL 10939972, at *10 (D. Ariz. Mar. 30, 2015) (holding defendant evidenced an intent *not* to change domicile to South Korea because he decided to remain on temporary nonimmigrant visa instead of readily securing permanent immigrant status).[3] Defendant does not even assert that he received a visa permitting him to live and work in Greece indefinitely, much less one that would have permitted him to consider Greece his permanent home. Defendant's declaration similarly fails to support a change in domicile from Ohio to Greece.

### D. Defendant Did Not Change His Domicile to Cambodia

Finally, Defendant's affirmative assertion of domicile in Cambodia also is insufficient. *See* Anglin Decl. ¶ 30, ECF 64-1. Fatally for Defendant, he entered Cambodia on a mere one-month nonimmigrant visa only four days before Plaintiff

[3] Defendant's assertion that he visited the Greek Consulate General in Chicago, Illinois, *see* Anglin Decl. ¶ 23, ECF 64-1, is telling because that office has jurisdiction over Ohio, *see* Greek Consulate General in Chicago at *2, Ex. E.

filed her complaint, *see id.* ¶ 26; Anglin Decl. Ex. A at *10, ECF 64-1, which is hardly enough to objectively show that he established a fixed habitation or abode there with an intention to remain indefinitely.

Most telling is Defendant's unexplained decision not to disclose the Laotian visa he acquired just two days before he acquired the extended, yet still temporary, nonimmigrant Cambodian visa that he now attempts to use to evidence an intention to remain in Cambodia permanently. Defendant redacted without explanation almost all of the stamps he received upon entering and departing Laos on May 3 and 4 respectively, *see* Anglin Decl. Ex. A at *9 (unredacted), *10 (redacted), ECF 64-1, and excluded from his passport excerpts the full Laotian visa he received on or about May 3, 2017, *see id.* at *11.[4] This deliberate evasiveness cuts strongly against Defendant's post hoc asserted intention to remain in Cambodia permanently.

With these missing puzzle pieces, Defendant's passport reveals nothing more than a tourist wandering through Southeast Asia, acquiring extended yet temporary nonimmigrant visas to facilitate his travel around the region, and finally departing from an international airport more than five months ago. In all, at least according to the portions of his passport that he submitted, Defendant spent just

[4] Quick Google image searches suggest that the redacted stamps (and the unredacted, partially visible stamp) and partially visible visa are Laotian. Compare *infra* Figures 1, 8, 10, with, for example, Laotian Passport Stamps at *4, Ex. G, and compare *infra* Figure 9, with, for example, Laotian Visa at *2, Ex. H.

four months and four days in Cambodia—only four of which were before Plaintiff filed her complaint.




**Figure 1**
On January 27, Defendant entered Laos on a 30-day visa. *See* Anglin Decl. Ex. A at *8, ECF 64-1 (redaction in original).




**Figure 2**
On January 30, Defendant received a 60-day Thai tourist visa, marked "Employment Prohibited" and later marked "USED," from the Thai embassy in Vientiane, Laos. *See* Anglin Decl. Ex. A at *9, ECF 64-1; *see also* Thai Tourist Visa at *3, Ex. F ("Period of stay: not exceeding 60 days").




**Figure 3**
On January 31, Defendant departed Laos. *See* Anglin Decl. Ex. A at *8, ECF 64-1 (redaction in original).




**Figure 4**
On January 31, Defendant entered Thailand on a 60-day tourist visa. *See* Anglin Decl. Ex. A at *8, ECF 64-1.




**Figure 5**
On March 29, Defendant departed Thailand. *See* Anglin Decl. Ex. A at *8, ECF 64-1.




**Figure 6**
On April 14, Defendant entered Cambodia on a one-month visa through the Trapeang Kreal border with Laos. *See* Anglin Decl. Ex. A at *10, ECF 64-1.




**Figure 7**
On May 3, Defendant departed Cambodia through the Trapeang Kreal border with Laos. *See* Anglin Decl. Ex. A at *10, ECF 64-1.




**Figure 8**
On May 3, Defendant entered Laos on a 30-day visa. *See* Anglin Decl. Ex. A at *10, ECF 64-1 (redaction in original).




**Figure 9**
On or about May 3, Defendant received a Laotian visa. *See* Anglin Decl. Ex. A at *11, ECF 64-1 (rotated 180 degrees).







**Figure 10**
On May 4, Defendant departed Laos. *See* Anglin Decl. Ex. A at *9–10, ECF 64-1 (redaction in original).




**Figure 11**
On May 4, Defendant reentered Cambodia on a one-month visa through the Trapeang Kreal border with Laos. *See* Anglin Decl. Ex. A at *12, ECF 64-1.




**Figure 12**
On May 5, Defendant extended his Cambodian visa for only seven months. *See* Anglin Decl. Ex. A at *11, ECF 64-1 (redaction in original).




**Figure 13**
On August 19, Defendant departed Cambodia from the Siem Reap international airport. *See* Anglin Decl. Ex. A at *12, ECF 64-1.

Defendant nonetheless attempts to provide objective evidence of domicile in Cambodia only by asserting without corroboration that he lived in a Cambodian hotel, *see* Anglin Decl. ¶ 27, ECF 64-1, and at some unidentified point purchased a motorcycle that he still owns and that he entrusted to an unidentified individual at the hotel, *see id.* ¶¶ 28–29. But even if corroborated, Defendant describes himself

as behaving no differently from the millions of tourists in Southeast Asia visiting on temporary nonimmigrant visas, exploring the region on motorcycles, and staying at hotels without intending to make any of those countries their new home.

The temporary nature of Defendant's housing and visa are "especially indicative of [his] intent *not* to reside permanently in" Cambodia. *Strabala*, 318 F.R.D. at 106. An eight-room hotel intended for travelers, *see* Damnak Villa Boutique at *2, *4, Ex. C, certainly is not "a permanent home or place of residence," *Fixed Abode*, Black's Law Dictionary (10th ed. 2014). And all of Defendant's visits to Cambodia in 2017 were authorized by temporary nonimmigrant visas with fixed dates of departure, *see supra* Figures 6, 11, as were his visits to Thailand, *see supra* Figures 2, 4, and Laos, *see supra* Figures 1, 8. In fact, Defendant did leave Cambodia before the expiration of his temporary visas: He first left on May 3 before the expiration of his initial temporary visa on May 14. *See supra* Figures 6–7. He left again on August 19, nearly four months before the expiration of his other temporary visa. *See supra* Figures 12–13. Defendant's declaration and passport excerpts also fail to support a change in domicile from Ohio to Cambodia.

* * *

No matter how much Defendant honestly intends and declares to abandon Ohio as his home, the test for domicile for purposes of this Court's diversity

jurisdiction is well-settled: Defendant maintains his Ohio domicile until he establishes a new one elsewhere, as evidenced by substantial objective facts. That he did not do before Plaintiff filed her complaint. This Court has diversity jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction should be denied.

DATED January 29, 2018.

Respectfully submitted.

/s/ David C. Dinielli
David C. Dinielli
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

/s/ John Morrison
John Morrison
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## EXHIBIT INDEX

| Ex. | Short Descriptor | Citation |
|---|---|---|
| A | Moonbase Holdings Agent Address Change | Ohio Secretary of State, Moonbase Holdings, LLC, Agent Address Change Certificate (No. 201801700160) (effective Jan. 16, 2018) |
| B | *Huffington Post* Article | Luke O'Brien, *Andrew Anglin's Lawyer Visited the Elusive Nazi's Hometown and Madness Ensued*, Huffington Post (Jan. 25, 2018, 6:17 PM ET), https://www.huffingtonpost.com/entry/nazi-andrew-anglin-lawyer-mark-randazza_us_5a6a3622e4b0ddb658c4a36b (last visited Jan. 26, 2018) |
| C | Damnak Villa Boutique | Damnak Villa Boutique, http://www.damnakvilla.com/index.php (last visited Jan. 23, 2018) |
| D | *Daily Stormer* Article | Andrew Anglin, *The Atlantic's Luke O'Brien Launches Campaign of Harassment to Shut Down Speech of Political Activist*, Daily Stormer (Mar. 10, 2017), https://dailystormer.red/the-atlantics-luke-obrien-launches-campaign-of-harassment-to-shut-down-speech-of-political-activist/ (last visited Jan. 24, 2018). |
| E | Greek Consulate General in Chicago | *General Information*, Greek Consulate General in Chicago, http://www.mfa.gr/usa/en/consulate-general-in-chicago/about-us/general-information.html (last visited Jan. 23, 2018) |
| F | Thai Tourist Visa | *Tourist Visa Category "TR" Single*, Royal Thai Embassy, http://thaiembdc.org/consular-services/tourist-visas/category-tr/ (last visited Jan. 25, 2018) |
| G | Laotian Passport Stamps | *Laos Visa Guide*, A Mary Road, https://amaryroad.com/laos-visa-complete-guide/ (last visited Jan. 23, 2018) |

| Ex. | Short Descriptor | Citation |
|---|---|---|
| H | Laotian Visa | *Laos Visa*, Laos Tourist, http://www.laostourism.org/laos-visa/ (last visited Jan. 23, 2018) |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
mjr@randazza.com
ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com
ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

on this January 29, 2018.

/s/ David C. Dinielli
David C. Dinielli
Attorney for Plaintiff Tanya Gersh