Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,
Andrew Anglin*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW ANGLIN, ) <br> ) <br> Defendant. ) <br> ) | Case No. 9:17-cv-50-DLC-JCL <br><br> **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE ERRATA** |

**DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO THE ERRATA**

Andrew Anglin is not domiciled in Ohio. Plaintiff failed to meet her burden to prove that he is. Mr. Anglin submitted an affidavit, confirming his absentee-ballot application, that he has no intent to return to Ohio. And, since he was last in Ohio, he established new domiciles, first in the Philippines, then in Greece, then in Cambodia. Even if Plaintiff's position is credited, that Mr. Anglin did not properly establish domicile in Cambodia prior to the filing of the suit, then the conclusion is that he was still domiciled in Greece.[1]

Mr. Anglin admittedly does not have much to document his domiciles abroad, but most notable is that there is no evidence of his return to Ohio. "A change of domicile does not depend so much upon the intention to remain in the new place for a definite of indefinite period, as upon its being without an intention to return." *Jardine v. Intehar*, 213 F. Supp. 598, 600 (S.D. W. Va. 1963) (citation omitted). Mr. Anglin, in his ballot application and in his declaration here, swore he has no intent to return to Ohio. The Plaintiff, on the other hand, seems to be quite committed to the erroneous belief that Anglin is, indeed, living and walking around daily in Columbus, Ohio.

As a cornerstone of that belief, we have a declaration from Mr. Cremeans, who claims to have seen Mr. Anglin in a Columbus grocery store. Simply from a

---

[1] This reply is filed pursuant to the Order of January 18, 2018 (Dkt. No. 66). Defendant will separately submit proof of his whereabouts for *in camera* review on or before February 16, 2018, pursuant to the Order of February 7, 2018 (Dkt. No. 69).

logical standpoint, this tale lacks credibility.  Ms. Gersh is not the only one searching for Mr. Anglin.  With activist organizations looking him, plaintiffs chasing him, and the press searching for him, Mr. Anglin has taken great pains to keep his whereabouts a secret.[2]  Meanwhile, Mr. Cremeans expects us to believe that Mr. Anglin simply casually went shopping in the first place that this phalanx of enemies would begin looking for him?

Mr. Cremeans' declaration appears perjurious.  However, let us be charitable and assume that Mr. Cremeans sincerely believes that he saw someone who may have looked like a photo of Mr. Anglin, at an Ohio grocery store in December.  But Mr. Cremeans never authenticated the identity of the shopper.  Mr. Cremeans incredibly claims that he followed "Anglin" around the store property and that he got close enough to see a bank's logo on an envelope in his hand – yet lacked the ability or the desire to take a picture of him with his phone?  Cremeans is either lying or incompetent.

Mr. Cremeans is obsessively on the hunt for Mr. Anglin.  At best, his unconscious bias resulted in a false positive – and Cremeans conveniently made a decision to hold off on snapping a picture that could support his claim.  Again, either he is lying – and consciously chose to avoid taking a photo, or he is incompetent in failing to even attempt to take one of the shopper or the car he supposedly stepped into.  Nothing about this story should suggest Cremeans has any credibility.

---

[2]  As the Court is aware, Defendant took care to redact portions of stamps in his passport to protect his location.

Cremeans certainly has the means to document his encounters. Cremeans went so far as to stalk Mr. Anglin's counsel, while he was on a trip to Ohio in a wholly unrelated case.[4] *See* Dkt. No. 68-3. His stated purpose was to "serve" Mr. Anglin.[5] But why would Mr. Cremeans still need to serve Mr. Anglin in hand when Plaintiff claims that the service by publication was valid? Mr. Cremeans is motivated to see Andrew Anglin. And, according to that article, others are, so much so that a random bald man, who happened to be eating at a different table from Mr. Randazza in a restaurant in Columbus, was purported to be Mr. Anglin. But that man wasn't Andrew Anglin either. Of course, these fantastic tales all share the same deficiency – despite it being a very simple matter to snap a picture, document Anglin's presence in Ohio, and thus slam the lid of the cookie jar down on Anglin's (and presumably his counsel's) fingers, nobody seems to have the ability to wield a camera when it would document their tale.

The fact is, Anglin's present whereabouts are undisclosed – but wherever it is, his domicile is not in Ohio, nor has it been such for at least eight years. And the only relevant question is whether Anglin is, or is not, an Ohio domiciliary. He need not prove that he is somehow deeply rooted in another country. More than fifty years ago, it was established that one need not be on the pathway to becoming a foreign national in order to establish a foreign domicile. In fact, "a citizen of the

---

[4] Specifically, Mr. Randazza was in Columbus, Ohio, to take a deposition of the plaintiff in the matter *Richard Carrier v. FreethoughtBlogs Network, et al.*, Case No. 2:16-cv-00906-MHW-EPD (S.D. Ohio). *See* <u>Exhibit 1</u>.

[5] Available at: <https://news.vice.com/en_us/article/9kne8p/this-guy-is-trying-to-hunt-down-one-of-the-most-notorious-neo-nazis> (last accessed Feb. 8, 2018).

United States who is domiciled abroad is not a citizen of the country where he makes his home." *Pemberton v. Colonna*, 290 F.2d 220, 221 (3d Cir. 1961). In *Pemberton*, the Third Circuit found that a woman could not herself establish diversity subject matter jurisdiction because she was living in Mexico under a "tourists' card."[7] Though Plaintiff takes issue with Mr. Anglin's domicile in Greece and Cambodia with "permission to stay for limited periods of time on nonimmigrant visas" (Dkt. No. 68 at 7), that was precisely what qualified to remain a stateless, U.S. citizen in *Pemberton*. Plaintiff cites to *Jes Solar Co. v. Matinee Energy, Inc.*, 2015 U.S. Dist. LEXIS 178475 (D. Ariz. Mar. 30, 2015) for the proposition that the use of tourist visas is insufficient to establish domicile. However, that case ultimately springs from the holding in *Von Kennel Gaudin v. Remis*, 379 F.3d 631, 637-38 (9th Cir. 2004), where the reason given was that 8 U.S.C. § 1101(a)(15)(B) specifically requires an entrant to the United States on a tourist visa to have "an intent not to seek domicile in the United States." Plaintiff offers no parallel Filipino, Greek, or Cambodian law that prohibited Mr. Anglin, like Ms. Pemberton before him, from establishing a lawful domicile abroad despite entering on a tourist visa.

Plaintiff repeatedly calls Mr. Anglin's sworn statements "uncorroborated".[8] *See, e.g.,* Dkt. No. 68 at 7. This is ironic given the fact that sworn statements *about*

---

[7] That Mexican tourist's card was only for six months' duration, requiring repeated renewals. *See Pemberton v. Colonna*, 189 F. Supp. 430, 431 (E.D. Pa. 1960). Ms. Pemberton was found to be a Mexican domiciliary despite still owning real estate, holding a bank account, and filing taxes in Pennsylvania. *Id.*

[8] Mr. Anglin's sworn statement stands in contrast to his usual writings in which a reader "should not be able to tell if we are joking or not." *See* Ashley Feinberg, "This Is The Daily Stormer's Playbook," HUFFINGTON POST (Dec. 13, 2017)

Anglin are similarly uncorroborated, despite the elegant simplicity of taking a photo to corroborate them.  Further, unlike Plaintiff, Defendant issued subpoenae to corroborate his absence from Ohio.  Plaintiff could have subpoenaed Fifth-Third Bank to corroborate Mr. Cremeans's statement about an envelope, but she chose not to take jurisdictional discovery.  *See* Dkt. No. 60.  Plaintiff claims Mr. Anglin has not proven his foreign domiciles for lack of additional paperwork—but she cannot show that a person in Mr. Anglin's position would possess such paperwork.  This is not an ordinary case where a party would be expected to have union memberships, brokerage accounts, leases, and automobile registrations.  Rather, like the defendants in *Owens v. Nuxoll*, 2013 U.S. Dist. LEXIS 145681 (E.D. Cal. Oct. 8, 2013), who lived a transient lifestyle out of a car, Mr. Anglin's lack of typical indicia of domicile does not undermine his claim.[9]  Most relevant is intent, for "domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth."  *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957).  Mr. Anglin had the intent to live "indefinitely" in Cambodia (and Greece before that) at the time this case was filed.  "'[I]ndefinitely' need not mean 'permanently,' as long as defendants intended to make that place their home for the time at least."  *Owens* at *38.

Although the matter should be dismissed because none of the claims could be entered against him consistent with upholding the First Amendment, there is no

---

<https://www.huffingtonpost.com/entry/daily-stormer-nazi-style-guide_us_5a2ece19e4b0ce3b344492f2>.

[9]  Plaintiff's citation to *Strabala v. Zhang*, 318 F.R.D. 81, 106 (N.D. Ill. 2016) is unavailing, as one of the most important factors in that case was the spouse's domicile in Chicago.  Mr. Anglin is unmarried.

credible evidence that Mr. Anglin is domiciled in Ohio nor that he has even been there in recent years. The evidence supporting a foreign domicile may be sparse, and will be supplemented *in camera,* but nothing submitted by Plaintiff competes with Mr. Anglin's own sworn statements of intent to live in each of those countries indefinitely and his intent not to return to Ohio. In light of the foregoing, the motion to dismiss should be granted.

Dated: February 8, 2018.   Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, Nevada 89147

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Mathew M. Stevenson
Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801

*Attorneys for Defendant,
Andrew Anglin*

Case No. 9:17-cv-50-DLC-JCL

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman