John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees[*]
J. Richard Cohen[*]
David C. Dinielli[*]
James M. Knoepp[*]
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
[*]Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, | Case No. 9:17-cv-00050-DLC-JCL |
| Plaintiff, | |
| vs. | PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAY 3, 2018 FINDINGS AND RECOMMENDATION |
| ANDREW ANGLIN, publisher of the *Daily Stormer*, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................5

    I.     The First Amendment Does Not Bar Ms. Gersh's Claims ..................5

          A.    Courts Generally Do Not Decide First Amendment
                  Defenses on Rule 12(b)(6) Motions, Especially When the
                  Defense Raises Factual Disputes ................................................5

          B.    The Mere Fact That Speech Does Not Squarely Fit into a
                  Category of Unprotected Speech Does Not Mean It Is
                  Protected ......................................................................................8

          C.    Ms. Gersh's Allegations Do Not Conclusively
                  Demonstrate That the Speech Obviously and Fairly
                  Addressed a Matter of Public Concern .....................................10

          D.    Ms. Gersh's Allegations Do Not Conclusively
                  Demonstrate That Ms. Gersh Obviously Was a Public
                  Figure ........................................................................................13

          E.    Ms. Gersh Adequately Alleges that Mr. Anglin Made Her
                  a "Captive Audience" ...............................................................16

          F.    Mr. Anglin May Be Held Liable for the Conduct of His
                  Followers ...................................................................................17

    II.    The Complaint Otherwise States Valid Claims .................................19

          A.    Ms. Gersh Has Stated a Claim for Intrusion upon
                  Seclusion, a Species of Invasion of Privacy Recognized
                  by Montana Courts ....................................................................19

          B.    Ms. Gersh Has Stated a Claim for Intentional Infliction
                  of Emotional Distress ...............................................................22

          C.    Ms. Gersh Has Stated a Claim for Violation of the Anti-
                  Intimidation Act .......................................................................24

CONCLUSION .....................................................................................26

CERTIFICATE OF SERVICE ..............................................................27

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Seaworld Parks & Entm't, Inc.*, No. 15-cv-02172, 2016 WL 4076097 (N.D. Cal. Aug. 1, 2016) ...................................................7

*Ascencio v. Phillips Agency, Inc.*, No. CV 16-64-M-DLC, 2016 WL 9461796 (D. Mont. Aug. 16, 2016) ..............................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................25

*Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062 (N.D. Cal. 2013) ................5, 6

*Campbell v. Teter*, No. 1:17-cv-00129, 2018 WL 1040102 (W.D.N.C. Feb. 23, 2018) ...................................................................6

*CI Games S.A. v. Destination Films*, No. 2:16-cv-05719, 2016 WL 9185391 (C.D. Cal. Oct. 25, 2016)...............................................6, 7

*City of Ontario v. Quon*, 560 U.S. 746 (2010) .....................................22

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991).................................15

*Czajkowski v. Meyers*, 172 P.3d 94 (Mont. 2007) ..................................25

*Daniels v. FanDuel, Inc.*, No. 1:16-cv-01230, 2017 WL 4340329 (S.D. Ind. Sept. 29, 2017) ............................................................6

*Davis v. Walt Disney Co.*, No. Civ.04-1729, 2004 WL 1895234 (D. Minn. Aug. 23, 2004) .............................................................6

*Dodds v. ABC*, 145 F.3d 1053 (9th Cir. 1998)....................................15

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)............13

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ....................15

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc) ...........................................19

*FCC v. Pacifica Found.*, 438 U.S. 726 (1978) .....................................22

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)..................................12

*Gitlow v. New York*, 268 U.S. 652 (1925) .........................................10

*Gomez v. Quicken Loans, Inc.*, 629 F. App'x 799 (9th Cir. 2015)....................5, 18

*Harms v. Miami Daily News, Inc.*, 127 So.2d 715 (Fla. Dist. Ct. App. 1961) ........22

*Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658 (D.N.J. 2010).....................................6

*Housh v. Perth*, 133 N.E.2d 340 (Ohio 1956) ................................................ 21, 22

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988).............................. 4, 14, 15

*Kovacs v. Cooper*, 336 U.S. 77 (1949) ....................................................................17

*Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974)........................................17

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ..................................17

*Med. Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806 (9th Cir. 2002) .....................21

*Mortensen v. Bresnan Commc'n, L.L.C.*, No. CV 10-13-BLG-RFC, 2010
    WL 5140454 (D. Mont. Dec. 13, 2010) .......................................................21

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)........................................................4

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)............................ 2, 4, 18

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) .........................................22

*Prather v. Bank of Am., N.A.*, No. CV 15-163-M-DLC, 2016 WL 4440686
    (D. Mont. 2016) ............................................................................................21

*Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970)...........................................22

*Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411 (Mont. 1995) ..................23

*Scott v. Kulhmann*, 746 F.2d 1377 (9th Cir. 1984)...................................................6

*Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304 (D. Mass. 2013) .............6

*Shoemaker v. Taylor*, 730 F.3d 778 (9th Cir. 2013) ..................................................8

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................ 11, 13, 14, 17

*State Bd. of Dentistry v. Kandarian*, 886 P.2d 954 (Mont. 1994) ..........................21

*Time, Inc. v. Hill*, 385 U.S. 374 (1967).....................................................................4

*United States v. Alvarez*, 567 U.S. 709 (2012) .........................................................9

*United States v. Eichman*, 496 U.S. 310 (1990) .....................................................15

*United States v. Mendelsohn*, 896 F.2d 1183 (9th Cir. 1990) ................................19

*Webceleb, Inc. v. Procter & Gamble Co.*, No. 10cv2318, 2012 WL 460472
    (S.D. Cal. Feb. 13, 2012).................................................................................6

*Welsh v. Pritchard*, 241 P.2d 816 (Mont. 1952).....................................................21

*White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) .......................15

*Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157 (1979)..................................14

*Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170 (E.D. Cal. 2008)..........6, 7

## Statutes

47 U.S.C. § 230................................................................................................19

Mont. Code Ann. § 27-1-503.............................................................................26

## Other Authorities

David A. Anderson, *First Amendment Limitations on Tort Law*, 69 Brook. L. Rev. 755 (2004) ....................................................................................10

Restatement (Second) of Torts § 652B (1977) .........................................22

## Rules

Federal Rule of Civil Procedure 5.1 ......................................................26

Plaintiff Tanya Gersh urges that the objections to the May 3, 2018 Findings and Recommendation ("F&R"), ECF 85, be overruled.

## INTRODUCTION

Defendant Andrew Anglin directed readers of the *Daily Stormer* to launch an online attack—a "troll storm"—against Plaintiff Tanya Gersh and her family, including her twelve-year-old son. "Tell them you are sickened by their Jew agenda," he wrote. Compl. ¶ 7, ECF 1. "Calling these people up and/or sending them a quick email is very easy. It is very important that we make them feel the kind of pressure they are making us feel." *Id.*

Mr. Anglin's readers complied with his directive and immediately began sending hundreds of private text messages, voicemails, and social media messages to Ms. Gersh and her husband and son designed to terrorize and frighten them. *Id.* ¶¶ 10–13. After launching the attack, Mr. Anglin repeatedly urged his followers to continue it. *Id.* ¶ 27. In one subsequent article, for example, Mr. Anglin wrote:

> There's only one place this road ends. Keep Up the Pressure. Keep calling these people. Keep emailing them. Make it known to them that the jig is officially up. We aren't playing this game anymore. The entire list of contact information is in my last post. Go do it.

*Id.* ¶ 128.

The Magistrate Judge correctly concluded that these allegations state claims for invasion of privacy, intentional infliction of emotional distress, and violations of

Montana's Anti-Intimidation Act, and that the claims are not obviously barred by the First Amendment. Specifically, the Magistrate Judge concluded:

- Words need not squarely fall into a specific category of "unprotected" speech in order to give rise to liability in tort consistent with the First Amendment. F&R at 9–10, ECF 85.

- The allegations do not conclusively demonstrate that the troll storm is entitled any heightened protection, despite Mr. Anglin's arguments that (1) the speech at issue purportedly addresses a matter of public concern and that (2) Ms. Gersh purportedly is a limited-purpose public figure. *Id.* at 10–15.

- Mr. Anglin can be held responsible for the conduct of his followers because the First Amendment does not protect speech that "authorized, directed, or ratified specific tortious activity." *Id.* at 22–24 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)).

- The Complaint states a claim for invasion of privacy—specifically, intrusion upon seclusion—because the allegations show the troll storm amounted to a course of hounding that substantially burdened Ms. Gersh's life. *Id.* at 25–26.

- The Complaint states a claim for intentional infliction of emotional distress because it is foreseeable that Ms. Gersh would suffer emotional harm from

2

"a vicious campaign of anti-Semitic harassment against her and her family." *Id.* at 26–27.

- The Complaint states a claim for violations of the Anti-Intimidation Act because Mr. Anglin and his followers intimidated and harassed Ms. Gersh while she was exercising her right to privacy, among other rights. *Id.* at 27–28.

- A recommendation on the constitutionality of the Anti-Intimidation Act was premature because the Attorney General had not timely been notified and had yet to file a brief defending it. *Id.* at 29.

Mr. Anglin takes issue with each of these conclusions, except for the decision to await briefing from the Attorney General before ruling on the constitutionality of the Anti-Intimidation Act.

For example, Mr. Anglin continues mistakenly to assert that the speech at issue in this case is absolutely protected by the First Amendment because it does not squarely fall within any of three particular categories of unprotected speech—fighting words, true threats, and incitement—and that Ms. Gersh is attempting to create a new category of unprotected speech. *See* Def.'s Objs. at 2–3. But Ms. Gersh is not attempting to create a "new category" of unprotected speech; her claims are based on tortious speech—a category of speech that courts traditionally regulate through tort liability, subject to certain constitutional limitations. *See, e.g.*, *N.Y.*

3

*Times Co. v. Sullivan*, 376 U.S. 254 (1964) (defamation); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (intentional infliction of emotional distress); *Time, Inc. v. Hill*, 385 U.S. 374 (1967) (false-light invasion of privacy).[1]

Mr. Anglin then argues that, "even were the Court to consider regulating Defendant's speech," Def.'s Objs. at 3, ECF 91, it should not do so because the speech at issue purportedly constitutes speech on a matter of public concern, *see id.* at 3–7, and because Ms. Gersh purportedly is a limited-purpose public figure, *see id.* at 7–10, either of which finding could justify heightened First Amendment protection.

Mr. Anglin's arguments on these points, however, fundamentally fail to take into account that this is a motion to dismiss. Mr. Anglin's public concern and public figure arguments depend largely on factual assertions that are found nowhere in the Complaint or that flatly contradict the actual allegations. Indeed, the Objections read more like a summation for a jury than arguments to be made on a motion to dismiss, given that courts in the Ninth Circuit have made clear that First Amendment defenses are subject to the same, traditional Rule 12(b)(6) standard as are any other arguments, with all factual inferences resolved in favor of the plaintiff. *See, e.g.*,

---

[1] If imposing liability on a speaker whose words "authorized, directed, or ratified specific tortious activity" does not offend the First Amendment, as the Supreme Court has made clear, *Claiborne Hardware Co*., 458 U.S. at 927, then neither does holding the speaker responsible for his own tortious words.

4

*Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1093 (N.D. Cal. 2013), *rev'd on other grounds*, 703 F. App'x 468 (9th Cir. 2017).

The Magistrate Judge acknowledged that Mr. Anglin disagrees with many of the facts alleged in the Complaint that relate to the public concern and public figure analyses but properly concluded that these and other issues can be addressed again as necessary on a full factual record. *See, e.g.*, F&R at 12, 15, ECF 85.

The approach was sensible and correct. As the Magistrate Judge concluded, "it is not clear based on the allegations in the Complaint that Gersh's claims are barred as a matter of law by the First Amendment." *Id.* at 30. The Findings and Recommendation should be adopted in full.

## ARGUMENT

### I.    The First Amendment Does Not Bar Ms. Gersh's Claims

#### A.    Courts Generally Do Not Decide First Amendment Defenses on Rule 12(b)(6) Motions, Especially When the Defense Raises Factual Disputes

The Magistrate Judge correctly concluded that it is not obvious from the face of the Complaint that the First Amendment bars any of the claims and that the motion to dismiss therefore should be denied. *See id.* at 12, 15. "An affirmative defense cannot serve as a basis for dismissal unless it is obvious on the face of the complaint." *Gomez v. Quicken Loans, Inc.*, 629 F. App'x 799, 801 (9th Cir. 2015). A First Amendment defense, like other affirmative defenses, ordinarily may not be

raised by a motion to dismiss when it depends upon disputed issues of fact. *Webceleb, Inc. v. Procter & Gamble Co.*, No. 10cv2318, 2012 WL 460472, at *3 (S.D. Cal. Feb. 13, 2012) (citing *Scott v. Kulhmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)); *accord Bruton*, 961 F. Supp. 2d at 1093.

Two reasons explain this rule: *First*, the usual Rule 12(b)(6) rules apply to motions to dismiss based on First Amendment defenses: "the allegations of the complaint must be accepted as true," and "[t]he court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint." *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1174 (E.D. Cal. 2008) (denying defendant's First Amendment defense after taking as true plaintiff's allegations); *accord CI Games S.A. v. Destination Films*, No. 2:16-cv-05719, 2016 WL 9185391, at *10 (C.D. Cal. Oct. 25, 2016).

*Second*, First Amendment defenses can raise significant issues that "should be presented based on evidence, not on conjecture or inferences drawn from mere allegations." *Campbell v. Teter*, No. 1:17-cv-00129, 2018 WL 1040102, at *1 (W.D.N.C. Feb. 23, 2018).[2]

---

[2] *Accord Daniels v. FanDuel, Inc.*, No. 1:16-cv-01230, 2017 WL 4340329, at *11 (S.D. Ind. Sept. 29, 2017); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 330 (D. Mass. 2013); *Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 668–69 (D.N.J. 2010); *Davis v. Walt Disney Co.*, No. Civ.04-1729, 2004 WL 1895234, at *3 (D. Minn. Aug. 23, 2004).

Thus, courts in this Circuit have denied motions to dismiss based on First Amendment defenses as improper. *See, e.g.*, *Yeager*, 627 F. Supp. 2d at 1175; *CI Games S.A.*, 2016 WL 9185391, at *10; *Anderson v. Seaworld Parks & Entm't, Inc.*, No. 15-cv-02172, 2016 WL 4076097, at *2 n.3 (N.D. Cal. Aug. 1, 2016).

Mr. Anglin's arguments demonstrate why First Amendment defenses are best decided on a full factual record. Specifically, Mr. Anglin argues that the claims are barred by the First Amendment because the speech that gave rise to the claims was of public concern and Ms. Gersh was a limited-purpose public figure. But as the Magistrate Judge noted, Mr. Anglin's arguments on these points depend on his own characterization of the allegations and, sometimes, on factual assertions that find no basis in the Complaint whatsoever.

Mr. Anglin argues, for example, that "he and his readers were simply expressing their political views about Gersh and her participation in the collective community actions against Spencer," F&R at 11, ECF 85, that Ms. Gersh "join[ed] the Love Lives Here anti-hate group," *id.* at 14, and that Ms. Gersh "contact[ed] Sherry Spencer," *id.*

But each of these factual assertions is flatly contrary to the actual allegations. Many of the messages directed at Ms. Gersh and her family expressed no "political views" and "had nothing to do with Gersh's involvement in a collective community action against Spencer," *id.* at 11–12, for example. *See, e.g.*, Compl. ¶ 94(c), ECF 1

7

("Worthless fuckin kike. Eat a dick."); *id.* ¶ 94(f) ("This is the goylash. You remember the last goylash, don't you Tanya? Merry Christmas, you Christ killing Jew."); *id.* ¶ 95(a) ("Death to Tanya [repeated thirty-three times]."); *id.* ¶ 100(j) ("When are you going to move your kike ass to Tel Aviv and start managing brothels there?"); *id.* ¶ 122(b) ("I saw ur mom kissing some guy who wasn't ur dad inside Casey's the other day! Ask ur mom about it?") (tweet sent to Ms. Gersh's twelve-year-old son).[3]

The Magistrate Judge properly ignored Mr. Anglin's characterizations, spin, and alternative facts in recommending that Ms. Gersh's Complaint survive the motion to dismiss. *Id.* at 12, 15.

## B.   The Mere Fact That Speech Does Not Squarely Fit into a Category of Unprotected Speech Does Not Mean It Is Protected

The Magistrate Judge correctly rejected Mr. Anglin's argument that "unless speech falls squarely within a recognized category of unprotected speech, the First Amendment necessarily operates as a complete bar to tort liability." F&R at 9–10, ECF 85; *accord Shoemaker v. Taylor*, 730 F.3d 778, 787 (9th Cir. 2013) ("Contrary

---

[3] Similarly, the assertion that Ms. Gersh "joined" Love Lives Here, a local anti-hate group, finds no support in the Complaint, which mentions that group only in connection with Mr. Anglin's announcement of a threatened armed march in Whitefish. *See* Compl. ¶¶ 141, 144, ECF 1. And the assertion that Ms. Gersh "contacted Sherry Spencer" is directly contrary to the allegation that Ms. Gersh "reluctantly agreed to at least consider accepting a call from Ms. Spencer, thinking it unlikely that Ms. Spencer actually would call." *Id.* ¶ 60.

to Shoemaker's argument, if speech does not squarely fall within a category of unprotected speech, that speech's protection under the First Amendment is not clearly established."). The more fundamental point, however, is that Ms. Gersh sufficiently alleges that the speech at issue in this case falls into the long-regulated category of tortious speech.

Some categories of speech have long been absolutely unprotected consistently with the First Amendment, including fighting words, true threats, and incitement. *E.g.*, *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (Kennedy, J., announcing judgment) (plurality opinion) (listing examples of categories of speech unprotected in all or some circumstances). But Mr. Anglin errs in presuming that if the speech at issue does not squarely fit into one of those categories that he thinks are most relevant, then the speech automatically is absolutely protected. Tort law, Mr. Anglin forgets, regularly imposes liability on speech, including speech that constitutes defamation, intentional infliction of emotional distress, and medical and legal malpractice, even when the words do not meet the test for any of the categories of speech that are absolutely unprotected.

Indeed, "[i]t is a fundamental principle, long established, that the freedom of speech . . . secured by the Constitution[] does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and

9

prevents the punishment of those who abuse this freedom." *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

"The courts have universally assumed that tort liability is neither exempted from nor foreclosed by the First Amendment." David A. Anderson, *First Amendment Limitations on Tort Law*, 69 Brook. L. Rev. 755, 782 (2004). Indeed, the Supreme Court has prescribed familiar First Amendment rules to ensure that the Constitution's free speech guarantee is not offended when a speaker is held liable in tort. *See id.* at 756, 788. Generally, tort liability may not be imposed for speech that fairly relates to a matter of public concern or when the plaintiff is a public figure. Those rules have, of course, important exceptions, which Ms. Gersh addresses below, but their potential application in this case proves that Ms. Gersh is not attempting to manufacture a newfangled category of wholly unprotected speech.

### C.   Ms. Gersh's Allegations Do Not Conclusively Demonstrate That the Speech Obviously and Fairly Addressed a Matter of Public Concern

Mr. Anglin also asserts that his troll storm cannot give rise to liability because it constitutes speech on a matter of public concern, and therefore purportedly enjoys heightened protection under the First Amendment. The Magistrate Judge, however, correctly concluded that the allegations do not conclusively establish that the speech giving rise to the tort claims obviously and fairly addressed a matter of public concern.

"Deciding whether speech is of public or private concern requires the court 'to examine the content, form, and context of that speech as revealed by the whole record.'" F&R at 11, ECF 85 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). Examining the content, form, and context of the speech, the Magistrate Judge concluded that Ms. Gersh "alleged facts showing that much of what Anglin wrote in his articles and many of the communications from his readers had nothing to do with Gersh's involvement in a collective community action against Spencer," and that "the troll storm consisted primarily of direct private communications with Gersh and her family, and was effectuated almost exclusively through personal channels of private communication." *Id.* at 11–12.

The conclusion undoubtedly is correct. For example, Mr. Anglin tried to maximize the troll storm's terrorizing effect on Ms. Gersh by targeting her twelve-year-old son, calling him a "scamming little kike" and a "creepy little faggot." Compl. ¶ 13, ECF 1. Presented with these allegations, the Magistrate Judge could not conclude that all the speech at issue was obviously and fairly related to a matter of public concern. The Magistrate Judge therefore recommended that Ms. Gersh's tort claims not be dismissed before discovery. *See* F&R at 12, ECF 85.

Mr. Anglin now argues that the speech fairly related to a matter of public concern for two reasons: *First*, Mr. Anglin argues that the speech related to a matter of public concern because Ms. Spencer—a nonparty—was at least "Whitefish

11

Montana famous" and therefore a public figure. Def.'s Objs. at 4–6, ECF 91. Ms. Spencer's purported status as a public figure does not in and of itself make the speech in this case fairly related to a matter of public concern.[4] Although some of the messages were tangentially related to Ms. Spencer and the controversy surrounding her son, many of the messages were not related to her at all. *E.g.*, F&R at 12, ECF 85. Ms. Spencer's purported public figure status certainly does not make "articles filled with anti-Semitic rhetoric and imagery specifically about [Ms. Gersh] and her family," or "hundreds of personally hateful, threatening, and harassing anti-Semitic text messages, phone calls, emails, letters, and social media comments," fairly related to any matter of public concern. *Id.*

*Second*, Mr. Anglin argues that the speech fairly related to a matter of public concern because the private form and context of his readers' messages to the Gersh family are irrelevant. *See* Def.'s Objs. at 4–6, ECF 91. But surely the Supreme Court meant what it said when it reaffirmed that "[d]eciding whether speech is of public

---

[4] This is true whether Ms. Spencer is a public figure for all purposes or for limited purposes. But Ms. Gersh's allegations do not obviously support Mr. Anglin's "certain[]" conclusion that Ms. Spencer was a public figure "for all purposes and in all contexts," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974), as he seems to suggest by labeling her "globally famous" or at least "Whitefish Montana famous." Def.'s Objs. at 4, ECF 91. Ms. Gersh's allegations do not conclusively establish that Ms. Spencer had "achieve[d] such pervasive fame or notoriety," *Gertz*, 418 U.S. at 351, or that she was "intimately involved in the resolution of important public questions" or, "by reason of [her] fame, shape[d] events in areas of concern to society at large," *id.* at 337.

or private concern requires us to examine the 'content, form, and context' of that speech, 'as revealed by the whole record.'" *Snyder*, 562 U.S. at 453 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985)).

Turning to Mr. Anglin's own words, "much" of his own posts on the *Daily Stormer*, as the Magistrate Judge concluded, had "nothing to do with" Ms. Gersh's involvement in any purported matter of public concern. F&R at 11–12, ECF 85. Therefore, even assuming for the sake of argument that a matter of public concern existed, the speech on which Ms. Gersh bases her claims is not obviously, fairly, and entirely related to that matter of public concern in light of its content, form, and context.

### D.    Ms. Gersh's Allegations Do Not Conclusively Demonstrate That Ms. Gersh Obviously Was a Public Figure

The Magistrate Judge, accepting Ms. Gersh's allegations as true, correctly concluded that Ms. Gersh's allegations do not conclusively demonstrate that she obviously was a public figure. *See id.* at 15. Mr. Anglin argues only that Ms. Gersh was a limited-purpose public figure. *See* Def.'s Objs. at 7, ECF 91. Limited-purpose public figures are those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 164 (1979). The U.S. Supreme Court has squarely held that an individual who was "dragged unwillingly" into a

public controversy cannot be classed a limited-purpose public figure. F&R at 13, ECF 85 (quoting *Wolston*, 443 U.S. at 166–67). Ms. Gersh's allegations—the ones in her Complaint, not the mischaracterizations in Mr. Anglin's Objections, *see* Def.'s Objs. at 8–9, ECF 91, or the purported facts he alone asserts, *see id.* at 9–10—establish that she "was a private individual who was dragged into any public controversy that might be found to exist," F&R at 15, ECF 85 (citing Compl. ¶¶ 57–58, 60–61, ECF 1). They do not obviously establish that she was a limited-purpose public figure.

Even if Ms. Gersh were a limited-purpose public figure, she need not allege actual malice. In *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988), the U.S. Supreme Court held that public figures "may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice.'" The publication at issue in that case was an advertisement parodying a public figure in a nationally circulated magazine. *See* 485 U.S. at 47–48. The Court did not "suggest that its holding applied across the board to all types of IIED claims"; "[i]nstead, the holding was limited to . . . a caricature in a magazine." *Snyder*, 562 U.S. at 474 (Alito, J., dissenting); *accord Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991); *United States v. Eichman*, 496 U.S. 310, 319 (1990); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1401 (9th Cir.

1992); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1191, 1195–96 (9th Cir. 1989). Ms. Gersh's tort claims are not based on any caricature in a magazine but on hundreds of threatening direct communications over private channels to her, her husband, and her twelve-year-old son.

Ms. Gersh nevertheless alleges false statements of fact that were made with actual malice. Actual malice is "knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Magazine, Inc.*, 485 U.S. at 56. A defendant has reckless disregard for the truth of the statement if there were "obvious reasons to doubt the veracity" of the statement but the defendant "engaged in purposeful avoidance of the truth." *Dodds v. ABC*, 145 F.3d 1053, 1061 (9th Cir. 1998) (internal quotation marks omitted).

Ms. Gersh alleges false statements made by Mr. Anglin with at least reckless disregard for the truth. *See, e.g.*, Compl. ¶¶ 13, 15, 80, 82–83, 86–88, 125, 128, 130–32, 150–51, 155–57, 166, 169, 172, 177–84, 189–90, 193, 199, ECF 1. For example, she alleges that Mr. Anglin accused Ms. Gersh's twelve-year-old son of "scamming" by "pushing advertising scams" and being a "faggot," *id.* ¶ 88, accused "Jewish racketeers" (referring to Ms. Gersh) of "illegally harass[ing]" Ms. Spencer, *id.* ¶ 169, and falsely claimed that Ms. Gersh had "pending litigation against her for her racketeering activities," *id.* ¶ 172.

Ms. Gersh also alleges false troll storm statements made with at least reckless disregard for the truth. *See, e.g.*, *id.* ¶¶ 14, 94(a), (d), 95(f)–(g), 96, 100(a), (*l*), (n)–(o), 101, 118(a), (c), (i), 119(d), 122(a)–(b), (g), 123. For example, she alleges that she received messages accusing her of extortion, *see id.* ¶¶ 94(d), 95(f)–(g), 96, 101, 118(i), blackmail, *see id.* ¶ 100(*l*), and harassment, *see id.* ¶ 118(c). She also alleges that her husband received a message accusing her twelve-year-old son of scamming, *see id.* ¶ 118(a), and that her son received a message accusing his mother of extortion, *see id.* ¶ 122(a), and harassment, *see id.* ¶ 123.

### E.  Ms. Gersh Adequately Alleges that Mr. Anglin Made Her a "Captive Audience"

Although the Magistrate Judge did not decide whether Mr. Anglin made Ms. Gersh captive to his troll storm's messages because the Complaint survives on other grounds, *see* F&R at 18, ECF 85, the captive audience doctrine provides yet another reason why Mr. Anglin cannot cloak himself in the First Amendment's protections. The captive audience doctrine "protect[s] unwilling listeners from protected speech." *Snyder*, 562 U.S. at 459.[5] That the doctrine has been applied "sparingly,"

---

[5] This means that, even if the troll storm were considered speech on a matter of public concern or Ms. Gersh were considered a public figure, she still could proceed to prove her claims against Mr. Anglin because he and his followers made her an "unwilling listener," which they had no right to do. *Snyder*, 562 U.S. at 459; *see also Frisby v. Schultz*, 487 U.S. 474 (1988) (holding constitutional a town ordinance completely banning picketing before or about any residence).

*id.*, does not mean it has not been applied at all. *See, e.g.*, Pl.'s Opp'n to Def.'s Mot. to Dismiss at 22–23, ECF 50 (collecting cases). The cases in which it has been applied illustrate that the doctrine is not limited to the home but is applied whenever the unwilling listener cannot avoid listening. *See, e.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 781 (1994) (medical clinics); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302 (1974) (public transportation); *Kovacs v. Cooper*, 336 U.S. 77, 86 (1949) (city streets).

Unwilling listeners should not be made to avoid using the means by which Mr. Anglin inflicted much of his troll storm on Ms. Gersh—email, social media, and cellphones—any more than any individual should be made to avoid medical clinics, public transportation, or city streets. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 23–24, ECF 50 (collecting cases describing importance of these media).

## F.     Mr. Anglin May Be Held Liable for the Conduct of His Followers

The Magistrate Judge correctly concluded that Mr. Anglin may be held liable consistent with the First Amendment for having authorized, directed, or ratified his readers' tortious conduct. *See* F&R at 22–24, ECF 85. Mr. Anglin agrees that "a finding that he authorized, directed, or ratified specific tortious activity would justify holding him responsible for the consequences of that activity" consistent with the First Amendment, *Claiborne Hardware Co.*, 458 U.S. at 927, but objects only to the

Magistrate Judge's conclusion that the allegations would support such a finding. *See* Def.'s Objs. at 14–15, ECF 91.

This iteration of Mr. Anglin's First Amendment defense, like the others, is not "obvious on the face of the complaint." *Gomez*, 629 F. App'x at 801. Instead, the face of Ms. Gersh's Complaint contains many allegations that Mr. Anglin authorized, directed, or ratified his readers' conduct. F&R at 23, ECF 85 (referring to *id.* at 20–21).

The Magistrate Judge noted, for example, that Mr. Anglin "published the Twitter handle of Gersh's son and wrote that '[y]ou can hit him up, tell them what you think of his whore mother's vicious attack on the community of Whitefish,'" which "can be construed in Gersh's favor as evidence that Anglin directed his readers to do just that." *Id.*

Ms. Gersh also adequately alleges that Mr. Anglin's own conduct was integral to the conduct of his readers. "No first amendment defense need be permitted when words are more than mere advocacy, so close in time and purpose to a substantive evil as to become part of the [tort] itself"—"an integral and essential part of ongoing [tortious] activity." *United States v. Mendelsohn*, 896 F.2d 1183, 1186 (9th Cir. 1990) (internal quotation marks omitted). Ms. Gersh alleges that the instructions, rhetoric, lies, and contact information Mr. Anglin provided his readers were an integral part of their tortious invasion of Ms. Gersh's privacy and infliction of

18

emotional distress, helping them directly reach and terrorize Ms. Gersh, her husband, and her twelve-year-old son. *See, e.g.*, Compl. ¶¶ 4–14, 26–28, ECF 1.[6]

## II.    The Complaint Otherwise States Valid Claims

### A.    Ms. Gersh Has Stated a Claim for Intrusion upon Seclusion, a Species of Invasion of Privacy Recognized by Montana Courts

Mr. Anglin continues to direct his arguments about Ms. Gersh's invasion of privacy claim at a strawman—that Ms. Gersh cannot prevail on her invasion of privacy claim because none of the contact information Mr. Anglin published was private. *See* Def.'s Objs. at 19–20, ECF 91.

But as Ms. Gersh made clear in her Complaint, *see, e.g.*, Compl. ¶ 93, ECF 1, in her opposition to the motion to dismiss, *see, e.g.*, Pl.'s Opp'n at 22–25, ECF 50,

---

[6] In a footnote in his Objections, Mr. Anglin attempts to raise for the first time a defense under the Communications Decency Act of 1996, 47 U.S.C. § 230(c), because Ms. Gersh purportedly seeks to hold him liable "for merely providing an internet forum for people to 'trade ideas and information.'" Def.'s Objs. at 16 n.7, ECF 91 (quoting F&R at 24, ECF 85).

The Act does not even immunize that conduct. Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties," *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (citing § 230(c)), but "[t]his grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content," *id.* (quoting § 230(f)(3)). Ms. Gersh does not seek to hold Mr. Anglin liable for "passively display[ing] content that is created entirely by third parties" on his website. *Id.* at 1162. Instead, she seeks to hold him liable in part for facilitating, encouraging, and expanding his tortious troll storm by providing that forum.

and again at argument, *see, e.g.*, Tr. Hr'g Def.'s Mot. to Dismiss at 29:12 to 32:24 (Apr. 3, 2018), Ms. Gersh's invasion of privacy claim is based on theory that Mr. Anglin's troll storm was so invasive, terrorizing, and unrelenting that it interfered with her ability to conduct her private and professional life in her home and elsewhere.[7] This species of privacy claim is known as intrusion upon seclusion.

The Magistrate Judge correctly concluded that Ms. Gersh sufficiently stated a claim for intrusion upon seclusion. *See* F&R at 26, ECF 85. In Montana, "[a]n invasion of privacy cause of action is defined as a wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *State Bd. of Dentistry v. Kandarian*, 886 P.2d 954, 957 (Mont. 1994) (internal quotation marks omitted). "To prevail on the tort of intrusion upon seclusion, a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude, and (b) that the expectation was objectively reasonable." *Mortensen v. Bresnan Commc'n, L.L.C.*, No. CV 10-13-BLG-RFC, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010) (citing *Med. Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806 (9th Cir. 2002)).

Put simply, the tort of intrusion upon seclusion means that Ms. Gersh has a "right to be let alone" in her home, at her job, and in other places where one would

---

[7] As of the date the Complaint was filed, Ms. Gersh and her family had received over 700 harassing messages. Compl. ¶ 93, ECF 1.

reasonably expect to find seclusion from repeated, uninvited communications. *Welsh v. Pritchard*, 241 P.2d 816, 819 (Mont. 1952); *Prather v. Bank of Am., N.A.*, No. CV 15-163-M-DLC, 2016 WL 4440686, at *7 (D. Mont. 2016) (noting that Montana's tort of intrusion upon seclusion derives from *Housh v. Perth*, 133 N.E.2d 340 (Ohio 1956), "in which an overzealous creditor made frequent calls to the plaintiff, her employer, and her rooming house as part of a pattern to harass and humiliate the plaintiff and cause her mental pain and anguish" (internal quotation mark omitted)).

At bottom, Ms. Gersh alleges that Mr. Anglin unleashed a systematic campaign of harassment that corruptly flooded her channels of private communication with hundreds of unwanted messages. *See, e.g.*, *Housh*, 133 N.E.2d at 344; *Harms v. Miami Daily News, Inc.*, 127 So.2d 715, 717 (Fla. Dist. Ct. App. 1961) (publication of business telephone number in newspaper with suggestion to call); Restatement (Second) of Torts § 652B cmt. d (1977) ("telephone calls . . . repeated with such persistence and frequency as to amount to a course of hounding"); *cf. Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 737 (1970) ("Nothing in the Constitution compels us to listen to or view any unwanted communication, whatever its merit . . . .").

Ms. Gersh, a real estate agent, should not have been expected to avoid these forms of communication merely to escape Mr. Anglin's abuse. *Cf. Packingham v.*

*North Carolina*, 137 S. Ct. 1730, 1735 (2017); *City of Ontario v. Quon*, 560 U.S. 746, 760 (2010); *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978).

The Magistrate Judge correctly concluded that it is enough that Ms. Gersh alleges Mr. Anglin "gave his followers instruction and encouragement to harass [her] by exhorting them to contact [her] and by repeating false stories about [her] and Jews generally to stoke his followers' emotions" and to cause those followers to harass her en masse. F&R at 21, ECF 85.

It does not matter whether Mr. Anglin was the first to "share" Ms. Gersh's contact information or whether that information was available online already, *see* Def.'s Objs. at 19, ECF 91; what matters is that Mr. Anglin purposefully, knowingly, and "wrongful[ly] intrud[ed]" by causing Ms. Gersh to receive hundreds of communications that she did not want and in a manner that interfered with her private life, her seclusion, and her natural right to be let alone. *Ascencio v. Phillips Agency, Inc.*, No. CV 16-64-M-DLC, 2016 WL 9461796, at *5 (D. Mont. Aug. 16, 2016) (Christensen, C.J.).

**B.    Ms. Gersh Has Stated a Claim for Intentional Infliction of Emotional Distress**

The Magistrate Judge correctly concluded that Ms. Gersh sufficiently stated a claim for intentional infliction of emotional distress. *See* F&R at 27, ECF 85. "[A]n independent cause of action for intentional infliction of emotional distress will arise

under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 428 (Mont. 1995). Mr. Anglin objects only to the Magistrate Judge's conclusion that Ms. Gersh sufficiently alleges the foreseeability element. *See* Def.'s Objs. at 20–21, ECF 91.[8]

Ms. Gersh bases her claim for intentional infliction of emotional distress on Mr. Anglin launching of a terror campaign against her and her family that was designed to inflict maximum mental anguish. The foreseeability of emotional harm is made plain by the fact that Mr. Anglin even tormented Ms. Gersh's twelve-year-old son and called on others to join him. *See* Compl. ¶ 88, ECF 1. Such conduct cannot in any way be deemed, as Mr. Anglin does, speech intended to comment on a matter of public concern, or even to express private disapproval of Ms. Gersh's purported conduct. *See* Def.'s Objs. at 21, ECF 91; *see also supra* Part I.

Mr. Anglin also posted Nazi-fied images of Ms. Gersh coupled with rhetoric glorifying the death of millions of Jews in the Holocaust with a suggestion that she suffer a similar fate. Compl. ¶ 9, ECF 1. He posted contact information for Ms. Gersh, her family, and known associates and called upon his readers to harass these

---

[8] Mr. Anglin also argues that Ms. Gersh has failed to state a claim by failing to allege "extreme and outrageous" conduct, Def.'s Objs. at 21, ECF 91, but the Montana Supreme Court has explicitly held that Montana's tort of intentional infliction of emotional distress does not require an allegation of "extreme and outrageous conduct," *Sacco*, 896 P.2d at 427–28.

individuals. *Id.* ¶ 6. He then provided an online forum for the harassers to exchange information and ideas on how to conduct their terror campaign. *Id.* Ms. Gersh alleges that Mr. Anglin succeeded in bringing about the complete disruption of her life, *see id.* ¶¶ 93–124, and caused significant emotional and physical trauma, *see id.* ¶¶ 204–07.

Mr. Anglin's only remaining argument is that he, who notoriously terrorizes individuals through troll storm campaigns similar to the one at issue in this case, *id.* ¶¶ 2–3, could not possibly have foreseen that *this* troll storm would turn out like the others. *See* Def.'s Objs. at 20–21, ECF 91. Such an argument defies reason.

Ms. Gersh alleges that Mr. Anglin has launched similar troll storms in the past, *see* Compl. ¶ 3, ECF 1, and that he actively encouraged his followers to "keep up the pressure" after becoming aware that Ms. Gersh was receiving harassing communication, *id.* ¶ 128. This "unrelenting barrage of obscene gestures, vile verbal abuse . . . employ[ing] the coarsest and most offensive words in our language, and on-going surveillance" undoubtedly can support a claim for intentional infliction of emotional distress. *Czajkowski v. Meyers*, 172 P.3d 94, 102 (Mont. 2007).

### C.   Ms. Gersh Has Stated a Claim for Violation of the Anti-Intimidation Act

The Magistrate Judge correctly concluded that Ms. Gersh sufficiently alleges Mr. Anglin launched his troll storm with the intent to threaten and intimidate her and

to prevent her from exercising legally-protected rights. *See* F&R at 28, ECF 85.[9] Under the Montana Anti-Intimidation Act, "[a]n individual or organization who is attempting to exercise a legally protected right and who is injured, harassed, or aggrieved by a threat or intimidation has a civil cause of action against the person engaging in the threatening or intimidating behavior." Mont. Code Ann. § 27-1-503(2).

Ms. Gersh has stated a valid claim against Mr. Anglin under the Act. She undoubtedly was "injured, harassed, or aggrieved" by Mr. Anglin's behavior, which was designed to place her in fear of the practice of Judaism, *see* Compl. ¶¶ 9, 146, 163–65, ECF 1; to intimidate her employers into firing her, *see id.* ¶ 131; to completely withdraw from her any manner of privacy, including familial privacy; *see id.* ¶¶ 84–90; and to inundate her with so many negative messages so as to force her family to shut down their social media accounts and her website, and to fear answering the telephone, *see id.* ¶¶ 97, 110–13, 124. At issue here is not only Mr. Anglin's speech and the speech of his trolls, but also his unrelenting, harassing conduct and behavior towards Ms. Gersh.

---

[9] Ms. Gersh alleges in her Complaint that she "was attempting to exercise her legally protected rights, including her free speech rights." Compl. ¶ 226, ECF 1. Drawing all reasonable inferences in her favor, F&R at 5–6, ECF 85, the Magistrate Judge specifically concluded that Ms. Gersh "was attempting to exercise her legally protected rights to privacy and to freely practice her religion at the time of Anglin's allegedly wrongful conduct," *id.* at 28. This was proper on a motion to dismiss. *See id.* at 5–6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Ms. Gersh agrees with the Magistrate Judge that determining the constitutionality of the Act is, at this juncture, procedurally premature. The Court should interpret the Findings and Recommendation as a denial without prejudice of the motion to dismiss the claim under the Act as unconstitutional because Mr. Anglin failed to comply with Federal Rule of Civil Procedure 5.1(a). Ms. Gersh agrees that "that resolution of the statute's constitutionality is better suited for summary judgment motions." State's Notice at 3, ECF 94.

## CONCLUSION

For the foregoing reasons, the Objections should be overruled.

DATED June 4, 2018.

/s/ David C. Dinielli
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff


/s/ John Morrison
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

on this June 4, 2018.

/s/ David C. Dinielli