Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | |
| vs. | |
| ANDREW ANGLIN, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS** |
| Defendant. | |

# **TABLE OF CONTENTS**

*TABLE OF AUTHORITIES* ............................................................. *iii*

**1.0   INTRODUCTION AND FACTUAL BACKGROUND** ......................... **1**

**2.0   LEGAL STANDARD** ................................................................ **2**

**3.0   ARGUMENT** ......................................................................... **3**

   **3.1   Mr. Anglin Has Not Waived any Objections** ............................ 3

   **3.2   Mr. Anglin's Objections are Proper** ...................................... 6

   **3.3   An Award of Fees is Not Appropriate Under Fed. R. Civ. P. 37(a)** . 16

   **3.4   Sanctions are Not Appropriate Under Fed. R. Civ. P. 37(b)** ........... 17

**4.0   CONCLUSION** ..................................................................... **18**

## TABLE OF AUTHORITIES

**CASES**

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
    2018 U.S. Dist. LEXIS 26386, at *7 (N.D. Ill. Feb. 20, 2018) .......................... 10

*Batts v. County of Santa Clara*,
    2010 U.S. Dist. LEXIS 35170 (N.D. Cal. Mar. 17, 2010) .................................... 3

*Becker v. Wells Fargo Bank, NA, Inc.*,
    2013 U.S. Dist. LEXIS 94257, at *8 (E.D. Cal. July 5, 2013) ............................ 10

*Blair v. CBE Group, Inc.*,
    2014 U.S. Dist. LEXIS 131228, *4 (S.D. Cal. Sept. 16, 2014) .......................... 17

*Doe v. Reed*,
    561 U. S. 186, 240, (2010) ................................................................................. 16

*Dollar v. Long Mfg., N. C. Inc.*,
    561 F.2d 613, 617 (5th Cir. 1977) ....................................................................... 5

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604, 607 (9th Cir. 1992) ........................................................................ 3

*Metabolife Int'l v. Wornick*,
    264 F.3d 832, 845 (9th Cir. 2001) ..................................................................... 14

*Mitchell v. Cox*,
    2014 U.S. Dist. LEXIS 66925, *18 (D. Nev. May 15, 2014) ............................... 3

*Nei v. Travelers Home & Marine Ins. Co.*,
    326 F.R.D. 652, 656-57 (D. Mont. 2018) ............................................................ 4

*Perez v. United States*,
    2016 U.S. Dist. LEXIS 8993, *5-7 (S.D. Cal. Jan. 25, 2016) ............................. 4

*Power Paragon, Inc. v. Precision Tech. USA, Inc.*,

2009 U.S. Dist. LEXIS 21363, at *15 (W.D. Va. Mar. 17, 2009) ........................ 5

*Rivera v. Bell*, No. CV 05-165-M-JCL,

2007 U.S. Dist. LEXIS 104224, at *7 (D. Mont. Oct. 23, 2007) ........................ 13

*Sarver v. Chartier*,

813 F.3d 891, 900 (9th Cir. 2016) ................................................................ 14

*United States EEOC v. Caesars Entm't, Inc.*,

237 F.R.D. 428, 435 (D. Nev. 2006) ............................................................. 17

## RULES

Fed. R. Civ. P. 1 .............................................................................................. 2

Fed. R. Civ. P. 26(c)(1) .................................................................................. 1

Fed. R. Civ. P. 33(b)(4) ........................................................................... 3, 4, 19

Fed. R. Civ. P. 33(d)(2) .................................................................................. 9

Fed. R. Civ. P. 37 (a)(5) ................................................................................ 17

Fed. R. Civ. P. 37 (a)(5)(A)(i)-(ii) ................................................................ 3

Fed. R. Civ. P. 37 (b) ................................................................................... 18

Fed. R. Civ. P. 37 (b)(2)(A) .......................................................................... 18

Fed. R. Civ. P. 40 ........................................................................................ 15

L.R. 26.3(c) .................................................................................................... 6

L.R. 26.3(c)(1) ............................................................................................... 9

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS**

## 1.0     INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Tanya Gersh seeks attorneys' fees and sanctions against Defendant Andrew Anglin for not giving her everything she requested in her overbroad and largely irrelevant First Set of Interrogatories (the "1st Rogs").  After explaining to counsel for Ms. Gersh that counsel for Mr. Anglin needed additional time to provide responses to Ms. Gersh's discovery requests, and having their request for an extension largely rejected, Mr. Anglin filed a motion for a protective order requesting additional time to respond under Fed. R. Civ. P. 26(c)(1).  (Dkt. No. 100.) This motion explained the difficulties in coordinating with Mr. Anglin in providing responsive information and documents.  (*See* Dkt. No. 101.)  Despite this difficulty, Mr. Anglin was able to provide timely objections to each of Ms. Gersh's requests. (*See* Dkt. Nos. 102-1 & 102-2.)

Magistrate Judge Lynch then, in a minute order dated July 13, 2018, gave Mr. Anglin until August 10, 2018 to provide "complete responses" to the 1st Rogs by August 10, 2018.  (Dkt. No. 103.)  This order did not overrule the objections Mr. Anglin stated in his responses to the 1st Rogs or conclude that any interrogatory in the 1st Rogs was appropriate; it was simply an order allowing additional time to respond.

Mr. Anglin provided substantive responses to the 1st Rogs on August 11, 2018. (Dkt. No. 113-3.)  The one-day delay was caused for the same reasons as those articulated in the motion for a protective order; that Mr. Anglin does not live in the U.S. made it difficult to coordinate with him on the responses.  (*See* Declaration of Jay M. Wolman ["Wolman Decl."], attached as **Exhibit 1**, at ¶¶ 4-5.)  Mr. Anglin's

counsel served Ms. Gersh with the supplemental responses to the 1st Rogs at 12:32 p.m. Mountain time on August 11, as soon as they received Mr. Anglin's signature on them.  (*See* transmission email dated August 11, 2018, attached as **Exhibit 2**.)  At no point prior to filing their motion to compel did Ms. Gersh indicate that there was any problem with the unintended 1-day delay in serving these responses.  (*See* Wolman Decl. at ¶ 7.)

While Ms. Gersh complains about most of Mr. Anglin's objections and supplemental responses to the 1st Rogs, Ms. Gersh herself engaged in identical conduct in responding to Mr. Anglin's discovery requests.  On September 21, 2018, Mr. Anglin served his First Set of Interrogatories (attached as **Exhibit 3**) and First Set of Requests for Production of Documents (attached as **Exhibit 4**) on Ms. Gersh. She responded to these requests on October 25, 2018.  (*See* **Exhibit 5** and **Exhibit 6**, respectively.)  As discussed below, as Ms. Gersh's responses are less defensible than Mr. Anglin's, she is estopped from seeking any adverse order.

Ms. Gersh complains about the "boilerplate" nature of Mr. Anglin's objections to her 1st Rogs, but these objections are appropriate, and Mr. Anglin has appropriately answered these interrogatories.  He has not violated any order from this Court, and neither fees nor sanctions should be awarded here.  The Court should deny Ms. Gersh's motion in its entirety.

### 2.0    LEGAL STANDARD

Fed. R. Civ. P. 1 explains that the purpose of the Federal Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding."  To achieve this purpose of efficient litigation, Rule 26(b)(1) was recently revised to provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case . . . .*" (emphasis added).

If a party fails to timely respond to an interrogatory, objections are typically waived "unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). A court has "broad discretion in determining whether there is good cause" to excuse non-compliance with this rule. *See Mitchell v. Cox*, 2014 U.S. Dist. LEXIS 66925, *18 (D. Nev. May 15, 2014), *citing Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). In deciding whether to excuse an untimely objection, courts look to several factors, including "(1) the length of delay, (2) the reason for delay, (3) the existence of bad faith, (4) the prejudice to the party seeking waiver, (5) the nature of the request, and (6) the harshness of imposing sanctions." *Id.*, *citing Batts v. County of Santa Clara*, 2010 U.S. Dist. LEXIS 35170 (N.D. Cal. Mar. 17, 2010).

A Court ordinarily awards fees against the party whose conduct necessitated a motion to compel, but a Court cannot award fees if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; [or] (ii) the opposing party's nondisclosure, response, or objection was substantially justified . . . ." Fed. R. Civ. P. 37 (a)(5)(A)(i)-(ii).

## 3.0    ARGUMENT

### 3.1    Mr. Anglin Has Not Waived any Objections

Ms. Gersh broadly contends that Mr. Anglin waived almost all of his objections to her interrogatories because of their allegedly "boilerplate" nature. Boilerplate objections may be disfavored, but they do not result in an automatic waiver of substantive objections, as Ms. Gersh seems to contend. *See Perez v. United States*, 2016 U.S. Dist. LEXIS 8993, *5-7 (S.D. Cal. Jan. 25, 2016) (noting that the rules do not provide an explicit prohibition against boilerplate objections,[1] and courts must engage in a substantive analysis of each discovery response); *see*

---

[1] Similarly, L.R. 26.3(a)(2) does not provide such a prohibition and does not state that asserting a boilerplate objection constitutes waiver of a substantive objection.

*also Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656-57 (D. Mont. 2018) (finding that even in the case of boilerplate objections, "the Court has an obligation to review the discovery requests to ensure that they are not frivolous," and denying motion to compel as to overbroad document requests). What Ms. Gersh refers to as "boilerplate" only appears that way because her interrogatories consistently suffer the same infirmities. Moreover, Ms. Gersh herself deemed it proper to utilize "boilerplate" objections, as her responses to Mr. Anglin's discovery requests are littered with them. (*See generally* **Exhibits 5 & 6**.)

Accordingly, Mr. Anglin has not waived any allegedly "boilerplate" objections asserted in his original or supplemental response to the 1st Rogs. Ms. Gersh also, however asserts that new objections asserted in the supplemental responses to the 1st Rogs have been waived as untimely.[2] Fed. R. Civ. P. 33(b)(4) allows a court, for good cause, to excuse a failure to timely assert an objection. Good cause exists here because, as explained in the motion for a protective order, Mr. Anglin's overseas residence complicated the completion and execution of the responses. The Court's August 10 deadline was shorter than the extra time Mr. Anglin requested in his motion for a protective order, but he still managed to provide supplemental responses within hours of this deadline. The brief delay in providing the supplemental objections was not due to any bad faith, but rather the logistical difficulties in Mr. Anglin coordinating with his counsel. (*See* Wolman Decl. at ¶¶ 4-5.) Furthermore, the primary paralegal for Randazza Legal Group, PLLC had recently left the firm, further complicating the logistics of having the responses properly executed in time. (*See id.* at ¶ 6.) This brief delay did not cause any harm[3]

---

[2] To the extent Ms. Gersh challenges the raising of new objections in the extended period, the Order did not preclude any. The Order used the term "complete responses." To "respond" under Rule 33 includes serving answers *or* objections. *See, e.g.*, Fed. R. Civ. P. 33(b)(2).

[3] Previously, Ms. Gersh did not grant Mr. Anglin the requested extension of time to respond to her discovery requests due to an alleged urgency in the timing of the case. (*See* Dkt. No. 113-2.) Ms. Gersh apparently overstated this urgency, as instead of providing a single document in response to Mr. Anglin's requests for production, she unilaterally gave herself a six-week extension to do so. (*See generally* **Exhibit 6**.) In addition to being completely inconsistent

to Ms. Gersh, and Ms. Gersh's counsel did not previously suggest there was anything prejudicial. (*See* Wolman Decl. at ¶ 7.)[4]  *See also Power Paragon, Inc. v. Precision Tech. USA, Inc*., 2009 U.S. Dist. LEXIS 21363, at *15 (W.D. Va. Mar. 17, 2009) (Finding a plaintiff "cannot claim that it has been prejudiced in any way by a delay of mere hours in the filing of the plaintiff's answer").  The Court should find that there is good cause to excuse Mr. Anglin's delay and not consider these objections waived.

Finally, Ms. Gersh improperly claims in a footnote that it is inappropriate to respond to an interrogatory while preserving objections to it.  Ms. Gersh misunderstands the rule; it means that all objections must be stated, rather than declaring that no objections are waived. *See Dollar v. Long Mfg., N. C. Inc*., 561 F.2d 613, 617 (5th Cir. 1977).  Answering an interrogatory subject to or notwithstanding an objection is customary practice in which Ms. Gersh herself has engaged.  She categorically reserved all objections in responding to Mr. Anglin's First Set of Interrogatories, despite providing substantive responses to some of them. (*See* **Exhibit 5** at p. 2, ¶ 2; Response Nos. 1-4, 6, 11, 14.)  Mr. Anglin appropriately stated all of his objections in his initial and supplemental responses to the 1st Rogs. The Court thus should address the substance of each objection and response.

---

with the Local and Federal Rules, this shows Ms. Gersh is unwilling to abide by her own proclaimed standards of conduct.

[4] In fact, in responding to Mr. Anglin's First Set of Interrogatories, Ms. Gersh sought to prospectively assert the ability "to assert additional objections or privileges, in one or more subsequent supplemental response(s)," despite the fact that such supplemental objections would be untimely and barred under *Dollar, supra*. (*See* **Exhibit 5** at p. 2, ¶ 3.) Ms. Gersh cannot claim that providing additional objections hours after a deadline is inappropriate while claiming the ability to do exactly that herself.

### 3.2    Mr. Anglin's Objections are Proper

### 3.2.1  Interrogatory No. 1[5]

This request asks Mr. Anglin to "[l]ist any and all usernames under which you posted any comments in the forums for the Daily Stormer."  Mr. Anglin objected on the basis that this interrogatory is "irrelevant and disproportionate to the needs of the case, as it makes no attempt to narrow itself to information related to any claim or defense of any party."  (Dkt. No. 113-3 at 4.)  Mr. Anglin also objected that it is "overbroad and unduly burdensome, as it is not limited in scope to any claim or defense, or even the general subject matter of this litigation." (*Id.*) The supplemental response provides that Mr. Anglin posted under the name "Andrew Anglin."  (*Id.*)

This case deals with statements Mr. Anglin allegedly authored on the Daily Stormer web site.  The Complaint only refers to statements on the site contained in articles authored by Mr. Anglin.  It is almost completely silent as to the forums on the Daily Stormer site; there is only a mention that "Mr. Anglin also provided his followers with online discussion forums where the followers could trade ideas and information for carrying out the harassment."  (Dkt. No. 1 at ¶ 6.)  Ms. Gersh does not premise liability on any statements by Mr. Anglin on the Daily Stormer forums. Any of his conduct on these forums, including any usernames he uses on them, is thus irrelevant, as they have no bearing on any claim or defense.  Even if this information were potentially relevant, the interrogatory is not limited in scope to any statements regarding Ms. Gersh or the alleged "troll storm," nor is it limited to any relevant time period.   Due to this lack of relevance, the interrogatory is not proportionate and is unduly burdensome.  Furthermore, Ms. Gersh's failure to meet

---

[5] Ms. Gersh has not complied with Fed. R. Civ. P. 37 or L.R. 26.3(c) as to this response.  Counsel for the parties did not discuss this request during their meet and confer conference on August 21, 2018.  (*See* Wolman Decl. at ¶ 8.)  As is evident from the follow-up email correspondence attached to Ms. Gersh's motion, counsel for the parties did not discuss this response subsequently, either.  (*See* Dkt. No. 113-4.)

and confer regarding this interrogatory at all, much less this theory of relevance, makes her motion procedurally improper as to this interrogatory.

### 3.2.2   Interrogatory No. 2

Ms. Gersh asks Mr. Anglin to "[i]dentify all social media accounts, including the name of the social media platform and the username or handle associated with the account, from which you have posted any messages, whether publicly or privately, between November 2016 and the present." (Dkt. No. 113-3 at 5.)  Mr. Anglin objected for the same reasons he objected to Interrogatory No. 1. (*Id*.)  He supplemented this response by stating that he used the handle @AndrewAnglin on the web site GAB, and previously used the name AndrewAnglin on the social media app Discord. (*Id*.)

Ms. Gershs's claims premise liability on Mr. Anglin's alleged conduct on the Daily Stormer web site, not his social media activity.  The Complaint does not allege that Mr. Anglin made any actionable statements on social media platforms, instead only alleging that third parties made such statements.  Ms. Gersh had months, even before Mr. Anglin was served and since, to seek discovery and subpoena Twitter for the identities of the accounts that allegedly messaged her, yet she has failed to do so. Ms. Gersh admits in her motion that this is just a fishing expedition to support a theory of liability that she has never previously articulated.  Her counsel did not mention this alleged basis for relevance when meeting and conferring with Mr. Anglin's counsel about this motion, either. (*See* Wolman Decl. at ¶ 9.)  This lack of relevance means the interrogatory is disproportionate to the needs of the case and is unduly burdensome.

### 3.2.3   Interrogatory No. 3

This interrogatory asks Mr. Anglin to "[i]dentify each and every person who you believe participated in the "troll storm" (as dubbed in your December 16, 2016, article entitled "Jews Targeting Richard Spencer's Mother For Harassment and

Extortion – Take Action!") against Tanya Gersh and describe the reason for your belief, including any interactions that you have had with each identified person." Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1, as well as the interrogatory being compound.  (Dkt. No. 113-3 at 6.)   He supplemented his response by stating that Andrew Auernheimer was involved in the alleged "troll storm" and publicly posted his call to Ms. Gersh, in fully response, but that Mr. Anglin did not know the identity of any other individual involved in the "troll storm." (*Id*.)

Ms. Gersh does not contend this response is insufficient as to Mr. Auernheimer.  Mr. Anglin cannot otherwise be compelled to provide information he does not possess and Ms. Gersh offers no basis to suggest Mr. Anglin is withholding any responsive information.  Though Ms. Gersh produces an exhibit regarding discussions among third parties, there is no basis to suggest Mr. Anglin actually knows if any of those people contacted Ms. Gersh or were falsely claiming they did.

### 3.2.4  Interrogatory No. 4

This interrogatory asks Mr. Anglin to "[i]dentify each and every person who possesses knowledge about, or who was involved in writing, researching, publishing or who otherwise assisted in, the publishing on the Daily Stormer of any article that relates to or references Whitefish, Montana or Tanya Gersh in any manner, and describe in detail the specific knowledge these individuals possess, or their role in the writing, researching, publishing, or otherwise assisting in the articles."   Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1, as well as the interrogatory being compound.  (Dkt. No. 113-3 at 7.)  He supplemented his response by referring to the exhibits to Dkt. Nos. 32 and 50,[6] that Tanya Gersh and Sherry Spencer possessed information relating to their actions, and that Mr.

---

[6] Ms. Gersh claims that referring to other documents in an interrogatory response is inappropriate, but she did exactly this in responding to Mr. Anglin's interrogatories.  (*See* **Exhibit 5** at Response No. 8.)  Such is expressly permitted under Fed. R. Civ. P. 33(d)(2).

Anglin personally wrote these articles and did not receive assistance in writing them. (*Id.*) He otherwise identified the articles that included the name Erik Striker.

Mr. Anglin is confused as to how his answer is inadequate. He disclosed that he personally wrote the subject Daily Stormer articles and did not receive assistance in writing them. This response is sufficient and Ms. Gersh offers no basis to suggest Mr. Anglin is withholding any responsive information.

### 3.2.5  Interrogatory No. 5[7]

This interrogatory asked Mr. Anglin to "[i]dentify every communication (by indicating the date, the form (e.g., email, text message, direct message through an internet service, etc.), the parties to, and the subject of, the communication) you had with anyone regarding Sherry Spencer's December 15, 2016, blog post on Medium, or about its drafting, development, or purpose, or its actual or intended effect." Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1, as well as being unintelligible and compound. (Dkt. No. 113-3 at 8.) He supplemented his response by referring to the articles attached as exhibits to Dkt. Nos. 32 and 50, that he communicated with Robert Ray (aka Azzmador) using Discord, and that he is not aware of any such communications as to their drafting, development, purpose, or their intended effect. (Dkt. No. 113-3 at 8-9.)

Mr. Anglin already provided a full response to this interrogatory. As stated in his response, he no longer has access to any communications on the social media platform Discord, and so cannot provide these communications. "Fulfilling good faith meet and confer obligations requires more than lip service." *Becker v. Wells Fargo Bank, NA, Inc.,* 2013 U.S. Dist. LEXIS 94257, at *8 (E.D. Cal. July 5, 2013); *see also BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc*., 2018 U.S. Dist. LEXIS 26386, at *7 (N.D. Ill. Feb. 20, 2018) ("Discovery is not a game of

---

[7] As with the response to Interrogatory No. 1, Ms. Gersh has failed to comply with Fed. R. Civ. P. 37 and L.R. 26.3(c)(1) by failing to confer with counsel for Mr. Anglin about this response. (*See* Wolman Decl. at ¶ 10; *see also* Dkt. No. 113-4.)

'gotcha'").  If Ms. Gersh has any basis to suggest Mr. Anglin is withholding any responsive information, she could have provided such as part of the good-faith meet-and-confer required under Rule 37, but she did not do so.

### 3.2.6  Interrogatory No. 6

This interrogatory asks Mr. Anglin to "[i]dentify all e-mail accounts used by you or to which you have had access between November 2016 and the present."  Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1. (Dkt. No. 113-3 at 9.)  He provided a supplemental objection that he would not provide this information without a protective order excluding anyone affiliated with the Southern Poverty Law Center ("SPLC") from obtaining the information.  (*Id*.)

As with Response Nos. 1 and 2, Ms. Gersh does not allege in her Complaint that Mr. Anglin sent any threatening or otherwise actionable statements via email. Ms. Gersh's counsel also did not discuss this theory of relevance at any point while meeting and conferring with Mr. Anglin's counsel.  (*See* Wolman Decl. at ¶ 11.) This makes Mr. Anglin's email addresses utterly irrelevant to any claim or defense of either party, and this motion is procedurally improper as to this interrogatory. Furthermore, in the absence of a protective order, disclosure of personal information such as email addresses is extremely burdensome.

Ms. Gersh also claims it is "unprecedented" for Mr. Anglin to insist on a protective order barring counsel associated with the SPLC from obtaining responsive information.  Ms. Gersh herself used the lack of a protective order as the basis for failing to provide information responsive to 1/3 of Mr. Anglin's interrogatories. (*See* **Exhibit 5** at Response Nos. 1, 2, 6, 8, 11.)

Under ordinary "Attorneys' Eyes Only" provisions, material produced under such designation may be given to non-lawyer assistants at a law firm because the firm is otherwise obligated under the rules of professional conduct.  While attorneys Morris Dees, J. Richard Cohen, David C. Dinielli, and Jim Knoepp may be licensed

attorneys, the SPLC is not a law firm; it is a registered 501(c)(3) non-profit *advocacy* organization.  When counsel for the parties conferred on this issue, Mr. Anglin's counsel suggested that a protective order would need to have a sufficient "firewall" in place between counsel for Ms. Gersh and non-attorney staff for SPLC, as such staff were not admitted in this matter and did not have the same ethical obligations to the Court as admitted attorneys did.  (*See* Wolman Decl. at ¶ 12.)  As a non-law firm advocacy organization, the SPLC cannot otherwise guarantee that the non-lawyer staff will not be able to access and misuse the information provided absent a firewall.  The Court previously recognized Mr. Anglin's grave concerns about disclosure of this information to the SPLC.  (*See* Dkt. No. 69.)

Counsel for Ms. Gersh refused this idea, despite having well-experienced local counsel in John Morrison who would have access to such information under the proposed protective order.  (*See* Wolman Decl. at ¶ 13.)  There is nothing exceptional or unreasonable about this proposed protective order, and the unwillingness of Ms. Gersh's SPLC attorneys to accept it speaks volumes of their intentions regarding this information.

### 3.2.7  Interrogatory No. 7

This interrogatory asks Mr. Anglin to "[i]dentify all computers and devices, including but not limited to desktop computers, laptop computers, tablets, cellular telephones, smart phones, and smart watches and/or fitness trackers with GPS capability used by you or to which you have had access between November 2016 and the present and the current location of each such device."  Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1.  (Dkt. No. 113-3 at 10.)  He provided a supplemental objection similar to the Interrogatory No. 6 supplementation, and disclosed he had a laptop computer and smartphone.  (*Id*.)

Ms. Gersh vaguely alludes to the necessity of performing a "forensic inspection" of electronic devices, without any indication of what the purpose of such

an investigation may be or what information she plans to uncover from such an investigation. The scope of the request, namely that it requests "fitness trackers with GPS capability," suggests that this request seeks information regarding Mr. Anglin's current location and travel habits, which is highly personal and would be extremely burdensome and dangerous to disclose. If Ms. Gersh needs to perform some kind of forensic analysis, Mr. Anglin has disclosed that he has a laptop computer and smartphone, and Ms. Gersh can make an appropriate request under the Federal Rules to conduct such an investigation. To the extent this interrogatory asks for anything further, it is unduly burdensome and does not seek relevant information. As for the objection regarding the lack of a protective order, Mr. Anglin incorporates by reference the discussion of this issue in Section 3.2.6, *supra*.

### 3.2.8  Interrogatory No. 8

This interrogatory asks Mr. Anglin to "[i]dentify all computers, servers, and devices used by the Daily Stormer to publish its content and/or maintain its user forums between November 2016 and the present and the current location of each computer, server, and device." Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1. (Dkt. No. 113-3 at 11.) He supplemented the response by stating he lacked personal knowledge of the requested information. (*Id*.) Plaintiff cannot compel him to provide information he does not personally know. Mr. Anglin recognizes that "[]a party responding to interrogatories is obligated to provide information available to the party, and which can be produced without undue labor and expense." *Rivera v. Bell*, No. CV 05-165-M-JCL, 2007 U.S. Dist. LEXIS 104224, at *7 (D. Mont. Oct. 23, 2007). Ms. Gersh does not provide any basis to suggest the information is available to him.

### 3.2.9  Interrogatory No. 9

This interrogatory asked Mr. Anglin to "[i]dentify all land-line or cellular telephone numbers and the associated telephone carriers you have used between

November 2016 and the present. For each telephone number identified, please provide the registered user for the number on the telephone bill, the dates of service for the number, as well as the dates of any change in the telephone carrier." Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1, as well as being unintelligible and compound. (Dkt. No. 113-3 at 12.) He then provided a supplemental objection similar to that for Interrogatory No. 6. (*Id.*)

Similar to Response Nos. 1 and 2, this interrogatory seeks information completely unrelated to the allegations in the Complaint, namely that Mr. Anglin committed unlawful acts by posting articles on the Daily Stormer web site. There is no allegation that Mr. Anglin made any allegedly harassing phone calls. Ms. Gersh's counsel also did not meet and confer regarding this basis of purported relevance. (*See* Wolman Decl. at ¶ 14.) Mr. Anglin's phone numbers are plainly irrelevant. Even if they were not, it is extremely burdensome for Mr. Anglin to produce this highly personal information, particularly in the absence of a protective order. As for the objection regarding the lack of a protective order, Mr. Anglin incorporates by reference the discussion of this issue in Section 3.2.6, *supra*.

### 3.2.10 Interrogatory No. 10

This interrogatory asked Mr. Anglin to "[l]ist all bank and/or crypto-currency accounts by account number, account holder, bank name, and bank location, used by you or for which you had access at any time between 2013 and the present. This includes, but is not limited to, any and all Bitcoin, Monero, or other crypto-currency accounts you have used or for which you had access at any time between 2013 and the present." Mr. Anglin objected to this interrogatory on the same grounds as Interrogatory No. 1, and specifically objected that pre-judgment asset discovery is irrelevant. (Dkt. No. 113-3 at 13.)

Mr. Anglin recognizes that prior non-binding decisions of this Court may be persuasive as to the issue of prejudgment asset discovery where a claim for punitive

damages is made.  Neither of those decisions were made after the revision of Rule 26's scope of discovery provision.  The burden on Mr. Anglin is severe and the issue is not relevant until a *prima facie* case of liability is made.  "Procedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001).  Although Mont. Code. Ann. § 27-1-221(7)(b) provides for an "immediate" trial on punitive damages, such procedural provision conflicts with Fed. R. Civ. P. 40's grant of freedom to the Court to schedule trials.  Where state procedural "timing controls" directly collide with "more permissive" timelines under the federal rules, such timing controls are not applied.  See, e.g., *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).  The Court can issue an order permitting such discovery after a *prima facie* case has been made, with sufficient time prior to a trial on punitive damages.

Mr. Anglin has already provided a response to this interrogatory.  He supplemented this response by identifying a cryptocurrency wallet belonging to him. (Dkt. No. 113-3 at 13-14.) While meeting and conferring, counsel for Mr. Anglin informed counsel for Ms. Gersh that Mr. Anglin is not known to have any traditional bank accounts.  (*See* Wolman Decl. at ¶ 15; *see also* Dkt. No. 113-4.)  Ms. Gersh may find this response "implausible," but it does not change the fact that Mr. Anglin has attested to its accuracy.  Mr. Anglin is not non-responsive simply because Ms. Gersh does not believe him.

### 3.2.11 Interrogatory No. 11

This interrogatory asked Mr. Anglin, "[f]or any users whose permission to use the Daily Stormer forums was temporarily suspended and/or terminated at any time between 2013 and the present, please identify each user by username, real name and contact information, date of suspension and/or termination of account, and reason for suspension and/or termination."  Mr. Anglin objected to this interrogatory on the

same grounds as Interrogatory No. 1, as well as infringing on the first Amendment right to anonymous speech of third parties. (Dkt. No. 113-3 at 14.)  He supplemented this response by stating that he lacked personal knowledge of responsive information and that the information was otherwise publicly available or equally available to Ms. Gersh.  (*Id*. at 14-15.)

Mr. Anglin's counsel discussed the claimed relevance of this request during the meet and confer conference on August 21, 2018, and Ms. Gersh's counsel failed to provide any explanation of evidentiary relevance beyond stating it generically went to Mr. Anglin's "credibility."  (*See* Wolman Decl. at ¶ 16.)  Ms. Gersh's argument in the motion is no more illuminating.  Whether Mr. Anglin has enforced a disclaimer regarding non-violence on the Daily Stormer forums has no bearing on any claim or defense in this case.  Even if he has never enforced this disclaimer against anyone, this fact would have no tendency to make him more or less likely to be liable for any of Ms. Gersh's legal claims.  Instead, the interrogatory is a fishing expedition for the purpose of obtaining the names and identities of third parties who express views Ms. Gersh does not like, regardless of whether such persons said anything about Ms. Gersh herself.  Particularly in the absence of any form of protective order, this interrogatory would allow for the disclosure of personal information of third parties, which is not remotely proportionate to the needs of the case.

Ms. Gersh also claims that Mr. Anglin has not adequately asserted the legal basis for his objection based on the First Amendment right to anonymous speech of third parties.  "[A] long, unbroken line of [the Supreme] Court's precedents holds that privacy of association is protected under the First Amendment." *Doe v. Reed*, 561 U. S. 186, 240, (2010) (Thomas, J., dissenting)).  Moreover, Ms. Gersh raised the same objection in her responses to Mr. Anglin's First Set of Interrogatories.  She objected, without any citation to authority, to interrogatories "to the extent that it

seeks information protected by the rights to privacy found in the U.S. and Montana Constitution . . . ."  (**Exhibit 5** at Response No. 1; *see also id*. at Response No. 6 (justifying redactions to response by citing Art. 2, Section 10 of Montana Constitution without explanation); Response No. 11 (referring vaguely to right of privacy without explanation); *and see* Response No. 13 (referring to privilege not to disclose under First Amendment without providing factual basis).)   Ms. Gersh cannot claim this assertion of a privilege not to disclose information under the First Amendment is inadequate when she did recognized and invoked it herself.

### 3.3   An Award of Fees is Not Appropriate Under Fed. R. Civ. P. 37(a)

Even if the Court grants Ms. Gersh's motion to compel in its entirety, it should not award Ms. Gersh any attorneys' fees incurred in drafting the motion.  Fed. R. Civ. P. 37 (a)(5) provides for a mandatory award of attorneys' fees to a prevailing party in a motion to compel if the other party's conduct necessitated the motion.  However, "the court *must not* order this payment if" the moving party failed to meet and confer prior to filing the motion or the opposing party's response was "substantially justified."  *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(ii).  Whether a party was "substantially justified" in making, responding to, or objecting to a discovery request depends on whether reasonable people could differ as to the matter in dispute.  *See United States EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006); *see also Blair v. CBE Group, Inc.*, 2014 U.S. Dist. LEXIS 131228, *4 (S.D. Cal. Sept. 16, 2014).

For the reasons explained in Section 3.2, *supra*, reasonable people could differ over the adequacy of Mr. Anglin's responses and objections.  Ms. Gersh's discovery requests primarily seek information that is irrelevant to this litigation and appear, instead, to be fishing expeditions for the SPLC's other activities.  To the extent any interrogatories seek relevant information, Mr. Anglin provided responses that are

proportionate to the needs of the case and the objections were well-founded, even if this Court ultimately overrules them. The lack of a protective order, despite Mr. Anglin's counsel providing reasonable terms for one, further increases the burden of providing all the requested information, as many interrogatories seek Mr. Anglin's personal information, the uncontrolled revelation of which would put him at physical risk. And finally, the other responses contested by Ms. Gersh should be deemed substantially justified where she engaged in identical, reciprocal conduct.

Even assuming, *arguendo*, that no reasonable person could find Mr. Anglin's objections and responses meritorious, the Court still must at the very least not grant Ms. Gersh any fees incurred in connection with discussions of Interrogatory Nos. 1 and 5; as explained in Sections 3.1 and 3.5, *supra*, Ms. Gersh failed to meet and confer as to the substance of these requests, thus failing to comply with Fed. R. Civ. P. 37 and L.R. 26.3, and precluding any fees due to Rule 37(a)(5)(A)(i).

### 3.4 Sanctions are Not Appropriate Under Fed. R. Civ. P. 37 (b)

Ms. Gersh briefly notes that she requests the Court impose sanctions under Fed. R. Civ. P. 37(b) for violating the Magistrate Judge's July 13, 2018 order granting in part Mr. Anglin's motion for a protective order. This request is premised on a misreading of the Court's order, and of Rule 37(b). That rule provides that "[i]f a party . . . fails to obey an *order to provide or permit discovery*," the court may issue sanctions. Fed. R. Civ. P. 37 (b)(2)(A) (emphasis added).

First, the Court's July 13 order merely granted Mr. Anglin's motion for a protective order, effectively granting him additional time to respond to Ms. Gersh's discovery requests. Mr. Anglin did not bring his motion under Rule 26(f), the only kind of Rule 26 motion contemplated under Rule 37(b)(2), and so the July 13 order was not "an order to provide or permit discovery."

- 17 -

Second, while the July 13 order stated that Mr. Anglin was required to "provide complete responses" to the discovery requests, this did not mean that the Court ruled on and overruled Mr. Anglin's objections; it could not have, since the bases for the objections were not put at issue or otherwise argued.[9] (*See* Dkt. Nos. 100-102.)  As discussed above, responses under Rule 33 include objections.  The Court ordered that the responses provide something more than the initial objections. That is precisely what Mr. Anglin's supplemental responses to the 1st Rogs contained.

## 4.0    CONCLUSION

For the reasons stated above, the Court should deny Ms. Gersh's motion to compel in its entirety.

---

[9] For the same reasons the delay should be excused under Fed. R. Civ. P. 33(b)(4), the Court should not impose sanctions for this *de minimis* failure to comply with its order, as the failure was not willful and was immediately remedied

Dated: November 14, 2018.          Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Mathew M. Stevenson
Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801

*Attorneys for Defendant,*
*Andrew Anglin*

RANDAZZA | LEGAL GROUP

Case No. 9:17-cv-50-DLC-JCL

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 14, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza