John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
Jim Knoepp*
Elizabeth Littrell*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
beth.littrell@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW ANGLIN, publisher of the *Daily Stormer*,<br><br>    Defendant. | Case No.: 9:17-cv-00050-DLC-JCL<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT ANDREW ANGLIN TO RESPOND TO REQUESTS FOR PRODUCTION AND FOR SANCTIONS** |

Andrew Anglin launched a coordinated campaign of anti-Semitic harassment at Tanya Gersh and her family beginning in December 2016. Plaintiff filed this lawsuit just several months later, but more than a year and a half after she filed suit, and a full seven months after she served her first request for documents,

Page 1

Defendant still has yet to produce even a single responsive document, apart from a handful of documents he or his counsel downloaded from the internet. This Motion To Compel results from Defendant's continued pattern of evasion and obstruction, none of which is adequately justified or explained in Defendant's opposition to the motion.

Plaintiff filed her Complaint on April 18, 2017. Defendant first attempted to avoid service, then attempted to avoid the litigation. After the Court rejected those efforts, Plaintiff was finally able to begin discovery and served her Request for Documents and Things to Defendant on June 7, 2018. Seven months later, Defendant continues to evade his obligation to participate in discovery in any meaningful and truthful way. To date, Plaintiff, through counsel, has produced only publicly available articles downloaded off the internet. He has not produced a single email, text message, instant message, internet communication, note, record, or other communication or document. Indeed, and as confirmed by a recent interrogatory response requiring Plaintiff to detail all steps he has taken to comply with the document requests, it appears that he has not yet conducted *any* search for *any* responsive paper or electronic documents or direct his agents at the Daily Stormer to do so. That interrogatory response is attached as Exhibit A.

## LEGAL STANDARD

A party that has been unable to obtain requested information absent court involvement may move to compel disclosure. Fed. R. Civ. P. 37(a)(3)(A). "The

moving party bears the burden of showing that the discovery sought is 'relevant' …and the party resisting discovery bears the burden of showing that nondisclosure is appropriate." *Cintron v. Title Fin. Corp., Insured Titles, LLC, & John Does 1-5, Defendants.*, No. CV 17-108-M-DLC, 2018 WL 6605901, at *1 (D. Mont. Dec. 17, 2018) (citations omitted). Where the record is clear that a party repeatedly flouts even his basic discovery obligation, including violating court orders, sanctions are appropriate. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); *see also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994) (upholding sanctions based on failure to search for responsive documentation and acting in complete disregard of litigation responsibilities).

## ARGUMENT AND AUTHORITY

### I. Defendant Has Failed To Meaningfully and Truthfully Comply With Discovery Obligations.

As set out in her initial brief in support of this motion, Plaintiff's document requests are targeted at obtaining evidence, and information as to the existence and location of evidence, that may be used at trial. Dkt. No. 124 at 13-16. The Federal Rules impose on every party a duty to participate in discovery truthfully, meaningfully and voluntarily without court instructions and on the certifying attorney to make "a reasonable inquiry" to ensure that the responses and objections are "consistent with these rules." Fed. R. Civ. P. 26(g). The record in this case

clearly demonstrates that Defendant and his counsel have wholly failed to meet these basic obligations.

        A. <u>Defendant refuses to conduct an adequate search for requested documents.</u>

On June 7, 2018, Plaintiff served on Defendant her First Requests for Production of Documents with direction that Defendant was to produce all responsive documents in his possession, custody, or control. Dkt. No. 124-1 at 8. "To be deemed within a party's possession, custody, or control, the party needs actual possession, custody, or control or the party must have the legal right to obtain the documents on demand." *Dye v. BNSF Ry. Co.*, 2015 WL 4924525, at *1 (D. Mont. Aug. 18, 2015). *See also United States v. Int'l Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand"). "[I]n some cases, even where a party lacks a strict legal right to the material, a party can be required to produce material that it has the 'practical ability to obtain.'" *DLJ Mortg. Capital, Inc. v. Lemon Creek Ranch, LLC*, 2013 WL 12134036, at *2 (D. Mont. Sept. 3, 2013) (citations omitted). "[I]f a responding party contends that documents are not in its custody or control, the court may require more than a simple assertion to that effect.'" *Id.* (quoting *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012)). It may require proof that effort was made to obtain the documents. *Id.*

Because we doubted Defendant's good faith in searching for responsive documents, Plaintiff served an interrogatory on Defendant to ascertain what steps he had taken to comply with the basic discovery obligation to search for documents. *See* Exhibit B. Plaintiff provided clear and unambiguous direction to Defendant to describe "every step you have taken to locate and/or preserve documents responsive to Plaintiff's First Requests for Production" in order to avoid anticipated evasion. True to form, Defendant raised illogical boilerplate objections. Moreover, his response shows a shocking disregard of, and failure to comply with, his obligations under the federal rules. His complete responses are as follows:

a) Defendant "does not recall" when he received and reviewed Plaintiff's document requests or his responses:

b) Defendant "does not recall" the identity of any persons with whom he communicated about those requests, other than counsel;

c) Defendant "does not recall" the physical locations searched; and

d) Defendant "is not personally aware" of physical locations anyone on his behalf searched for responsive documents.

Defendant completely ignored Plaintiff's direction to describe the electronic locations, and the method used to search, for potentially responsive electronic documents; efforts taken to obtain documents that he has the legal right to obtain; and how he reviewed and approved his written responses. *See* Exhibit A.

B. <u>Defendant refuses to truthfully comply with discovery requests.</u>

Defendant repeatedly attests (under oath) to the non-existence of documents. Plaintiff has valid reasons to suspect these assertions are false. In Plaintiff's supportive brief to compel Defendant to answer interrogatories, she showed the Court that Defendant was untruthful regarding the existence of bank accounts, *see* dkt. no. 120 at 5-6, and his communications with third parties who sent Plaintiff harassing communications. *See* Dkt. No. 113 at 24-25. Now, in his response to document requests, Defendant continues to play the same evasive, dishonest game.

For example, in response to Request No. 79, which asks for Defendant's phone records from November 1, 2016 to June 7, 2018, dkt. no. 124-1 at 23, Defendant asserted that he does not have, and cannot obtain, responsive documents. Dkt. No. 124-4 at 51. This representation appears facially untruthful. Record evidence appears to confirm as much. On January 2, 2019, Plaintiff received documents from GoDaddy.com, LLC in response to a subpoena which list at least one phone number (with an Ohio area code) for Defendant. *See* Exhibit C. Because Defendant has the legal authority to request and obtain phone records from his current or prior phone carrier, such documents are within his possession, custody, and control, *see Dye*, 2015 WL 4924525, at *1, and the veracity of his responses are appropriately suspect.

Even the documents Defendant produced demonstrate his refusal to truthfully and meaningfully comply with discovery obligations. For example, in

Page 6

response to Request No. 34, which asks for "[a]ll documents providing instructions on the style, tone, or format of articles posted or to be posted on the Daily Stormer's website," Defendant fails to produce a Daily Stormer style guide, instead producing a Huffington Post article about a blog post that quotes the Daily Stormer style guide. *See* Dkt. No. 124-4 at 26; *see also* Exhibit D.

    These are but a few examples of the way in which Defendant appears to thumb his nose at his litigation obligations and this Court's authority. It turns the discovery process on its head and drains judicial resources to require Plaintiff to first prove that Defendant has documents or access to documents and seek a Court order before Defendant will produce them. The Court should not countenance such disregard and disrespect for the judiciary and litigation process. *See Morgal v. Jacobs*, No. CIV 12-280-TUC-CKJ, 2013 WL 11310635, at *1 (D. Ariz. July 2, 2013) (noting that "the spirit of the [discovery] rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . .") (citing *Burlington Northern & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1148–49 (9th Cir.2005)).

    C. <u>Defendant refuses to provide documents that fall within Plaintiff's requests.</u>

    Throughout her requests, Plaintiff seeks all documents that reflect "communications," specifically defined in "the broadest possible sense and means any transmission of information in the form of facts, ideas, inquiries, or otherwise,

in any format, including, without limitation, electronic communications, e-mails, text messages, private messages that utilize services associated with websites or web domains, facsimiles, telephone communications, correspondence, exchanges of written or recorded information, or face-to-face meetings." Dkt. No. 124-1 at 5. Defendant ignores this definition by producing only publicly available information or responding that Plaintiff can conduct her own internet search.

      Defendant's refusal to provide documents that fall within Plaintiff's requests frustrates the discovery process and, yet again, shows Defendant's failure to meaningfully and truthfully comply with his obligations. Obviously, Plaintiff cannot find Defendant's private communications through an internet search. In addition, Plaintiff understands that the Daily Stormer has a myriad of communication channels all of which are within Defendant's control, and none of which are accessible to Plaintiff.

## II.   Defendant's "Boilerplate" and "Subject To" Objections and Arguments Are Meritless and Improper.

      Plaintiff will not repeat her arguments showing that "boilerplate" objections are inappropriate, *see* dkt no. 124 at 13-19, but shows that the arguments Defendant uses to "support" these objections are meritless. Defendant raises two primary arguments to justify his objections: 1) Plaintiff did the same thing; and 2) the requested information "does not inform the dispute" and therefore is an abusive "fishing expedition." The former is inaccurate. The latter is unavailing.

Defendant's claim that Plaintiff "engaged in identical conduct in responding to Mr. Anglin's discovery responses," dkt. no. 127 at 5, is blatantly inaccurate. Contrasting Defendant's failure to even search for documents and refusal to produce documents more than five months after asserting that he would some day do so, Plaintiff communicated the timeframe within which she expected her document production to be completed (six weeks); conducted an exhaustive search for responsive documents; engaged a third party company to search electronics within her control; and withheld only very limited and fully identified documents for valid reasons. *See* Exhibit E. Moreover, to date she has produced nearly 1,000 pages of responsive documents.

With respect to preserving objections, unlike Defendant, Plaintiff properly did so by describing the way in which she was interpreting the request and/or limiting her response. For example, where Plaintiff agreed to produce documents subject to a privilege or a duplicative request, she clearly intended to, and did, produce all responsive documents that were not privileged or duplicative. Where Plaintiff raised objections not based on a privilege or a duplicative request, she set out how she was limiting the scope of the request. For example, where she objected to Request No. 62 for all social media posts, she responded that "[s]ubject to the foregoing objections, Plaintiff will produce all communications she sent from December 16, 2016, through April 18, 2017, that relate to the Incident." Dkt. No. 117-6 at 40.

In contrast, Defendant agreed to provide, or claimed lack of responsive documents, "subject to" the blanket litany of boilerplate objections, without limitation. As set out below, Plaintiff's "subject to" responses are proper; Defendant's responses are not.

In *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13-CV-1946-LAB WVG, 2014 WL 3388871, at *2–3 (S.D. Cal. July 9, 2014), the court explained that "subject to" responses and/or the purported reservation of rights based on boilerplate objections "is improper and ultimately has the effect of waiving [Party]'s objections to the discovery requests" because the "practice is confusing and misleading. Moreover, it has no basis in the Federal Rules of Civil Procedure." (citations omitted).  Unlike Plaintiff's responses, which limit objections to privilege or stated the scope of the responsive documents to be provided, Defendant's conditional responses based on blanket and boilerplate objections obscure potentially discoverable information. *See Herrera v. AllianceOne Receivable Mgmt., Inc.*, No. 14-CV-1844-BTM (WVG), 2016 WL 1182751, at *3 (S.D. Cal. Mar. 28, 2016) ("Defendant has included a conditional response in its objection, which leaves Plaintiffs and the Court guessing as to whether all responsive documents will be produced. Conditional responses and/or the purported reservation of rights by a responding party are improper and ultimately have the effect of waiving the objections to the discovery requests.").

Finally, Defendant's arguments that the requests "do not inform the dispute" and/or are "fishing expeditions" are misguided and unavailing. Stripped of Defendant's histrionics, these arguments concern relevancy. For purposes of discovery, relevance is expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010). As this Court has explained "[i]f the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action." *Cintron*, 2018 WL 6605901, at *1 (citing *Moe*). In addition, Rule 26 permits the discovery of information which may relate "to the credibility of a witness or other evidence in the case[.]" Schwarzer, Tashima & Wagstaff, Federal Civil Procedure Before Trial § 11.624. "[T]he party resisting discovery bears of the burden of showing that the discovery should not be allowed." *Marshall v. The Billings Clinic*, No. CV-14-93-BLG-SPW-CSO, 2015 WL 7574758, at *4 (D. Mont. Nov. 25, 2015).[1]

Plaintiff seeks evidence, or information as to the location of evidence, for use at trial. Without belaboring the obvious based on a review of the requests, this lawsuit is grounded in the torts of intentional infliction of emotional distress,

---

[1] Of note, Defendant has refused to authenticate any of the forum threads that Plaintiff was previously able to pull from the Daily Stormer forum thread, which is password-protected. *See* Exhibit F.

Page 11

invasion of privacy, and intimidation – claims that require, among other elements, that the harm alleged "was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 428 (Mont. 1995). Plaintiff has requested documents that, without limitation, concern the Court's subject matter jurisdiction; relate to Defendant's trolling activities against Plaintiff and others, knowledge of harm caused by trolling, usage of aliases to participate and encourage harassment against Plaintiff, disregard of policies related to abusive activities via electronic medium, knowledge of the falsity of the bases for his troll-storm against Plaintiff, and his intent with respect to his actions; any efforts he took to mitigate foreseeable consequences; his encouragement to harm and harass Plaintiff; and information relevant to punitive damages. Objections that these requests "do not inform the dispute" or are mere "fishing expeditions" are not based in the law or facts of this case, but instead reflect nothing other than Defendant's continuing obstruction.

**III.  Stored Communications Act Does Not Prohibit Private Persons From Obtaining Records Or Information Related To A Website Subscriber.**

In response to requests for postings relevant to this litigation, along with his litany of boilerplate objections, Defendant raises the Stored Communications Act as additional justification for his refusal to provide the requested documents. This argument is unavailing.  Under 18 U.S.C.A. § 2702(c)(6), "[a] provider described in subsection (a) may divulge a record or other information pertaining to a

subscriber to or customer of such service (not including the contents of communications covered by subsection (a)(1) or (a)(2)) to any person other than a governmental entity." Subsection (a) of this section applies to "a provider of remote computing service or electronic communication service to the public." *Id.* Plaintiff seeks documents from Defendant related to the online forum he provides for his users. Given the plain language of the statute, Defendant's contention that the SCA prohibits Plaintiff from seeking "personally identifying information of third parties" is an incorrect statement of law.

## IV. Section 27-1-221 of the Montana Code Is Substantive In Nature And Otherwise Governs The Determination Of Punitive Damages In This Case.

Defendant argues that he does not need to provide requested documents related to his assets while admitting that the law in this state allows for discovery of pre-judgment asset. Instead, he argues that this Court should depart from established precedent, bifurcate the trial and order a second round of discovery prior to the trial on punitive damages. Defendant states no authority to support his assumption that Section 27-1-221 of the Montana Code is procedural. Plaintiff reasserts that the entire statute is substantive in nature. *See, e.g.*, *Capital Sols., LLC v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 695 F. Supp. 2d 1149, 1152 (D. Kan. 2010) (holding that the entire two-step process for determining punitive damages in Kansas is substantive in nature).

Further, Defendant dismisses prior decisions of this court that the statute permits a party to take prejudgment asset discovery by claiming that those decisions were written prior to the revision of Rule 26(b) of the Federal Rules of Civil Procedure. However, as asset discovery is still relevant to Plaintiff's claim for punitive damages, it is unclear why Defendant assumes that the revision of Rule 26 bears on the continued viability of prior case law. *See*, *e.g.*, *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 330 (D. Mont. 1988) ("Ordinarily, Fed. R. Civ. P. 26(b) does not permit the discovery of facts concerning a party's financial status . . . Where a claim for punitive damages is made, however, a party's financial status is relevant to the subject matter of the action and thus a proper subject of pretrial discovery."); *see also Moe v. System Transport, Inc.*, 270 F.R.D. 613, 621 (D. Mont. 2010) (finding that plaintiff was entitled to prejudgment asset discovery since Montana law permits consideration of a defendant's net worth in assessing an appropriate amount of a punitive damage award).

## CONCLUSION

For the foregoing reasons, the Court should overrule Defendant's objections, order him to provide responsive documents to Plaintiff's First Requests for Production or assurances no further information exists and to pay attorneys' fees associated with bringing this action. Plaintiff also requests the Court enter sanctions against Defendant.

DATED January 7, 2019.

/s/ John Morrison
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Montana Federal Local Rules of Procedure, I certify that the foregoing brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word 2018 for Mac is **3,104** excluding caption and certificate of compliance.

DATED January 7, 2019.

/s/ John Morrison
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff