IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH,<br><br>            Plaintiff,<br><br>vs.<br><br>ANDREW ANGLIN,<br><br>            Defendant,<br><br>and<br><br>STATE OF MONTANA,<br><br>            Defendant-Intervenor. | CV 17-50-M-DLC-JCL<br><br><br>ORDER |

Plaintiff Tanya Gersh has moved pursuant to Federal Rule of Civil
Procedure 37 to compel Defendant Andrew Anglin to provide complete responses
to her first set of interrogatories.[1] Gersh also seeks fees and costs under Rule 37.
Gersh's motion to compel is granted in part and denied in part as set forth below.

## I.    Legal Standard

The Court has broad discretion to manage discovery. *Hunt v. County of*

---

[1] Gersh has also filed a motion to compel Anglin to respond to her first requests
for production. (Doc. 123). That motion will be addressed in a separate order.

*Orange*, 672 F.3d 606, 616 (9th Cir. 2012). Parties are generally entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

For discovery purposes, relevance is construed broadly to include any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). See also *Dewidar v. National Railroad Passenger Corp.*, 2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) (applying *Oppenheimer*'s relevance standard under current version of Rule 26(b)(1)). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Rule 37 of the Federal Rules of Civil Procedure provides a mechanism by which a party seeking discovery may request an order compelling the opposing party to fulfill its discovery obligations." *Carlson v. Fedex Ground Package*

2

*System, Inc.*, 2012 WL 4760889 *1 (D. Mont. Sept. 12, 2012). If a party fails to respond to interrogatories or requests for production, the party seeking discovery may move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B); *Carlson*, 2012 WL 47608889 *1. "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

While the moving party has the burden of showing that the discovery sought is relevant, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Nei v. Travelers Home and Marine Insurance* Company, 326 F.R.D. 652, (D. Mont. 2018). The party resisting discovery bears "the burden of clarifying, explaining, and supporting its objections" and showing why the discovery should not be allowed. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## II.  **Background**

Gersh filed this action on April 18, 2017, asserting state law claims against Anglin for invasion of privacy, intentional infliction of emotional distress, violations of Montana's Anti-Intimidation Act, and punitive damages. Gersh

3

sought and obtained two extensions of time to effect service, and on November 14, 2017, defense counsel entered an appearance on Anglin's behalf. Approximately two weeks later, Anglin moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b) for lack of subject matter jurisdiction, lack of personal jurisdiction based on insufficient service of process, and failure to state a claim for relief. On December 15, 2017, the Court issued an order staying discovery pending resolution of the of the jurisdictional challenges raised in Anglin's motion to dismiss. (Doc. 41). Those challenges ultimately failed, and on May 24, 2018, the Court issued an order terminating the discovery stay. (Doc. 95).

On June 7, 2018, Gersh served her first set of interrogatories and requests for production on Anglin. (Docs. 113-1; 124-1). As provided in Fed. R. Civ. P.33(b)(2), Anglin's responses were due 30 days later. (Doc. 113-2; 124-2). On the July 9, 2018 deadline, Anglin served his initial discovery responses consisting entirely of objections and filed a motion for a protective order seeking a 60-day extension of time to provide substantive responses. On July 13, 2018, the Court entered an order giving Anglin until August 10, 2018, to provide complete responses to Gersh's interrogatories and until August 27, 2018, to provide complete responses to her requests for production. (Doc. 103).

Anglin served his supplemental responses to Gersh's interrogatories on

August 11, 2018 – missing the extended deadline by one day – and timely served

his supplemental responses to Gersh's requests for production on August 27, 2018.

The parties unsuccessfully met and conferred regarding the accuracy and

completeness of Anglin's supplemental responses, and Gersh filed the pending

motions to compel.

## III.   <u>Discussion</u>

    Gersh's First Set of Interrogatories contained twelve separate interrogatories.

Of those, Gersh moves to compel Anglin to immediately answer in full, and

supplement as necessary his answers to, Interrogatories 1-11.[2] (Doc. 112, at 1).

Gersh argues Anglin's objections to these interrogatories are waived due either to

untimeliness or their boilerplate nature. Even if they are not waived, Gersh argues

Anglin's objections are unavailing on the merits. Finally, to the extent Anglin has

provided substantive answers, Gersh maintains those answers are demonstrably

incomplete and evasive.

### A.   **Timeliness of Objections**

    Gersh first argues that Anglin has waived all grounds for any objections

---

[2] In the text of the motion itself, Gersh does not refer to Interrogatories 1 or 5.
(Doc. 112, at 1). Nevertheless, because both parties have briefed the motion as if it
also pertains to Interrogatories 1 and 5, the Court will construe the motion
accordingly.

asserted after the August 10, 2018, extended deadline for providing complete answers to her interrogatories. This argument relates specifically to Interrogatories 6, 7, and 9.

As noted above, Anglin served his supplemental answers and objections to Gersh's first set of interrogatories on August 11, 2018 – one day after the extended deadline established by the Court. Anglin's supplemental answers reiterated the objections set forth in his initial responses, and also asserted a new ground for failing to answer Interrogatories 6, 7, and 9. In particular, Anglin indicated that he would provide responsive information to these three interrogatories "subject to an appropriate protective order that excludes any person affiliated with the Southern Poverty Law Center from obtaining such information due to the dangerous propensities of its members." (Doc. 113-3, at 9-13). Anglin argues that because the Southern Poverty Law Center is a non-profit advocacy organization, its non-attorney staff are not bound by the rules of professional conduct. Anglin fears that without a protective order, those non-attorney staff members might be able to access and misuse the information provided in his discovery responses.

Gersh argues Anglin waived this objection because it was not timely raised. Under Fed. R. Civ. P. 33(b)(4), any ground for objecting to an interrogatory "not stated in a timely objection is waived unless the court, for good cause, excuses the

failure." Local Rule 26.3(a)(4) similarly provides that failure to object to an interrogatory "within the time fixed by the rules, or within the time to which the parties have agreed, constitutes a waiver of any objection." Consistent with these rules, the Ninth Circuit recognizes "that a failure to object to discovery requests within the time frame required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). See also *Usrey v. Deyott*, 2013 WL 2561591, *1 (D. Mont. June 11, 2013).

Anglin does not dispute that his supplemental answers and objections to Gersh's interrogatories were one day late, which means that his newly raised objections were untimely. Instead, Anglin argues Gersh was not prejudiced by the minimal delay and asks the Court to excuse his untimely objections for good cause. In a supporting declaration, defense counsel states that because Anglin does not live in the United States it was difficult to coordinate with him on his discovery responses. (Doc. 117-1, ¶ 4). But Anglin has claimed international residency since this case was filed in April 2017, thereby giving him more than enough time to establish an effective means of communicating with his attorneys. In addition, defense counsel explains that the primary paralegal for his office had recently left the firm, further complicating the logistics of having Anglin's discovery responses properly executed in time. (Doc. 117-1, ¶ 6). Such changes in law office staff are

not uncommon, however, and the Court finds that under the circumstances Anglin has not established good cause for failing to meet the extended deadline. Because Anglin did not serve his supplemental responses to Gersh's interrogatories until after the August 10, 2018, deadline for doing so, his newly raised objections to Interrogatories 6, 7, and 9 are untimely.

In addition, it is worth noting that Anglin had ample time to file a motion seeking such a protective order instead of refusing to answer Gersh's interrogatories without one. Anglin was served with Gersh's interrogatories on June 7, 2018, and had until August 10, 2018 to provide complete responses under the extended deadline established by the Court. Anglin could have moved for a protective order during that two-month period, but for whatever reason did not do so. Thus, in addition to being untimely, Anglin's newly raised objections to Interrogatories 6, 7, and 9 are waived.

### B.    Boilerplate Objections

Gersh next argues that virtually all of Anglin's objections should be considered waived due to their boilerplate nature.

"The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). "The recitation of 'boilerplate objections or blanket refusals' therefore is not consistent with the requirements of the discovery

rules." *Nei v. Travelers Home and Marine Insurance Company*, 326 F.R.D. 652, 656 (D. Mont. 2018) (quoting *Burlington N. v. Santa Fe Ry. Co. v. U.S. Dist. Ct.,* 408 F.3d 1142, 1149 (9th Cir. 2005)). The Local Rules similarly require that the party resisting discovery follow any objections with "a statement of reasons," thereby requiring that objections be made with specificity. The objecting party bears the burden of showing that a discovery request is improper. *Nei*, 326 F.R.D. at 656. "Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Nei*, 326 F.R.D. at 656-57 (quoting *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1161435, *2 (D. Mont. 2012)). Nevertheless, even when the objecting party fails to carry its burden, the Court has an obligation to review the discovery requests to ensure that they are not frivolous. *Nei*, 326 F.R.D. at 657 (citing *Moreno Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 57 (D.P.R. 2011)).

In his initial objections and supplemental answer and objections, Anglin lists five general objections to all twelve interrogatories and then incorporates those objections by reference into each specific response. He objects generally to each interrogatory to the extent it (1) seeks to impose duties on Anglin beyond the scope of the Federal Rules of Civil Procedure or the Local Rules; (2) seeks confidential, proprietary, or sensitive business information; (3) seeks information protected by

the attorney-client privilege or work product doctrine; (4) seeks information not within his possession, custody, or control; (5) is vague, ambiguous, overly broad, or unduly burdensome.

Anglin makes no attempt to explain how these general objections relate to particular interrogatories or are supported by the particularized facts. Without some such explanation, these objections are so general that the Court cannot meaningfully evaluate them on their merits. Accordingly, the Court finds they are waived.

Anglin additionally objects to Interrogatories 1-11 individually on the following ground: "Defendant objects to this interrogatory as irrelevant and disproportionate to the needs of the case, as it makes no attempt to narrow itself to information related to any claim or defense of any party." (Doc. 113-3, at 4-15). Anglin further objects Interrogatories 1, 2, and 9 on the basis that each one is "overbroad and unduly burdensome, as it is not limited in scope to any claim or defense, or even the general subject matter of this litigation." (Doc. 113-3, at 4-5; 12). Anglin similarly objects to Interrogatory 4 "as overly broad and unduly burdensome," and Interrogatories 5-11 as "as vague, overbroad and unduly burdensome." (Doc. 113-3, at 7-15).

To the extent Anglin does not explain how these objections relate to the

individual interrogatories at issue or provide any supporting argument, the objections lack the specificity required under the federal and local rules. Such non-specific objections asserted without any further explanation are insufficient, and the Court considers them waived. While most of Anglin's objections fall into this category, he does provide some additional specificity in his objections to Interrogatories 3, 5, 9, 10, and 11. To the extent Anglin provides sufficient detail, the Court does not consider those objections waived. Likewise, Anglin provides supporting argument for some of his otherwise boilerplate objections in his brief in response to the motion to compel. To the extent Anglin has done so, the Court exercises its discretion in favor of considering Anglin's objections on the merits.

In a footnote, Gersh argues that Anglin's practice of first objecting to each interrogatory and then responding "subject to" his various objections is confusing and evasive, and provides a basis for considering all of Anglin's objections waived. (Doc. 113, at 14). Courts within this district have previously disapproved the practice of providing boilerplate objections to discovery requests and then responding because doing so confuses the issue of "whether the requested information was provided in full." *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1161435 *4 (D. Mont. Apr. 6, 2012). While this Court similarly disapproves the practice and Anglin's use of it here, the Court will not deem Anglin's objections

11

waived on this basis. Thus, the Court addresses the merits of any unwaived objections and the sufficiency of Anglin's responses to each interrogatory below.

## C.    Individual Interrogatories

**Interrogatory 1:** List any and all usernames under which you posted any comments in the forums for the Daily Stormer.

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived as set forth above.

In his response brief, Anglin maintains this interrogatory seeks information that is not relevant, and is thus overbroad. He argues that Gersh's claims are premised on statements he allegedly authored on the Daily Stormer website itself, and his conduct on Daily Stormer discussion forums is thus irrelevant. Anglin further argues the interrogatory seeks information that is not relevant because it is not limited to comments about Gersh or the time period during which the alleged "troll storm" took place. (Doc. 117, at 10).

Whether Anglin made comments on Daily Stormer discussion forums under different usernames may shed light on the extent to which he substantially assisted or encouraged the campaign of harassment against Gersh, and is thus relevant to the theory of liability in this case. But the Court agrees that because the

interrogatory is not limited to the time period during which the alleged "troll storm" took place, it seeks information that is irrelevant and is thus overbroad.

In her Complaint, Gersh alleges that Anglin posted a series of thirty articles related to her on the Daily Stormer, during which time she and her family received hundreds of threatening and harassing anti-Semitic communications. The first of these articles was posted on December 16, 2016, and the last was posted on February 3, 2017. (Doc. 1, at 20 & 57). While the Complaint does not specify when the alleged "troll storm" may have come to an end, it does not allege that the "troll storm" is ongoing either. Because Interrogatory 1 does not contain any time limitation, it is overbroad. In light of the fact that the last Daily Stormer article identified in the Complaint was posted on February 3, 2017, and Gersh does not allege that the troll storm is ongoing, the Court finds that this interrogatory should be limited to the time period from November 1, 2016 through March 1, 2017. The interrogatory must also be limited to postings relating in any manner to Gersh and her family.

Subject to his objections, Anglin provides the following answer: "Andrew Anglin." Because Anglin answered subject to his various objections, it is not possible to determine whether his answer is full and complete or whether he has withheld information based on those objections, all of which are either waived or

13

overruled. To the extent Anglin has additional information that is responsive to this interrogatory for the time period identified above, he must provide it.

>**Interrogatory 2:** Identify all social media accounts, including the name of the social media platform and the username or handle associated with the account, from which you have posted any messages, whether publicly or privately, between November 2016 and the present.

As he did with Interrogatory 1, Anglin objects to Interrogatory 2 on the grounds that it is irrelevant, disproportionate to the needs of the case, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived as set forth above.

In his response brief, Anglin argues that the interrogatory seeks information that is not relevant, and is thus overbroad. He contends the information sought is irrelevant because Gersh's claims are premised on his alleged conduct on the Daily Stormer website, not his social media activity. (Doc. 117, at 11).

Contrary to Anglin's argument, information about his social media accounts is relevant to Gersh's theory of liability, and may shed light on such issues as whether he sent any of the harassing messages Gersh received on Twitter and via other social media platforms, and whether he called for a "troll storm" knowing that Gersh would be harmed as result. Anglin's relevancy objection is thus overruled.

Consistent with the analysis of Interrogatory 1, however, the Court finds that

14

Interrogatory 2 is overbroad because it seeks information between November 2016 "and the present." The Court finds that Interrogatory 2 should be limited to the time period from November 1, 2016 through March 1, 2017.

Subject to his objections, Anglin provides the following answer: "GAB: @AndrewAnglin; Discord: AndrewAnglin (Defendant no longer uses this app)." Once again, because Anglin answered subject to his objections, it is not possible to determine whether he has withheld responsive information. To the extent Anglin has additional information that is responsive to this interrogatory for the time period identified above, he must provide it.

> **Interrogatory 3:** Identify each and every person who you believe participated in the "troll storm" (as dubbed in your December 16, 2016, article entitled "Jews Targeting Richard Spencer's Mother For Harassment and Extortion – Take Action!") against Tanya Gersh and describe the reason for your belief, including any interactions that you have had with each identified person.

Anglin objects to this interrogatory on boilerplate grounds of relevancy and proportionality, but provides some additional specificity for his third objection: "Defendant objects to this interrogatory as overbroad and unduly burdensome, as the portion of the Interrogatory requesting a narrative of 'any interactions' with third parties is not limited by time or scope." (Doc. 113-3, at 6).

To the extent this interrogatory asks Anglin to identify each person who he believes participated in the troll storm and to briefly describe the reason for that

belief, it is not unduly burdensome or overbroad. The Court agrees with Anglin, however, that asking him to describe "any interactions that you have had with each identified person" without any substantive or chronological parameters is overly broad.

In his supplemental response, Anglin identified one individual by name and stated that he "lacks personal knowledge of the identity of any other such alleged participants." (Doc. 113-3, at 6). As to the reason for his belief, Anglin stated that the individual "publicly post [*sic*] his call; otherwise, no such alleged participant provided Defendant with his or her identity." (Doc. 113-3, at 6).

Gersh argues this response is, at best, demonstrably incomplete. Gersh submits a copy of the Daily Stormer comments page for the article "Operation Whitefish: New List of Collaborators with Jew Racketeers – TAKE ACTION" published on December 23, 2016. (Doc. 113-5). Gersh points to comments from readers claiming to have sent harassing communications to her or members of her family, and argues Anglin's supplemental response is demonstrably incomplete because he did not list any of these individuals as possible participants in the troll storm.

This interrogatory asks Anglin to identify individuals who he believes "participated in" the troll storm, which can reasonably be read to mean those

individuals who actually contacted Gersh or a member of her family with a

harassing communication. While some readers left comments claiming to have

done so, there is no indication that Anglin knew whether those claims were true or

not. Anglin has adequately answered that he does not have personal knowledge of

the identity of any other alleged participants. For these reasons, Gersh's motion to

compel a more complete response to Interrogatory 3 is denied.

> **<u>Interrogatory 4:</u>** Identify each and every person who possesses knowledge about, or who was involved in writing, researching, publishing or who otherwise assisted in, the publishing on the Daily Stormer of any article that relates to or references Whitefish, Montana or Tanya Gersh in any manner, and describe in detail the specific knowledge these individuals possess, or their role in the writing, researching, publishing, or otherwise assisting in the articles.

Anglin objects to this interrogatory on the grounds that it is irrelevant,

disproportionate to the needs of the case, overbroad, and unduly burdensome.

Because Anglin does not provide any argument in support of these otherwise

boilerplate objections, they are waived.

In his supplemental response to this interrogatory, Anglin referred "to the

authors identified in the relevant articles submitted as exhibits to Doc. Nos. 32 &

50" and the information set forth in those articles. (Doc. 113-3, at 7). Anglin

further responded that "Tanya Gersh and Sherry Spencer, as subjects of the

articles, possess information relating to their particular actions," and indicated that

"[t]he articles were written by Mr. Anglin personally, and he did not receive any assistance in writing them." (Doc. 113-3, at 7).

Gersh argues that responding to interrogatories by referring generally to previously filed exhibits is not allowed under the federal rules. In addition, Gersh notes that the exhibits Anglin refers to identify Erik Striker as having contributed research or writing to some of the Daily Stormer articles at issue. Gersh contends that because Anglin did not identify Erik Striker or any of the other individuals listed in the exhibits, his responses are deficient.

Under the federal rules, "[i]nsofar as practical, answers should be complete within themselves. Material outside of the answers and addendum ordinarily should not be incorporated by reference." *Pilling v. General Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968). See also *Valles v. City of Albuquerque*, 2005 WL 8164196 *3 (Feb. 22. 2005) (citing *Discovery Proceedings in Federal Court*, 3d Ed., § 15.09 (1995)). The Court agrees that because Anglin's answer to Interrogatory 4 incorporates previously filed materials by reference, it is improper. Gersh's motion to compel a complete response to this interrogatory is granted.

> **Interrogatory 5:** Identify every communication (by indicating the date, the form (e.g., email, text message, direct message through an internet service, etc.), the parties to, and the subject of, the communication) you had with anyone regarding Sherry Spencer's December 15, 2016, blog post on Medium, or about its drafting, development, or purpose, or its actual or intended effect.

18

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Anglin does not provide any additional specificity, however, and does not elaborate on any of these objections in his supporting brief. Thus, these boilerplate objections are waived.

Anglin further objects to the interrogatory "as unintelligible." (Doc. 113-3, at 8). While the Court does not exactly agree that it is unintelligible, the interrogatory is not clear and must be modified. As drafted, the interrogatory asks Anglin to identify every communication he "had with anyone regarding Sherry Spencer's December 15, 2016 blog post on Medium, **or** about its drafting, development, or purposes, or its actual or intended effect." (Doc. 113-3, at 8) (emphasis added). Because of disjunctive "or", this sentence can be read as encompassing any communication whatsoever that Anglin had with anyone about the blog post, including even those that would have no bearing on Gersh's claims or her theory of liability. Accordingly, this interrogatory should be limited to every communication Anglin "had with anyone about the drafting, development, purpose, or actual or intended effect of Sherry Spencer's December 15, 2016, blog post on Medium."

As to the substance of his answer, Anglin argues that he has already

19

provided a full response to this interrogatory. In his supplemental response, Anglin again "refers to the relevant articles submitted as exhibits to Doc Nos. 21 & 50." (Doc. 113-3, at 8-9). Anglin also identifies one individual by name, and states that he communicated with that individual using the social media app Discord but those communications are no longer available to him. As discussed above, Anglin's response is improper to the extent it refers to other materials previously filed in the case, and must be supplemented. And to the extent Anglin has any additional information that is responsive to the interrogatory as modified above, he must provide it.

**Interrogatory 6:** Identify all e-mail accounts used by you or to which you have had access between November 2016 and the present.

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived as set forth above.

Anglin further objects to answering this interrogatory without a protective order excluding any person affiliated with the Southern Poverty Law Center from obtaining his answers. As discussed above, this objection is untimely and has been waived.

In his response brief, Anglin maintains that Interrogatory 6 seeks

20

information that is not relevant, and is thus overbroad. He argues that information about his e-mail accounts is irrelevant because Gersh does not allege that he sent her any threatening or harassing emails, and her claims are instead premised on his alleged conduct on the Daily Stormer website. (Doc. 117, at 14).

Contrary to Anglin's argument, information about his e-mail accounts relates to Gersh's theory of liability. Regardless of whether Gersh specifically alleged it in the Complaint, information about Anglin's e-mails accounts is relevant to determine whether he did in fact send any of the harassing and threatening emails she received, and whether he communicated with others who did.

Consistent with the analysis of Interrogatories 1 and 2, however, the Court finds that Interrogatory 6 is overbroad because it seeks information between November 2016 "and the present." The Court finds that Interrogatory 6 should be limited to the time period from November 1, 2016 through March 1, 2017. So limited, Anglin must answer this interrogatory.

> **<u>Interrogatory 7</u>:** Identify all computers and devices, including but not limited to desktop computers, laptop computers, tablets, cellular telephones, smart phones, and smart watches and/or fitness trackers with GPS capability used by you or to which you have had access between November 2016 and the present and the current location of each such device.
>
> Anglin objects to this interrogatory on the grounds that it is irrelevant,

disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived as set forth above.

Anglin further objects Anglin also objects to answering this interrogatory without a protective order excluding any person affiliated with the Southern Poverty Law Center from obtaining his answers. As discussed above, this objection is untimely and has been waived.

In his response brief, Anglin maintains that Interrogatory 7 is overbroad and burdensome in that it mentions "fitness trackers with GPS capability," which can be read as requesting information regarding Anglin's current location and travel habits. By its terms, however, this interrogatory only asks Angling to "identify" the computers and devices he has used or had access to between November 2016 and the present and the current location of each device. The interrogatory says nothing about conducting a forensic examination of any of those devices, and does not ask for any information on their contents.

Consistent with the analysis of Interrogatories 1, 2, and 6, however, the Court finds that Interrogatory 7 is overbroad because it seeks information between November 2016 "and the present." The Court finds that Interrogatory 7 should be limited to the time period from November 1, 2016 through March 1, 2017.

22

Subject to his objections, Anglin provides the following answer: "Defendant has a laptop computer and a smartphone." (Doc. 113-3, at 10). Because Anglin answered subject to his objections, it is not possible to determine whether he has withheld responsive information. To the extent Anglin has additional information that is responsive to this interrogatory for the time period identified above, he must provide it.

> **Interrogatory 8:** Identify all computers, servers, and devices used by the Daily Stormer to publish its content and/or maintain its user forums between November 2016 and the present and the current location of each computer, server, and device.

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Because Anglin does not provide any argument in support of these otherwise boilerplate objections, they are waived.

Nevertheless, consistent with the analysis set forth above, the Court finds that the request for information from November 2016 to "the present" is overbroad. In the exercise of its discretion, the Court will limit Interrogatory 8 to the time period from November 1, 2016 through March 1, 2017.

Subject to his objections, Anglin provided the following supplemental response: "Defendant lacks personal knowledge of the information requested." (Doc. 113-3, at 11). Gersh argues this answer is demonstrably false because Anglin

is the publisher of the Daily Stormer, and it is not reasonable to believe he does not know which computers or servers are used in publishing articles on his website, and where those computers or serves are located.

When responding to interrogatories, a party must "respond with all the information under its custody and control." *Fresenius Medical Care Holding Inc. v. Baxter International, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004). The responding party must provide any information that is available to it, "and which can be produced without undue labor and expense." *Rivera v.* Bell, 2007 WL 9635868, *3 (D. Mont. Oct. 23, 2007). "If a party does not have sufficient information to 'fully' answer an interrogatory, the party may not simply refuse to provide an answer; rather, the party must state under oath that he or she is unable to provide the information, and must set forth in detail the efforts the party made to obtain the information." *Rivera*, 2007 WL 9635868, *3.

Thus, it is not sufficient for Anglin to simply state that he has no personal knowledge of the information requested. Gersh's motion to compel is granted to the extent that Anglin must supplement his response to this interrogatory with any responsive information that is readily available to him, even if it is outside his personal knowledge.

> **<u>Interrogatory 9:</u>** Identify all land-line or cellular telephone numbers and the associated telephone carriers you have used between November 2016 and

the present. For each telephone number identified, please provide the registered user for the number on the telephone bill, the dates of service for the number, as well as the dates of any changes in the telephone carrier.

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived as set forth above.

Anglin further objects Anglin also objects to answering this interrogatory without a protective order excluding any person affiliated with the Southern Poverty Law Center from obtaining his answers. As discussed above, this objection is untimely and has been waived.

Anglin further objects to this interrogatory "as unintelligible," but fails to provide any additional specificity or otherwise explain why he thinks the interrogatory is somehow unintelligible. (Doc. 113-3, at 8). This objection is baseless, as the interrogatory clearly asks for the phone number and other information associated with each land-line or cellular communication device that Anglin used between November 2016 and present.

In his response brief, Anglin argues the interrogatory seeks information that is not relevant, and is thus overbroad. He contends the interrogatory is not relevant

because Gersh's claims are premised on his alleged conduct posting articles on the Daily Stormer website, and the complaint does not allege that he made any harassing telephone calls.

Contrary to Anglin's argument, information about his telephone numbers is relevant Gersh's theory of liability and relates to such issues as whether Anglin spoke directly with any of the people who allegedly made harassing telephone calls. Consistent with the analysis set forth above, however, the Court finds that the request for information from November 2016 to "the present" is overbroad. In the exercise of its discretion, the Court will limit Interrogatory 9 to the time period from November 1, 2016 through March 1, 2017. With this limitation, Gersh's motion to compel a complete response to Interrogatory 9 is granted.

> **Interrogatory 10:** List all bank and/or crypto-currency accounts by account number, account holder, bank name, and bank location, used by you or for which you had access at any time between 2013 and the present. This includes, but is not limited to, any and all Bitcoin, Monero, or other crypto-currency accounts you have used or for which you had access at any time between 2013 and the present.

 Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Anglin further "objects to pre-judgment asset discovery as irrelevant." (Doc. 113-3, at 13).

As this Court has previously recognized, "Montana law permits

26

consideration of a defendant's net worth in assessing an appropriate amount of a punitive damage award, if any." *Moe v. System Transport, Inc.*, 270 F.R.D. 613, 621 (D. Mont. 2010) (citing Mont. Code Ann. § 27-1-221(7)(b)(vi)). Thus, where a claim for punitive damages is made, this Court has allowed discovery of a defendant's financial statements. *Moe*, 270 F.R.D. at 621.

Because Gersh alleges malice under Mont. Code. Ann. § 27-1-221 and asserts a claim for punitive damages, some pre-judgment asset discovery is appropriate. While financial statements may therefore be discoverable, *Moe* does not stand for the proposition that a plaintiff is entitled to all of the detailed financial information Gersh asks for here. At this juncture, Gersh would be entitled to a current financial statement, as well as the name and location of any institution where Anglin has maintained an account between January 1, 2016 and the present, but is not entitled to account numbers.

Subject to his objections, Anglin provided a supplemental response identifying one cryptocurrency wallet to which he has access. (Doc. 113-3, at 14). While responsive, this answer is not complete. The motion to compel a complete response to Interrogatory 10 is granted to the extent that Anglin must provide a current financial statement allowing for preliminary evaluation of his net worth, as well as the name and location of any institution where he has maintained an

27

account between January 1, 2016 and the present. If Gersh ultimately obtains a judgment for punitive damages, she may seek additional discovery as necessary for the purpose of enforcing that judgment.

> Interrogatory 11: For any users whose permission to use the Daily Stormer forums was temporarily suspended and/or terminated at any time between 2013 and the present, please identify each user by username, real name and contact information, date of suspension and/or termination of account, and reason for suspension and/or termination.

Anglin objects to this interrogatory on the grounds that it is irrelevant, disproportionate to the needs of the case, vague, overbroad, and unduly burdensome. Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived.

In his response brief, Anglin argues that whether he has enforced a disclaimer regarding non-violence on the Daily Stormer forums is not relevant to any claim or defense in the case. But because Anglin has previously asserted this disclaimer against violence as a defense against liability, whether he has enforced it is relevant.

Anglin further "objects to this Interrogatory because it seeks to infringe on the First Amendment right to anonymous speech of third parties." (Doc. 113-3, at 14). He argues in his response brief that requiring him to provide this information would run afoul of United States Supreme Court precedent holding that privacy of

28

association is protected under the first amendment.

Gersh points out that Anglin's objection only mentions the right anonymous speech, and maintains he has thus waived any objection based on the right to associate. The Court finds it sufficient that Anglin objected on First Amendment grounds, however, and declines to consider his objection based on the right to associate waived. To avoid any First Amendment implications, the Court will limit the scope of this interrogatory and require Anglin to identify the number of users for whom permission to use the Daily Stormer forums was temporarily suspended and/or terminated at any time between November 1, 2016 and March 1, 2017.

Subject to his objections, Anglin provided the following supplemental answer: "Defendant lacks personal knowledge of any such responsive information. The requested information is otherwise publicly available and is equally accessible to Plaintiff." (Doc. 113-3, at 15). This answer is not sufficient. As set forth above, Anglin must identify the number of users for whom permission to use the Daily Stormer forums was temporarily suspended and/or terminated at any time between November 1, 2016 and March 1, 2017.

## IV.    Conclusion

Subject to the modifications outlined above, the Court finds that  Gersh's interrogatories are relevant and proportional to the needs of the case. Accordingly,

and for the reasons discussed,

IT IS ORDERED that Gersh's motion to compel (doc. 112) is GRANTED in part and DENIED in part as outlined above. Within thirty (30) days of the date of this Order, Anglin must produce the information identified above or provide or assurances under oath that no further information is available.

IT IS FORTHER ORDERED that the Court will take Gersh's request for fees and costs pursuant to Fed. R. Civ. P. 37 under advisement.

DATED this 18th day of January, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge