| | |
|---|---|
| John Morrison | Morris Dees* |
| Robert Farris-Olsen | J. Richard Cohen* |
| MORRISON, SHERWOOD, | David C. Dinielli* |
| WILSON, & DEOLA, PLLP | Jim Knoepp* |
| 401 N. Last Chance Gulch St. | Elizabeth Littrell* |
| Helena, MT 59601 | SOUTHERN POVERTY LAW CENTER |
| ph. (406) 442-3261 | 400 Washington Avenue |
| fax (406) 443-7294 | Montgomery, AL 36104 |
| john@mswdlaw.com | ph. (334) 956-8200 |
| rfolsen@mswdlaw.com | fax (334) 956-8481 |
| *Attorneys for Plaintiff Tanya Gersh* | morris.dees@splcenter.org |
| | richard.cohen@splcenter.org |
| | david.dinielli@splcenter.org |
| | jim.knoepp@splcenter.org |
| | *Attorneys for Plaintiff Tanya Gersh* |
| | *Admitted Pro Hac Vice |

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, | |
| Plaintiff, | Case No.: 9:17-cv-00050-DLC-JCL |
| vs. | **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO ENTER PROTECTIVE ORDER GOVERNING "CONFIDENTIAL" AND "HIGHLY CONFIDENTIAL" INFORMATION** |
| ANDREW ANGLIN, publisher of the *Daily Stormer*, | |
| Defendant. | |

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, Plaintiff respectfully moves this Court for a protective order to protect from public disclosure information produced pursuant to discovery designated as

Page 1

"CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."

## I. FACTUAL BACKGROUND

Plaintiff filed this above-captioned action on April 18, 2017, alleging that Defendant invaded her privacy, intended to and did inflict emotional distress on her, and violated the Montana Anti-Intimidation Act.

Plaintiff's allegations arise out of a series of thirty articles posted on Defendant's website targeting Plaintiff, and others, for a campaign of harassment, which effort he titled "Operation Whitefish." In his articles, Defendant provided telephone numbers, physical addresses, social media handles, and email addresses for Plaintiff, her husband, her then-twelve-year-old son, her associates, and other members of the Whitefish, Montana community and exhorted his international audience of white supremacists and anti-Semites to bombard these individuals with an onslaught of harassing messaging.

Prior to exchanging discovery, both parties agreed to a protective order for the production of sensitive documents. On September 21, 2018, Defendant served his First Set of Requests for Production of Documents and his First Set of Interrogatories. Plaintiff filed her Objections and Responses to Defendant's First Set of Requests for Production and First Set of Interrogatories on October 25, 2019. In her response to the requests for production, Plaintiff stated that she would

Page 2

produce documents in response to Requests 16, 47, and 50 subject to a protective order. In her response to interrogatories, Plaintiff redacted certain information under Requests 1, 2, 6, and 11, stating that an unredacted version would be turned over subject to a protective order. Plaintiff also included a proposed stipulated protective order to Defendant on the same date. Plaintiff has, in good faith, attempted to confer with Defendant through his counsel in order to submit a stipulated protective order for the Court's consideration. Despite agreement on the necessity of the protective order, the parties were unable to reach agreement on the breadth of the proposed order.

 Plaintiff seeks a limited protective order to ensure that the following are protected from dissemination: a) highly sensitive information; b) contact information for third parties who could be targeted for harassment by Defendant; and c) photographs and information about her minor children. She seeks such protection based on the Defendant's pattern of weaponizing such information by publishing it to an international audience of white supremacists and anti-Semites in order to embarrass, intimidate, harass, encourage others to "troll," and otherwise terrorize individuals. In response to Defendant's request, Plaintiff has agreed to include proprietary information within the scope of the protective order. Plaintiff objects to Defendant's additional proposed terms as overly broad, unreasonable and unduly onerous.

Plaintiff's proposed Protective Order would designate discovery material as "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" ("Designated Material"). The former category of documents would limit disclosure to a category of individuals designated as "Qualified Persons" in the Order, while the latter category of documents would limit disclosure to individuals designated as "Highly Confidential Persons." The proposed Protective Order would include provisions outlining the process for designating discovery material, challenging a designation, and using Designated Material for depositions, pretrial hearings, and filing under seal with the Court. Additionally, the proposed Protective Order would include provisions addressing the inadvertent failure to designate discovery material, the destruction or return of Designated Material upon termination of the lawsuit, and third-party requests for Designated Material received by Intervenor.

Accordingly, Plaintiff requests this Court grant a protective order to protect from public disclosure information produced pursuant to discovery designated as "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" in order to protect highly sensitive information; contact information for third parties who could be targeted for harassment by Defendant; photographs and information about her minor children, as well as trade secrets and proprietary business information.

## I. PRINCIPAL PROVISIONS OF PROPOSED PROTECTIVE ORDER

The main provisions of the proposed protective order are set out below.[1]

1. **Confidential Information**. "Confidential" would mean any Discovery Material designated as "CONFIDENTIAL INFORMATION" because the Producing Party believes that good faith exists under Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") for protecting the information from public disclosure. Such includes, but is not limited to, information, documents, or things that have not been made public by the Producing Party and that the Producing Party reasonably and in good faith believes contains or comprises (a) trade secrets, or (b) proprietary business information. Any Discovery Material designated as "CONFIDENTIAL" shall not be disclosed, discussed with, or made available to any individual other than those designated in this Order as "Qualified Persons."

2. **Highly Confidential Information**. "Highly Confidential" would mean any Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" by the Producing Party because of a good faith determination that it falls within one or more of the following

---

[1] Plaintiff has not attached a proposed order to this brief mindful of Local Rule 7.1 that permits a proposed order only where the motion is unopposed. Should the Court grant Plaintiff's motion or otherwise request, counsel will promptly file and email a Word version as set out in Local Rule 7.1 (c)(3)(E) and (F).

categories: (a) medical information concerning any individual; (b) personally identifying information (e.g., social security numbers, home addresses, telephone numbers, and bank account numbers); (c) information related to minors; or (d) information so highly sensitive that its disclosure to a competitor could result in a significant commercial disadvantage to the designating party. Any Discovery Material designated as "HIGHLY CONFIDENTIAL–ATTORNEY'S EYES ONLY" shall not be disclosed, discussed with, or made available to any individual other than those designated in this Order as "Highly Confidential Qualified Persons."[2]

3. **Qualified Persons.** "Qualified Persons" would mean only the following individuals:

(a) the parties or directors, officers, and employees of parties to this action, who have a legitimate need to see the information in connection with their responsibilities for overseeing the litigation or assisting counsel in preparing the action for trial or settlement;

(b) the attorneys of record in this action, and any non-in-house attorneys of a party who are retained by the parties in this action to consult on the litigation, and their respective associates, clerks, legal assistants,

---

[2] This section of the Order would not prevent any party from proposing that other categories of information be included within the future coverage of this or any other protective order.

stenographic and support personnel, and independent organizations retained by such attorneys to provide litigation support services in this action, including employees of said organizations;

(c) experts and consultants retained by the parties or the attorneys of record for this litigation and the employees of such experts and consultants who are assisting them for the purposes of this action;

(d) court reporters, deposition stenographers, and videographers;

(e) potential witnesses or persons noticed for depositions or designated as trial witnesses to the extent reasonably necessary to prepare them to testify;

(f) law enforcement, where appropriate;

(g) such other persons as hereafter may be designated by written agreement of all parties in this action or by order of the Court; and

(h) the Court and its staff members.

**4. Highly Confidential Qualified Persons**. "Highly Confidential Qualified Persons" would mean only the following individuals and only to the extent necessary for those persons to assist trial counsel in litigating this action:

(a) the attorneys of record in this action and their respective associates, clerks, legal assistants, stenographic and support personnel, to the extent such are employed by the attorneys' law firm, within the meaning of Montana R. Prof. Conduct 5.1, and/or within the Legal Services Division of

the Montana Attorney General's Office, (b) experts and consultants retained by the parties or the attorneys of record for this litigation and the employees of such experts and consultants who are assisting them for the purposes of this action;

(c)     law enforcement, where appropriate;

(d)     such other persons as hereafter may be designated by written agreement of all parties in this action or by order of the Court. Before Discovery Material marked "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" to such persons, each such person must agree to be bound by this Order by signing a document substantially in the form of Exhibit A; and

(e)     the Court and its staff members.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) states that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Trial courts have broad discretion in determining what constitutes good cause, whether good cause exists, and, if it does exist, what protection is appropriate." *Blair v. Schwan Food Company*, 2010 WL 11537953, at *1 (D. Mont. Jan. 21, 2010); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate

and what degree of protection is required."). "The power of courts, state as well as federal, to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well-accepted." *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003) (citations omitted). "Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). In addition, Montana adheres to one of the most stringent protection of its citizens' right to privacy in the country. Mont. Const. Art. II, § 10; *State v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992).

The party seeking the protective order "bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Adelos, Inc. v. Halliburton Co. & Halliburton Energy Servs., Inc.*, No. CV 16-119-M-DLC, 2017 WL 3836131, at *2 (D. Mont. Apr. 5, 2017) (quoting *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

## IV. ANALYSIS

Under Rule 26(c), the court has broad discretion to grant a protective order. Given Defendant's history of publishing sensitive and otherwise private information on the Daily Stormer, a neo-Nazi, white supremacist, and Holocaust denial commentary and message board website that advocates for the genocide of Jews, for the express purpose of harassing, embarrassing, intimidating and otherwise terrorizing individuals. Accordingly, there is good cause to grant a protective order for documents with (1) confidential health information, (2) personal information, and (3) information related to minors. By limiting access to this information, Plaintiff seeks to protect herself, her family, and others involved in the case from harassment as potential targets of Defendant's publication and wide dissemination of sensitive and otherwise private information, now and in the future.

### 1. Confidential Health Information

Plaintiff seeks a protective order regarding her confidential health information, including her medical and psychiatric records. There is good cause to grant a protective order because of the private and sensitive nature of medical and mental health records. *See, e.g. Pritchard-Sleath v. Opper*, No. CV 12-74-H-DLC, 2014 WL 12691826, at *3 (D. Mont. Jan. 7, 2014) (issuing a protective order to ensure that medical and mental health records be "used and reviewed exclusively

by Defense counsel and experts"); *Nehad v. Browder*, No. 15-CV-1386 WQH NLS, 2016 WL 1428069, at *8 (S.D. Cal. Apr. 11, 2016) (finding that a protective order should be entered for medical and mental health records to protect the plaintiff's privacy).

Here, there is a greater need for a protective order for confidential health information. Defendant launched a massive troll storm against Plaintiff and her family that was designed to inflict the maximum possible disruption and psychological harm on Plaintiff. Without a protective order, Defendant and his followers would have access to sensitive information about Plaintiff that can be used to publicly embarrass Plaintiff and inflict further harm.

### 2. Personal Information

Plaintiff seeks a protective order to restrict the public disclosure of her personal information (including financial and health insurance information) as well as the contact information of individuals involuntarily thrust into the vortex of events giving rise to this action. Courts are well within their authority to protect third parties' contact information from dissemination. *See*, *e.g.*, *Coleman v. Jenny Craig, Inc.*, No. 11-CV-1301-MMA DHB, 2013 WL 2896884, at *10 (S.D. Cal. June 12, 2013) (finding "that 'the parties can craft a protective order that limits the use of any contact information to the parties in this litigation and protects it from disclosure. The discovery is to be produced to Plaintiff's counsel only and to be

used only in this litigation. Under these circumstances, the potential privacy interests of putative class members are adequately balanced.'") (quoting *Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Khalilpour v. CELLCO Partnership*, No. C 09–02712 CW (MEJ), 2010 U.S. Dist. LEXIS 43885, at *3, 2010 WL 1267749 (N.D.Cal. Apr. 1, 2010)).

Defendant has repeatedly posted contact information to the Daily Stormer and encouraged his followers to incessantly harass his targets. In this lawsuit, Defendant published contact information for Plaintiff and members of her family—including Plaintiff's cell phone number, her son's Twitter handle, and her husband's work address, phone number, and email address—and encouraged his thousands of followers to hound and harass them. Dkt. 1, at 18–19. Defendant also encouraged his followers to harass others in the community, including local rabbis and business owners. Dkt. 1, at 20.

In fact, this type of behavior from Defendant is not limited to this lawsuit. Defendant is known for launching "troll" storms and has published contact and private information for a number of other victims in order to harass and otherwise harm them. *See, e.g.* Karen Zraick, *Student Targeted by 'Troll Storm' Hopes Settlement Will Send Message to White Supremacists,* N.Y. Times (Dec. 21, 2018). Given Defendant's *modus operandi*, there is good cause for preventing Defendant

and his followers from obtaining contact information for third parties with knowledge of the events at issue who are subject to targeting and harassment.

Additionally, Plaintiff seeks to prevent Defendant and his followers from posting private information about her finances and health insurance policy. In *Kemp Implement Co., Inc. v. J.J. Case Co.*, the court recognized that companies have an interest in protecting their internal financial information from being shared with third parties." 630 F. Supp. 218, 220 (D. Mont. Mar. 4, 1986) (issuing a protective order providing that certain information be kept confidential because "Defendants are entitled to some safeguards against untrammeled dissemination of their internal financial information"). Similarly, Plaintiff has an interest in keeping information about her finances and health insurance policy confidential to prevent such information from being weaponized against her by Defendant and his followers.

### 3. Information Related to Minors

Finally, Plaintiff seeks to protect from public disclosure information related to minors because Defendant and his followers have demonstrated that they are willing to target children in their harassment. There is strong public policy in safeguarding the identities of minor children. *Sims v. Lakeside Sch.*, No. C06-1412RSM, 2007 WL 4219347, at *1 (W.D. Wash. Nov. 28, 2007).

Here, the troll storm at issue in this lawsuit extended to Plaintiff's then-twelve-year-old son. For example, Defendant posted on the Daily Stormer an image of Plaintiff's son, along with others, superimposed on a photograph of the Auschwitz concentration camp as well as a Nazi propaganda poster. Dkt. 1, at 8, 42. Additionally, Defendant directed hateful messages at Plaintiff's son, calling him a "creepy little faggot' and a "scamming little kike" and publishing his Twitter handle. Dkt. 1, at 19. As a result, Plaintiff's son became a target in the troll storm, receiving harassing messages on Twitter and YouTube. *See* dkt. 1, at 38–39.

Furthermore, Defendant has not hesitated to post images of children in his subsequent Daily Stormer articles. *See, e.g.* Andrew Anglin, *Against Adoption: David French and the Bizarre and Evangelical Cult of International Child Trafficking*, Daily Stormer (Nov. 27, 2018) (posting family photos with minor children in article criticizing inter-racial adoptions). Therefore, there is good cause to restrict public disclosure of information and images of minors to protect children from becoming targets of Defendant's troll storm or hateful Daily Stormer posts.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion for entry of a protective order to protect from public disclosure information produced pursuant to discovery designated as "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."

DATED February 11, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with Local Rule 7.1(d)(2). It contains 2768 words, excluding the caption, certificate of compliance, and certificate of service.

<div style="text-align: right;">

<u>/s/ Elizabeth Littrell</u>
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff.

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Dale M. Schowengerdt
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
dales@mt.gov
*Attorney for Intervenor State of Montana*

Jonathan W. Bennion
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
jonbennion@mt.gov
*Attorney for Intervenor State of Montana*

Matthew T. Cochenour
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
mcochenour2@mt.gov
*Attorney for Intervenor State of Montana*

on this 11th day of February, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff.