Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# MISSOULA DIVISION

| | | |
|---|---|---|
| TANYA GERSH, | ) | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | ) | |
| vs. | ) | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO RESPOND TO REQUESTS FOR PRODUCTION** |
| ANDREW ANGLIN, | ) | |
| Defendant. | ) | |

# TABLE OF CONTENTS

**MEMORANDUM AND POINTS OF AUTHORITIES** ..................................... 1

1.0    **INTRODUCTION**..................................................................... 1

2.0    **FACTUAL BACKGROUND** ................................................. 1

3.0    **LEGAL STANDARD**............................................................. 2

4.0    **ARGUMENT** ........................................................................... 3

    *4.1    All of Plaintiff's Objections to Interrogatories and RPDs are unavailing and waived.* ........................................................... *3*

    *4.2    Plaintiff has improperly claimed that many of responses to interrogatories and RPDs are privileged*....................................... *11*

        4.2.1  Plaintiff may not invoke the Reporter's Privilege.......................... 11

        4.2.2  Plaintiff's Other Improper Claims of Privilege............................. 15

5.0    **AN ORDER COMPELLING RESPONSES IS REQUIRED** ............. 17

6.0    **CONCLUSION**........................................................................ 17

Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

# TABLE OF AUTHORITIES

**CASES**

*Blankenship v. Hearst Corp.*,

519 F.2d 418, 429 (9th Cir. 1975) ............................................................... 5

*Branzburg v. Hayes*,

408 U.S. 665, 92 S. Ct. 2646 (1972) ....................................................... 13, 14

*Brown v. Wimberly*,

No. 1:14-cv-01812 - JLT, 2016 U.S. Dist. LEXIS 85598, at 13 (E.D. Cal. June

30, 2016) ....................................................................................................... 18

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,

408 F.3d 1142, 1149 (9th Cir. 2005) ......................................................... 6, 10

*Carlson v. Fedex Ground Package System, Inc.*,

2012 WL 4760889 *1 (D. Mont. Sept. 12, 2012) ....................................... 4

*Dewidar v. National Railroad Passenger* Corp.,

2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) ........................................... 4

*DIRECTV, Inc. v. Trone*,

209 F.R.D. 455, 458 (C.D. Cal. 2002) ....................................................... 5

*Garnish v. M/V Eyak LLC*,

2008 U.S. Dist. LEXIS 42662, at *11 (D. Alaska May 29, 2008) ............. 13

*Hunt v. County of Orange*,

672 F.3d 606, 616 (9th Cir. 2012) ............................................................. 4

*In re Grand Jury Investigation*,

918 F.2d at 377 ........................................................................................... 18

*Ivins v. Corr. Corp. of Am.*,

291 F.R.D. 517 (D. Mont. 2013) ............................................................... 10

*Mancia v. Mayflower Textile Servs. Co.*,

253 F.R.D. 354, 364 (D.Md.2008) ........................................................... 6

Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

*Mark v. Shoen*,

   48 F.3d 412, 414 (9th Cir. 1995) ........................................................ 15

*Moe v. Sys. Transp., Inc.*,

   270 F.R.D. 613, 618 (D. Mont. 2010) ................................................ 6

*Morgal v. Jacobs*,

   No. CIV 12-280-TUC-CKJ, 2013 WL 11310635, at *1 (D. Ariz. July 2, 2013) 10

*Nei v. Travelers Home & Marine Ins. Co.*,

   326 F.R.D. 652 (D. Mont. 2018) ........................................................ 6

*Oppenheimer Fund, Inc. v. Sanders*,

   437 U.S. 340, 351 (1978) ................................................................... 4

*Pilling v. General Motors Corp.*,

   45 F.R.D. 366, 369 (D. Utah 1968) .................................................... 8

*Russell v. Daiichi-Sankyo, Inc.*,

   No. CV 11-34-BLG-CSO, 2012 WL 1161435, at *2 (D. Mont. Apr. 6, 2012) 5, 6

*Shoen v. Shoen*,

   5 F.3d 1289, 1293 (9th Cir. 1993) ...................................................... 15

*State v. Ahmed*,

   278 Mont. 200, 215, 924 P.2d 679, 688 (1996) ................................. 17

*State v. Gooding*,

   1999 MT 249, ¶ 17, 296 Mont. 234, 239, 989 P.2d 304, 307 (Mont. 1999) ....... 18

*Valles v. City of Albuquerque*,

   2005 WL 8164196 *3 (Feb. 22. 2005) ............................................... 8

## OTHER AUTHORITIES

45 C.F.R. § 164.512(e)(1)(i) .................................................................... 12

Mont. Admin. R. 24.210.202 ................................................................. 19

# RULES

Fed. R. Civ. P. 26..................................................................................... 3, 4

Fed. R. Civ. P. 33.............................. …………………………………3, 5

Fed. R. Civ. P. 34..................................................................................... 3, 5

Fed. R. Civ. P. 37.............................................................................. 3, 4, 5, 20

L.R. 26.3(c)................................................................................................ 3

L.R. 26.3(a)(2) ............................................................................................ 5

# INDEX OF EXHIBITS

| Exh. No. | Description of Exhibit |
|----------|------------------------|
| A | Defendant's First Set of Interrogatories (September 21, 2018) |
| B | Defendant's First Set of Requests for Production (September 21, 2018) |
| C | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (October 25, 2018) |
| D | Plaintiff's Objections and Responses to Defendant's First Set of Requests for Production (October 25, 2018) |
| E | SPLC Website, Financial Information |
| F | Privilege Log |

RANDAZZA | LEGAL GROUP

# MEMORANDUM AND POINTS OF AUTHORITIES

## 1.0 INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37 and Local Rule (LR) 26.3(c), Defendant Andrew Anglin respectfully moves the Court to compel Plaintiff Tanya Gersh to immediately answer in full, and supplement as necessary, her answers to Defendant's Interrogatories Nos. 1, 2, 3, 4, 6, 11, 13, and 14 sought through Defendant's First Set of Interrogatories ("Interrogatories") and produce documents, electronically stored information (ESI), and other things sought in Defendants First Requests for Production of Documents ("RPDs"), specifically, RPDs Nos. 1-79 (all RPDs and Interrogatories are referred to collectively, "Defendant's Discovery Requests"). Defendant also moves the Court to award costs and fees incurred in making this motion as allowed under Rule 37(a)(5).

## 2.0 FACTUAL BACKGROUND

The parties have already laid out the factual and procedural history of this case at length. (See, generally, Doc. No 32 at 10-21.) On September 21, 2018, Defendant served his First Set of Interrogatories and RPDs on Plaintiff. A true and correct copy of these discovery requests are attached as Exhibits A & B.  October 25, 2018, Gersh served responses to Defendant's First Set of Interrogatories and First RPDs. See Exhibits C & D.  However, many of her interrogatory responses were either evasive or incomplete.  Further, she did not initially provide any documents responsive to Defendant's RPDs and stated that she would produce documents at a later date, without stating any reason for not producing any documents. Approximately six weeks later, she began producing some documents to Defendant, but she made no attempt to explain which document was responsive to which RPD.

Defendant has in good faith attempted to confer with Plaintiff through her counsel to resolve this conflict without court action. However, as detailed below,

Defendant's efforts were unsuccessful. Thus, Defendant requests this Court to enter an order compelling Plaintiff to answer in full and without further objection Defendant's Interrogatories 1, 2, 3, 4, 6, 11, 13, and 14 and RPD Nos. 1-79.

## 3.0    LEGAL STANDARD

Rules 33 and 34 permits parties to serve interrogatories and requests for production of documents on any other party, subject to the scope of Rule 26(b). The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012). Parties are generally entitled to "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  The information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

For discovery purposes, relevance is construed broadly to include any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); see also *Dewidar v. National Railroad Passenger* Corp., 2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) (applying *Oppenheimer's* relevance standard under current version of Rule 26(b)(1)). In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"Rule 37 of the Federal Rules of Civil Procedure provides a mechanism by which a party seeking discovery may request an order compelling the opposing party to fulfill its discovery obligations." *Carlson v. Fedex Ground Package System, Inc*., 2012 WL 4760889 *1 (D. Mont. Sept. 12, 2012). If a party fails to respond to interrogatories or requests for production, the party seeking discovery may move for an order compelling an answer. Fed. R. Civ. P. 37(a)(3)(B); *Carlson*, 2012 WL

47608889 *1. "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The party resisting discovery bears "the burden of clarifying, explaining, and supporting its objections" and showing why the discovery should not be allowed. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). See also Order of January 18, 2019, Doc. No. 131, at 1-5.

## 4.0 ARGUMENT

Defendant's First Set of Interrogatories contained 15 separate interrogatories and Defendants First Set of RPDs contained 79 RPDs. Plaintiff should be compelled to answer in full, and supplement as necessary, her answers to Defendant's Interrogatories Nos. 1, 2, 3, 4, 6, 11, 13, and 14 and produce documents, ESI, and other things sought in all 79 of Defendants RPDs. In accordance with Plaintiff's own arguments, her objections to the interrogatories are waived due to the boilerplate nature of the objections. Even if they are not waived, Plaintiff's objections are unavailing on the merits. To the extent that Plaintiff has provided substantive answers and produced documents, her answers are incomplete and evasive.

### 4.1 All of Plaintiff's Objections to Interrogatories and RPDs are unavailing and waived.

A party must state any grounds for objection to an interrogatory with specificity. Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B). Local Rule 26.3(a)(2) also requires that each objection be followed by a statement of reasons. "Just stating the bare objection is not sufficient to preserve the objection." *Russell v. Daiichi-Sankyo, Inc.*, No. CV 11-34-BLG-CSO, 2012 WL 1161435, at *2 (D. Mont. Apr. 6, 2012). For purposes of discovery, relevance is expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any

issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010).

The "recitation of 'boilerplate objections or blanket refusals' is [] not consistent with the requirements of the discovery rules*." Nei v. Travelers Home & Marine Ins*. Co., 326 F.R.D. 652 (D. Mont. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005)). The exclusive reliance on boilerplate objections "waives any legitimate objection Defendant [] may have had." Id. (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 364 (D.Md.2008)). Black's defines "boilerplate" to mean "[r]eady-made or all-purpose language that will fit in a variety of documents." Black's Law Dictionary (10th ed. 2014).

The objecting party bears the burden of showing that a discovery request is improper. *Nei*, 326 F.R.D. at 656. "Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Nei,* 326 F.R.D. at 656-57 (quoting *Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1161435, *2 (D. Mont. 2012)). All of Plaintiff's objections to Defendant's Interrogatories and RPDs analyzed herein amount to nothing more than boilerplate objections lacking specificity as required under the rules. Plaintiff's Objections to Interrogatories 3, 4, 14, and 15 and RPDs 1-79 are boilerplate and non-responsive, to wit:

> **INTERROGATORY NO. 3:** Please describe the nature of all medical, psychological, and/or therapeutic care and treatment of every condition (other than as already addressed in response to the preceding Interrogatory) that You received preceding the Incident until today, identifying the name and address of any treating personnel or facility from whom medical treatment was sought or received, and stating the nature and extent of any residual effects or disabilities from any of the above-described medical conditions.

Plaintiff objected to this interrogatory as overbroad and disproportionate to the needs of the case, and thus she claimed she had no information responsive to this request. Either Plaintiff is not being truthful OR Plaintiff has not received any treatment at all, ever, not even a trip to the doctor to treat the flu. This blanket refusal to answer a question about treatment for the injuries Plaintiff claims to suffer in what is essentially a personal injury case is inexcusable. Defendant needs information about her treatment to prepare for trial, and treatment is relevant to the claims and defenses in this litigation, necessary in preparation for trial, and is proportional to the needs of the case.

> **INTERROGATORY NO. 4:** If You have ever been involved in any other incident or accident (including any type of assault, vehicular accident, a trip and fall accident, an altercation, or any other incident in which You sustained bodily, mental, and/or emotional injuries), please provide a description of the incident or accident, including the date and location of the incident or accident and identify each person involved in the incident or accident, including Your medical providers, if any, the nature of any injuries sustained by You and, if any claims of any nature were made, the name and address of the person(s) against whom the claim was made.

Plaintiff objected to this interrogatory as compound, as overbroad and disproportionate to the needs of the case, and thus Plaintiff stated she had no information responsive to this request. Defendant's request is not compound because the request merely specifies what information is relevant to answer the question. Defendant needs information about her prior injuries and treatments associated with any past injuries to prepare for trial, in order to ensure that Plaintiff is truthfully asserting that her injuries were caused by Defendant, as opposed to any other cause.

> **INTERROGATORY NO. 14:** Please identify and describe with specificity each communication, including the date, time, method, and content thereof, You, a member of Your family, your employer, your co-workers, your friends, your acquaintances, or your colleagues have received, whether verbal or written, that is part of the alleged "troll

storm" that You claim caused or contributed to any injuries You claim to have suffered.

Plaintiff objected to this interrogatory as overbroad and disproportionate to the needs of the case, and thus she claimed she had no information responsive to this request. Plaintiff further pointed to unidentified documents she produced in response to Defendants Requests for Production Nos. 3-8, 13, 15, and 23-45.

Under the federal rules, "[i]nsofar as practical, answers should be complete within themselves. Material outside of the answers and addendum ordinarily should not be incorporated by reference." *Pilling v. General Motors Corp*., 45 F.R.D. 366, 369 (D. Utah 1968). See also *Valles v. City of Albuquerque*, 2005 WL 8164196 *3 (Feb. 22. 2005) (citing Discovery Proceedings in Federal Court, 3d Ed., § 15.09 (1995)).  At the time she answered, Plaintiff produced absolutely no documents in response to any of Defendant's RPDs. When Plaintiff finally dumped documents on Defendant six weeks later, she made zero attempt to explain which document answered which RPD, so Defendant has no way of knowing Plaintiff's answer to this request. Plaintiff has not answered the interrogatory, but rather she has pointed to a figurative warehouse of thousands of documents and stated: the answer might be in there, go find it. This is not proper, and thus she must be compelled to provide a complete response to this interrogatory.

Defendant needs information about Gersh's alleged causation which she alleges led to her injury to prepare for trial, this request is relevant to the claims and defenses in this litigation, is necessary in preparation for trial, and proportional to the needs of the case.  Identifying the communications at issue, which she claimed caused her injury, is necessary as NONE of them came from Defendant himself and it is unknown to what extent any of them came from Daily Stormer readers, acting pursuant to anything written therein, as opposed to readers of the Medium article or

the ABC Fox Montana story before it, or readers of CNN articles about her, or people who heard about her from any other source.

> **INTERROGATORY NO. 15:** Please identify and describe with specificity all communications You have had with Sherry Spencer from January 1, 2016 to the present.

Plaintiff refused to answer this question completely and provided a boilerplate objection that since she claimed other interrogatories were compound then Interrogatory 15 exceeded the number of interrogatories. Plaintiff's objection is not in good faith given that Defendant did not present compound interrogatories, and this is only the fifteenth interrogatory. Here, Defendant needs information from Plaintiff regarding her communications with Mrs. Spencer to prepare for trial.

**RPDs 1-79:** Attached as Exhibit B.

For brevity, Plaintiff will not produce all 79 RPDs here given that they are attached. Here, Plaintiff did provide a short privilege log, but otherwise Plaintiff has not informed Defendant whether other responsive documents are being withheld. Plaintiff objected to each RPD and did not produce any documents until six weeks later in a large document dump. Plaintiff did not supplement her RPD answers to show Defendant which document is responsive to which RPD and refused to do so in the meet and confer, claiming only that SPLC, which has an endowment of $432,700,000, has limited resources and thus refuses to do so. See Exhibit E. https://www.splcenter.org/about/financial-information. There is absolutely no bates-matching or other identifier in the documents produced, and Defendant has no way of knowing whether Plaintiff has produced the requisite documents. Here, Plaintiff has waived her objections and must be compelled to supplement her RPD responses to show what documents are not being produced and which bates numbers are responsive to which RPD question.

### 4.2 Several of Plaintiff's Answers to Interrogatories are demonstratively false, evasive, and/or incomplete

Plaintiff refused to respond to Interrogatories 1, 2, 6, 11 and RPD 16, 47, and 50 and objected to these requests to the extent that it seeks information protected by the rights to privacy founded in the U.S. and Montana Constitutions and has redacted on the claimed basis thereof. Plaintiff claimed she would provide unredacted information subject to a Protective Order. Plaintiff did not attempt to seek a protective order until today, despite many months of holding back relevant discovery.[1] "[T]he spirit of the [discovery] rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . ." *Morgal v. Jacobs*, No. CIV 12-280-TUC-CKJ, 2013 WL 11310635, at *1 (D. Ariz. July 2, 2013) (citing *Burlington Northern & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1148–49 (9th Cir.2005)).

The information sought is discoverable, notwithstanding any argument about the right to privacy. See *Ivins v. Corr. Corp. of Am.*, 291 F.R.D. 517 (D. Mont. 2013). Consistent with this Court's prior ruling, Plaintiff had ample time to file a motion to seek a protective order instead of refusing to answer Defendant's Interrogatories without one. See Doc. 131 at 8. Here, Plaintiff did not move for a protective order until today and has refused to stipulate to an appropriate one. Plaintiff could have moved for a protective order before responding but failed to do so. Accordingly, Plaintiff must disclose the improperly redacted information immediately.

**INTERROGATORY NO. 1**: Please identify Your present employer and any other employers for the past ten years, including, but not limited to, stating their name(s), their address(es), the date each

---

[1] Defendant will be filing a timely response to that motion.

employment began and ended, Your job duties and approximate annual earnings for each position held.

Defendant's Interrogatory is highly relevant because Defendant needs information about Plaintiff's jobs and wages to calculate and contest alleged damages in preparation for trial, as Plaintiff is claiming those very damages. Plaintiff must be compelled to respond to this interrogatory un-redacted.

**INTERROGATORY NO. 2**: Please identify the nature and extent of each injury that You contend You suffered as a result of the Incident, and, for each such injury:

(a) Identify all persons and/or facilities that provided any medical, psychological, or therapeutic care or treatment for such injury;

(b) State the known diagnosis/prognosis for such injury; and

(c) State the name, address, policy number, and claim number for any insurance coverage which was/is available for payment of medical expenses relative to the injuries described above and state the amount (if any) of unreimbursed medical expenses incurred by You to date for such injury.

Defendant's Interrogatory is highly relevant because Defendant needs information about Plaintiff's alleged injuries and any treatment related to those injuries to calculate and contest the alleged damages actually claimed by her and prepare for trial.

**INTERROGATORY NO. 6**: Please identify every witness You believe may and/or does have knowledge regarding the events described in Your Complaint and/or the alleged injuries sustained by You in the Incident, including a brief summary of the anticipated testimony or knowledge of such witness. If you do not possess the name of a witness, please provide other identifying information, including alter ego(s), user name(s), handle(s), account name(s), and the media on which such are used.

Defendant's Interrogatory is relevant because Defendant needs information regarding potential witnesses to prepare for trial and determine who should be

deposed. This request is consistent with the mandatory initial disclosures under Rule 26(a). Plaintiff must be compelled to disclose this information.

> **INTERROGATORY NO. 11**: If You are claiming any lost wages and/or impairment to Your earning capacity as a result of the Incident giving rise to this lawsuit, please describe such loss, stating the name and address of each employer from which You lost or will lose employment time, the dates You were unable to work, the time You lost or will lose from each employer, and the wages You lost or will lose as a result of the Incident.

Defendant's Interrogatory is relevant because Defendant needs information regarding alleged damages in order to prepare for trial. Defendant is not able to make an independent valuation of damages or contest Plaintiff's claim without this information. Plaintiff must be compelled to disclose this information.

> **REQUEST NO. 16**: Please produce all documents that support Your contention in paragraph 29 of Your Complaint that You have "experienced serious and severe emotional and physical distress as a result of the harassment . . . ."

Defendant's Interrogatory is relevant because Defendant needs information to substantiate the particular claim of damages made in the Complaint. Plaintiff must be compelled to disclose this information.

> **REQUEST NO. 47**: Please complete (including the identity of custodians of records, your address and social security number, where applicable) and execute the enclosed authorizations to allow Mr. Anglin to obtain all medical and psychiatric (for all physicians/facilities providing any treatment whatsoever for the past 10 years), employment, health insurance, and Medicare (if applicable) records.

Defendant needs these authorizations in order to subpoena the records containing Protected Health Information that would independently substantiate Plaintiff's claim of injuries. Plaintiff should either be required to execute such authorization, or the Court should issue a qualified protective order under 45 C.F.R. § 164.512(e)(1)(i) permitting Defendant to subpoena her medical records directly

from providers. *See, e.g., Garnish v. M/V Eyak LLC*, 2008 U.S. Dist. LEXIS 42662, at *11 (D. Alaska May 29, 2008) ("While clearly a basic function of HIPAA is to protect the confidentiality of individuals' health records, as the regulations suggest, it was not intended to circumvent Federal Rule 26 by shielding litigants from having to disclose relevant, discoverable information.")

> **REQUEST NO. 50**: Please produce all documents evidencing the following damages:
> (a)Medical and hospital costs and expenses (whether paid by you or someone else);
> (b)Personal injuries (physical and mental), including but not limited to photographs, videotapes, and other visual representations that depict the injuries;
> (c) Loss of household or other services, consortium, society, comfort, companionship, nurture, care, and guidance;
> (d)Loss of employment income;
> (e) Inability to do now, because of the Incident, activities that you were able to do before the Incident; and
> (f) Any other damages alleged by You.

Defendant needs information regarding alleged damages in order to prepare for trial. Plaintiff has alleged injury and Defendant is not able to make an independent valuation of damages or contest Plaintiff's claim without this information Plaintiff must be compelled to disclose this information.

### 4.2 Plaintiff has improperly claimed that many of responses to interrogatories and RPDs are privileged

#### 4.2.1 Plaintiff may not invoke the Reporter's Privilege

Plaintiff incorrectly states that comments she made to reporters, and documents she turned over to reporters, that relate to this case, are protected by the First Amendment, wherein she cites to *Branzburg v. Hayes*, 408 U.S. 665, 92 S. Ct. 2646 (1972). Plaintiff identified the following documents in her Privilege Log as being subject to a First Amendment privilege: 3 (1/1/17 e-mail with David Winter) and 36 (10/16/18 communication with Katie Mettler). Further, Plaintiff's response

willfully omits any reference to the emails with David Winter, the reporter mentioned in the December 13, 2016 article[2] discussed in the first Daily Stormer article identified in the Complaint. Contrary to Plaintiff's repeated assertions in the Complaint, Mrs. Spencer's article on Medium.com was *not* the first time Plaintiff's name was in the press in connection with her dispute with Mrs. Spencer. Her Complaint neglects to inform the Court that she was in communication with a major television and online news entity discussing her relationship with Mrs. Spencer. These communications are evidence of Plaintiff's status as, at a minimum, a limited purpose public figure.[3]

Plaintiff hopes to hide these communications by willfully misrepresenting *Branzburg*. The U.S. Supreme Court noted in that case, "that the public interest in law enforcement and in ensuring effective grand jury proceedings was insufficient to override the consequential, but uncertain, burden on news gathering." 408 U.S. at 690. Here, Plaintiff's contention is nonsensical. The caselaw reflects the public policy of ensuring the media can report the news and protect the confidentiality of anonymous news sources; it does not create a privilege for a named source to refuse

---

[2] See ABC Fox Montana, *We Investigate: Whitefish, family torn apart by white nationalist's notoriety* (Dec. 13, 2016), available at <https://www.abcfoxmontana.com/news/we-investigate-whitefish-family-torn-apart-bywhite-nationalist-s/article_3407aa88-eb5c-55ab-9557-e763b78873c9.html> (last visited Feb. 11, 2019).

[3] In denying the motion to dismiss, the Court seemed focused in part on the fact that Ms. Gersh was *not* a public figure – not even an involuntary one, despite her being subject to global press coverage. See, Order of Nov. 14, 2018, Doc. 116, at 13. The discovery she seeks to hide makes it clear that she was not only a public figure, but that she indeed sought press attention. Contrast *id.* ("if, indeed, [Gersh] was 'dragged unwilling' into a public controversy, she is not automatically fair game for all manner of public criticism.") It is understandable that she would wish to hide discovery that shows that she willfully misled this Court and artfully avoided dismissal by omitting salient facts from her Complaint. However, this is not a reasonable basis to object to discovery.

Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

to disclose her communications with a reporter. "[T]he critical question for deciding whether a person may invoke the journalist's privilege is whether she is gathering news for dissemination to the public." *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993). Plaintiff was not. She was speaking to the press about Mrs. Spencer of her own volition and now wishes to shield herself from the legal effect of her media-seeking. How absurd it would be if someone could send a press release to the media, and then refuse to acknowledge it, in a backward-*Branzburg* argument.

The Ninth Circuit Court of Appeals has affirmatively recognized the "***reporter's** privilege*" as protected by the First Amendment to the Constitution of the United States. See U.S. Const. Amend 1. The qualified privilege prevents "against compelled disclosure of information gathered in the course of [journalists'] work." *Mark v. Shoen*, 48 F.3d 412, 414 (9th Cir. 1995). "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice" *Shoen v. Shoen*, 5 F.3d at 1292 (internal quotation marks omitted). Similarly, under the Media Confidentiality Act, Montana has codified a stringent and absolute protection of the **journalist's** privilege. 26-1-901-903, MCA. The act states:

> Without a person's consent, a person, including any newspaper, magazine, press association, news agency, news service, radio station, television station, or community antenna television service ***or any person connected with or employed by any of these for the purpose of gathering, writing, editing, or disseminating news'*** may not be examined as to or may not "be required to disclose information obtained or prepared or the source of that information in any legal proceeding ***if the information was gathered, received, or processed in the course of the person's employment or business***.

See 26-l-902, MCA (emphasis added). Plaintiff cannot invoke the reporter's privilege. She was not the one gathering the news—she was the one seeking to be in the news. All applicable law recognizes that the reporter's privilege and confidentiality may be invoked only by the journalist gathering news, not the named news source. The Federal Rules of Evidence do not recognize any privilege for a named source to withhold information she has shared with members of the media. Such a rule does not exist, nor should it as a matter of public policy. Thus, Plaintiff's communications with the media are discoverable and must be produced.

Plaintiff has refused to answer and has invoked the reporter's privilege in the following discovery requests:

> **INTERROGATORY NO. 13**: Please describe with specificity any statement, conversation, or comment You have made to or had with any journalist, blogger, or other media entity concerning the facts alleged in and/or persons or entities referenced in Your Complaint filed in this matter (ECF No. 1), including, but not limited to, any conversations You have had with ABC Fox Montana.

Defendant needs this information to prove Defendant's legal theories regarding Plaintiff's motivations to bring this lawsuit and to prepare defenses for trial, including as to the issue of public figure status. Plaintiff must be compelled to answer because Plaintiff may not invoke the reporter's privilege.

> **REQUEST NO. 2:** Please produce any and all communications You sent to or received from any journalists, bloggers, and/or other media entities concerning the facts alleged in or the persons or entities mentioned in Your Complaint filed in this matter (ECF No. 1).

Defendant needs this information to prove Defendant's legal theories regarding Plaintiff's motivations to bring this lawsuit and to prepare defenses for trial, including as to the issue of public figure status. Plaintiff must be compelled to answer because Plaintiff may not invoke the reporter's privilege.

### 4.2.2 Plaintiff's Other Improper Claims of Privilege

In the 83 documents in the Privilege Log (See Exhibit F) that Plaintiff provided, Plaintiff uses the designations "S", as "SPLC Employee/Privileged Agent" to identify persons who were authors or recipients of communications withheld on the basis of Attorney-Client Privilege, identifying the following documents where an "S" person was a non-attorney: 6, 7, 8, 11, 12, 13, 16, 19, 20, 21, 23, 34, 35, 76, 77, & 78. As the SPLC is not a law firm, the attorney-client privilege is improperly invoked where non-lawyers without a separate basis for privilege are made privy to the communications. *See State v. Ahmed*, 278 Mont. 200, 215, 924 P.2d 679, 688 (1996)(communications involving a third-party are not privileged under MCA § 26-8-803).

Documents 81, 82, and 83 claim a "Clergy" privilege for communications with Rabbi Allen Secher, including ones made the *same day* Plaintiff was coordinating with the Montana Human Rights Network (which operates "Love Lives Here") on a draft statement for Mrs. Spencer. However, Rabbi Secher retired from congregational duties in 2008.[4] In Montana, "in order for confessions to be privileged under § 26-1-804, MCA, those confessions must be directed to clergy persons acting in their 'professional character' and 'in the course of discipline enjoined by the church.' We explained that 'professional character' meant that the clergy persons must be acting in their capacities as clerics or in their religious roles; 'in the course of discipline enjoined' meant that the confession was made pursuant to the practice and discipline of the church." *State v. Gooding*, 1999 MT 249, ¶ 17, 296 Mont. 234, 239, 989 P.2d 304, 307 (Mont. 1999). As Rabbi Secher had retired

---

[4] See Traxler, Bridget, *As Montana Rabbi Retires, Big Sky Jews Ponder Viability of Big Tent Synagogue*, Forward (June 18, 2008), available at <https://forward.com/news/13587/as-montana-rabbi-retires-the-jews-of-big-sky-coun-02026/> (last visited Feb. 11, 2019).

Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

from his pastoral position eight years prior, it is unlikely that he was acting in a clerical capacity or that Plaintiff was seeking him out to make a confession.

Importantly, Rabbi Secher, with his wife Ina Alpert, **founded** the Love Lives Here advocacy group. Plaintiff attempted to convince Mrs. Spencer to sell the building and **donate the proceeds to Love Lives Here**, thus communications Plaintiff had with Rabbi Secher were likely not related to his "professional character" as a clergyman. Neither were they likely "seeking religious guidance, counseling, admonishment, or advice." *Gooding* at ¶18. As noted, this is the same day Rabbi Secher's group was working with Mrs. Gersh to plan her communications with Mrs. Spencer and obtain the proceeds of the sale. "[T]he [clergy -communicant] privilege does not apply to statements made, even in confidence, to a person who happens to be a member of the clergy but who is receiving the statements outside the purpose of spiritual counseling." *Brown v. Wimberly*, No. 1:14-cv-01812 - JLT, 2016 U.S. Dist. LEXIS 85598, at 13 (E.D. Cal. June 30, 2016), citing to *In re Grand Jury Investigation*, 918 F.2d at 377. Thus, the information is discoverable and is not privileged merely because Rabbi Secher happens to be a retired member of the clergy.

As to documents 10 & 18, the label "protective order" is identified, without further explanation. As noted above, Plaintiff has refused to stipulate to a protective order nor sought one directly until today. There is no basis to withhold these documents. These documents must be produced.

As to documents 22 & 45, Plaintiff identified "MT State Regulations", without setting forth the basis thereof. They appear to be communications with the Montana Board of Realty Regulation. Absent any identification of the regulations, or any Federal recognition of a related privilege, there is no basis to withhold these documents. In fact, Mont. Admin. R. 24.210.202 expressly recognizes that licensing decisions and contested matters are subject to public observation. These documents

must be produced. In addition, the parties in Doc. 40 are cut off and Defendant has not received a supplement.

Defendant needs the above documents that have been marked as privileged because no privilege exists, and Defendant needs the documents to prove his defenses at trial.

## 5.0    AN ORDER COMPELLING RESPONSES IS REQUIRED

Before seeking Court intervention, Defendant's counsel attempted to resolve the various issues in Plaintiff's answers to the interrogatories with the Plaintiff's counsel during the meet and confer discussion. After the discussion on January 30, 2019, Plaintiff agreed to follow up with their client on the incompleteness of her answers overall and to address the specific issues identified by Defendant during the conference: Plaintiff assured Defendant that Plaintiff would let Defendant know which answers they would supplement by February 6, 2019. Several days after this deadline passed, Plaintiff send Defendant an email stating only that Plaintiff may still supplement, but without stating when and what Plaintiff would supplement. Accordingly, Plaintiff has not supplemented any discovery at all and apparently has no plans to do so.

Defendant's counsel has met and conferred, followed up with and otherwise attempted to avoid seeking the Court's assistance. Unfortunately, Defendant's efforts have been to no avail, and Plaintiff is left no further choice but to request that this Court compel Plaintiff to provide complete and immediate answers and award fees and costs.

## 6.0    CONCLUSION

For the foregoing reasons, Defendant moves the Court to enter an order compelling Plaintiff to answer in full Defendant's Interrogatories Nos. 1, 2, 3, 4, 6, 11, 13, and 14 and produce documents pursuant to RPDs 1-79 pursuant to Federal

Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

Rule 37(a)(3)(B)(iii), (a)(4). In addition, Plaintiff requests reasonable expenses and attorney's fee incurred in making this motion pursuant to Rule 37(a)(5).

Dated: February 11, 2019.    Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Matthew M. Stevenson
Matthew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT

*Attorneys for Defendant,*
*Andrew Anglin*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to D. Mont. L.R. 7.1(d)(2)(E), undersigned counsel hereby certifies compliance with the said Rule and states that the number of words in this brief, as per the count of Microsoft Word, is 5,327.

/s/ Marc J. Randazza
Marc J. Randazza

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza

RANDAZZA | LEGAL GROUP