Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,
Andrew Anglin*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL MONTANA HUMAN RIGHTS NETWORK TO COMPLY WITH SUBPOENA** |
| ANDREW ANGLIN, | |
| Defendant. | |

# TABLE OF CONTENTS

MEMORANDUM AND POINTS OF AUTHORITIES ........................................... 1

    1.0    INTRODUCTION ................................................................................. 1

    2.0    FACTUAL BACKGROUND .................................................................. 1

    3.0    LEGAL STANDARDS .......................................................................... 4

    4.0    ARGUMENT ......................................................................................... 5

        *4.1 MHRN HAS HAD SUFFICIENT TIME TO COMPLY WITH THE SUBPOENA* ........................................................................................ 5

        *4.2 THE SUBPOENA DOES NOT VIOLATE THE GEOGRAPHICAL RESTRICTIONS OF RULE 45* ................................................................. 6

        4.3 MHRN'S SPECIFIC OBJECTIONS ARE MERITLESS .................... 6

    5.0    AN ORDER COMPELLING COMPLIANCE IS REQUIRED ................ 11

    6.0    CONCLUSION .................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,

   408 F.3d 1142, 1149 (9th Cir. 2005) ................................................................ 7

*Dewidar v. National Railroad Passenger* Corp.,

   2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) ..................................................... 4

*Goodman v. United States*,

   369 F.2d 166, 169 (9th Cir. 1966) ...................................................................... 5

*Hunt v. County of Orange*,

   672 F.3d 606, 616 (9th Cir. 2012) ...................................................................... 4

*Jang v. Sagicor Life Ins. Co.*,

   2019 U.S. Dist. LEXIS 1280, *5 ....................................................................... 7

*Mancia v. Mayflower Textile Servs. Co.*,

   253 F.R.D. 354, 364 (D.Md.2008) ..................................................................... 7

*Mattel Inc. v. Walking Mt. Productions*,

   353 F.3d 792, 813 (9th Cir. 2003) ...................................................................... 5

*Moe v. Sys. Transp., Inc.*,

   270 F.R.D. 613, 618 (D. Mont. 2010) ................................................................ 6

*Nei v. Travelers Home & Marine Ins*. Co.,

   326 F.R.D. 652 (D. Mont. 2018) ........................................................................ 7

*Oppenheimer Fund, Inc. v. Sanders*,

    437 U.S. 340, 351 (1978) ............................................................................................ 4

*Perry v. Schwarzenegger*,

    591 F.3d 1126 (9th Cir. 2010) .................................................................................... 10

*Simplex Mfg. Co. v. Chien*,

    2012 U.S. Dist. LEXIS 124625, *4 (W.D. Wash. Aug. 31, 2012) ....................... 5

*Wilcox v. Swapp*,

    2018 U.S. Dist. LEXIS 206666, *5 (W.D. Wash. Dec. 6, 2018) ......................... 5

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014) .................................................................... 7

**RULES**

Fed. R. Civ. P. 26 .............................................................................................. 1, 4, 5

Fed. R. Civ. P. 45 .............................................................................................. passim

L.R. 26.3 ................................................................................................................... 1

# MEMORANDUM AND POINTS OF AUTHORITIES

## 1.0   INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 45, and Local Rule (LR) 26.3(c), Defendant Andrew Anglin respectfully moves the Court to compel non-party Montana Human Rights Network ("MHRN") immediately to comply with Mr. Anglin's subpoena to MHRN dated January 24, 2019 (the "Subpoena"), specifically by providing complete responses and produce documents responsive to the document requests in the Subpoena.  Mr. Anglin also moves the Court to find MHRN in contempt under Rule 45(g) and impose an appropriate sanction, including an award of costs and fees incurred in making this motion.

MHRN possesses documents that are highly relevant to Mr. Anglin's claims and defenses in this case.  Central issues here are the extent to which Plaintiff Tanya Gersh voluntarily sought out media attention in her dispute with Sherry Spencer and the accuracy of the claims in the December 15, 2016 Medium.com article published under Mrs. Spencer's name.  Given MHRN's close relationship with Ms. Gersh, it is in possession of documents related directly to these issues.  MHRN has not asserted valid grounds for objecting to Mr. Anglin's Subpoena and there is no basis for its complete refusal to provide any responsive documents whatsoever.

## 2.0   FACTUAL BACKGROUND

The parties have already laid out the factual and procedural history of this case at length. (See, generally, Doc. No 32 at 10-21.)  Significant to this motion are the following facts:

MHRN operates Love Lives Here ("LLH"), a local affiliate of MHRN.  (*See* MHRN home page, attached as **Exhibit 1**,[1] at p. 5 of 7.)  Prior to the publication of the Daily Stormer articles at issue in this case, LLH organized a protest of 22 Lupfer

---

[1] Available at: https://mhrn.org/ (last accessed Feb. 20, 2019).

Avenue, the real estate property owned by Sherry Spencer. (*See* PL003215, email from Sherry Spencer dated December 5, 2016, attached as **Exhibit 2**.) Plaintiff Tanya Gersh was aware of this planned protest and contacted tenants at 22 Lupfer Avenue about the protest. (*See* Dkt. No. 1 at ¶¶ 58-59.) This is what started the cascade of events which led to Daily Stormer articles.

It is important to note that Ms. Gersh's timeline in her Complaint makes significant omissions relevant to the issue of public figure status. In November 2016, Ms. Gersh was discussing the details of the dispute with Mrs. Spencer with members of MHRN, including the contents of a draft statement to be attributed to Mrs. Spencer and a press advisory on the dispute. (*See* PL003368-69, November 22, 2019 email from Rachel Carroll Rivas to Kim Abbott, attached as **Exhibit 3**; *see also* November 22, 2016 email from Rachel Carroll Rivas to Will Randall, attached as **Exhibit 4**.) Rachel Rivas, the Co-Director of MHRN, then communicated with Mrs. Spencer about such a statement and the proposal of Ms. Spencer donating money to LLH. (*See* PL002967, December 8, 2016 email from Ms. Rivas, attached as **Exhibit 5**.)

Ms. Gersh was in contact with media outlets prior to the publication of the Medium.com article. (*See* "We Investigate: Whitefish, family torn apart by white nationalist's notoriety," ABC FOX MONTANA (Dec. 13, 2016), attached as **Exhibit 6**)[2] (reporting that Ms. Gersh sent an email to ABC FOX Montana prior to publication in which she said "'She (Sherry) is profiting off of the people of the local community, all the while having facilitated Richard's work spreading hate by letting

---

[2] Available at: https://www.abcfoxmontana.com/news/we-investigate-whitefish-family-torn-apart-by-white-nationalist-s/article_3407aa88-eb5c-55ab-9557-e763b78873c9.html (last accessed Feb. 20, 2019).

him live and use her home address for his organization.'")[3] Ms. Gersh was also quoted as stating Mrs. Spencer "[c]ould address this by selling the building, making a donation to human rights efforts,[4] and making a statement in opposition to white supremacist ideas spread by Richard." (*Id*.) Ina Albert, a co-founder of LLH, communicated with Ms. Gersh following the ABC FOX Montana article acknowledging that Ms. Albert had sent an email on the dispute with Ms. Spencer to the media. (*See* PL003996, December 13, 2016 emails between Ina Albert and Tanya Gersh, attached as **Exhibit 7**.) Ms. Gersh's conflict with Mrs. Spencer was thus an issue of media attention, in which Ms. Gersh voluntarily participated, at least several days before Mr. Anglin wrote anything about Ms. Gersh.

Email communications from late December also show that MHRN was coordinating the media responses of itself, LLH, and Ms. Gersh concerning her dispute with Ms. Spencer. (*See* PL003407, December 26, 2016 email exchange, attached as **Exhibit 8**.) On this exchange was Rabbi Allen Secher, who also co-founded LLH. (*See, e.g.*, "Northwest Montana Fair Parade", DAILY INTERLAKE (Aug. 17, 2018), attached as **Exhibit 9**.)[5] As explained in Mr. Anglin's pending separate Motion to Compel, Ms. Gersh has refused to provide highly relevant communications between her and Rabbi Secher wrongly invoking the clerical privilege. (*See* Dkt. No. 135 at 21-22.) MHRN has access to these documents and

---

[3] Plaintiff's improper refusal to provide this correspondence is subject to a separate motion to compel.

[4] This was a transparent request that Ms. Gersh donate the proceeds of the sale of 22 Lupfer Avenue, which Ms. Gersh proposed she facilitate, to LLH. This is further confirmed by a November 22, 2016 email from MHRN's co-director Rachel Carroll Rivas (*see* **Exhibit 3**), where Ms. Rivas summarizes Ms. Gersh's conversation with Ms. Spencer as containing a recommendation that Ms. Spencer "[s]ell it and give a portion to MHRN."

[5] available at:
https://www.dailyinterlake.com/local_news/20180817/northwest_montana_fair_parade (last accessed Feb. 21, 2019).

must produce them in light of Ms. Spencer's refusal to comply with her discovery obligations.

On January 28, 2019, Mr. Anglin served his Subpoena on MHRN. (*See* Subpoena, attached as **Exhibit 10**.) On February 5, 2019, MHRN served its objections to the Subpoena and did not provide any responsive documents. (*See* objections to Subpoena, attached as **Exhibit 11**.)

Mr. Anglin has in good faith attempted to confer with MHRN through its counsel to resolve this conflict without court action, including by sending a detailed meet-and-confer letter on February 14, 2019 and conducting a phone call on February 19, 2019. (*See* February 14, 2019 meet-and-confer letter, attached as **Exhibit 12**.) However, as detailed below, Mr. Anglin's efforts were unsuccessful. Thus, Mr. Anglin requests this Court to enter an order compelling MHRN to answer in full and without further objection each document request in the Subpoena.

### 3.0   LEGAL STANDARDS

Federal Rule of Civil Procedure 45 permits parties to serve subpoenas on non-parties, subject to the scope of Rule 26(b). The Court has broad discretion to manage discovery. *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012). Parties are generally entitled to "discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

For discovery purposes, relevance is construed broadly to include any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Dewidar v. National Railroad Passenger* Corp., 2018 WL 280023 *2 (S.D. Cal. Jan. 3, 2018) (applying *Oppenheimer's* relevance standard under current version of Rule 26(b)(1)). In assessing proportionality, courts consider

"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 45(d)(2)(B)(i) allows a party serving a subpoena on a non-party to compel compliance with the subpoena. *See Wilcox v. Swapp*, 2018 U.S. Dist. LEXIS 206666, *5 (W.D. Wash. Dec. 6, 2018). Unless the subpoena "requires the disclosure of privileged or protected matters or subjects the non-party to an undue burden . . . the non-party should produce the documents requested by the subpoena as long as the documents are relevant and proportional to the needs of the under Rule 26 and not protected by privilege." *Id*.

The party opposing a subpoena bears the burden of showing that the subpoena is unduly burdensome. *Simplex Mfg. Co. v. Chien*, 2012 U.S. Dist. LEXIS 124625, *4 (W.D. Wash. Aug. 31, 2012) (citing *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966)). Ruling on a motion to compel compliance with a subpoena is a matter of discretion. *See Mattel Inc. v. Walking Mt. Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

## 4.0   ARGUMENT

### 4.1   MHRN Has Had Sufficient Time to Comply with the Subpoena

MHRN first objected to the Subpoena on the ground that it did not allow sufficient time for compliance. Mr. Anglin served the Subpoena on January 28, 2019 and called for compliance by February 6, 2019, giving MHRN 9 days to provide responsive documents. As explained in the meet and confer letter to MHRN, Mr. Anglin had to call for this short turnaround because Ms. Gersh improperly refused to produce documents in advance of multiple depositions she scheduled which MHRN possessed. In the meet and confer letter, Mr. Anglin offered to allow MHRN to produce responsive documents by February 28, 2019, a full month after service

of the Subpoena. Despite this, MHRN refused to provide responsive documents. MHRN is not claiming it lacks sufficient time to gather responsive documents; it is flatly refusing to produce anything at all. MHRN's initial objection regarding lack of time to comply with the Subpoena is thus moot and provides no basis for refusing to comply with it.

### 4.2 The Subpoena Does Not Violate the Geographical Restrictions of Rule 45

Second, MHRN objected to the location of production in the Subpoena, claiming that the place designated for compliance (Missoula, Montana) is more than 100 miles from the address listed in the caption of the Subpoena (Helena, Montana).

Fed. R. Civ. P. 45(c)(2) provides that a subpoena may command "(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." MHRN is a state-wide organization with a division, Missoula Rises, located in Missoula, Montana. (*See* **Exhibit 1** at p. 5 of 7.) It thus regularly transacts business in and around Missoula, and the geographic limitations of Rule 45 are not implicated here. Mr. Anglin is otherwise willing to provide a location for production wherever else may be convenient and has offered that MHRN produce documents electronically, which is not location dependent. Thus, this objection is improper and MHRN simply refuses to comply with any subpoena.

### 4.3 MHRN's Specific Objections are Meritless

For purposes of discovery, relevance is expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010).

The "recitation of 'boilerplate objections or blanket refusals' is [] not consistent with the requirements of the discovery rules*." Nei v. Travelers Home &*

- 6 -
Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

of the Subpoena. Despite this, MHRN refused to provide responsive documents. MHRN is not claiming it lacks sufficient time to gather responsive documents; it is flatly refusing to produce anything at all. MHRN's initial objection regarding lack of time to comply with the Subpoena is thus moot and provides no basis for refusing to comply with it.

### 4.2 The Subpoena Does Not Violate the Geographical Restrictions of Rule 45

Second, MHRN objected to the location of production in the Subpoena, claiming that the place designated for compliance (Missoula, Montana) is more than 100 miles from the address listed in the caption of the Subpoena (Helena, Montana).

Fed. R. Civ. P. 45(c)(2) provides that a subpoena may command "(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." MHRN is a state-wide organization with a division, Missoula Rises, located in Missoula, Montana. (*See* **Exhibit 1** at p. 5 of 7.) It thus regularly transacts business in and around Missoula, and the geographic limitations of Rule 45 are not implicated here. Mr. Anglin is otherwise willing to provide a location for production wherever else may be convenient and has offered that MHRN produce documents electronically, which is not location dependent. Thus, this objection is improper and MHRN simply refuses to comply with any subpoena.

### 4.3 MHRN's Specific Objections are Meritless

For purposes of discovery, relevance is expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010).

The "recitation of 'boilerplate objections or blanket refusals' is [] not consistent with the requirements of the discovery rules*." Nei v. Travelers Home &*

*Marine Ins*. Co., 326 F.R.D. 652 (D. Mont. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005)). The exclusive reliance on boilerplate objections "waives any legitimate objection Defendant [] may have had." Id. (quoting *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 364 (D.Md.2008)). Black's defines "boilerplate" to mean "[r]eady-made or all-purpose language that will fit in a variety of documents." Black's Law Dictionary (10th ed. 2014). Objections by non-parties may also properly be overruled as boilerplate when they lack specificity. *See Jang v. Sagicor Life Ins. Co.*, 2019 U.S. Dist. LEXIS 1280, *5 (Jan. 3, 2019) (overruling non-party's objections to subpoena as boilerplate without further analysis).

MHRN's specific objections to the document requests in the Subpoena are not sufficient to excuse its non-compliance. Each request is addressed in turn below.

> **Request No. 1**: All documents, including those evidencing communications, that relate to and/or reference Tanya Gersh made between October 1, 2016 and the present. This includes but is not limited to all emails, voicemails, video or text messages, and private messages sent through any service or application.

MHRN claims this request is overbroad as it is not limited in scope or subject matter and not limited to a relevant time period, arguing that communications between non-parties are not relevant and not proportional. MHRN additionally argues that it is less burdensome on MHRN for Mr. Anglin to seek communications involving Ms. Gersh from Ms. Gersh.

MHRN consistently asserts its time limitation objection, but it is not well-founded. Request No. 1 seeks documents over a 28-month period, starting merely one month before the election of President Trump, one of the primary events giving rise to Ms. Gersh's claims. MHRN provides no explanation as to how the request is not temporally limited. Furthermore, this Court has already found that, as to Ms. Gersh's claims against Mr. Anglin, a relevant time period begins in November 2016.

(*See, passim*, Dkt. No. 131.) The specific events of Ms. Gersh's dispute with Ms. Spencer took place prior to any actions of Mr. Anglin, and so the starting date of October 1, 2016 in Mr. Anglin's Subpoena is appropriate.

The requested information is highly relevant to Mr. Anglin's defenses in this case. Ms. Gersh worked hand-in-hand with MHRN, directly and through its Love Lives Here division, with respect to the protest of Mrs. Spencer's property and seeking a statement and donation from Mrs. Spencer, all of which are the subject of the articles at issue. They specifically go to the issue of actual malice. Ms. Gersh is not a more convenient source of these documents, either, as she has not produced all such communications.

> **Request No. 2**: All documents, including those evidencing communications, that relate to and/or reference Spencer made between October 1, 2016 and the present. This includes but is not limited to all emails, voicemails, video or text messages, and private messages sent through any service or application.
>
> **Request No. 3**: All documents, including those evidencing communications, that relate to and/or reference Richard Spencer made between October 1, 2016 and the present. This includes but is not limited to all emails, voicemails, video or text messages, and private messages sent through any service or application.

MHRN objects to Request Nos. 2 and 3 based on assertions of lack of relevance because Richard and Sherry Spencer are not parties, undue burden because compliance would allegedly require "countless hours of document identification and review," and lack of time limitation.

MHRN does not indicate how these requests might be overbroad in reference to the volume of responsive documents. The assertion of "countless hours" is implausible given that email and hard drive keyword searches for "Spencer" and "Richard Spencer," as well as related terms like "Gersh" and "22 Lupfer" would not take a significant amount of time to conduct. The relevance of the requests is self-

- 8 -
Brief in Support of Motion to Compel
9:17-cv-50-DLC-JCL

evident; this lawsuit directly relates to protests of the Spencer family, involving MHRN, and they all seek evidence on the issue of actual malice. And as explained above, the objection as to lack of time limitation is groundless.

> **Request No. 4**: All documents, including those evidencing communications, that relate to and/or reference Andrew Anglin made between October 1, 2016 and the present. This includes but is not limited to all emails, voicemails, video or text messages, and private messages sent through any service or application.

MHRN repeats its boilerplate objections as to lack of relevance, proportionality, and time limitation without any explanation except to assert that Mr. Anglin is a public figure.

As explained above, the time limitation objection is groundless. Mr. Anglin's status as a public figure is irrelevant regarding MHRN's obligation to comply with the Subpoena; Ms. Gersh has made allegations regarding articles attributed to him that directly discuss MHRN. The requested discovery is thus directly relevant to the issue of actual malice.

> **Request No. 5**: Any and all communications with the Southern Poverty Law Center between October 1, 2016 and the present.

MHRN repeats its boilerplate objections as to relevance, overbreadth, proportionality, and lack of time limitation.

As explained above, the objection as to time limitation is groundless. The requested documents are relevant as they speak to MHRN's intercession on Ms. Gersh's behalf during her dispute with Mrs. Spencer and subsequent events and are otherwise likely to address the issue of actual malice. Counsel for Mr. Anglin offered to address issues as to any communications with the SPLC outside of this scope, but, even if such documents exist, they do not excuse MHRN's complete failure to produce relevant documents.

**Request No. 6**: Documents sufficient to describe the organization of Your business "Love Lives Here."

MHRN repeats its boilerplate objection as to relevance, as well as an assertion of a fear of harassment and violation of MHRN's First Amendment rights.[6] It also claims that it is not obligated to produce documents which do not currently exist.

The relevance objection is not well taken. LLH is central to this lawsuit, as its planned protest of Mrs. Spencer's building and behavior are the focus of the Daily Stormer articles at issue. Mr. Anglin does not seek non-existent documents, but it is implausible for MHRN to suggest that it does not possess any documents that describe how LLH is organized. Presumably, MHRN and LLH (which documents are in MHRN's possession, custody, or control) have meeting minutes or notes, guidelines, correspondence, or other documents, whether formally or informally, that describe the leadership of LLH, lines of authority, and how it is controlled by MHRN. Mr. Anglin's counsel noted in the meet and confer letter that any concerns regarding confidentiality can be addressed in a protective order which the Court is currently considering.

**Request No. 7**: Any and all documents regarding the property at 22 Lupfer Avenue in Whitefish, Montana.

---

[6] MHRN cites only *Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010) to support its invocation of the First Amendment. But *Perry* only dealt with a First Amendment privilege (which MHRN does not invoke) in the context of the right to anonymous political association. *See id*. at 1139-40. Furthermore, the party invoking such a privilege must provide a *prima facie* showing of arguable First Amendment infringement. *See id*. at 1140. If that showing is made, the party seeking discovery must demonstrate an interest in obtaining this information sufficient to justify the deterrent effect on the right of association. *See id*. MHRN does not explain how this right may be chilled, failing the test at the outset. Mr. Anglin only seeks documents describing the organization of LLH, not the personal details of its members. If the fear is that Mr. Anglin may disclose the information of LLH or MHRN members incidentally collected, MHRN could have provided redacted documents, which could be supplemented once a protective order is in place. Instead, it flatly refused to provide anything.

**Request No. 8**: Any and all documents regarding the occupants and/or tenants of the property at 22 Lupfer Avenue in Whitefish, Montana.

For Request Nos. 7 and 8, MHRN repeats its boilerplate objections regarding relevance and lack of limitation on time, scope, or subject matter. It also contends there are less burdensome means of acquiring requested documents not in MHRN's possession.

These documents are highly relevant. This dispute originated with Ms. Gersh, a member of MHRN's business, LLH, calling a tenant at 22 Lupfer Avenue about a planned protest by LLH. The requested documents go directly to the issue of actual malice, as they are likely to substantiate the claims made in the Daily Stormer articles at issue. Additionally, although no specific time limitation is identified in the request, the building has only existed for a few years, and Mr. Anglin's counsel offered to limit the time period for the request to October 1, 2016 to the present in their meet and confer letter.

## 5.0   AN ORDER COMPELLING COMPLIANCE IS REQUIRED

Before seeking Court intervention, Mr. Anglin's counsel attempted to resolve the various issues in MHRN's objections with MHRN's counsel during the meet and confer discussion. After sending a detailed meet and confer letter on February 14, 2019, counsel for Mr. Anglin and MHRN spoke telephonically. MHRN's counsel indicated, in no uncertain terms, that MHRN would not provide any responsive documents, despite Mr. Anglin's offers to modify terms of the Subpoena and allow additional time to respond. Accordingly, MHRN has provided no responsive documents at all and has no plans to do so.

Mr. Anglin's counsel has met and conferred, followed up with and otherwise attempted to avoid seeking the Court's assistance. Unfortunately, Mr. Anglin's efforts have been to no avail, and he is left with no further choice but to request that

this Court compel MHRN to provide complete and immediate compliance with the Subpoena and award fees and costs.

## 6.0 CONCLUSION

For the foregoing reasons, Mr. Anglin moves the Court to enter an order compelling compliance with the Subpoena to MHRN. In addition, Mr. Anglin requests Mr. Anglin also moves the Court to find MHRN in contempt under Rule 45(g) and impose an appropriate sanction, including an award of costs and fees incurred in making this motion.

Dated: February 21, 2019.     Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Matthew M. Stevenson
Matthew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT

*Attorneys for Defendant,
Andrew Anglin*

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2)(E), undersigned counsel hereby certifies compliance with the said Rule and states that the number of words in this brief, as per the count of Microsoft Word, is 3,537.

/s/ Jay M. Wolman
Jay M. Wolman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF and by First Class Mail, postage prepaid, to:

Andres Haladay, Esq.
Drake Law Firm, P.C.
111 N. Last Chance Gulch
Arcade Building, Suite 3J
Helena, MT 59601

/s/ Jay M. Wolman
Jay M. Wolman

# INDEX OF EXHIBITS

| Exh. No. | Description of Exhibit |
|---|---|
| 1 | MHRN Home Page |
| 2 | PL003215, Email from Sherry Spencer Dated December 5, 2016 |
| 3 | PL003368-69, November 22, 2019 Email from Rachel Carroll Rivas |
| 4 | November 22, 2016 Email from Rachel Carroll Rivas to Will Randall |
| 5 | December 8, 2016 Email from Ms. Rivas |
| 6 | "We Investigate: Whitefish, Family Torn Apart by White Nationalist's Notoriety," ABC FOX MONTANA (Dec. 13, 2016) |
| 7 | PL003996, December 13, 2016 Emails Between Ina Albert And Tanya Gersh |
| 8 | PL 003407, December 26, 2016 Email Exchange |
| 9 | Northwest Montana Fair Parade", DAILY INTERLAKE (Aug. 17, 2018), |
| 10 | Subpoena |
| 11 | Objections to Subpoena |
| 12 | February 14, 2019 Meet-and-Confer Letter |