John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
Jim Knoepp*
Elizabeth Littrell*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
beth.littrell@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

TANYA GERSH,

    Plaintiff,

    vs.

ANDREW ANGLIN, publisher of
the *Daily Stormer*,

    Defendant.

Case No.:  9:17-cv-00050-DLC-JCL

**PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL PLAINTIFF
TO RESPOND TO REQUESTS FOR
PRODUCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................i

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION .................................................................................................1

   I.   FACTUAL BACKGROUND............................................................................1

      A. Plaintiff's Discovery Requests and Defendant's Responses....................1

      B. Defendant's Discovery Requests and Plaintiff's Responses .....................2

      C. Proposed Stipulated Protective Order.......................................................5

      D. Meet and Confer Discussion ....................................................................6

   II.  PRELIMINARY STATEMENT ...................................................................9

   III. LEGAL STANDARD ...................................................................................9

   IV. ARGUMENTS AND AUTHORITIES ......................................................10

      A. Plaintiff's Objections Are Specifically Tailored to Each Request and Her Responses and Production of Documents Are Not Deficient. .................10

         1. Plaintiff properly redacted her answers and withheld documents pursuant to the Parties' prior agreement to mark such information confidential and subject to a protective order...........................................11

            a.   Plaintiff properly redacted financial and healthcare information (Interrogatories Nos. 1, 2, 6 and 11)............................................ 12

         2. Plaintiff specifically objected to interrogatories and RPDs that are unlimited in time and scope and fully responded within specifically identified limits. .......................................................................14

            a.   Plaintiff properly limited the scope of Interrogatory No. 3 and fully responded........................................................................... 15

            b.   Plaintiff properly limited the scope of Interrogatory No. 4 and fully responded........................................................................... 16

c.   Plaintiff properly limited the scope of Requests for Production….16

d.   Plaintiff properly objected to Defendant's demand that she detail more than 700 individual harassing messages she and others received and properly referred Defendant to responsive documents (Interrogatory No. 14). ................................................................. 17

B. Documents Subject to Attorney-Client and Clergy Privileges Are Properly Withheld..........................................................................................20

1.  A client does not waive attorney-client privilege by including her attorneys' support staff and investigators..................................................20

2.  The Clergy Privilege applies to the confidential conversation between Plaintiff and Rabbi Secher. ..................................................................23

C. Defendant Has No Basis For An Award of Fees Or Costs........................27

V.   CONCLUSION...................................................................................28

EXHIBIT INDEX ......................................................................................... 29

CERTIFICATE OF COMPLIANCE ........................................................... 30

CERTIFICATE OF SERVICE .................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Avirgan v. Hull*, 116 F.R.D. 591 (S.D. Fla. 1987) .................................................15

*Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ..........................................................10

*Doe v. Attorney Gen. of the United States*, 941 F.2d 780, 795 (9th Cir. 1991).......14

*Griffin v. Coughlin*, 743 F. Supp. 1006, 1028 (N.D.N.Y. 1990) ............................24

*Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975) ..........................................22

*In re Grand Jury Investigation*, 918 F.2d 374, 380 (3d Cir. 1990) ........................26

*In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987)...................................................22

*Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984) ...........................................21

*Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984)..........22

*Laxalt v. McClatchy* 809 F.2d 885, 888 (D.C. Cir 1987) ........................................10

*Loop AI Labs Inc. v. Gatti*, 2016 WL 9132846, at *3 (N.D. Cal. May 6, 2016).....15

*Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir. 1978)...............14

*Mullen v. United States*, 263 F.2d 275, 280 (D.C. Cir. 1958) .................................24

*Newman v. Poquette*, 2012 WL 487116, at *3 (C.D. Cal. Jan. 12, 2012), report and recommendation adopted, 2012 WL 487089 (C.D. Cal. Feb. 15, 2012) .............14

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998)....................................................................................................................14

*Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 266 (E.D. Mich. 2007).........8

*Osborne v. Billings Clinic*, No. CV 14-126-BLG-SPW, 2015 WL 1643379, at *1 (D. Mont. Apr. 13, 2015)....................................................................................28

*Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir.1997) ......................................10

*Rasmussen v. Bennett*, 741 P.2d 755, 758–59. (Mont. 1987) .................................24

*Rutherford v. PaloVerde Health Care Dist.*, 2014 WL 12633523, at \*4 (C.D. Cal. Apr. 25, 2014)..................................................................................................18

*Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) ...................................15

*San Diego Unified Port Dist. v. Monsanto Co.*, No. 15-CV-0578-WQH-AGS, 2018 WL 3656298, at \*1 (S.D. Cal. Aug. 2, 2018).........................................................15

*Scott v. Hammock*, 870 P.2d 947 (Utah 1994).........................................................23

*State v. Gooding*, 989 P.2d 304, 307 (Mont. 1999) .......................................... 24, 27

*State v. MacKinnon*, 957 P.2d 23, 28. (Mont. 1998) ..............................................23

*Torcaso v. Watkins* 367 U.S. 488, 495 (1961).........................................................23

*Tumbling v. Merced Irr. Dist.,* 262 F.R.D. 509, 515 (E.D. Cal. 2009) ...................14

*U.S. ex rel. Jacobs v. CDS, P.A.*, 2016 WL 4146077, at \*2 (D. Idaho Aug. 3, 2016) .................................................................................................................................15

*U.S. v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016) .........................................22

*United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963)...................................22

*United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978).......................................10

*United States v. Moscony*, 927 F.2d 742, 751–752 (3rd Cir. 1991) .......................21

*Yates v. W. Contra Costa Unified Sch. Dist.,* No. 16-CV-01077-MEJ, 2017 WL 2106130, at \*2 (N.D. Cal. May 15, 2017)............................................................18

*Young v. AXA Art Ins. Corp.*, 2010 WL 11598063, at \*4 (C.D. Cal. Oct. 5, 2010) 18

*YS Garments v. Cont'l Cas. Co.*, 2018 WL 3829764, at \*4 (C.D. Cal. Jan. 29, 2018) .................................................................................................................................22

**Statutes**

Mont. Code Ann. § 26-1-804 ...................................................................................26

Mont. Code Ann. § 41-3-201 ...................................................................................25

Mont. Code Ann. §15-6-201(2)(b)............................................................................25

**Other Authorities**

37 Mont. Op. Att'y Gen. 460 (1978) ........................................................8

*Allen Secher*, Wikipedia, https://en.wikipedia.org/wiki/Allen_Secher ..................25

Eric Bradner, *Alt-right leader: "Hail Trump! Hail our people! Hail victory!,"*
CNN (Nov. 22, 2016) ......................................................................25

McCormick on Evidence, § 91 at 189 (1972)..........................................22

Paul R. Rice, Attorney-Client Privilege in the United States § 3:3 (2014) ............23

Proposed Fed. R. Evid. 506, 56 F.R.D. at 247.......................................25

*Worship*, Congregation Beth Shalom, https://bethshalombozeman.org/worship/...25

**Rules**

Fed. Civ. P. R. 26(b) ........................................................................10

Fed. Civ. P. R. 26(c)........................................................................13

Fed. R. Civ. P. 34 ...........................................................................18

Fed. R. Evid. 501 ...........................................................................23

Mont. Prof. Conduct R. 1.0 (e) ..........................................................21

**INTRODUCTION**

COMES NOW, Plaintiff, Tanya Gersh, and files this Brief in Opposition to Defendant's Motion To Compel Plaintiff To Respond To Requests For Production and shows that Defendant's motion is unfounded. Plaintiff has complied with all discovery requests, produced more than 1275 responsive documents, and provided either complete responses or appropriate objections.

## I.     FACTUAL BACKGROUND

Plaintiff filed this above-captioned action on April 18, 2017, alleging that Defendant invaded her privacy, intentionally inflicted emotional distress, and violated the Montana Anti-Intimidation Act. Plaintiff's allegations arise out of a series of thirty articles posted on Defendant's website in which he directs his followers to harass Plaintiff. In his articles, Defendant provided telephone numbers, physical addresses, social media handles, and email addresses for Plaintiff, her husband, her then-12-year-old son, her associates, and other members of the Whitefish, Montana community based on their perceived affiliation with Plaintiff. As a result of Defendant's actions, Plaintiff received over 700 harassing and/or threatening communications.

### A. Plaintiff's Discovery Requests and Defendant's Responses

Plaintiff first served Defendant with discovery requests on June 7, 2018. On July 9, 2018, Defendant served his initial discovery responses consisting entirely of

boilerplate objections and filed a motion seeking a 60-day extension of time to provide substantive responses. On July 13, 2018, the Court entered an order giving Defendant until August 10, 2018, to provide complete responses to Plaintiff's interrogatories and until August 27, 2018, to provide complete responses to her requests for production. (Dkt. No. 103). On August 11, 2018, Defendant served response to Interrogatories; he served supplemental responses to Plaintiff's requests for production on August 27, 2018. On October 31, 2018, Plaintiff filed a Motion to Compel Defendant to Answer Interrogatories. On December 10, 2018, Plaintiff filed a Motion to Compel Defendant to Respond to Request for Production of Documents.

By Order dated January 18, 2019, this Court issued its ruling on Plaintiff's Motion to Compel Answers to Interrogatories. In the order, the Court overruled Defendant's boilerplate objections, held that Defendant's arguments for refusing to answer without a Protective Order barring any person affiliated with the Southern Poverty Law Center (SPLC) was waived as untimely and granted Plaintiff's motion as to 10 of 11 interrogatories, imposing limitations identified by the Court on six. (Dkt. No. 131).

### B. Defendant's Discovery Requests and Plaintiff's Responses

On September 21, 2018, Defendant served Plaintiff with Interrogatories and Requests for Production of Documents. Plaintiff timely served her Objections and

Responses on October 25, 2018. Concurrent with Plaintiff's response, and consistent with the parties' discussions, Plaintiff also provided Defendant with a proposed Stipulated Protective Order to protect from dissemination certain confidential information. (Ex. A). Pursuant to the proposed Stipulated Protective Order, and the parties' discussions pertaining thereto, Plaintiff redacted information that the parties had agreed would be subject to the contemplated Stipulated Protective Order and specifically preserved her objections thereto. (Dkt. No. 117-5, at 5-9, 16-31, 44, 46).

Plaintiff also expressly identified six weeks as a reasonable time within which she would produce relevant, non-privileged documents and things, contrary to Defendant's misrepresentation of the facts (Compare Dkt. No. 135, at 7: "[Plaintiff] stated that she would produce documents at a later date" with Dkt. No. 117-6, at 7, stating that "Plaintiffs will produce relevant, non-privileged documents … along with a privilege log for relevant documents, **within six weeks** after the service of these responses and objections) (emphasis added). Defendant did not object to this timeframe.

On December 6, 2018, Plaintiff produced approximately 394 documents electronically to Defendant, redacted in accordance with the parties' discussion regarding the Protective Order. (Ex. B). Plaintiff's counsel included a cover letter with the production alerting Defendant that: a) Plaintiff had engaged a third-party

IT service management company to assist with electronic discovery and that any additional documents they uncovered were expected to be available for production by December 14, 2018; b) documents withheld based on a privilege or the work product doctrine would be identified on a privilege log that would be produced with any supplemental production; c) all documents responsive to non-privileged objections would be provided within the limitations specifically described in Plaintiff's Objections and Responses; d) Plaintiff was withholding a small number of documents to be produced pursuant to a protective order; and e) Plaintiff's counsel had redacted 1) contact information of private individuals who were the recipients of communications relating to the subject matter of this litigation, 2) Social Security Numbers, and 3) financial and bank account numbers, pending entry of a protective order. (Ex. B).

On December 14, 2018, Plaintiff's counsel communicated to Defendant's counsel that "due to technical issues and staffing concerns, we will be unable to have these supplemental electronic discovery documents ready for production today. We believe an additional 7-10 days should suffice to prepare and deliver these to you, and will produce as soon as they are ready." (Ex. C).  Following the Christmas break, on December 28, 2018, Plaintiff electronically produced approximately 884 additional documents and a seven-page Privilege Log that allows counsel, or the Court, to assess the validity of each assertion of attorney-

client, work-product, constitutional, statutory or common-law privacy interests or any other privilege. (Ex. D).

### C. Proposed Stipulated Protective Order

As set out above, Plaintiff sent a proposed draft of a Stipulated Protective Order with her Objections and Responses to Defendant's discovery requests based on the parties' earlier discussions regarding same, and specifically reserved objections based thereon:

> The parties are currently in negotiations with respect to a Protective Order to protect the release of information that would violate the rights of privacy, or subject third parties to harassment, abuse or harm. Plaintiff objects to the production of her, or other parties', confidential medical documents and will not produce those documents unless directed by the Court to do so pursuant or pursuant to a Protective Order entered by the Court. In addition, Plaintiff declines to provide releases to permit nonparties to produce her medical records but instead will produce those records herself.

(Dkt. No. 117-6, at 5; *see also* Dkt. No. 117-5, at 5 (same as to Response to Interrogatories)).

On November 20, 2018, Defendant provided proposed edits to the Plaintiff's proposed Stipulated Protective Order. On January 25, 2019, Plaintiff provided Defendant with her final proposed Stipulated Protective Order and a draft motion. She agreed to the essential terms of discovery materials suggested by Defendant to be marked "Confidential" ("(a) trade secrets, (b) proprietary business information") and "Highly Confidential" (*i.e.*, "(a) medical information concerning

any individual; (b) personally identifying information (e.g., social security numbers, home addresses, telephone numbers, and bank account numbers); (c) information related to minors; (d) information so highly sensitive that its disclosure to a competitor could result in a significant commercial disadvantage to the designating party."). (Dkt. No. 136-3, at 3-4).  Plaintiff rejected additional terms that Defendant had inserted.

The parties discussed the proposed Stipulated Protective Order at their meet and confer discussion on January 30, 2019 and agreed that they were at an impasse with respect to the breadth of the Protective Order sought. Because Plaintiff did not, and does not, agree to the additional terms Defendant insisted upon, Plaintiff filed a Motion to Enter a Protective Order on February 11, 2019.

### D. Meet and Confer Discussion

The parties held a meet and confer discussion on January 30, 2019. The parties discussed the issues now raised in Defendant's motion to compel. Plaintiff's counsel pointed out that Plaintiff's objections were not "boilerplate," but specific as to each Interrogatory and that her answers were complete as specifically limited. Defendant continued to press his position that SPLC is, somehow, not a law firm and therefor communications that included non-attorney support staff assisting the attorneys were not entitled to attorney-client privilege. Defendant also

argued that communication with a retired clergy member was not entitled to the

clergy privilege. The parties were unable to reach agreement on these points.

The parties discussed Defendant's position that Plaintiff's objections based

on First Amendment and Montana confidentiality rules were deficient. Plaintiff's

counsel agreed to discuss Defendants arguments on these points with co-counsel

and client and provide a timely response. Although Plaintiff's counsel agreed to

make a good faith attempt to respond within a week, she noted that doing so would

be difficult given that four of the five intervening business days would be devoted

to travel and depositions in this case. Accordingly, all counsel agreed on the call

that if Plaintiff's counsel were unable to meet prior to February 6, they would

respond by February 8, the day after counsel returned from depositions in

Montana.[1]

On February 5, 2019, Plaintiff emailed Defendant's counsel apprising them

that, "Plaintiff's legal team has not had an opportunity to discuss your positions as

relayed in the afore-referenced meeting given travel to and from Montana and the

daily depositions, including the need to continue Ms. Spencer's deposition an

additional day. We are scheduled to do so Friday [2/8/19], and intend to provide

our response by close of business on the same day." (Ex. E). On February 8, 2019,

---

[1] Defendant, again, omits relevant facts in his filing. *See* Dkt. No. 134, at 2
("Plaintiff agreed to produce documents on February 6, 2019 but did not do so.").

Plaintiff informed Defendant that "counsel has discussed the concerns you expressed in the meeting. We will be timely supplementing our discovery in accordance with those discussions." (Ex. F). Defendant did not request further clarification or a timeline for supplementation, and instead filed the instant motion on the following business day. Had he inquired, Plaintiff would have relayed that she intended to waive objections based on First Amendment and state regulatory confidentiality concerns[2] and would have provided a timeline for production.

On February 22, 2019, after an additional review of documents, Plaintiff timely supplemented her responses. (Ex. G). Accordingly, Defendant's arguments are moot as to Interrogatory No. 13, Request No. 2, and Privilege Log Items Nos. 2, 22, 45.  In addition, for the convenience of the Court and not waiving her objection that the request exceeds the number of allowable Interrogatories, Plaintiff supplemented her responses to include a response to Interrogatory No. 15.

---

[2] Although Plaintiff has decided to waive her objections based on the First Amendment and Montana confidentiality rules, neither area of the law is as black and white as Defendant argues in his brief. *See, e.g.*, *Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 266 (E.D. Mich. 2007) (noting that the fact that discovery request was directed to a non-journalist party who was source of information, rather than a subpoena directed to a reporter, did not alter the analysis: "In either case, there is an unwarranted and dangerous intrusion into news-gathering activity that must be factored into the discovery decision"). *And see*, 37 Mont. Op. Att'y Gen. 460 (1978) (citing a Minnesota decision allowing pre-decision information to be withheld and setting out that public access to information relating to complaints or to allegations is within discretion of the Board to withhold where a disclosure would violate a privileged or confidential communication).

## II.    PRELIMINARY STATEMENT

As set out above, the contrast between the parties' actions with respect to discovery obligations could not be starker, and Defendant's attempt to draw a false equivalency should be rejected. Plaintiff has preserved documents since the litigation began, conducted a comprehensive search of all electronics to which she has access, and engaged an outside discovery team to conduct an additional search on her and her husband's electronics. Plaintiff has produced more than 1,250 documents, 150 audio files, and provided 51 pages of responses to interrogatories in conformity with the federal rules and without involving the Court.

By contrast, after two Court Orders and more than eight months, Defendant has yet to produce any non-public documents or truthful and complete answers to interrogatory requests, and he "cannot recall" *any* steps taken to preserve and search for responsive documents. (Dkt. No. 128-1, at 5). In addition, Defendant has failed to provide a location in which his deposition can be taken, despite repeated requests from Plaintiff's counsel to do so. *See* Ex. H.

## III.    LEGAL STANDARD

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. *Bracy v. Gramley*, 520 U.S. 899, 909 (1997); *Payne v. Exxon Corp.*, 121 F.3d 503, 510 (9th Cir.1997). This discretion is guided, however, by certain basic

principles. Valid claims of relevance and privilege govern the court's discretion in ordering discovery. *Laxalt v. McClatchy* 809 F.2d 885, 888 (D.C. Cir 1987). The burden of proving that a privilege applies is placed upon the party asserting the privilege. *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978).

## IV.   ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Objections Are Specifically Tailored to Each Request and Her Responses and Production of Documents Are Not Deficient.

Defendant complains that Plaintiff's objections to Interrogatories and Requests for Production (RPDs) are, somehow, "boilerplate" and unavailing. This assertion is blatantly false. *See* Dkt. Nos. 135-3; 135-4. On their face, Plaintiff's objections to Interrogatories are tailored to the request propounded; each objection identifies specifically the bases upon which the objection lies; and where and how the request went beyond the scope of the federal rules, Fed. Civ. P. R. 26(b), she appropriately limited the scope of the response and comprehensively answered each accordingly.

In addition, as set forth below, Plaintiff did not "refuse" to produce documents, she agreed to produce documents: a) subject to appropriate and specifically identified limits where the RPDs went beyond the scope of the federal rules, and b) pursuant to the protective order then being negotiated between the parties.

Defendant's assertion that "Plaintiff has not informed Defendant whether other responsive documents are being withheld," (Dkt. No. 135, at 13), is also simply not true. Plaintiff noted in her Responses to Defendant's RPD that she was producing all documents pursuant to the limitations described and that only documents identified on the Privilege Log were withheld. (Dkt. No. 117-6). Her counsel further clarified, in concurrent correspondence, that no additional responsive non-privileged documents were withheld that were not identified on the Privilege Log, pursuant to the limitations asserted. (Ex. B).

Defendant's additional arguments regarding alleged deficiencies responsive to specific requests are likewise baseless, as set forth below.

**1. Plaintiff properly redacted her answers and withheld documents pursuant to the Parties' prior agreement to mark such information confidential and subject to a protective order.**

As set forth above, the parties had discussed and agreed to file a Protective Order to protect from dissemination certain categories of information, including financial, medical and certain contact information of parties who could be targeted for harassment. Accordingly, contrary to Defendant's inaccurate assertions that "Plaintiff refused to respond to Interrogatories 1, 2, 6 [and] 11," (Dkt. No. 135, at 8), Plaintiff: a) fully responded to these Interrogatories; b) redacted only information that both parties agreed would be subject to a Protective Order; c) concurrently served Defendant with a proposed Protective Order conforming to

counsel's discussions regarding same; and d) specifically referenced the parties ongoing negotiations regarding a Protective Order, reserving objections in accordance therewith. (Dkt. No. 117-5, at 5).[3]

All of the redacted information about which Defendant now complains falls within the categories of *agreed upon* information which would fall under the category of "Confidential" or "Highly Confidential." Despite good faith negotiations, the parties ultimately were unable to agree to a Stipulated Order because Defendant insisted on *additional* terms that Plaintiff believes are too discretionary, unnecessary, and onerous, and which would limit access even to Plaintiffs' counsel.

a. Plaintiff properly redacted financial and healthcare information (Interrogatories Nos. 1, 2, 6 and 11).

Interrogatories No. 1 and 11 seek information about Plaintiff's financial situation. Plaintiff objected to the extent that the requests seek information protected by the rights to privacy founded in the U.S. and Montana Constitutions, and fully responded, redacting only highly sensitive financial data (wages and annual earnings).

---

[3] Defendant, by contrast, served his responses upon Plaintiff on August 11, 2018, refusing to provide any information, redacted or otherwise, claiming he would do so only upon entry of a Protective Order that barred even Plaintiff's counsel from viewing. Not only was such a term specifically rejected by Plaintiff at the time, Defendant did not provide a proposed order, as did Plaintiff, nor take any steps to procure one even after Plaintiff filed a motion to compel his answers.

Interrogatory No. 2 seeks confidential medical and healthcare information, including privileged therapist-patient information, related to Plaintiff's alleged injuries. Plaintiff objected to the extent that the request seeks information protected by the rights to privacy founded in the U.S. and Montana Constitutions, and fully responded, redacting only highly sensitive and private information.

Interrogatory No. 6 seeks personal contact information of potential witnesses. Plaintiff provided a 16-page response, listing 78 people, redacting only contact information to protect witnesses from harassment and abuse.

Plaintiff is entitled to withhold the information redacted subject to a Protective Order, even if the parties had not reached agreement as to the essential terms, because confidential health information, financial information and contact information of individuals who could be targeted for harassment are the kinds of information that Defendant is inclined to use to continue his campaign of harassment against Plaintiff, and those he considers his 'enemies.' *See* Fed. Civ. P. R. 26(c) ("the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Defendant has viciously and persistently targeted Plaintiff for harassment, humiliation and abuse by widely disseminating any and all information he gets his hands on—including photographs of her and her children.

In addition, "[t]he Ninth Circuit recognizes a constitutional right to the privacy of medical information in a variety of contexts." *Newman v. Poquette*, 2012 WL 487116, at *3 (C.D. Cal. Jan. 12, 2012), report and recommendation adopted, 2012 WL 487089 (C.D. Cal. Feb. 15, 2012); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality.") (citing *Doe v. Attorney Gen. of the United States*, 941 F.2d 780, 795 (9th Cir. 1991)).

### 2. Plaintiff specifically objected to interrogatories and RPDs that are unlimited in time and scope and fully responded within specifically identified limits.

Although access to discovery is broad, it is not unconstrained. *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir. 1978) (holding that discovery rules "do[] not ... permit a plaintiff to 'go fishing' and [that] a trial court retains discretion to determine that a discovery request is too broad and oppressive"). Discovery requests must be limited in scope and time so as not to impose an excessive burden on the answering party. *See, e.g., Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 515 (E.D. Cal. 2009) (limiting discovery of prior complaints to period beginning two years prior to earliest alleged incident, where request covered period beginning approximately ten years before); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (affirming limitation on scope of discovery to no

more than one year before the actions at issue). It is well-settled that it is entirely appropriate to limit discovery responses to a reasonable time frame. *See Avirgan v. Hull*, 116 F.R.D. 591 (S.D. Fla. 1987); *U.S. ex rel. Jacobs v. CDS, P.A.*, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) (denying motion to compel that sought documents and information outside the time period "repeatedly focuse[d] on" in the complaint); *Loop AI Labs Inc. v. Gatti*, 2016 WL 9132846, at *3 (N.D. Cal. May 6, 2016) (limiting temporal scope to "a reasonable period of time connected to the wrongdoing alleged in the operative complaint"); *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15-CV-0578-WQH-AGS, 2018 WL 3656298, at *1 (S.D. Cal. Aug. 2, 2018) (same).

> a. <u>Plaintiff properly limited the scope of Interrogatory No. 3 and fully responded.</u>

Interrogatory No. 3 seeks *unlimited* access to Plaintiff's medical, psychological and/or therapeutic care. Plaintiff objected based on overbreadth and disproportionality and set out that she was limiting her responses to: 1) Any medical, psychological, and/or therapeutic care since April 18, 2012, to which she answered that she had no responsive information; and 2) Any relevant care or treatment that is similar or related to the injuries claimed in this litigation, to which she answered that she had no responsive information. As set forth in her response and accompanying cover letter, no information outside the scope of the appropriate limitations identified is being withheld.

        b.  <u>Plaintiff properly limited the scope of Interrogatory No. 4</u>
            <u>and fully responded.</u>

Interrogatory No. 4 seeks information about "any other incident or accident"

Plaintiff has ever been involved in, from birth until today. Plaintiff objected based

on overbreadth and disproportionality and set out that she was limiting her

responses to: 1) Any unrelated incident or accident in the previous five years, to

which she answered that she had no responsive information; and 2) Any similar

incident she had ever been involved in, to which she answered that she had no

responsive information. As set forth in her response and accompanying cover

letter, no information outside the scope of the appropriate limitations identified is

being withheld.

        c.  <u>Plaintiff properly limited the scope of Requests for</u>
            <u>Production.</u>

Defendant demanded access to a lifetime of Plaintiff's medical, psychiatric,

employment, and health insurance records (RPD Nos. 16, 47 and 50). Plaintiff

appropriately objected to Defendant's requests as privileged, violative of her

privacy rights, overly broad and disproportionate to the needs of the case.

However, Plaintiff responded that she would produce relevant, non-privileged

documents limited to the 5 years prior to the filing of the lawsuit subject to a

Protective Order as discussed and agreed to by the parties, *see supra*, Section I.C.

The unfettered access Defendant seeks to decades worth of medical information is unwarranted. Whether Plaintiff was treated for a sinus infection when she was a teenager, or, as Defendant argues, whether she has ever been treated for the flu, (Dkt. No. 135, at 5), is neither proportional to the needs of the case nor relevant to whether she suffered emotional distress due to Defendant's barrage of anti-Semitic harassment against her. Plaintiff's identified limitations and agreement to provide documents in accordance therewith, subject to the agreed upon protective order, is sufficient.

> d. Plaintiff properly objected to Defendant's demand that she detail more than 700 individual harassing messages she and others received and properly referred Defendant to responsive documents (Interrogatory No. 14).

Interrogatory No. 14 demands that Plaintiff describe "with specificity" every harassing communication she, any member of her family, her employer, her co-worker, her friends, her acquaintances, or her colleagues received as a result of Defendant's actions. Plaintiff objected based on overbreadth and disproportionality and referred Defendant to documents produced in response to Defendant's RPD Nos. 3-8, 13, 15, and 23-45 (RPDs for documents evidencing all harassing communications received). Plaintiff also identified individuals most knowledgeable of harassing phone calls received at Plaintiff's husband's law firm.

Consistent with Rule 33, that sets out that the responding party may answer by specifying the records to be reviewed where the answer to an interrogatory may

be determined by examination of "a party's business records (including electronically stored information)," Plaintiff's response is sufficient. Requiring Plaintiff to list with specificity each communication, "including the date, time, method, and content" and describe the hundreds upon hundreds of harassing communications that she has produced – a task that would take days, if not weeks, to complete – is the definition of "unduly burdensome" where the information is readily available to the Defendant by simply reviewing the produced documents that are duplicative of his request.[4]

---

[4] Defendant's chief complaint appears to be that Plaintiff provided documents electronically and did not "supplement" her production with an index to identify which documents were responsive to which request. There is no such requirement where Plaintiff produced her documents as kept in the usual course of business. *See* Fed. R. Civ. P. 34; *see also*, *e.g.*, *Yates v. W. Contra Costa Unified Sch. Dist.*, No. 16-CV-01077-MEJ, 2017 WL 2106130, at *2 (N.D. Cal. May 15, 2017) (noting that "Rule 34 does not require Plaintiff to identify responsive documents in his response; it requires Plaintiff either to object to the request with specificity (*i.e.*, state the basis for his objection) and indicate whether he is withholding any documents based on his objection, or to state he will allow inspection or produce responsive documents."); *Young v. AXA Art Ins. Corp.*, 2010 WL 11598063, at *4 (C.D. Cal. Oct. 5, 2010) ("respondent is not required to organize and label documents in a production by request number so long as the documents are produced as they are kept in the usual course of business."); *Rutherford v. PaloVerde Health Care Dist.*, 2014 WL 12633523, at *4 (C.D. Cal. Apr. 25, 2014) ("Even if the responding party does not produce documents as kept in the usual course of business, Rule 34 does not require the producing party to identify in its written response to each document request exactly which page is responsive to each request."). Notwithstanding the above, and for the convenience of the Court, Plaintiff is currently engaged in an effort to provide an Index that would moot Defendant's complaint on this point.

In addition, Defendant's requests were so duplicative and repetitive that identifying the request to which each responsive document is most responsive would be unduly burdensome. For example, 29 of Defendant's requests sought documents evidencing the harassment Plaintiff received due to Defendant's actions. Plaintiff provided thousands of files responsive to these duplicative requests. These documents were in a myriad of formats, including audio files, .pdf files, .tiff images, .jpg images, .mp3 files, and other electronic formats. The volume of these files, and varying formats, made it difficult to organize or categorize these files pursuant to electronic production. In addition, because Defendant's 79 RPDs largely tracked each paragraph of the Complaint, many were similarly redundant and duplicative.

Production was further complicated due to the need to redact contact and personal information, a task required based on the nefariousness of Defendant, an avowed neo-Nazi, and his practice of weaponizing information for dissemination to an international audience of anti-Semites and racists. This, in turn, required categorizing documents into different electronic folders for electronic production—redacted natives; non-redacted natives; redacted non-natives; and non-redacted non-natives—before uploading for electronic production. Several attorneys and support staff worked diligently for weeks to collect, categorize, review, redact, number, upload and electronically transmit responsive documents.

Finally, it should be noted that, despite Defendant's histrionics, the production was by no means a "document dump." There are not piles of corporate files requiring difficult sorting to find needles inside haystacks of non-responsive documents. *All* of the documents produced are specifically responsive to Defendant's requests, and even a cursory review of the documents easily show which document is responsive to which category of requests.

### B. Documents Subject to Attorney-Client and Clergy Privileges Are Properly Withheld.

Defendant claims that communication between a client, her attorneys and her attorney's litigation and support staff effects a waiver of privilege. Defendant also argues that the fact of a clergy member's retirement renders a conversation or confession between a rabbi and his congregant non-privileged. As set out below, Defendant is wrong on both counts.

#### 1. A client does not waive attorney-client privilege by including her attorneys' support staff and investigators.

Contrary to Defendant's argument, attorneys do not need to be organized around a profit-seeking model in order to be entitled to the privileges, and bound by the obligations, of the legal profession. The SPLC – like hundreds of similarly situated non-profit legal organizations who also engage in advocacy – are treated as law firms under the rules of professional responsibility and their attorneys and clients are provided the same privilege to confidential communication.

Defendant's central argument is that SPLC is not a law firm and therefore its lawyers and their agents are not entitled to the usual rules regarding attorney-client privilege. This argument is fundamentally flawed and unsupported in law. Under Montana rules of professional conduct, to which Plaintiff's lawyers are bound, a "'law firm' denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship *or other association* authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation *or other organization*." Mont. Prof. Conduct R. 1.0 (e) (emphasis added).

Plaintiff's attorneys, and the communications at issue, are subject to the same rules of confidentiality as are applied to all other lawyers. Whether or not a given communication is "confidential" within the meaning of the privilege is not determined by looking at how the organization that the attorney works for is organized, but at the nature of the communication and the perspective of the client. *United States v. Moscony*, 927 F.2d 742, 751–752 (3rd Cir. 1991); *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984) (decisive inquiry is "whether the client reasonably understood the conference to be confidential") (quoting McCormick on Evidence, § 91 at 189 (1972)); *see also Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975) (intent of the party is determinative)); *YS Garments v. Cont'l Cas. Co.*, 2018 WL 3829764, at *4 (C.D. Cal. Jan. 29, 2018) ("the client is

Page 21

the holder of the attorney-client privilege under federal common law, and only the client can waive the privilege"); *accord In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987); *Klitzman, Klitzman* & *Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984).

The communications at issue here are emails between a client, her attorneys, their in-house investigators and in-house litigation support team. The client and all recipients understood the emails to be confidential, for the purpose of seeking and providing legal advice, and protected under the attorney-client privilege. Each of the SPLC staff members identified on the Privilege Log are agents of the attorneys, whose obligations are to the client, and whose objective is advising and assisting the attorneys in this litigation.

Defendant's argument is simply contrary to settled law. *U.S. v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016) (holding that that conversations between a lawyer and an investigator retained by the lawyer about the lawyer's client were privileged); *id.* at 802 ("[A] communication from the attorney to a third party acting as his agent "for the purpose of advising and defending his clients" also may be protected if it reveals confidential client communications.) (citing *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963)); *see also* Paul R. Rice, Attorney-Client Privilege in the United States § 3:3 (2014) (explaining that "courts have extended the privilege to confidential communications ... from the attorney to the agent, and from the agent to the attorney").

### 2. The Clergy Privilege applies to the confidential conversation between Plaintiff and Rabbi Secher.

Both Montana statutory law and the First Amendment's protection of religious freedom treat as privileged the communication "between lay persons and clergy if the communications were 'made in confidence and for the purpose of seeking or receiving religious guidance, admonishment, or advice" where the clergy person "was acting in his or her religious role pursuant to the practice and discipline of the church.'" *State v. MacKinnon*, 957 P.2d 23, 28. (Mont. 1998) (quoting and adopting broad interpretation of the clergy privilege announced in *Scott v. Hammock*, 870 P.2d 947 (Utah 1994)).[5] In *MacKinnon*, the Montana Supreme Court unequivocally adopted a "broad interpretation" of the clergy privilege in order to adhere to the principles in "the federal First Amendment and under Article II, Section 5 of the Montana Constitution [that] all persons are guaranteed the free exercise of their religious beliefs and all religions are guaranteed governmental neutrality." *Id.* (citing *Torcaso v. Watkins* 367 U.S. 488, 495 (1961) and *Rasmussen v. Bennett*, 741 P.2d 755, 758–59. (Mont. 1987)). In *State v. Gooding*, 989 P.2d 304, 307 (Mont. 1999), the high court further noted that the clergy-penitent privilege "must not be so strictly construed as to violate the right to the

---

[5] In state law claims litigated in federal court, the federal court applies state privilege law, "[e]xcept as otherwise required by the Constitution of the United States ...." Fed. R. Evid. 501.

free exercise of religion" guaranteed by state and federal constitutions. *And see, e.g.*, *Mullen v. United States*, 263 F.2d 275, 280 (D.C. Cir. 1958) (Fahy, J., concurring, joined by Edgerton, J.) (noting sound policy concedes to religious liberty the rule that secrets acquired in performance of spiritual function should not be disclosed in judicial proceeding); *Griffin v. Coughlin*, 743 F. Supp. 1006, 1028 (N.D.N.Y. 1990) (free exercise clause recognizes need for privacy in confidential communications with a spiritual advisor).

The conversation withheld as privileged was an email exchange between Plaintiff and Rabbi Secher, whom Plaintiff considers her rabbi and the person she turns to for counsels on matters of how to live life in accordance with her Jewish faith and obligations. (Ex. I, at 4.)  The conversation took place on November 22, 2016, the day that Plaintiff's neighbor, Richard Spencer, a notorious anti-Semite living in Whitefish, became national news when a video surfaced of him making menacing anti-Semitic remarks and referencing Hitler's Germany in the wake of the 2016 election wherein he raised a glass with a Heil Hitler arm and yelled, "Hail Trump, Hail Our People, Hail Victory" to a room full of White Supremacists and Anti-Semites, many of whom responded with Nazi salutes. *See*, *e.g.*, Eric Bradner, *Alt-right leader: "Hail Trump! Hail our people! Hail victory!,"* CNN (Nov. 22, 2016) ("The racism and anti-Semitism of the alt-right movement were on display

Page 24

Saturday in Washington when its members gathered to celebrate Donald Trump's victory.").

The term "clergy" is not defined in the evidence code, however; it is defined consistently in other Montana statutes: "'clergy' means…(i) an ordained minister, priest, or rabbi." Mont. Code Ann. §15-6-201(2)(b); Mont. Code Ann. § 41-3-201 (same definition). Additional guidance in proposed Federal Rule of Evidence 506, which sets out that "a 'clergyman' is a minister, priest, rabbi, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him." Proposed Fed. R. Evid. 506, 56 F.R.D. at 247.

Rabbi Secher certainly meets the definition of clergy. He was ordained by New York's Hebrew Union College in 1962 and earned his Doctor of Divinity degree from Hebrew Union College in 1987.[6]  He has long been among the few rabbis in the state of Montana.  (Ex. J, at 3) ("Rabbi Allan Secher, who serves Bozeman, is one of only two rabbis in all of Montana.").

---

[6] *See Allen Secher*, Wikipedia, https://en.wikipedia.org/wiki/Allen_Secher ("Allen received a Bachelor of Philosophy from Brandeis University, was ordained by New York's Hebrew Union College in 1962, and earned his Doctor of Divinity degree from Hebrew Union College in 1987."); *Worship*, Congregation Beth Shalom, https://bethshalombozeman.org/worship/ ("Rabbi Allen Secher served as Beth Shalom's part-time rabbi from 2003-2008. From 2008-2013 he was rabbi of Congregation Bet Hariim of the Flathead Valley. Ordained by Hebrew Union College in 1961, he subsequently earned his Doctor of Divinity degree.").

To Plaintiff, Rabbi Secher is her rabbi, the person she turns to for spiritual advice and for questions regarding her duty as an adherent of the Jewish faith, regardless of whether he is "retired" or not.[7] (Ex. I, at 4). *And see* Mont. Code Ann. § 26-1-804 (evidentiary privilege for "clergy-penitent" communications belongs to the communicant). The email chain withheld is privileged because it was "confidential," in that it was "made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication," to a "rabbi… or an individual reasonably believed so to be by the person consulting him." *In re Grand Jury Investigation*, 918 F.2d 374, 380 (3d Cir. 1990). By contrast, as Plaintiff's counsel pointed out in the meet and confer discussion, other conversations between Plaintiff and Rabbi Secher, as well as Plaintiff and Rabbi Roston, were not claimed as privileged because they were not intended to be confidential and were not for the purpose of seeking spiritual guidance.

Defendant's argument that Rabbi Secher lost his ability to counsel Plaintiff in his position to her as her spiritual advisor based solely on his decision to retire

---

[7] The word Rabbi translates as "teacher" in Hebrew. In the Jewish community, a rabbi is viewed not only as a spiritual leader but as a counselor, a role model and an educator. (Ex. I, at 2). There is no hierarchy and no central authority in Judaism that either supervises rabbinic education or records ordinations; each branch of Judaism regulates the ordination of the rabbis affiliated with it. (Ex. I, at 3). A rabbinical student is awarded *s'michah* ("rabbinic ordination") after the completion of his or her training in a course of rabbinical study. (Ex. I, at 2).

from the daily obligations of a full-time congregational rabbinical career are not supported. Indeed, cabining confidential communication between an adherent and the person to whom one turns for spiritual advice based on the date of retirement would likely violate the First Amendment as government entanglement with religious freedom. Especially in a state like Montana, with few, if any, temples, synagogues or rabbis, it would likely run afoul of the constitution to deny Jewish people the ability to seek spiritual guidance or consultation unless a rabbi has formal ties to a synagogue. *See Gooding*, 989 P.2d at 307 (warning that privilege must not be so strictly construed as to violate the constitutional right to the free exercise of religion). Courts, including Montana courts, focus on whether a clergy person is ordained, not whether they are retired. Plaintiff can find no supporting authority for Defendant's narrow application of the clergy privilege.

### C. Defendant Has No Basis For An Award of Fees Or Costs

Defendant has not come close to showing how he is entitled to expenses and fees in filing this premature and unnecessary motion.  Defendant's failure to have even a cursory conversation following Plaintiff's communication that she would be supplementing her discovery added bloat to an already baseless motion. *Osborne v. Billings Clinic*, No. CV 14-126-BLG-SPW, 2015 WL 1643379, at *1 (D. Mont. Apr. 13, 2015) (noting requirement to meet and confer is not only to resolve all issues by agreement, but "to at least narrow and focus the matters in controversy

before judicial resolution is sought") (citations omitted). Defendant also omits relevant information and mischaracterizes Plaintiff's discovery responses and her counsel's communications relating thereto, as explained herein.

Defendant cannot excuse or obscure his failure to comply with discovery by creating a false equivalency through a baseless motion to compel. In truth, Plaintiff has responded timely, objected appropriately and attempted to comply fully with her discovery obligations.

## V.    CONCLUSION

This Court should deny Defendant's motion for the reasons stated herein.

DATED February 25, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

**EXHIBIT INDEX**

| Ex. | Description |
|-----|-------------|
| A | Email To Defendant's Counsel with Proposed Stipulated Protective Order |
| B | Email and Letter to Defendant's Counsel re Production |
| C | Email to Defendant's Counsel re Delay in Supplemental Production |
| D | Email to Defendant's Counsel re Supplemental Production |
| E | Email to Defendant's Counsel re Response to First Amendment and Montana Confidentiality Rules Objections |
| F | Email to Defendant's Counsel Agreeing to Supplement Discovery |
| G | Plaintiff's First Supplemental Response to Defendant's First Set of Interrogatories and Requests for Production of Documents and Things |
| H | Email with Defendant's Counsel Requesting Information On Where Defendant Is Willing to Be Deposed |
| I | Affidavit of Tanya Gersh |
| J | Associated Press, *Some Religious Leaders in State Cover A Lot of Ground*, Billings Gazette, Mar. 31, 2007. |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Local Rule 7.1(d)(2). It contains 6,466 words, excluding the caption, certificates of service and compliance, tables of contents and authorities, and exhibit index.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Dale M. Schowengerdt
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
dales@mt.gov
*Attorney for Intervenor State of Montana*

Jonathan W. Bennion
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
jonbennion@mt.gov
*Attorney for Intervenor State of Montana*

Matthew T. Cochenour
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
mcochenour2@mt.gov
*Attorney for Intervenor State of Montana*

on this 25th day of February, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff