John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
Jim Knoepp*
Elizabeth Littrell*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
beth.littrell@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

TANYA GERSH,

    Plaintiff,

    vs.

ANDREW ANGLIN, publisher of
the *Daily Stormer*,

    Defendant.

Case No.:  9:17-cv-00050-DLC-JCL

**PLAINTIFF'S REPLY BRIEF IN
SUPPORT OF MOTION TO ENTER
PROTECTIVE ORDER
GOVERNING "CONFIDENTIAL"
AND "HIGHLY CONFIDENTIAL"
INFORMATION**

## INTRODUCTION

The parties agree that entry of a Protective Order is warranted in this case. They disagree about the scope of the Order. Plaintiff seeks a limited order that protects defined categories of information. Defendant, on the other hand, seeks to include provisions that provide excessive discretion and are unnecessarily onerous and unduly restrictive, including a provision that would restrict Plaintiff's attorneys and their litigation support team from accessing discovery material, a proposition already rejected by this Court. (Dkt. No. 131, at 5–8). The Court should reject Defendant's invitation to insert terms and provisions that provide too much discretion, invite additional litigation, and that create an unnecessary and unworkable burden.

## ARGUMENT AND AUTHORITY

### I.      A Protective Order is Warranted Only Where Good Cause is Shown.

As set out in her initial brief in support of this motion, Plaintiff seeks entry of a protective order for specifically limited and delineated information, in keeping with the general rule that discovery material is not ordinarily shielded by court order absent good cause. *See Nixon v. Warner Commnc'ns, Inc* 435 U.S. 589, 597–98 (1978). Protective orders should be limited because the public is entitled to access litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" as to why a protective order is

necessary. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *see also San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

Despite the usual rule set out above, this case involves unusual facts that support Plaintiff's request for a limited protective order.

### A. Plaintiff seeks an order to protect categories of information that are routinely protected, and for which she shows good cause.

Recognizing that protective orders are the exception, rather than the rule, Plaintiff has limited her proposed protective order to specifically defined and delineated information that the public has no interest in accessing—(1) confidential medical information, (2) personally identifying information, and (3) information and images involving minors. Pursuant to negotiations with Defendant, she agreed to include provisions that protect trade secrets and proprietary information. All of the foregoing categories of information are routinely entitled to the protection of protective orders. *See Johnson v. City & Cty. of San Francisco*, 2012 WL 104635, at *3 (N.D. Cal. Jan. 12, 2012) (upholding protective order for addresses and phone numbers"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 2663241, at *2 (N.D. Ill. Sept. 29, 2004) (finding good cause to enter a

protective order with respect to the public disclosure of personal financial information and proprietary software).

Plaintiff shows good cause as to why the categories of information she outlines should be protected from dissemination. Specifically, this case involves a Defendant who is on record as "want[ing] to gas kikes," (Ex. A, at 5–6), and who publishes anti-Semitic, Nazi-inspired propaganda over the internet in order to inflame racial prejudices; expose individuals to ridicule, harassment, abuse and terroristic actions; and to incite people to take action against perceived "enemies." (Ex. B). These facts are in the record, as well as the public domain. *See, e.g.* Ex. C; dkt. nos. 32-2, 32-4, 32-5; *see also* Ex. A, at 5 ("the basic propaganda doctrine of this site[, Daily Stormer,] is based on Hitler's doctrine of war propaganda outlined in Mein Kamp")). Based on Defendant's past behavior and pattern of launching "troll storms," Plaintiff seeks to protect from dissemination highly sensitive information routinely subject to protective orders for the precise reasons that Federal Rule of Civil Procedure 26(c) allows—"to protect a party or person from annoyance, embarrassment [and] oppression"—actions that Defendant has a track record of engaging in with respect to Plaintiff and others. Plaintiff has amply supported her request to protect the outlined information from dissemination.

Defendant objects to Plaintiff's proposed motion because it does not include a provision that would allow him to unilaterally identify "information implicating

an individual's legitimate expectation of privacy," and "information so highly sensitive that its disclosure could jeopardize the physical safety of an individual" as subject to the Protective Order. (Dkt. No. 136, at 3–4). Plaintiff rejected these additions during negotiations to seek entry of a stipulated order because both phrases provide unnecessary discretion, lend themselves to abuse, and increase the opportunity for litigation.

> **B. Defendant seeks additional terms that provide excessive discretion and contradict the Court's obligation to ensure protective orders are narrow and defined.**

As one federal court aptly noted, the "request [for a protective order] must be narrow and the terms of the order may not give too much discretion to the parties to designate documents subject to the protective order." *Wilson v. Venture Fin. Grp., Inc*., 2010 WL 2572826, at *1 (W.D. Wash. June 15, 2010) (noting that "[a]ny protective order entered by the court must be narrowly drawn and clearly identify the class or type of documents subject to the order"). Indeed, courts are required to "take care to ensure that the protection afforded to [discovery] information is no broader than is necessary to accomplish the [proffered] goals" of the protective order. *United States v. Lindh*, 198 F. Supp. 2d 739, 741–42 (E.D. Va. 2002). Defendant's insistence on inclusion of the broad provisions outlined above, (dkt. no. 136, at 3–4), should be denied because they include the types of discretionary terms that courts are cautioned to avoid.

Federal courts routinely recognize that a protective order must extend only to "properly demarcated categor[ies] of legitimately confidential information" and that a broad protective order granting carte blanche discretion to a party is invalid. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 946 (7th Cir.1999); *see also MRS Invs. v. Meridian Sports, Inc*., 2002 WL 193140, at *1 (S.D. Ind. Feb.6, 2002) (rejecting proposed protective order because categories of protected information were overly broad and vague); *In re Enron Corp*., 2002 WL 32116900, at *1 (S.D. Tex. Mar. 28, 2002) (denying Enron's motion for protective order because the categories asserted by Enron were too broad and the definitions of key terms too vague or undefined); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc*., 2004 WL 2663241, at *2 (N.D. Ill. Sept. 29, 2004) (rejecting terms "internal business strategies" and "other categories of proprietary information" as "too broad as categories of protectable information. These broad and undefined categories do not allow the Court to fulfill its duty of satisfying itself that the parties know what the legitimate categories of protectable information are and are acting in good faith in deciding which parts of the record qualify for protection.").

As set forth in her initial brief in support of this motion, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Adelos, Inc. v. Halliburton Co. & Halliburton Energy*

*Servs., Inc.*, No. CV 16-119-M-DLC, 2017 WL3836131, at *2 (D. Mont. Apr. 5, 2017) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Good cause requires a party to satisfy the burden with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035 (2nd ed.1994)).

By insisting on overly broad and open-ended "catch-all" provisions, Defendant seeks to bypass his obligation to show "good cause" as to why a protective order is required as to any individual category of information. Inclusion of Defendant's provisions would result in an inverse of the judicial process, forcing Plaintiff to litigate in order to *gain* unfettered access to any material Defendant unilaterally claims as "legitimate expectations of privacy" or "highly sensitive." A review of the two categories of information that he seeks to sweep within the ambit of "Confidential" and "Highly Confidential" material, (dkt. no. 136, at 3–4), shows that they invite litigation and invert the appropriate judicial process.

Importantly, for the following reasons, Plaintiff opposes the addition of Defendant's proposed provisions, whether delineated or not.

    1.  <u>Defendant is not a member of the media and he does not have sources that need to be protected.</u>

Plaintiff objects to the catch-all categories of information Defendant proposes precisely because it bypasses his burden to show good cause. For

example, Defendant asserts that he needs to include a discretionary catch-all provision in order to protect "sources and other privileged information . . . given that Defendant is a member of the media." (Dkt. No. 136, at 3). This assertion underscores the need to limit and delineate the categories of information within the scope of the order. "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship…." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984). Defendant seeks to avoid this obligation by sweeping his assertion of "reporter's privilege" under a broad and undefined category in a protective order without showing how he is entitled to the privilege or whether the articles that form the basis for this lawsuit relied on sources or news gathering.

There is no good cause to include within the protective order information Defendant unilaterally claims as entitled to "reporter's privilege" because he has not shown that he is either a "reporter" or a "member of the media." Nor is there any support for his assertion that he has "sources" to protect.[1] Indeed, a review of the "articles" that form the basis of this lawsuit show that no independent "newsgathering" occurred and no "sources" were quoted, implicated or identified. (Ex. D).

_____

[1] Given the page limitations inherent in a Reply Brief, Plaintiff presents the argument on this point by way of non-exhaustive illustration.

The mere claim that one is a reporter or journalist, "is not enough to gain the protection of the Shield Law. As with any assertion of privilege, the proponent bears the burden to prove its application to any given situation." *Too Much Media, LLC v. Hale*, 993 A.2d 845, 853 (N.J. App. Div. 2010), *aff'd and modified*, 20 A.3d 364 (2011); *see also J.O. v. Township of Bedminster*, 77 A.3d 1242, 1254 (N.J. App. Div. 2013) (Internet publisher of "web gripe site" does not qualify for privilege). In determining whether the privilege applies, courts look to "[t]he purpose of the journalist's privilege . . . [which i]s to protect the activity of 'investigative reporting.'" *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993); *In re Madden*, 151 F.3d 125, 130 (3d Cir. 1998) (ruling defendant's activities "cannot be considered 'reporting,' let alone 'investigative reporting,'" finding that he was "an entertainer, not a reporter, disseminating hype, not news.").

Anglin is many things—a serial harasser;[2] a Nazi,[3] an internet troll.[4] What he is not is a "journalist" or a "reporter." Likewise, the Daily Stormer can be

---

[2] Luke O'Brien, *America's Most Notorious Neo-Nazi Is On the Lam. Won't you come home Andrew Anglin*?, Huffpost, (December 19, 2017), https://www.huffingtonpost.com/entry/on-the-lam-with-andrew-anglin-americas-most-notorious-neo-nazi_us_5a33fb5ae4b01d429cc86842

[3] Luke O'Brien, *The Making of an American Nazi*, The Atlantic Dec. 2017), https://www.huffingtonpost.com/entry/on-the-lam-with-andrew-anglin-americas-most-notorious-neo-nazi_us_5a33fb5ae4b01d429cc86842

[4] Michael Kunzelman *Settlement Requires 'Anti-Hate Training' For Internet Troll* Associated Press (December 18, 2018), https://apnews.com/51b6ed10e4654426a2855a42ad58ba0d

variously described: "an American neo-Nazi, white supremacist, and Holocaust

denial commentary website and message board that advocates for the genocide of

Jews"[5]; a "notorious neo-Nazi and white supremacist website"[6]; "a prime hub for

neo-Nazism on the Web."[7] It cannot be called a newspaper.

Nor does Defendant engage in reporting or have "sources" to protect.

A sampling of the Daily Stormer's postings suffices to support Plaintiff's

argument. (Ex. C). Defendant admits his objective with the Daily Stormer is

not disseminating news or information; it is "to spread the message of

nationalism and anti-Semitism to the masses." (Ex. A, at 2).

Indeed, the Daily Stormer has disclosed its agenda and "reporting"

strategy, which it calls the site's "propaganda doctrine":

Prime Directive: Always Blame the Jews for Everything

As Hitler says in Mein Kampf, people will become confused and
disheartened if they feel there are multiple enemies. As such, all
enemies should be combined into one enemy, which is the Jews. This
is pretty much objectively true anyway, but we want to leave out any
and all nuance.

---

[5] *The Daily Stormer*, Wikipedia (last updated Feb. 25, 2019),
https://en.wikipedia.org/wiki/The_Daily_Stormer.

[6] Christine Zosche, *Neo-Nazi Site Daily Stormer Is Back on The Web as Punished
Stormer*, AdWeek (Aug. 25, 2017), https://www.adweek.com/blognetwork/neo-
nazi-site-daily-stormer-is-back-on-the-web-as-punished-stormer/43636.

[7] Talia Lavin, *The Neo-Nazis of the Daily Stormer Wander the Digital Wilderness*,
New Yorker (Jan. 7, 2018), https://www.newyorker.com/tech/annals-of-
technology/the-neo-nazis-of-the-daily-stormer-wander-the-digital-wilderness.

> So no blaming Enlightenment though, pathological altruism, technology/urbanization, etc. - just blame Jews for everything.
>
> This basically includes blaming Jews for the behavior of other non-Whites. Of course it should not be that they are innocent, but the message should always be that if we didn't have the Jews we could figure out how to deal with non-Whites very easily.
>
> The same deal with women. Women should be attacked, but there should always be mention that if it wasn't for the Jews, they would be acting normally.
>
> What should be completely avoided is the sometimes mentioned idea that "even if we got rid of the Jews we would still have all these other problems." The Jews should always be the beginning and the end of every problem, from poverty to poor family dynamics to war to the destruction of the rainforest....

(Ex. A. at 5)

The Daily Stormer is a propaganda forum that posts inflammatory commentary about republished articles and posts. A review of the 30 "articles" upon which this lawsuit is based, on their face, show there is no "reporting" and no "sources" cited or implicated.

2.  There is no support for Defendant's assertion that information reflecting his location will jeopardize his physical safety.

"[M]erely asserting that a disclosure of the information 'could' harm a litigant's competitive position is insufficient; the motion must explain how." *Shepard v. Humke*, 2003 WL 1702256, at *1 (S.D. Ind. Mar. 28, 2003) (citing *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 547 (7th Cir.2002)). Plaintiff is at a loss to understand how identifying Defendant's location—a question he put into

the record by seeking to avoid the Court's jurisdiction—subjects him to physical danger. There is simply no showing of such in the record.

The irony in Defendant's position is inescapable. He claims the need to completely and permanently shield any information about his address and location based on unsubstantiated fear for his safety. Yet, this lawsuit exists as a result of his actions in publishing and widely disseminating the addresses and locations, along with contact information and photographs, of Plaintiff, her husband, her child, her associates and any other entity or individual connected to her, for the express purpose of harassing her, knowing full well that she would be terrorized and targeted.

Plaintiff does not suggest anyone deserves to be at risk. However, Defendant has put forward no evidence that his location needs to be highly secretive. Moreover, Defendant's open-ended provisions are not warranted. Defendant's general and unsubstantiated assertion that he needs a broad discretionary provision to permanently and completely cloak his location is insufficient. Defendant's location information would fall under the "personally identifying information" category of Plaintiff's proposed order, which specifically includes home addresses, and should suffice. (Dkt. No. 133, at 6).

## II.   Defendant Seeks To Impose Onerous And Unnecessary Provisions.

As set out below, Defendant's insistence on additional terms and provisions in the Protective Order are unworkable, impractical, and unnecessary. Plaintiff's proposed Protective Order fully protects appropriate information and individuals. As set forth below, Defendant's suggested additions would impede discovery and invite litigation.

### A. Defendant seeks to restrict Plaintiff's attorneys and their support staff from accessing materials for litigation purposes.

Defendant opposes Plaintiff's proposed Protective Order because it allows her attorneys, and their support staff, access to all discovery material. (Dkt. No. 136, at 4–5). Defendant's opposition is an end run around his attempt to withhold discovery that this Court has already rejected. (Dkt. No. 131, 5–8)

Defendant proposes restricting access to certain material only to attorneys and staff "employed by attorneys' law firm" while at the same time asserting that the SPLC "is not a law firm." (Dkt. No. 136, at 9). Accordingly, at the outset, this provision invites litigation over whether SPLC is a law firm within the meaning of Montana R. Prof. Conduct 5.1, or otherwise.

Defendant's proposal would allow SPLC attorneys and support staff access to information only after they divulge internal protocols to Defendant, who would gain veto power over whether appropriate "physical and electronic methods" are sufficiently in place to protect information. (Dkt. No. 136, at 4). Such litigation-prone and oppressive terms are unwarranted. *See*, *e.g.*, *Na"im v. Sophie's Arms*

*Fine Residences, LLC*, 2014 WL 3537807, at *6 (S.D. Cal. July 2, 2014) (referring to Defendant's suggested protective order term, that Plaintiff not be able to view the responses or relevant documents, as an "onerous condition" for which Defendant had not provided legal support); *Chan v. Intuit, Inc*., 218 F.R.D. 659, 662 (N.D. Cal. 2003) (striking a protective order term preventing counsel from "assisting, supervising and/or providing counsel to anyone in connection with any of the foregoing" as "too broad and therefore too restrictive").

The SPLC, like many similar non-profit legal organizations that also engage in advocacy, is considered a law firm under Montana law. (*See* Dkt. No. 140, 20-21). This should end the dispute, especially where Plaintiff's proposed protective order specifically provides that "Confidential" and "Highly Confidential" information "shall be utilized only for purposes of this litigation." Defendant's unsubstantiated fears and suspicions that designated discovery material will be disseminated is unsupported and unfounded, and his effort to create gratuitous burden should be rejected.

## B. Defendant's proposed imposition of additional onerous terms are unwarranted.

Defendant additionally objects to the limited protective order Plaintiff seeks because it does not include terms that Plaintiff believes are likewise unnecessary and onerous. Specifically, Defendant seeks: 1) to require that any witness, consultant, staff or other persons with a legitimate need to see information marked

confidential sign an agreement in the presence of the attorney, (Dkt. No. 136, at 4, 6-7); 2) to require their identities be communicated to opposing party 10 days prior to disclosure and to allow the party to seek court intervention to address whether that person is qualified to access the information, (Dkt. No. 136, at 5); and 3) to alert any Qualified Person to the terms of the order in triplicate. (Dkt. No. 136-2, at 5–7, ¶5(a), (c)–(e), (g); dkt. no. 136-2, at 10 ¶ 8, and dkt. no. 136-2, at 20).

Given the transnational nature of this litigation, the requirement that the agreement be signed in the presence of an attorney is unnecessary and unrealistic. The disclosure of identities 10 days prior in order to allow the opposing party to file motions objecting is both onerous and impractical. Requiring individuals to be identified externally is unduly objectionable as well because SPLC has in-house investigators whose identities need to remain anonymous, given the nature of their work monitoring dangerous hate groups. Finally, the requirement of triple notification is, simply, one step too many.

## CONCLUSION

Plaintiff's proposed Protective Order adequately and appropriately safeguards information entitled to protection and should be granted.

DATED February 27, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Local Rule 7.1(d)(2). It

contains 3,248 words, excluding the caption, certificates of service and compliance.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Dale M. Schowengerdt
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
dales@mt.gov
*Attorney for Intervenor State of Montana*

Jonathan W. Bennion
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
jonbennion@mt.gov
*Attorney for Intervenor State of Montana*

Matthew T. Cochenour
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
mcochenour2@mt.gov
*Attorney for Intervenor State of Montana*

on this February 27, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff