Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH, | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | |
| vs. | **DEFENDANT ANDREW ANGLIN'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO RESPOND TO INTERROGATORIES AND REQUESTS FOR PRODUCTION** |
| ANDREW ANGLIN, | |
| Defendant. | |

# DEFENDANT ANDREW ANGLIN'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO RESPOND TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**1.0 Introduction**

Plaintiff attempts to excuse her non-compliance with discovery by alleging that the Defendant has not cooperated on his end. Her arguments are unavailing.

**2.0 Argument and Authority**

**2.1 Plaintiff Has Failed to Comply with Her Discovery Obligations**

Defendant's interrogatory requests and document requests are targeted to defend against allegations Gersh has made against him. The Federal Rules impose on every party a duty to participate in discovery truthfully, meaningfully, and voluntarily without court instructions and on the certifying attorney to make "a reasonable inquiry" to ensure that the responses and objections are "consistent with these rules." Fed. R. Civ. P. 26(g). Gersh has failed to meet these basic obligations.

**2.1.1 Plaintiff Refuses to Respond to Defendant's Discovery Requests**

Gersh raised boilerplate objections and disregarded her obligation in a case that she brought. Her responses were generally that each interrogatory was either compound or overbroad and disproportionate to the needs of the case. See Dkt. No. 135 at 5. Gersh further applied similar boilerplate objections to all 79 of Defendant's Requests for Production. Plaintiff's refusal to provide answers to interrogatories and produce documents that fall within the Defendant's discovery requests frustrates the discovery process.

Plaintiff refused to respond to Interrogatories 1, 2, 6, and 11 when she redacted information in her responses. She cannot claim these redactions were pursuant to a protective order (Dkt. No. 140 at 17-18) because there is no such protective order and she did not move for one before her answers were due. That Defendant agreed

to one in principle does not mean he assented to anything being redacted or withheld prior to the issuance of one.

Interrogatories 1 and 11 seek information about Plaintiff's jobs and wages so that Defendant can calculate and assess Plaintiff's damages. Plaintiff cannot make claims for lost wages and business without providing Defendant relevant, discoverable information about those claims. If she is claiming a "right to privacy" (Dkt. No. 140 at 18) and is unwilling to waive that right,[1] she should dismiss her case. Moreover, under Montana law, "there is no constitutional issue as to disclosure of records between private parties." *Weinheimer v. Omniflight Helicopters, Inc.*, 2009 U.S. Dist. LEXIS 133024, at *4 (D. Mont. Sep. 9, 2009); *accord Cintron v. Title Fin. Corp.,* 2018 U.S. Dist. LEXIS 98556, at *3-4 (D. Mont. June 12, 2018)(Christensen, J.). Notably, in *Weinhemer*, Judge Molloy summarized *State ex rel. Mapes v. District of the Eighth Judicial District*, 250 Mont. 524 (1991) as holding that "any information the plaintiff had placed in issue by his claims was subject to discovery, the right to privacy notwithstanding." *Id.*

Similarly, under *Weinheimer,* Plaintiff cannot prevent Defendant from obtaining information regarding her alleged injuries as sought in Interrogatory No. 2 claiming it contains confidential healthcare information. Her citation to *Norman-Bloodsaw v. Lawrence Berkeley Lab.*,135 F.3d 1260, 1269 (9th Cir. 1998) (Dkt. No. 140 at 20) is inapposite. That case was not about civil discovery; it was about a direct claim for a violation of the right to privacy.[2] If she is unwilling to provide this information on matters she placed in issue, then she should be precluded from introducing any evidence of her damages.

---

[1] Of course, to the extent she properly claims such a right, Defendant must be found to enjoy that right as well. Intrusive discovery into his location and finances must necessarily violate such a right to privacy.

[2] The same is true for her citation to *Newman v. Poquette*, 2012 WL 487116, at *3 (C.D. Cal. Jan. 12, 2012).

Interrogatory No. 6 seeks information regarding potential witnesses so that Defendant can prepare for trial. Plaintiff argues that she is "entitled to withhold the information [regarding potential witnesses because the they] could be targeted for harassment…" See Dkt. No. 140 at 19.  This is not a valid objection.  The courts are open fora and Defendant has the right to take discovery from every known witness.  So much so, that this information should have been disclosed automatically in Plaintiff's initial disclosures.  Withholding contact information directly interferes with the ability to take discovery from these witnesses.

Plaintiff's reference to Fed. R. Civ. P. 26(c) to argue that she should not be compelled to respond is unavailing. Dkt. No. 140 at 19.  If she truly believed she was entitled to protection under the rule, she should have timely moved for a protective order; she did not.  Instead, Plaintiff refuses to comply with these simple requests as the discovery period whittles away, interfering with the proper scope of discovery without justification.

Interrogatory No. 3 seeks information regarding Plaintiff's treatments, since she has brought claims for emotional distress, which may be manifested by physical symptomatology. Plaintiff has put her medical condition at issue in this case.  Her medical history is, therefore, discoverable.  "[B]oth courts and commentators alike have consistently taken the view that when a party places his or her physical or mental condition in issue, the privacy right is waived." *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112-13 (E.D. Pa. 1987) citing *Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976).  Thus, Plaintiff cannot claim that Defendant's request is excessive (Dkt. No. 140 at 21) because Defendant may discover information about her medical history to evaluate potential superseding and intervening causes for the claimed injuries.

Similarly, in Interrogatory No. 4, Defendant sought information regarding past incidents and accidents, as those may bear on the causation of the injuries she

claims. Plaintiff argues in her opposition that such a request is disproportionate to the needs of the case, providing only information as to the past five years. Dkt. No. 140 at 22. Such an artificial limitation undermines Defendant's ability to determine whether any latent injury or prior incident may be the true proximate cause for Plaintiff's claimed injuries.

Plaintiff's statement that Defendant sought a "lifetime of records" in Request for Production No. 47 is false. Dkt. No. 140 at 22. Request 47 states that Anglin is seeking medical and psychiatric records only for the past 10 years. See Doc. No. 135-2 at 15. Again, Plaintiff is the one who filed this tort action, and it makes no sense to claim that discovery questions targeted toward calculating her alleged damages violate her privacy. Even if Plaintiff saw her practitioner for a "sinus infection" or the "flu" (Dkt. No. 140 at 23), the standard of care would require practitioners to take and record a proper medical history. *Compare Johnson v. Rallos*, 2014 U.S. Dist. LEXIS 89089, at *14-15 (E.D. Cal. June 27, 2014) ("[f]or individuals presenting with knee pain, the standard of care is to review the patient's medical history and symptoms"). And, as unrelated as a sinus infection or the flu may seem on the surface, even those are notable where *Plaintiff has identified a variety of medical practitioners with knowledge of her claimed injuries*, including a dentist (Dr. Colonna), an acupuncturist (Ms. Boedeker), a chiropractor (Dr. Garth), family practitioners (Drs. Cole & Kalbfleisch), and a physical therapist (Mr. Ruta). Dtk. No. 135-3 at 16-17. Nor is there any justification to withhold any documents for Request No. 16, which directly addresses a claim of injury allegedly proximately caused by Defendant in paragraph 29 of the Complaint. Thus, these records are relevant and discoverable.

Request No. 50 seeks relevant records that would tend to validate her claimed economic losses, including medical expenses and lost income. Her claims as to lost

income require a 10-year scope as the real estate market is independently volatile, and it is likely that Plaintiff otherwise failed to mitigate her damages.

Gersh claims she should not have to respond to Interrogatory No. 14 which merely asks her to describe communications related to the injuries she claims she suffered. There is no basis to withhold relevant information simply because Plaintiff chose to talk to a lot of people about her allegations many times. Pointing to written communications (Dkt. No. 140 at 23-24) does not relieve a party of the obligation to disclose oral communications.

This information is especially apt as the written discovery provided shows that Gersh was already complaining of harassment **before Mr. Anglin did anything**. Yet, she claims *all* of her damages were caused by Mr. Anglin. It is, therefore, necessary to understand who and what she is complaining about here and whether any of the communications she claims to have received were in any way related to publications on the Daily Stormer, as opposed to publications predating or running parallel to his alleged articles.

Last regarding Gersh's argument that she needed not produce documents and tell Defendant which document referred to which request[3] "was complicated" by Anglin's "nefariousness" is especially troubling because her opinion regarding Anglin is not an excuse to hide discoverable information. Dkt. No. 140 at 25. In fact, it shows that Plaintiff's counsel expressly opted to not produce records in the manner in which they were ordinarily kept, thereby requiring them to identify which document is responsive to which request. See Fed. R. Civ. P. 34(b)(2)(E)(i). To the extent Plaintiff deemed requests "redundant" (Dkt. No. 140 at 25), such should have made identification easier and less burdensome, though each request spoke to

---

[3] Gersh notes in her opposition that she has changed her position on this point and is working to ensure that Defendant is aware of which document refers to which request. Her assent should be made part of an Order to ensure proper compliance.

different aspects and allegations raised by Plaintiff. There are not separate procedural standards for people based on "character" in our system of justice: procedure and law apply equally to every litigant – even one that some may consider to be the "villain" in the story. The majesty of our system is that even villains get due process.

### 2.2 Plaintiff's "Boilerplate" and "Subject To" Objections and Arguments Are Meritless and Improper

*In Sherwin-Williams Co. v. JB Collision Servs., Inc*., the court explained that "subject to" responses and/or the purported reservation of rights based on boilerplate objections "is improper and ultimately has the effect of waiving [Party]'s objections to the discovery requests" because the "practice is confusing and misleading. Moreover, it has no basis in the Federal Rules of Civil Procedure." 2014 LEXIS 93368 at 6 (S.D. Cal. July 9, 2014)(internal citations omitted); see also *Herrera v. AllianceOne Receivable Mgmt., Inc*., 2016 LEXIS 40474 at 7 (S.D. Cal. Mar. 28, 2016) ("Defendant has included a conditional response in its objection, which leaves Plaintiffs and the Court guessing as to whether all responsive documents will be produced. Conditional responses and/or the purported reservation of rights by a responding party are improper and ultimately have the effect of waiving the objections to the discovery requests."). Plaintiff's responses were riddled with references to possibly supplementing later, "subject to a protective order". See Dkt. Nos. 135-3 and 135-4. However, Plaintiff did not seek a protective order nor make seeking a protective order a priority until after Defendants met and conferred with Plaintiff regarding discovery, many months after Defendant served the discovery requests. That the parties did not come to agreed terms beforehand does not relieve her of her obligations. By refusing to seek a protective order prior to responding, Gersh has waived this objection. Compare *Gersh v. Anglin,* 2019 U.S. Dist. LEXIS 9326, at 8 (D. Mont. Jan. 18, 2019) ("**it is worth noting that [Defendant] had**

**ample time to file a motion seeking such a protective order instead of refusing to answer [Plaintiff's] interrogatories without one.**") (emphasis added).

Moreover, Defendant's requests are proper and seek relevant, discoverable matter. Defendant seeks evidence for use at trial so that he can defend himself from Gersh's claims against him, including information that demonstrates that Gersh was already a public figure before anything appeared about her in the Daily Stormer. Plaintiff has requested discovery that relates to Plaintiff's status as a public figure, among other defenses, and probes her damages claims. Gersh's objections are not based in the law or facts of the case, and cripples Defendant's ability to be able to gather evidence for trial.

### 3.0 Plaintiff Cannot Hide Discovery Behind Claims of Attorney-Client Privilege or Clergy Privilege[4]

That the Southern Poverty Law Center is not a law firm has little to do with the firm being for-profit or non-profit, as Gersh has characterized the issue (Dkt. No. 140 at 26), but rather with the explicit structure of the SPLC itself. Further, Plaintiff ignores the crux of Plaintiff's argument regarding clergy privilege in that Gersh's communications regarding Richard Spencer with Rabbi Secher related to his status as the founder of Love Lives Here, not in a clerical capacity.[5]

### 3.1 Gersh Lost Attorney-Client Privilege When Communicating with Non-Lawyer SPLC Staff

Contrary to Gersh's desire to compare SPLC to legal aid organizations and other non-profit legal organizations, the SPLC is not a law firm. As Plaintiff notes,

---

[4] Subsequent to the filing of the motion to compel, Gersh withdrew her improper First Amendment privilege claims and supplemented production. Thus, Defendant will not re-address those arguments here and reserves the right to raise the issue again should she be found to have withheld any documents on that basis.

[5] Defendant does not claim Rabbi Secher somehow lost his semicha/clerical status upon retiring. But his retirement demonstrates that it is more likely than not that Plaintiff spoke with him in a non-clerical capacity.

Mont. Prof. Conduct R. 1.0(e) defines a "law firm". Though Plaintiff emphasizes certain language, she omits mandatory modifiers. Dkt. No. 140 at 27. It is not merely an "other organization", but rather the law firm is the "legal department" of that other organization. Rule 1.0(e). Plaintiff fails to show that the staff members were part of a sectioned-off, firewalled legal department. To the contrary, she admits that the SPLC is not only litigating, but is also engaged in separate advocacy work. Dkt. No. 141 at 14. They do the separate work of "monitoring dangerous hate groups" (*id.* at 15), which is a lucrative business for the SPLC. *Compare Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 53763, at *11 (E.D. Cal. July 20, 2006) ("The mere fact that documents are prepared by employees of a 'legal department' who may have attorneys as supervisors does not automatically cloak with privileged status all documents generated by such persons.") Though Defendant fully recognizes that a litigant may enjoy the privilege where his attorney's agents and investigators are present, Gersh has the burden of proof. *See Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 327-28 (N.D. Cal. 1985) (finding privilege inapplicable where it was not shown that the person receiving communications was an agent of the lawyer or had a confidential relationship). She has failed to put forth any evidence that the non-lawyer SPLC staff members were agents of the lawyers in the legal department.

The SPLC is not a law firm but rather an organization that employs attorneys. Gersh has failed to prove the attorney-client privilege applies.

### 3.2 Gersh Has No Privileged Communications with Rabbi Secher

Pursuant to Mont. Code Ann. § 26-1-804, the priest-penitent privilege applies to non-penitential communications between lay persons and clergy members if the communications were made in confidence and for the purpose of seeking or receiving religious guidance, admonishment, or advice so as to not offend the free exercise clause of Mont. Const. Art. II, § 5 and U.S. Const. Amend. 1. See *State v.*

*MacKinnon*, 288 Mont. 329 (1998). For confessions to be considered privileged under § 26-1-804, MCA, "those confessions must be directed to clergy persons acting in their 'professional character' and 'in the course of discipline enjoined by the church.' '[P]rofessional character' meant that the clergy persons must be acting in their capacities as clerics or in their religious roles; 'in the course of discipline enjoined' meant that the confession was made pursuant to the practice and discipline of the church." *State v. Gooding*, 296 Mont. 234, 239 (1999). Testimonial privileges are to be strictly construed because they conflict with the fundamental principle that "the public has the right to everyone's evidence." *United States v. Bryan*, 339 U.S. 323, 324 (1950).

Here, Rabbi Secher founded the Love Lives Here advocacy group and left congregational rabbinics. Plaintiff's communications with Rabbi Secher were the same day she attempted to convince Richard Spencer's mother to sell the building and donate the proceeds to his organization. "[T]he [clergy-communicant] privilege does not apply to statements made, even in confidence, to a person who happens to be a member of the clergy but who is receiving the statements outside the purpose of spiritual counseling." *Brown v. Wimberly*, No. 1:14-cv-01812 - JLT, 2016 U.S. Dist. LEXIS 85598 at 13 (E.D. Cal. June 30, 2016), citing to *In re Grand Jury Investigation*, 918 F.2d at 377. That Rabbi Secher is retired from congregational life does not strip him of his rank as a member of the clergy, but it evidences that the communications were not likely "in the course of discipline enjoined by the church to which [Gersh] belongs." 26-1-804, MCA. Thus, communications Plaintiff had with Rabbi Secher were likely not related to his "professional character" as a clergyman.

Moreover, not all communications with clergy are privileged—only a "confession…in the course of discipline enjoined by the church". 26-1-804, MCA. Plaintiff's affidavit, while filled with a discussion of rabbinic ordination, is silent as

to the halacha of confession. She provides no authority or argument that her communications were part of any religiously prescribed confessional. As mere communications, not confessions, the statutory privilege, which must be narrowly construed, cannot apply.

**4.0** **Conclusion**

For the foregoing reasons, the Court should overrule Plaintiff's objections, and compel her to provide answers to Defendant's Interrogatories and produce responsive documents to Defendant's Requests for Production. Plaintiff should also be required to pay Defendant's attorneys' fees associated with bringing this motion and should enter sanctions against Plaintiff.

Dated: March 11, 2019.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Matthew M. Stevenson
Matthew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT

*Attorneys for Defendant,*
*Andrew Anglin*

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2)(E), undersigned counsel hereby certifies compliance with the said Rule and states that the number of words in this brief, as per the count of Microsoft Word, is 2,982.

/s/ Jay M. Wolman
Jay M. Wolman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jay M. Wolman
Jay M. Wolman