John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

Morris Dees*
J. Richard Cohen*
David C. Dinielli*
Jim Knoepp*
Elizabeth Littrell*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
morris.dees@splcenter.org
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
beth.littrell@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

TANYA GERSH,

    Plaintiff,

    vs.

ANDREW ANGLIN, publisher of
the *Daily Stormer*,

    Defendant.

Case No.: 9:17-cv-00050-DLC-JCL

**PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION FOR A PROTECIVE
ORDER**

    Plaintiff opposes Defendant's Motion for a Protective Order excusing him

from appearing in-person for a deposition in the United States. Since the outset of

this case, Defendant has displayed a pattern of disregard for the authority of this

Court and the seriousness of these proceedings. Defendant has declined to permit his lawyer to accept service, and repeatedly refused to disclose where he lives, delaying these proceedings for months. Nine months after Plaintiff served her first request for production, he still has not produced even a single non-public document. Four months after the District Judge denied the motion to dismiss, he still has not filed an answer. And despite the fact that this Court ordered on January 18, 2019 that Defendant supplement his interrogatory responses no later than February 18, 2019, he has ignored this directive as well.

Despite his disregard for these litigation obligations, Defendant now seeks a protective order, insisting that his deposition take place "outside the U.S. either in-person or through remote means." (Dkt. No. 143 at 2). Defendant, though counsel, asserts that he has safety concerns that prevent him from travelling to the United States, yet fails to provide any basis for any particularized fear, let alone any admissible demonstrating the legitimacy of any such fear. And remarkably, Defendant seeks to be deposed somewhere "outside the U.S." while simultaneously refusing to disclose where he lives, making it impossible for the Court to apply the default rule – that a defendant should be deposed where he resides.

The gamesmanship must end. Because Defendant has presented no evidence of his purported fear, and no evidence indicating his current location, the Court

should deny Defendant's motion and order that he appear for a deposition in the United States.

## I.     FACTUAL BACKGROUND

Plaintiff, Tanya Gersh, is a Jewish woman, a mother, a wife and a realtor, who, prior to the events underlying this action, lived a quiet life in Whitefish, Montana. Defendant, Andrew Anglin, is a self-identified "Nazi"[1] and who runs "an outreach site, designed to spread the message of nationalism and anti-Semitism to the masses."[2] Defendant's website, the Daily Stormer, is modeled on "the basic propaganda doctrine" of "Hitler's doctrine of war propaganda outlined in Mein Kampf." (Dkt. No. 141-1, at 6). Anglin's website seeks to indoctrinate readers into White Supremacy and to roil his horde of anti-Semites and racists into taking action against individuals and organizations it deems enemies. *Id.* Among the Daily Stormer's readers are individuals who have been linked to massacres and violence.[3] Among the targets of Anglin and his website is Plaintiff, (dkt. nos. 32-2

---

[1] *Whitefish March Postponed – Exclusive Interview with Andrew Anglin*, ABC Fox Montana (Jan. 12, 2017), https://www.abcfoxmontana.com/news/whitefish-march-postponed---exclusive-interview-with-andrew-anglin/article_04181a82-8ad0-5bc4-889c-24c6e4d3e24c.html.

[2] *The Daily Stormer's Jew-Hating Style Guide Revealed*, Times of Israel (Dec. 16, 2017), https://www.timesofisrael.com/the-daily-stormers-jew-hating-style-guide-revealed/.

[3] Among those indoctrinated by Anglin's Daily Stormer is Dylann Roof, who massacred nine people as they prayed in a Virginia church, and William Atchison,

– 32-25), the SPLC and its staff.[4] Plaintiff unwittingly became a target of

Defendant when, as this Court accurately summarized, "Anglin exploited the

prejudices widely held among his readers to specifically target [her.]" (Dkt. No.

116, at 14).

---

who killed two students in a school. *See* Jacob Siegel, *Dylann Roof, 4chan, and the New Online Racism*, Daily Beast (July 29, 2015), https://www.thedailybeast.com/dylann-roof-4chan-and-the-new-online-racism ("There's something immediately familiar about The Daily Stormer, where whole passages from Roof's manifesto first appeared. The parallels between Roof's manifesto and the comments on The Daily Stormer, written under the name aryanblood88, suggest that either Roof was the commenter or he visited the site often enough to have plagiarized from it for his manifesto."); Brandy Zadrozny, Ben Collins, *New Mexico School Shooter Had Secret Life on Pro-Trump White-Supremacy Sites*, Daily Beast (Jan. 15, 2017), https://www.thedailybeast.com/new-mexico-school-shooter-had-secret-life-on-pro-trump-white-supremacy-sites.

[3] *See* Daily Stormer website listing two pages of links to dozens, if not hundreds, of inflammatory commentary attacking and maligning the SPLC and its staff, available at: https://dailystormer.name/tag/splc/.), https://www.thedailybeast.com/dylann-roof-4chan-and-the-new-online-racism ("There's something immediately familiar about The Daily Stormer, where whole passages from Roof's manifesto first appeared. The parallels between Roof's manifesto and the comments on The Daily Stormer, written under the name aryanblood88, suggest that either Roof was the commenter or he visited the site often enough to have plagiarized from it for his manifesto."); Brandy Zadrozny, Ben Collins, *New Mexico School Shooter Had Secret Life on Pro-Trump White-Supremacy Sites*, Daily Beast (Jan. 15, 2017), https://www.thedailybeast.com/new-mexico-school-shooter-had-secret-life-on-pro-trump-white-supremacy-sites.

[4] *See* Daily Stormer website listing two pages of links to dozens, if not hundreds, of inflammatory commentary attacking and maligning the SPLC and its staff, available at: https://dailystormer.name/tag/splc/.

Anglin was born and raised in the United States and is registered to vote in Ohio. His hate-for-profit business which publishes the Daily Stormer, Moonbase Holdings LLC, is registered in Ohio. Anglin appeared in an Ohio courthouse less than two month prior to the filing of this action.[5] As of February 3, 2017, Anglin announced that his mailing address was a Post Office Box in Worthington, Ohio.[6]

On January 3, 2019, Plaintiff's counsel reached out to Defendant's attorney regarding the location of Mr. Anglin's deposition. (Ex. A, at 2). In response, Defendant suggested that the deposition take place in Havana, Cuba or Caracas, Venezuela, both of which Defendant's counsel later admitted were "positions that [he] is not prepared to vigorously defend." (Ex. B, at 2).

On January 23, 2019, Defendant's attorney asked if Plaintiff would agree to keep the location of the deposition confidential for seven days, as that would

---

[5] Luke O'Brien, *Andrew Anglin's Lawyer Visited The Elusive Nazi's Hometown And Madness Ensued*, Huffington Post (Jan. 25, 2018), https://www.huffingtonpost.com/entry/nazi-andrew-anglin-lawyer-mark-randazza_us_5a6a3622e4b0ddb658c4a36b ("Last February, I'd almost cornered Anglin in a Columbus courthouse after he showed up for a mandatory in-person hearing to expunge a criminal record. A court clerk told me I'd missed him and his local attorney by a few minutes. Anglin later admitted on The Daily Stormer that he'd been at the courthouse.").

[6] Andrew Anglin, *Choking Last Jew Gasp: Daily Stormer has Mailing Address and Bitcoin Shutdown in the Same Week…!*, Daily Stormer (Feb. 3, 2017), available at: https://dailystormer.name/daily-stormer-has-address-and-bitcoin-shutdown-in-the-same-week/.

expand the locations where Defendant would be willing to appear for a deposition. (Ex. B, at 4). On January 25, 2019, Plaintiff's counsel agreed to this request. (Ex. C, at 1), but insisted that the deposition be conducted at a reasonable location in the United States. *Id.* Several weeks later, on February 19, 2019, Plaintiff's counsel reiterated that Plaintiff would agree to keep the location of Defendant's deposition confidential, while, again, insisting that Defendant agree to a reasonable location within the United States for the deposition. (Ex. B, at 3). In response, Defendant's counsel offered the possibility of taking the deposition "a) by video/telephone from some other location outside the USA or b) in a *more reasonable* place outside the USA[,] *i.e.* not in a failed state that is in a state of chaos and revolution (Venezuela) or not in a state that does not have diplomatic ties with the USA (Cuba)[.]" (Ex. B, at 2). Defendant's counsel later suggested that Plaintiff consider a remote deposition first, followed by an in-person deposition if necessary. (Ex. B, at 1).

Plaintiff has continued to insist on an in-person deposition within the United States. Unable to reach an agreement, Defendant filed the pending Motion for a Protective Order excusing Anglin from being required to appear for an in-person deposition within the United States. (Dkt. No. 142).

## II.   LEGAL STANDARD

Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses." Fed. R. Civ. Pro. 26(c)(1). The court's order may "specify[] terms, including time and place, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(B). Courts have broad discretion in deciding "when a protective order is appropriate and what degree of protection is required." *Lord v. Flanagan*, No. CV 13-26-BU-DLC-JCL, 2014 WL 51655, at *1 (D. Mont. Jan. 7, 2014); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) ("A district court has wide discretion to establish the time and place of depositions.").

The party seeking the protective order has the burden of showing good cause by demonstrating that "specific prejudice or harm will result if no protective order is granted." *Gonzalez v. Whitney Merlynn Peterson*, No. CV 17-34-BLG-SPW, 2017 WL 2633491, at *2 (D. Mont. June 16, 2017). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Under Rule 30, "[t]he parties may stipulate – or the court may on motion order – that a deposition be taken by telephone or other remote means." Fed. R. Civ. Pro. 30(b)(4). The party seeking a remote deposition must first establish a

legitimate reason for doing so. *United States v. Li*, No. CV-12-00482-PHX-DGC, 2013 WL 6729895, at *3 (D. Ariz. Dec. 19, 2013). Then, the opposing party "bears the burden of showing that he will suffer prejudice if the motion to conduct defendants' depositions telephonically is granted." *Johnson v. Sager*, No. C11-1117-RSM-JPD, 2012 WL 213471, at *1 (W.D. Wash. Jan. 24, 2012).

## III.    ARGUMENT

### A.    Defendant's Deposition Should Take Place At A Reasonable Location Within The United States.

As a general rule, the examining party may set the place for the deposition of another party wherever she wishes subject to the power of the court to grant a protective order under Rule 26(c)(1)(B) designating a different place. *Lord v. Flanagan*, No. CV 13-26-BU-DLC-JCL, 2014 WL 51655, at *2 (D. Mont. Jan. 7, 2014) (citing 8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2112 (3d ed.2010)). When parties do not reside in the same state, "courts generally order the deposition to occur at the place where the defendant resides or does business to avoid undue burden and expense." *Ewing v. Integrity Capital Sols., Inc.*, No. 16-CV-1469-JLS-MDD, 2018 WL 3729139, at *2 (S.D. Cal. Aug. 6, 2018); *see also Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008) ("[T]here is a general presumption that the deposition of a defendant should be conducted in the district of his residence."). Courts will depart from this rule when there are

"exceptional or unusual circumstances." *McArthur v. Rock Woodfired Pizza & Spirits*, 318 F.R.D. 136, 139 (W.D. Wash. 2016).

1.  <u>Defendant's unsubstantiated and generalized fear of harm is inadequate to demonstrate that specific prejudice or harm will result if a protective order is not granted.</u>

Defendant asserts, through counsel, that he "fears for his personal safety if he were to return to the U.S." (Dkt. No. 143, at 4). But his motion merely makes broad allegations about his safety concerns and does not make a specific showing of prejudice or harm that would result if no protective order is granted. Defendant has not even submitted a declaration in support of his motion detailing the purported basis for his particularized fear. Rather, Defendant relies on an old declaration, dated January 17, 2018, (dkt. no. 64-1), and a news article that says nothing about whether Anglin himself faces any danger as a result of anything SPLC or other advocacy groups have published about him. (Dkt. no. 143-1). Defendant's failure to provide evidence in support of his safety concerns is itself a basis for denial. *See Bell v. California*, No. C 01-0870 SBA, 2003 WL 23784808, at *14 (N.D. Cal. Aug. 26, 2003) (stating that the court "will not credit factual assertions unless they are supported in an affidavit or declaration"). A party's imagined safety concerns are not sufficient to satisfy this burden. *See United States v. All Funds on Deposit at Old Mut. of Bermuda Ltd. Contract No. CX4011696 in Bermuda*, No. 2:13-CV-294, 2014 WL 4101215, at *3 (S.D. Tex. Aug. 18, 2014)

("Although Claimant Llaguno's fears may be real, that does not make them reasonable and tantamount to a showing of good cause.").

The crux of Defendant's purported safety concerns focuses on SPLC itself. Defendant claims that there is a "history of mentally unbalanced individuals giving credence to … [SPLC's] labels on individuals or entities and committing violence against the SPLC's targets." (Dkt. No. 143, at 2). This argument is baseless.[7] SPLC, like other advocacy groups and media outlets, engages in fact-based criticism of particular hate groups within the United States, including the Daily Stormer. *See, e.g.* Luke O'Brien, *The Making of An American Nazi* (Dec. 2017)[8]; Abigail Hauslohner, *Some Neo-Nazis lament the Pittsburgh massacre: It derails their efforts to be mainstream,* Wash. Post (Oct. 30, 2018)[9]; *Comedian Sues Neo-Nazi Daily Stormer as Site Resurfaces From Dark Web*, N.Y. Times (Aug. 16,

---

[7] In fact, there appear to be far more "particularized" reasons for why Defendant might be unwilling to enter the United States. Defendant has tried to evade service in other federal lawsuits, including a case in which the plaintiff is currently seeking to secure a default judgment against Anglin and his company, Moonbase Holdings LLC. *See* Michael Kunzelman, *Radio Host Seeks Over $1M for Case Against Neo-Nazi Website*, Associated Press (Feb. 25, 2019), https://apnews.com/ed330da641e646ab95c1c37c4199af6a.

[8] https://www.theatlantic.com/magazine/archive/2017/12/the-making-of-an-american-nazi/544119/.

[9] https://www.washingtonpost.com/national/some-neo-nazis-lament-the-pittsburgh-massacre-it-derails-their-efforts-to-be-mainstream/2018/10/30/3163fd9c-dc5f-11e8-85df-7a6b4d25cfbb_story.html?utm_term=.618533cf1365.

2017)[10]; Anti-Defamation League, *Andrew Anglin: Five Things to Know* (Apr. 25, 2018)[11]. The Daily Stormer has invited this critique by posting provocative racist and anti-Semitic content in the name of white nationalism.

Defendant's argument that he has a legitimate fear for his safety if he enters the U.S. because SPLC describes him and his ideologies as "extremist" is unsupported in logic or fact. The same argument would apply to Richard Spencer, Alex Jones and David Duke, among dozens of others, each of whom is similarly identified by SPLC as notorious "extremists." Of course, all of these individuals currently work, live and interact freely in the U.S. without incident. In fact, Plaintiff recently deposed Richard Spencer, a prominently featured "extremist" whom the SPLC has written about more than 400 times, in Montana, without incident, and without publicizing either the fact of the deposition or its location or timing.

In contrast to Defendant's posts calling on his audience of white supremacists to harass and target his troll storm victims, SPLC has never directed others to take violent action and has always opposed political violence, from the left or the right, in a democracy. *See, e.g.* Hatewatch, *SPLC Statement on Shooting*

---

[10] https://www.nytimes.com/2017/08/16/us/daily-stormer-russia-domain.html.

[11] https://www.adl.org/news/article/andrew-anglin-five-things-to-know.

*at Family Research Council* (Aug. 15, 2012)[12]; Richard Cohen, *Attack on GOP Congressmen Is Assault On Democracy* (June 14, 2017).[13]

Defendant has made no showing that SPLC has ever called for, insinuated, or been involved with threats of violence directed at Defendant.[14] Indeed, there is no evidence in the record of any credible threats of violence against Defendant, regardless whether the threats could be tied in some way to SPLC. And there certainly is no evidence that this hypothetical risk would arise if SPLC kept confidential the location of the deposition, as it has offered to do.

In any event, even if Defendant had supported his motion with evidence of having received death threats, that alone is not sufficient to change the location of a deposition. *See Tiki Shark Art Inc. v. CafePress Inc.*, No. CV 13-00577 JMS-RLP, 2014 WL 12616657, at *2 (D. Haw. Aug. 6, 2014) (denying a motion for a protective order, where specific threats had been sent to defendant's attorneys,

---

[12] https://www.splcenter.org/hatewatch/2012/08/15/splc-statement-shooting-family-research-council.

[13] https://www.splcenter.org/news/2017/06/14/attack-gop-congressmen-assault-democracy.

[14] Regarding the attack on Republican members of Congress who were shot while practicing for the annual Congressional Baseball Game for Charity, SPLC was merely one among hundreds of groups that the attacker "liked" on Facebook, Additionally, there is simply no allegation that this attack was motivated, or directed, by SPLC. Nor is there any insinuation that SPLC in any way directed or was involved in the attack against Family Research Council. SPLC has unequivocally condemned both despicable acts of violence.

because plaintiffs were not involved in sending the threatening letters and procedures had been put in place to ensure safety). Here, Defendant does not assert that Plaintiff or her attorneys pose a safety risk to Defendant and has not provided any credible basis for his unsubstantiated safety concerns. Further, Plaintiff is willing to discuss enhanced security for the deposition if deemed necessary.

     2.    <u>Despite Defendant's unsupported claim that he resides outside the United States, his deposition should take place within the United States.</u>

Even if the record revealed that Defendant lived abroad, which it does not, the Court nonetheless should order that the deposition occur in the United States.

A number of factors can overcome the initial presumption that a defendant should be examined where he resides. *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628–29 (C.D. Cal. 2005). Courts consider the "relative burden and expenses placed upon parties." *Marana Aerospace Sols. Inc. v. W. Glob. Airlines LLC*, No. CV-16-00142-TUC-RM, 2016 WL 9343166, at \*2 (D. Ariz. June 24, 2016). Other factors include: the location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes, whether the persons sought to be deposed often engage in travel for business purposes, and the equities with regard to the nature of the claim and the parties' relationship. *Cadent*, 232 F.R.D at 629.

There are additional considerations when the defendant resides in a foreign country. *S.E.C. v. Banc de Binary*, No. 2:13-CV-993-RCJ-VCF, 2014 WL 1030862, at *4 (D. Nev. Mar. 14, 2014). These considerations include the court's "ability to supervise depositions and resolve discovery disputes," "whether the deposition would be impeded by the foreign nation's laws or would affront the nation's judicial sovereignty" and the deponent's citizenship. *Id.* at *4, 9.[15]

a. *Location of Counsel*

First, Defendant argues that the location of counsel for the parties weighs in favor of allowing a remote deposition. (Dkt. No. 143, at 5). Plaintiff's and Defendant's attorneys are all located within the United States and would expend considerably more time and expense in travelling to and conducting Defendant's deposition in a foreign country. Although lead counsel for Plaintiff and lead counsel for Defendant are located in different states and would necessarily need to travel for an in-person deposition (unless it were to take place in, for example, Las Vegas, where Defendant's counsel maintains his office), travelling within the United States is, in general, less expensive and time-consuming than travelling

---

[15] A deposition in a foreign country also must comply with Rule 28(b). *See* Fed. R. Civ. P. 28(b) (permitting depositions in a foreign country (a) under a treaty or convention, (b) under letters rogatory, (c) on notice, or (d) before a person commissioned by the court); *see Fausto v. Credigy Services Corp.*, 251 F.R.D. 427, 430 (N.D. Cal. 2008) (finding good cause to hold depositions in the United States rather than Brazil because "it apparently is illegal for American lawyers to take depositions in Brazil and they do so at the risk of imprisonment.").

overseas. *See In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 474 (E.D. Va. 2010) (noting that "[i]nternational travel is expensive and time consuming," and therefore cost should be "weighed in the presumption calculus").

Additionally, Defendant has not raised the issue of expense and inconvenience as his basis for refusing to travel to the U.S. in his motion. In fact, because Defendant has refused to disclose his current location, it is not clear whether Defendant is insisting on a country, or another country to which he would travel. Defendant's willingness to travel to Cuba and Venezuela for his deposition, without raising concerns about expense or inconvenience, suggests that expense and inconvenience are not considerations that should be weighed in deciding this motion and that Defendant is able to travel to the United States.[16]

　　b. *Likelihood of Discovery Concerns*

Second, Defendant argues that – despite the lengthy history of discovery and other procedural disputes in this case to date – there is no reason to believe that significant discovery disputes will arise during Defendant's deposition and any such disputes could be resolved by the Court telephonically. (Dkt. 143, at 5–6). But the likelihood of even good faith discovery disputes "militate[s] in favor of holding depositions at home." *Banc de Binary*, 2014 WL 1030862, at *6.

---

[16] Plaintiff assures the Court that if costs are a concern, Plaintiff is willing to consider cost-sharing, or otherwise ensure that travel costs are not the basis for granting Defendant's motion.

Even so, a party's history of uncooperative or obstructionist discovery behavior "warrants the forecast that disputes will arise in the course of the depositions that will likely require judicial intervention." *In re Outsidewall Tire Litig.*, 267 F.R.D. at 474. Here, Defendant has repeatedly disregarded his litigation obligations, eluded service for months, refused to disclose his location, refused to produce non-public documents, and failed to file an answer or to comply with this Court's order to supplement his interrogatories. Furthermore, despite Plaintiff's attempts to confer on a location for Defendant's deposition, Defendant has only offered countries where there is no realistic possibility of taking the deposition.[17]

Defendant's pattern of obstructionist discovery behavior makes it likely that there will be discovery disputes during the deposition requiring the Court's resolution. The absence of the United States federal judge in a foreign country to resolve these disputes weighs in favor of having the deposition take place in the United States. *Photothera, Inc. v. Oron*, No. 07CV0490 MMA (AJB), 2009 WL 10672946, at *2 (S.D. Cal. Sept. 28, 2009) (denying the defendant's motion for a

---

[17] Defendant has suggested Cuba, a country with tenuous diplomatic ties to the United States, and Venezuela, a country currently under political turmoil and with a tense diplomatic relationship with the United States. *See* Joe Parkin Daniels, *Venezuela: US Warns of 'Significant Response' If There's Violence Against Country's Diplomats* (Jan. 27, 2019), https://www.theguardian.com/world/2019/jan/27/maduro-rejects-ultimatum-on-fresh-elections-in-venezuela.

protective order to have his deposition take place in Israel, where he resided, rather than California, in part because there is no United States judge in Israel).

        c. *Travel to United States and Equitable Concerns*

Finally, Defendant argues that he has no intention of returning to the United States and that equitable concerns weigh in his favor because of his unsubstantiated safety concerns. (Dkt. No. 143, at 6). But Defendant is not a typical foreign defendant. He is a United States citizen "who, by virtue of his citizenship, retains certain responsibilities to the country while abroad." *See Banc de Binary*, 2014 WL 1030862, at *9 (ordering that deposition of U.S. citizen defendant to take place in Washington, DC, rather than overseas). Additionally, as previously discussed, Defendant's safety concerns are unfounded, (*see supra* Section A.1), and Defendant has not made any argument regarding undue burden or inconvenience.

**B.**    **<u>Defendant Should Not Be Deposed Remotely Because He Is A Key Witness And An In-Person Deposition Is Necessary To Assess Credibility.</u>**

As discussed above, Defendant has not set forth a legitimate reason for having a remote deposition. Additionally, Plaintiff would suffer prejudice if Defendant's deposition were taken remotely because Plaintiff's counsel needs to assess Defendant's credibility. The "inability to see defendants and to judge their personal demeanors constitutes an important consideration in the decision to

permit a telephonic deposition." *Johnson v. Sager*, No. C11-1117-RSM-JPD, 2012 WL 213471, at *2 (W.D. Wash. Jan. 24, 2012) *see also United States v. Approximately $53,378 in U.S. Currency*, No. C08-5023 MMC (BZ), 2010 WL 4347889, at *1 (N.D. Cal. Oct. 27, 2010) (denying request for video deposition as insufficient to examine deponent's credibility). A party "is under no obligation to agree to conduct [a] deposition by phone, or any other means." *Barbin v. MV Transp., Inc*., No. 1:12-CV-00232 AWI, 2012 WL 3150051, at *3 (E.D. Cal. Aug. 1, 2012) (denying protective order noting that "[t]he Federal Rules of Civil Procedure provide both parties with the right to take oral depositions, and Defendant has chosen to exercise that right.")

Courts have been especially hesitant to order a remote deposition when the deponent is a key witness with controversial testimony. *See Egan v. Resort*, No. CV 17-00322 FKW-KJM, 2018 WL 1528779, at *2 (D. Haw. Mar. 28, 2018) (finding that requiring video or telephonic depositions of named plaintiffs, who would be key trial witnesses, "would unfairly prejudice … case evaluation and preparation"); *Sampathachar v. Fed. Kemper Life Assurance Co.,* No. Civ. A. 03–5905, 2004 WL 2743589, at *2 (E.D. Pa. Nov. 24, 2004) (denying request for remote deposition because the case was "likely to turn on the testimony by and credibility of" the deposed plaintiff); *United States v. Real Prop. Located at 700 N. 14th St., Springfield, Illinois*, No. 12-CV-3052, 2013 WL 5595952, at *2 (C.D. Ill.

Oct. 11, 2013) (explaining that telephonic depositions are not recommended for controversial testimony because the examiner cannot "observe the demeanor of the deponent over the telephone and so may not be able to ask follow up questions that will secure the needed discovery" and "cannot know whether anyone is listening in or helping the witness").

Here, Defendant is a key witness who is being deposed for the purpose of obtaining controversial testimony. Defendant's actions in calling on his readers to harass and threaten Plaintiff, her family, and other members of the Whitefish community are the centerpiece of this lawsuit. Defendant's testimony will be pertinent to each of the elements of Plaintiff's claims.

As just one example, Plaintiff's claim for intentional infliction of emotional distress requires her to show that it was reasonably foreseeable that Defendant's conduct would cause emotional distress. *Czajkowski v. Meyers*, 172 P.3d 94, 101 (Mont. 2007). Whether Defendant actually intended to cause Plaintiff distress, while not dispositive, goes directly to this element of the claim. In the deposition, Plaintiff will question Defendant about his motives. Her counsel deserves the opportunity, in person, to evaluate Defendant's credibility on this point and to cross examine him in person if he denies an intent to cause distress. This is especially the case where, as here, there is no assurance that Defendant will attend trial in person, and so this deposition might be Plaintiff's only chance to obtain this

critical testimony.  Thus, it is essential that Plaintiff be able to assess credibility in person to properly evaluate and prepare this case for trial.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendant's motion for a protective order.

DATED March 12, 2019.

<u>/s/Elizabeth Littrell</u>
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Local Rule 7.1(d)(2). It contains 4,254 words, excluding the caption, certificates of service and compliance, tables of contents and authorities.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was filed through

the Court's CM/ECF filing system, and by virtue of this filing notice will be sent

electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Dale M. Schowengerdt
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
dales@mt.gov
*Attorney for Intervenor State of Montana*

Jonathan W. Bennion
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
jonbennion@mt.gov
*Attorney for Intervenor State of Montana*

Matthew T. Cochenour
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
mcochenour2@mt.gov
*Attorney for Intervenor State of Montana*

on this 12th day of March, 2019.

<u>/s/ Elizabeth Littrell</u>
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff