1    JoAnn Jett Corson
     Registered Diplomate Reporter
2    Certified Realtime Reporter
     P. O. Box 8006
3    Missoula, Montana 59807-8006
     406/829-7123 office
4    joann_corson@mtd.uscourts.gov

5    United States Court Reporter

6

7

8              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MONTANA
9                    MISSOULA DIVISION

10   TANYA GERSH,                    )
                          Plaintiff,)  No. CV 17-50-M-DLC-JCL
11        vs.                        )
                                     )  **TRANSCRIPT 2 OF 2**
12   ANDREW ANGLIN,                  )  **HEARING ON MOTIONS**
                          Defendant,)
13        and                        )
                                     )
14   STATE OF MONTANA,               )
                 Defendant-Intervenor.)
15   _____)

16

17         **BEFORE THE HONORABLE JEREMIAH C. LYNCH**
           **UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**
18              **FOR THE DISTRICT OF MONTANA**

19

          Russell Smith United States Courthouse
20                 201 East Broadway
                Missoula, Montana 59802
21              Friday, March 15, 2019
                13:06:00 to 13:29:00
22

23

24

          Proceedings recorded by digital audio recording
25       Transcript produced by computer-assisted transcription

1                                    **APPEARANCES**

2    For the Plaintiff:             MR. DAVID C. DINIELLI
                                    MS. ELIZABETH LITTRELL
3                                   Attorneys at Law
                                    400 Washington Avenue
4                                   Montgomery, Alabama 36104

5    For the Defendant:             MR. MARC J. RANDAZZA
                                    Attorney at Law
6                                   Suite 109
                                    2764 Lake Sahara Drive
7                                   Las Vegas, Nevada 89117

8

9                                     **CONTENTS**

10   Proceedings ..........................................    16

11   Transcriber's Certificate ............................    37

12

13

14

15

16

17

18

19

20

21

22

23

24          TRANSCRIBER'S NOTE:   "Uh-huh" and "Um-hmm" indicate
     affirmative responses.   "Huh-uh" and "Hm-umm" indicate
25   negative responses.

PROCEEDINGS

1

2          (Open court.)

3              THE COURT:  This is the time set for continuing a

4  hearing in *Gersh v. Anglin*, Civil Cause 17-50-Missoula.

5              So, Mr. -- I guess I'll maybe start with you,

6  Mr. Randazza, today.  Tell me what you got accomplished.

7              MR. RANDAZZA:  Your Honor, I am delighted to tell

8  you that we've resolved almost everything.

9              THE COURT:  Okay.

10             MR. RANDAZZA:  We have -- as far as our motion to

11  compel is concerned, we are withdrawing all of it except the

12  issue we have -- we are at an impasse on whether the

13  priest-penitent privilege would apply and how to resolve that.

14             THE COURT:  Let me make a suggestion, which you

15  probably thought about.  Submit to me *in camera* --

16             MR. DINIELLI:  Your Honor, we did discuss that, and

17  it's our position that even that would be an intrusion into

18  our client's right to freedom of religion, that knowing that

19  confidential communications of that sort would be examined by

20  anyone is itself chilling.

21             Our position is that the declaration that she

22  submitted, without a doubt, shows that the nature of the

23  communication was right in the core of the kind of

24  communication that the Montana Supreme Court said is covered

25  by this state's clergy privilege.

1    THE COURT:  All right.  Let me put it to you -- not

2  to interrupt.  I'm sorry.  We are in agreement; there is no

3  federal privilege so I look to state law to determine it under

4  Rule 62 or whatever it is, right?

5    MR. DINIELLI:  That's correct, Your Honor.

6    THE COURT:  And you're telling me -- I did look at

7  two cases, but you're telling me it's your interpretation of

8  those cases that any disclosure, even to the Court in

9  confidence, would violate the Montana privilege?

10    MR. DINIELLI:  That is, Your Honor.  And given that

11  the privilege looks to the circumstances of the communication

12  and its purpose, all of which is described in the declaration

13  by our client, Tanya Gersh, we don't think that any more

14  information gained from reviewing the actual communication

15  would inform the Court's decision.

16    THE COURT:  Okay.  Understood.

17    MR. RANDAZZA:  We actually do believe that it can be

18  reviewed *in camera*, Your Honor, and then Your Honor can make

19  the determination as to whether it fits the privilege.

20    THE COURT:  All right.

21    Second question, then.  Do I need any more briefing

22  or did you touch upon that *in camera* inspection?  I read this

23  so long ago.  Do I need additional briefing?

24    MR. DINIELLI:  We did not touch upon that,

25  Your Honor.  I'm happy to address the issues addressed in the

1    motion if you would like to hear anything more.  I do think

2    that the briefing is sufficient.

3              THE COURT:  Okay.

4              MR. DINIELLI:  There is one particular case I'd like

5    to have an opportunity, if you're willing to hear it.

6              THE COURT:  Well, no, just give me the case.  I'll

7    read the case.  I think I'm familiar with all of the Montana

8    cases, but --

9              MR. DINIELLI:  If I can grab my notes, Your Honor?

10             THE COURT:  You succinctly stated your position.

11   That's all I need to know.  And I'd be looking -- I would

12   obviously make a determination in the first instance whether I

13   should review it or not review it *in camera* and then proceed

14   from there to the more substantive issue of is it protected.

15             And it's your position that based upon the

16   declaration that was provided, that would give me sufficient

17   information, assuming I agree with you on the *in camera* aspect

18   of your argument, that would give me sufficient information to

19   apply the Montana law?

20             MR. DINIELLI:  That's correct, Your Honor.  And I

21   would direct the Court to *State v. MacKinnon*.  The citation is

22   957 P.2d 23.  The import of that case is directly responsive

23   to one of the arguments that was made in the briefing, which

24   is that this is a statutory privilege, and it is directed at

25   confessions.  In fact, what the Supreme Court of the state

1   said in that case is, no, it's broader than that.  It's based

2   on the Constitution and, because of that, adopted a definition

3   of the privilege previously articulated by the Utah Supreme

4   Court that expressly broadened the scope of the privilege to

5   include any kind of communication between an adhering member

6   of religion and clergy member of that religion with the

7   purpose of obtaining advice, whether it be moral, religious,

8   spiritual, or otherwise.  We think that the declaration

9   absolutely proves --

10          THE COURT:  All right.

11          MR. DINIELLI:  -- that that's exactly what she was

12   doing in this instance.

13          THE COURT:  Fair enough.  You can give me a brief

14   argument, if you want.  What I'll tell you I'm going to do, as

15   you already know, is I'm going to review the declaration,

16   review all of the Montana cases, make a decision in the first

17   instance as to the propriety of an *in camera* review, and then

18   proceed to the substantive arguments that were made.  So I, I

19   don't think I need additional briefing.

20          MR. RANDAZZA:  Okay.

21          THE COURT:  Okay?

22          MR. DINIELLI:  Thank you, Your Honor.

23          MR. RANDAZZA:  Yes, Your Honor.

24          THE COURT:  Thank you.

25          Next.  That's with regard to the defendant's motion

 1    to compel.  Everything that -- you have resolved everything

 2    but that one issue?

 3              MR. RANDAZZA:  Yes, Your Honor.

 4              THE COURT:  Okay.

 5              MR. RANDAZZA:  And then we've also resolved -- we

 6    resolved the language of the protective order, which then

 7    resolved almost, almost all of our other objections.  And then

 8    we went through all of our objections to their materials.

 9    Some were withdrawn.  Some were -- just -- we've worked it all

10    out.

11              THE COURT:  Okay.  What about the deposition?  You

12    got that settled?

13              MR. RANDAZZA:  That is not, Your Honor.

14              THE COURT:  Okay.

15              MR. RANDAZZA:  So we still need guidance from

16    Your Honor on that --

17              THE COURT:  Okay.

18              MR. RANDAZZA:  -- whether it would be in a foreign

19    country that we could agree upon.  I think that would probably

20    be difficult.  My suggestion is a telephonic or video

21    deposition from wherever Mr. Anglin is.

22              THE COURT:  Okay.  And that's all been fully briefed

23    for me, obviously.

24              MR. DINIELLI:  I'm sorry; I didn't hear you,

25    Your Honor.

1          THE COURT:  That's all been fully briefed?

2          MR. DINIELLI:  It has, Your Honor, but I do feel the

3    need to address your question from the end of the day

4    yesterday about Rule 45.

5          THE COURT:  Yeah, please.  Please.

6          MR. DINIELLI:  And I apologize.  I was

7    discombobulated.  We were not thinking of Rule 45 because this

8    is a party deposition as opposed to a nonparty deposition.

9    And the cases that we cited in the briefing address the

10   authority of the Court to determine a location of a party

11   deposition.

12         THE COURT:  True.

13         MR. DINIELLI:  My understanding of the analysis

14   there is that a party can bring a motion for protective order

15   although the general rule is the deposing party sets the

16   place, subject to a protective order.

17         The most important case, I think, Your Honor, on

18   this issue is one that we cited, and it's called *Securities*

19   *and Exchange Commission v. Banc de Binary*.  I'm trying to

20   pronounce that.  I don't know how to pronounce it.  The

21   citation is 2014 Westlaw 1030862.  That was a case out of the

22   District of Nevada.  Procedurally very similar to this one in

23   that the defendant brought a motion for protective order,

24   asking that the deposition take place in its home country,

25   Cyprus, and the plaintiff was saying, no, let's take it in

1    Washington, D.C.

2         The Court observed that courts routinely order

3    foreign defendants to appear in the United States for their

4    deposition and applied what are called the *Cadent* factors,

5    which are those that have been used throughout the Ninth

6    Circuit.

7         But one thing that was not highlighted in our

8    briefing that I really wanted to make clear was that one of

9    the reasons that the Court in that case denied the defendant's

10   motion for protective order was that the defendant had not

11   made any showing as would be necessary under Rule 28 that the

12   selected location, in that case, Cyprus, would be an

13   appropriate place for the Americans to take a deposition.

14        Here, we've had some discussions about some possible

15   foreign locations, although (a) we haven't settled on any,

16   (b) some of the locations that have been suggested would not

17   be appropriate places to take a deposition --

18        THE COURT:  Like Venezuela?

19        MR. DINIELLI:  -- and for that reason alone,

20   Your Honor, we would say that this motion ought to be denied.

21   It might be that there might be a renewed motion suggesting a

22   particular place.  We haven't found one.  But even if that

23   were the case, our position under this case and its reasoning

24   is that the deposition should take place in the United States.

25        The other thing of note in this case, Your Honor, is

1   that one of the parties at issue could have faced criminal

2   liability had he returned to the United States.  And the

3   Court's reasoning, again out of the District of Nevada in

4   2014, was I can neither make my decision in order to advance a

5   criminal prosecution or give someone a procedural

6   disadvantage --

7            THE COURT:  Sure.

8            MR. DINIELLI:  -- because of that.

9            We think here the sort of relevant analogue are the

10   perceived danger concerns, which we set forth in our motion

11   there is no evidence for, we disagree with, and in any event

12   would take whatever steps necessary to ensure the, both, sense

13   of and actual safety.

14            So that's our position.  And I'm happy to say any

15   more, but --

16            THE COURT:  So did the Nevada court talk about

17   Rule 45?  Tell me about how you read Rule 45(c)(2).

18            MR. DINIELLI:  I think it has no application to

19   party defendants.  All of the cases that are cited in both

20   sides' brief talk about the power to determine the location of

21   a party's deposition.

22            THE COURT:  I don't think there's any -- here is my,

23   my question, and I just throw it out because I think the law

24   is not entirely settled on the issue, but obviously I'm

25   listening to your argument; that the Court can certainly say

1  that a deposition of the defendant can be taken, but isn't it

2  a different question as to location, as I read 45(c)(2)?  Or

3  tell me.  Tell me what I'm missing there when I read that,

4  just to help me out.

5              MR. DINIELLI:  Your Honor --

6              THE COURT:  And let me read it into the record, all

7  right?

8              MR. DINIELLI:  Yes.

9              THE COURT:  45(c) talks about the "Place of

10 Compliance."

11             (1) is "For a Trial, Hearing, or Deposition.  A

12 subpoena may command a person to attend a trial, hearing, or

13 deposition only as follows:

14             "(A)," the 100-mile rule, which is for nonparty

15 witnesses, which we are all familiar with.

16             And then, "(B) within the state where the person

17 resides, is employed, or regularly transacts business in

18 person" -- and, of course, that expanded into the state for

19 multi-divisional or multi-district courts -- "if the person

20 (i) is a party or a party's officer."

21             How am I to read that?

22             MR. DINIELLI:  Your Honor, Rule 45 applies to

23 depositions of nonparties and trial subpoenas for anyone.  So

24 we are in agreement that, under Rule 45, we could not ask for

25 the issuance of a trial subpoena requiring Mr. Anglin to come

1   from whatever foreign country he is in to give testimony live

2   when this goes before a jury.

3          THE COURT:  Well, doesn't it say "A subpoena may

4   command a person to attend a trial, hearing, or deposition

5   only as follows"?

6          MR. DINIELLI:  It does, but there is an old Ninth

7   Circuit case from 1942 --

8          THE COURT:  Hmm.

9          MR. DINIELLI:  -- which we found last night which

10  dismissed an appeal about whether there was power to impose

11  sanctions on someone who did not appear for a deposition

12  pursuant to a notice.  And what the Court said in that case is

13  there is no requirement for a subpoena with respect to a

14  party.  We think --

15         THE COURT:  Even an out-of-state --

16         MR. DINIELLI:  -- based on our -- I'm sorry?

17         THE COURT:  Even an out-of-state party?

18         MR. DINIELLI:  That's correct, Your Honor.

19         THE COURT:  All right.

20         MR. DINIELLI:  And the citation for that case --

21  and, I'm sorry, it's 1944 -- is *Collins v. Wayland*, 139 F.2d

22  677, 678, and that's Ninth Circuit, 1944.

23         THE COURT:  Okay.

24         MR. DINIELLI:  We agree that the phrase on its own

25  in Rule 45 is ambiguous, but we think it's clarified (a) by

1   the Ninth Circuit case.

2              THE COURT:  Well, I'll follow the Ninth Circuit

3   case, but I don't think it's ambiguous.  But obviously I'm

4   bound to follow the Ninth Circuit.  But I'm glad you pointed

5   that out to me.

6              MR. DINIELLI:  Thank you.

7              MR. RANDAZZA:  Your Honor, I have not reviewed

8   *Collins* --

9              THE COURT:  Okay.

10             MR. RANDAZZA:  -- so I don't know if it does apply.

11  I would imagine the rules have been amended since 1945, but --

12             THE COURT:  All for the better, right?

13             MR. RANDAZZA:  I hope so, yes.  So I'm reading the

14  rule the same way you are, Your Honor.

15             THE COURT:  All right.  I'm obviously going to take

16  a look at it, but I wanted to get your respective inputs on

17  that issue.

18             MR. RANDAZZA:  And to be clear, we are open to both

19  resolutions, whether it's in a foreign country or whether it's

20  by remote.

21             THE COURT:  By video or telephone.

22             MR. RANDAZZA:  Yeah.  Yes, Your Honor.

23             THE COURT:  All right.  And the plaintiff wants it

24  in Montana at this juncture?

25             MR. DINIELLI:  Your Honor, yesterday I was saying

1     that that would be a location that we think would be

2     appropriate.   The Court has found that it would not violate

3     due process to require the defendant to defend himself here,

4     and certainly safety concerns would be addressed by holding

5     it, for example, in the jury room where we spent the last two

6     days.

7               THE COURT:  All right.   Those are the two issues I

8     need to address.

9               MR. RANDAZZA:  Yes, Your Honor.

10              THE COURT:  All right.   Good.

11              You agree?

12              MR. DINIELLI:  I do, Your Honor, but we haven't yet

13    discussed our motion to compel.   In other words --

14              THE COURT:  Oh.

15              MR. DINIELLI:  Yeah.

16              THE COURT:  You want me to put you back in the jury

17    room, do you?

18              MR. DINIELLI:  No, no, no.   We made substantial

19    progress on that as well, and I wanted to report on that --

20              THE COURT:  Okay.

21              MR. DINIELLI:  -- ask for some assistance from the

22    Court, which I think the defendant will agree with, and

23    describe for you our plan going forward.

24              THE COURT:  Go ahead.

25              MR. DINIELLI:  So, again, we went through our

1   requests for production of documents, request by request by

2   request, and we have made agreements with almost everything.

3            One issue that did arise in connection with that

4   meet and confer was the defendants believe that there is a

5   constitutional protection for people who are participating in

6   anonymous chat boards to remain anonymous.  This is not

7   something we have yet briefed.

8            We think that the best approach for getting a

9   resolution on this is some sort of shortened briefing

10  schedule, even something as quick as simultaneous briefs of

11  ten pages within a week or two.  We did try to work this out.

12  We weren't able to.  We think it's a legal question, and we

13  think we will need guidance on that.

14           THE COURT:  And that pertains to a number of the

15  requests for production?

16           MR. DINIELLI:  It does.

17           THE COURT:  Can you give those to me, the numbers?

18           MR. DINIELLI:  I can't.

19           THE COURT:  All right.

20           MR. DINIELLI:  I don't happen to have it in our

21  notes.  We would in the course of our briefing, of course.

22           THE COURT:  All right.  I will give you each ten

23  pages of briefing on that subject.  And you want -- and that

24  will be to me within 15 days simultaneously?

25           MR. DINIELLI:  That's fine, Your Honor.  I might

```
 1   suggest within 14 days.  That's a Friday.
 2              THE COURT:  That's fine.
 3              MR. DINIELLI:  So, Mr. Randazza, is that fine?
 4              THE COURT:  Give me a date certain.
 5              MR. RANDAZZA:  Yes, that's fine with me.  I can even
 6   do it quicker if you'd like.
 7              THE COURT:  You were just talking.  So it would
 8   be -- we're at the 15th today -- the 29th of March?
 9              MR. DINIELLI:  That's right.
10              THE COURT:  Okay.  March 29, you're going to give me
11   a ten-page simultaneous brief.
12              MR. DINIELLI:  The other thing on which I think
13   we're in agreement, we think it would be appropriate for the
14   Court to order today, Your Honor -- by way of background, we
15   spent a lot of time in the jury room, as I said, going through
16   the requests one by one, and Mr. Randazza on behalf of his
17   client made a number of promises that his client would engage
18   in searches that haven't yet been conducted.  We agreed that
19   those need to be conducted within 14 days.
20              I would request that the Court make that an order of
21   the Court, that those searches that we agreed to be completed
22   within 14 days.
23              Side note:  We would like to report to the Court on
24   all of our agreements by this coming Wednesday.
25              THE COURT:  I agree with the latter part.
```

1              You're okay with the Wednesday report?

2              MR. RANDAZZA:  Yes, Your Honor.

3              THE COURT:  Tell me about the searches.

4              MR. RANDAZZA:  I have prevailed upon my client to do

5      so in less than 14 days.

6              THE COURT:  Okay.

7              MR. RANDAZZA:  I cannot control what he does or does

8      not do.  He has --

9              THE COURT:  Well --

10             MR. RANDAZZA:  He has no obligation to make my life

11     easy, but I certainly have --

12             THE COURT:  I'll help you out.

13             MR. RANDAZZA:  Thank you.

14             THE COURT:  He will either respond -- he will

15     conduct the searches and provide the information to you within

16     14 days --

17             MR. RANDAZZA:  Thank you, Your Honor.

18             THE COURT:  -- or else I will take a sanction

19     measure.

20             MR. RANDAZZA:  Thank you, Your Honor.

21             THE COURT:  Okay.

22             MR. RANDAZZA:  Yes, sir.

23             THE COURT:  So you tell him, which I'm sure you

24     will -- I know your hands at times are tied.  But 14 days.  Is

25     that -- I don't want to cut him too short, but I want it done.

1  Is -- 14, you think, is going to be enough, given the nature

2  of the searches they're requesting?

3          MR. RANDAZZA:  Yes, Your Honor.

4          THE COURT:  All right.  You tell him 14 days or

5  there will be a sanction.

6          MR. RANDAZZA:  Thank you, Your Honor.

7          THE COURT:  All right.

8          MR. DINIELLI:  The last issue with respect to the

9  plaintiff's motion to compel, Your Honor, is that there is a

10 category of requests that go to financial information,

11 principally for the purpose of determining net worth in case

12 there is an imposition of punitive damages.

13          We are in negotiations with the defendant about a

14 possible creative solution that would make that discovery

15 unnecessary.  We are giving ourselves two weeks to determine

16 whether that would work for both sides, and so at this time we

17 are not agreeing that those documents would be produced.

18          I wanted to make that clear in the nature of being

19 forthright with the Court and tell you that we may have to

20 come back to you with respect to that category of requests.

21 Those will be indicated, again, in our report.  But, again, I

22 think Mr. Randazza agrees that that's the way to approach

23 that.  If we require a further order, we would ask for that at

24 that time, but at this point we're not asking for any such

25 order.

1          THE COURT:  I will just tell you, I'm assuming that

2    when you're talking about these requests for financial

3    information, if I recall right, you're asking about bank

4    accounts, *et cetera*, *et cetera*, *et cetera*, that existed from

5    when?  Give me a time frame in terms of the discovery on the

6    financial records you're asking for.

7          MR. DINIELLI:  I think that we're asking for his

8    current net worth.

9          THE COURT:  That's -- and I agree with that.  If he

10   provides a statement of his current net worth and you feel

11   suspicious about that, then that can become a matter for

12   post-judgment discovery.  Right?

13         MR. DINIELLI:  I understand that, Your Honor.

14         THE COURT:  Okay.  All I, all I can tell him to do

15   is provide a current or the equivalent of a current financial

16   statement.  We're agreed?

17         MR. DINIELLI:  Yes, Your Honor.

18         THE COURT:  Okay.

19         He'll do that, right?

20         MR. RANDAZZA:  Yeah.  That's understood.  Yeah,

21   we'll do that, Your Honor.

22         THE COURT:  Yeah.  He was going to do that.  He'll

23   do that within the same 14-day period as the searches.

24         MR. RANDAZZA:  Okay, Your Honor.

25         THE COURT:  Okay?

32

1          MR. DINIELLI:  Yes.  Thank you, Your Honor.

2          One last issue.  On the motion for the umbrella

3   protective order, I agree with Mr. Randazza that we have

4   reached agreement on all of the provisions that were in

5   dispute.  I think that we would like to submit jointly that

6   proposed umbrella protective order.  I would like to propose

7   we do that within one week, seven days.

8          However, there was some disagreement, at least on

9   our side, when we were deciding on how to brief these issues,

10  due to the local rule that prohibits the submission of a

11  proposed order on a motion that is unopposed.  This now will

12  be unopposed, so I want to make certain it's going to be okay

13  at this point.

14         THE COURT:  No, you submit, if you agree upon a

15  protective order, submit it to me.

16         I will tell you that, consistent with Ninth Circuit

17  law, you know the varying degree or the burden in terms of not

18  allowing the information to be produced?

19         MR. DINIELLI:  Yes.

20         THE COURT:  What I'm saying -- well, so if it's a

21  nondispositive motion, it can be protected.  If it's related

22  to a dispositive motion, it's a higher standard.

23         MR. DINIELLI:  We understand, Your Honor.

24         THE COURT:  All right.  Because it's unlikely that

25  if it's -- I mean, I'm not going to say there isn't something

33

1    potentially, but it's really a high hurdle in my mind to keep

2    it from the public if it's related to a dispositive motion or

3    it pertains to court proceedings.  And we all love the First

4    Amendment.  Right?

5           MR. DINIELLI:  We do.

6           THE COURT:  Okay.  If you submit the protective

7    order to me and it's stipulated to, and I don't have any

8    concerns that it does, in fact, comply with Ninth Circuit law,

9    I have no problem with signing it.

10          MR. DINIELLI:  Thank you, Your Honor.

11          THE COURT:  So that is what was the third, was the

12   financial -- or the current, his current financial situation.

13          MR. DINIELLI:  Your Honor, I will say that was the

14   subject of a Court order already.

15          THE COURT:  Okay.

16          MR. DINIELLI:  We are still awaiting that.

17          THE COURT:  Yeah.  We don't have to go over old

18   ground.

19          It better be here within 14 days.

20          MR. RANDAZZA:  Understood, Your Honor.

21          THE COURT:  Okay.  Or a sanction, a severe sanction,

22   because I did give Mr. Anglin a previous opportunity to get

23   this information, as you know.

24          MR. RANDAZZA:  Yes, Your Honor.

25          THE COURT:  Okay.

1          MR. DINIELLI:  I don't have anything else for the
2     Court today.
3          THE COURT:  Okay.  What I want, though, is on the --
4     you said, first of all, on the report, you said about what
5     you've agreed to.  I want that in the form of a stipulation --
6          MR. DINIELLI:  Will do.
7          THE COURT:  -- excluding these issues we've talked
8     about.
9          MR. DINIELLI:  Yes, Your Honor.
10         THE COURT:  Okay?
11         MR. RANDAZZA:  Thank you.
12         THE COURT:  All right.  Thank you.
13         I'm glad you came to your senses.  And I take it
14    that with respect to all these matters, both sides, not
15    necessarily with the ones reserved but with everything else,
16    the request for sanctions from both sides, that's by the way
17    now?
18         MR. DINIELLI:  Your Honor --
19         THE COURT:  Or do we want to play poker, $1,000 a
20    request for production?
21         MR. DINIELLI:  Your Honor, we're considering our
22    position on this.  I would like some time before I go on the
23    record abandoning it.
24         THE COURT:  You're going to tell me today if it's
25    abandoned or not --

```
 1              MR. DINIELLI:  Well, then, it's not.

 2              THE COURT:  -- or else I'm going to, I'm going to

 3    keep --

 4              MR. DINIELLI:  It's not, your Honor.  We came to

 5    Montana --

 6              THE COURT:  Then you go back to the jury room.  I'm

 7    done with -- I'm trying to get you people on course to get

 8    this case tried.  If I start meting out sanctions, it's going

 9    to come hard, and it's going to come heavy as to both sides.

10    So I'm not going to -- either you're going to tell me that

11    you've reached it or we're going to stay here and I'll have

12    argument on all these things.  Because if you're going to keep

13    your sanctions, I'm not accepting the report.

14              MR. DINIELLI:  Well, then, Your Honor, we'll abandon

15    the request for monetary sanctions.

16              THE COURT:  Good.  That's progress.

17              Anything else?

18              MR. DINIELLI:  No, Your Honor.

19              THE COURT:  All right.  Thank you.

20              MR. RANDAZZA:  Thank you, Your Honor.

21              THE COURT:  Court stands in recess.

22         (Proceedings were concluded at 13:29:00.)

23

24

25
```

1                   TRANSCRIBER'S CERTIFICATE

2          I, JoAnn Jett Corson, certify that the foregoing

3     transcript is an accurate transcription, to the best of my

4     ability, from the digital audio recording of the proceedings

5     given at the time and place hereinbefore mentioned; and that a

6     certified copy of this transcript will be filed electronically

7     with the Court.

8          I further certify that I am not attorney for, nor

9     employed by, nor related to any of the parties or attorneys to

10    this action, nor financially interested in this action.

11         IN WITNESS WHEREOF, I have set my hand at Missoula,

12    Montana this 18th day of March, 2019.

13

14                                   /s/ JoAnn Jett Corson
                                     _____
15                                   JoAnn Jett Corson
                                     United States Court Reporter
16

17

18

19

20

21

22

23

24

25