Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

*Attorneys for Defendant,*
*Andrew Anglin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| TANYA GERSH, | Case No. 9:17-cv-50-DLC-JCL |
| Plaintiff, | |
| vs. | **SUPPLEMENTAL BRIEFING ON FIRST AMENDMENT ISSUES IN DISCOVERY** |
| ANDREW ANGLIN, | |
| Defendant. | |

## MEMORANDUM AND POINTS OF AUTHORITY

**1.0 INTRODUCTION**

Most of Defendant's discovery objections were resolved by agreement except for those based on the First Amendment. This supplemental briefing is submitted at the request of the Court. The key issue is that the SPLC wishes to find the identities of people who have expressed themselves in a way that is counter to their mission – in order to *potentially* add them as defendants in this action. If any speakers did, indeed, do anything actionable, this *may* be permissible. However, prior to stripping these speakers of their anonymity, the Court should consider the First Amendment implications of doing so and preserve their anonymity unless there is a clear reason to take it away.

**2.0 LEGAL STANDARD**

A speaker has a First Amendment right to anonymously participate in political and social commentary, especially if the speaker fears retaliation. "An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995). Further, some information relied upon to produce a journalist's work product is protected by a qualified privilege as articulated in *Branzburg v. Hayes*, 408 U.S. 665 (1972) and its progeny, as well as by state law. Similarly, anonymous members of an association, such as members of the Daily Stormer forum, enjoy a "heightened relevance standard" requiring a plaintiff to "demonstrate[ ] an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *Anonymous Online Speakers v. United States Dist.*

*Court (In re Anonymous Online Speakers)*, 661 F.3d 1168, 1176 (9th Cir. 2011) (quoting *NAACP v. Alabama*, 357 U.S. 449, 463 (1958)).

**3.0   ARGUMENT**

Any attempt to determine the identity of an anonymous speaker implicates First Amendment concerns. The speaker, himself, has a right derived from the law in *McIntyre*. There is a parallel right on a journalist's part to protect his sources. See *Branzburg v. Hayes*, 408 U.S. 665 (1972) (recognizing a qualified privilege); *Tracy v. City of Missoula*, 2000 ML 3887, 7 (4th Jud. Dist. Ct., Mont. 2000) (interpreting *Branzburg* as "providing journalists with a qualified privilege of nondisclosure.") Montana takes the privilege further, and statutorily grants "absolute privilege." *Id*. citing Article: Shield Laws on Trial: State Court Interpretation of the Journalist's Statutory Privilege, 23 J. Legis. 215 (1997); Mont. Code Ann. § 26-1-902.

**3.1   First Amendment Right to Anonymous Speech**

The First Amendment protects the right to anonymous speech. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999); see also *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995). "It is now settled that 'an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.'" *Anonymous Online Speakers v. U.S. Dist. Court*, 661 F.3d 1168, 1173 (9th Cir. 2011) (quoting *Talley v. California*, 362 U.S. 60, 64-65 (1960)). These protections apply equally to speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997); see also *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (finding "[t]he right to speak anonymously extends to speech via the Internet. Internet anonymity facilitates the right, diverse, and far ranging exchange of ideas"). Internet users also enjoy a First

Amendment interest in shielding their Internet subscriber information from disclosure. *Anonymous Online Speakers*, 661 F.3d at 1173; see also *Doe v. SEC*, 2011 U.S. Dist. LEXIS 132983, *8 (N.D. Cal. Nov. 17, 2011). The use of discovery, including subpoenas, for internet forum users threatens to cause "a significant chilling effect on Internet communications and thus on basic First Amendment rights." *Doe v. 2theMart.com*, 140 F. Supp. 2d at 1092.

The court must consider the speaker's First Amendment rights before allowing discovery regarding a speaker's identity. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. at 192; see also *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004); *and see Grandbouche v. Clancy*, 828 F.2d 1463, 1466 (10th Cir. 1987). These speakers' rights to speak pseudonymously should not be taken away unless there is a clear determination that the actual speech at issue is, indeed, actionable.

There are two standards for when and how anonymous speakers should be exposed, named for the cases where they were first articulated: *Dendrite International Inc. v. Doe, No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) and *Doe v. Cahill*, 884 A.2d 451 (Del. 2005). Most courts, including the 9th Circuit Court of Appeals and courts in this circuit, have adopted these standards, sometimes in whole and other times with modifications. See *Anonymous Online Speakers*, 661 F.3d at 1176-77; *SaleHoo Grp. v. ABC Co.*, 722 F. Supp. 2d 1210, 1214 (W.D. Wash. 2010); *Krinsky v. Doe 6*, 72 Cal. Rptr. 2d 231 (Cal. Ct. App. 2008); *Mobilisia v. Doe*, 170 P.3d 712 (Ariz. Ct. App. 2007); *Doe v. Coleman*, 436 S.W.3d 207 (Ky. Ct. App. June 20, 2014); *In re Ind. Newspapers*, 963 N.E.2d 534 (Ind. Ct. App. 2012); *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432 (Md. 2009); *Mortg. Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. Ct. 2011); *Specialists v.*

*Implode-Explode Heavy Indus., Inc.*, 999 A.2d 184 (N.H. 2010); *Solers v. Doe*, 977 A.2d 941 (D.C. 2009); *and see In re Does 1-10*, 242 S.W.3d 805 (Tex. App. 2007).

### 3.1.1 Application of the *Dendrite* Standard

*Dendrite* provides four requirements a plaintiff must satisfy before a court may allow unmasking of an anonymous speaker: (1) the plaintiff must notify the anonymous speaker that they are the subject of discovery; (2) the plaintiff must identify the statements made by the speaker; (3) the court must evaluate whether the plaintiff has established a *prima facie* cause of action; and (4) the court must balance the "defendant's First Amendment right of anonymous free speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite International Inc. v. Doe, No. 3*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001).

Plaintiff fails this test. *Dendrite* first requires a plaintiff to notify the anonymous speaker that they are the subject of discovery. *Id*. Plaintiff has not made any such efforts.[1] Even if she had made such efforts, however, she cannot establish a *prima facie* case against the speakers, and she cannot show that her need for discovery outweighs the speaker's First Amendment rights. The court in *Dendrite* found that "the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant." *Id.* at 760.

Plaintiff has not made this evidentiary showing. She and the SPLC have not asserted, much less presented evidence, that any of these particular speakers are liable to Plaintiff in any way. Neither have they shown that their need for

---

[1] As far as methods to do so, *Dendrite* does not have a strict requirement. However, the SPLC could post to the relevant forums that it is seeking this information.

discovery in prosecuting their claims against Mr. Anglin outweighs the First Amendment rights of the speakers. Many of the speakers at issue would likely be driven from their jobs, their communities, and even their families, if their identities were unmasked. And all because they themselves maybe claimed to have either made a phone call or sent an email, activity that itself enjoys First Amendment protection. Plaintiff fails the *Dendrite* test.

### 3.1.2 Application of the *Cahill* Standard

The subsequent *Cahill* standard modified *Dendrite* to further limit the chilling effect on First Amendment rights, and concluded that a "plaintiff must make reasonable efforts to notify the defendant and must satisfy the summary judgment standard." *Doe v. Cahill*, 884 A.2d 451, 461 (Del. 2005). While it does not appear that Montana courts have expressly developed a standard for unmasking anonymous online speakers, the Ninth Circuit viewed the *Cahill* standard approvingly. *Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*, 661 F.3d at 1176. The SPLC cannot meet this standard.

*Cahill* differs from the *Dendrite* standard as it requires Petitioner to make a summary judgment-like showing, meeting a higher evidentiary burden than merely making a *prima facie* case under *Dendrite*. As this Court has observed:

> A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986).

*Bitterroot Ridge Runners Snowmobile Club v. United States Forest Serv*., 329 F. Supp. 3d 1191, 1197 (D. Mont. 2018)(Christensen, U.S.D.J.). Plaintiff has offered no evidence that any of these speakers is liable to her for any particular speech.

### 3.2 Journalist's Privilege

State courts independently determine the extent of the journalist's privilege. *Branzburg v. Hayes*, 408 U.S. at 707. Montana has an absolute journalist's privilege, where a journalist is not required to disclose their sources. *Tracy v. City of Missoula*, 2000 ML at 11. This privilege applies to "persons" employed or connected with any newspaper, magazine, press association, news agency, news service, radio station, television station, or community antenna service. *Id*. at 13.

Based on Montana's absolute privilege, Defendant Anglin cannot be forced to disclose and name his anonymous sources. To do so would rob him and his sources of the privilege that Montana affords them. Forcing Defendant to provide the names of forum users on the Daily Stormer would violate the First Amendment rights to confidentiality that these users have.

Plaintiff has asserted that Defendant and his sources do not enjoy First Amendment or statutory protections because they assert the Daily Stormer is not "journalism"; they are incorrect. As the Ninth Circuit has held:

> The protections of the First Amendment do not turn on whether the defendant was a trained journalist, formally affiliated with traditional news entities, engaged in conflict-of-interest disclosure, went beyond just assembling others' writings, or tried to get both sides of a story. As the Supreme Court has accurately warned, a First Amendment distinction between the institutional press and other speakers is unworkable: "With the advent of the Internet and the decline of print and broadcast media . . . the line between the media and others who wish to comment on political and social issues becomes far more blurred." *Citizens United [v. Federal Election Commission]*, 558 U.S. [310,] 352 [(2010)].

*Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014).

Here, ABC Fox Montana published a story on this public controversy. The U.K.'s Daily Mail expounded and editorialized on it. Mr. Anglin reported and editorialized on both. His language may have been coarse. His intent may have

been bigoted. His publication will likely never win any prize that any other journalist would wish to put on their mantle. But, none of this has any bearing upon his status under the First Amendment.

"The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Lovell v. Griffin*, 303 U.S. 444, 452 (1938). Thomas Paine's *Common Sense* was "the most incendiary and popular pamphlet of the entire Revolutionary era". Wood, Gordon, *The American Revolution*, 55 (2002). The Daily Stormer is similarly incendiary and is, therefore, a member of the press and covered by the First Amendment and the Montana Media Confidentiality Act.

The Daily Stormer forum members are confidential sources. "A confidential source is one who provides information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Providence Journal Co. v. United States Dep't of Army*, 981 F.2d 552, 563 (1st Cir. 1992) (internal citation and quotation marks omitted).[2] Plaintiff's suit is not merely about Mr. Anglin calling for a "troll storm", but about his continued writing about her and about the calls and emails she received.

To the extent the Daily Stormer was publishing the articles based on statements made by forum members pseudonymously, those qualify. Forum members use pseudonyms, and it can reasonably be inferred that they expect their identities to remain confidential.

---

[2] Although *Providence Journal* discussed confidential government sources, there is no reason the definition would not equally apply to a journalist's sources.

**4.0     CONCLUSION**

This Court is presented with a heavy and unenviable burden.  On one side stands a crowd of snarling, racist, vituperative commentators.  That crowd is objectionable, even disgusting.  And that crowd of the worst society may have to offer is entitled to the best we Constitutionally have to offer – the crown jewel of American Exceptionalism – the First Amendment.

When a party invokes the First Amendment – holding that jewel in its hand and asking the court to allow it to protect *even them* – the court has to look beyond which hand holds it and hold steady to the neutral principle in play.

Nevertheless, when doing so, it is difficult for a decent human to feel comfortable using the best we have to offer to shield the worst possible recipient of its philosophical grace.  This Honorable Court is placed in that uncomfortable place in this controversy.  But, *what* the Constitution protects is far more important than *for whom* it offers its protection.

For the reasons stated above, the Court should limit discovery in concert with these First Amendment protections.


Dated: March 29, 2019.            Respectfully submitted,

<div style="margin-left:2em">

/s/ Marc J. Randazza
Marc J. Randazza, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

</div>

/s/ Mathew M. Stevenson
Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
*Attorneys for Defendant,*
*Andrew Anglin*
Case No. 9:17-cv-50-DLC-JCL

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2)(E), undersigned counsel hereby certifies compliance with the said Rule and states that the number of words in this brief, as per the count of Microsoft Word, is 2,330.

/s/ Marc J. Randazza
Marc J. Randazza

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Marc J. Randazza