John Morrison
Robert Farris-Olsen
MORRISON, SHERWOOD,
WILSON, & DEOLA, PLLP
401 N. Last Chance Gulch St.
Helena, MT 59601
ph. (406) 442-3261
fax (406) 443-7294
john@mswdlaw.com
rfolsen@mswdlaw.com
*Attorneys for Plaintiff Tanya Gersh*

J. Richard Cohen*
David C. Dinielli*
Jim Knoepp*
Elizabeth Littrell*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
ph. (334) 956-8200
fax (334) 956-8481
richard.cohen@splcenter.org
david.dinielli@splcenter.org
jim.knoepp@splcenter.org
beth.littrell@splcenter.org
*Attorneys for Plaintiff Tanya Gersh*
*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW ANGLIN,<br><br>Defendant<br><br>and<br><br>STATE OF MONTANA,<br><br>Intervenor. | Case No.: 9:17-cv-00050-DLC-JCL<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO RESPOND TO REQUESTS FOR PRODUCTION OF DOCUMENTS REVEALING IDENTITIES OF ANONYMOUS SPEAKERS** |

COMES NOW, Plaintiff, TANYA GERSH, and, pursuant to agreement, Dkt. No. 164, and Order of this Court, Dkt. No. 160, files this Brief in support of her motion to compel Defendant to produce documents identifying non-party anonymous speakers showing that doing so does not violate the First Amendment.

**FACTUAL ALLEGATIONS RELEVANT TO THIS MOTION**

Defendant published a series of inflammatory posts on his neo-Nazi website, The Daily Stormer, calling on a "Troll Army" of anti-Semites to target Plaintiff, her family, and others. Defendant incited his followers to action by claiming, among other outrageous and false assertions, that Plaintiff was part of a "Jewish extortion racket" targeting a White Supremacist's mother. Dkt. No. 32-8, at 5. Defendant's posts included repeated encouragement to contact Plaintiff and her family, to post false reviews of their businesses, to file licensing complaints, and to otherwise "hit 'em up," along with the information necessary to do so. Dkt. 32-2, at 7. As a result, Plaintiff and her family received hundreds of harassing and/or threatening anti-Semitic messages, and their businesses and professions were bombarded with false negative reviews and licensing complaints. Dkt. No. 1, at 20-39. Plaintiff claims significant harm as a result of Defendant's actions.

As set out in earlier briefing, the Daily Stormer is not engaged in journalism or "newsgathering" as defined in federal or state law. Dkt. No, 141, 8-11. The Daily Stormer's mission is "to spread the message of nationalism and anti-

1

Semitism to the masses." *Id*; Ex. B. It is an unabashed racist propaganda vehicle so vulgar and repugnant that it has been kicked off several internet platforms and had its domain registration revoked.[1] The postings that form the basis for this lawsuit reflect no independent "newsgathering" or "sources." Indeed, Defendant acknowledged that "he did not receive any assistance in writing" the incendiary posts at issue. Ex. A.

The Daily Stormer website allows registered users to comment on its content. In response to Defendant's screeds against Plaintiff, dozens of registered users anonymously posted messages in which they acknowledged having taken action, or stated that they intended to take action, against Plaintiff, her family or community members based upon Defendant's directive and the information he provided. *See* Ex. B. Dozens more anonymous users posted comments suggesting that they would engage in violence against Plaintiff or others. *Id.*

Plaintiff served Defendant with a discovery request seeking documents to assist her in identifying users who acted on Defendant's directive or whose threatening comments responsive to Defendant's postings caused her harm. (Dkt. No. 124-1, at 17) (Request No. 30).

---

[1] *See* Rachel Sandler, *Neo-Nazi website The Daily Stormer rebuffed by Russia, China*, (August 15, 2017), https://www.usatoday.com/story/tech/2017/08/15/neo-nazi-website-daily-stormer-retreats-dark-web/569758001/

2

Pursuant to the parties' negotiations, Defendant withdrew all objections to Request No. 30 except that the First Amendment protects anonymous speech. (Dkt. No. 157, at 28). Plaintiff agrees to narrow Request No. 30 to Daily Stormer users who posted comments indicating that they had taken, or intended to take, action based on Defendant's posts identified in Ex. B ("Admitted Harassers and Violent Posters"). Plaintiff submits the following briefing on the limited issue agreed to and identified by the Court: "[W]hether disclosing the identity of non-party online anonymous speakers during discovery violates the First Amendment."

## **LEGAL STANDARD**

The First Amendment protects anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995), including anonymous speech made on the Internet. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). The First Amendment protection of anonymous speech "is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Id.* Courts have used a "variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *Id.* at 1175. A district court's "wide latitude in controlling discovery" and the recognition that "decisions governing discovery are highly fact-intensive" allow it to balance the value of particular anonymous speech against a party's need for relevant discovery

considering the "great potential for irresponsible, malicious, and harmful communication" that is rampant "in the age of the Internet." *Id.* (citations omitted).

## ARGUMENT

I. **The Anonymity Of Admitted Harassers And Violent Posters Is Entitled To, At Most, Limited Constitutional Protection.**

In analyzing whether disclosure of the identities of the non-party speakers sought here violates the First Amendment, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *Anonymous Online Speakers*, 661 F.3d at 1177. Only core political speech is afforded "the highest level of protection." *Id.*, at 1173.[2] Other forms of speech, such as commercial speech, is afforded lesser

---

[2] The Ninth Circuit has not articulated a standard to apply to a party's request for the identity of anonymous speakers whose speech is afforded the highest level of protection. *See Anonymous Online Speakers*, 661 F.3d at 1173. It has pointed to, without adopting, various tests employed by other courts. The most rigorous would require a party "to be able to survive a hypothetical motion for summary judgment and give, or attempt to give, notice to the speaker before discovering the anonymous speaker's identity." *Id.*, 661 F.3d. at 1173 (quoting *Doe v. Cahill*, 884 A.2d 451 (Del. 2005)). The Ninth Circuit expressly repudiated the *Cahill* standard as applied to non-political speech. *Id.* at 1177 ("In the context of the speech at issue here balanced against a discretionary discovery order under Rule 26, however, *Cahill*'s bar extends too far."). Plaintiff meets even the most rigorous standard, should this Court determine it applies, where record evidence supports that she suffered serious emotional distress that was a reasonably foreseeable consequence of Defendant's intentional actions in whipping up an "army" of virulent anti-Semites to target her. (Dkt. 1 at 60). Given the 10-page limit, should the Court depart from Ninth Circuit precedent and require Plaintiff to meet the *Cahill* standard, she requests an opportunity for additional briefing.

4

protection." *Id.* at 1177; *see Highfields Capital Mgmt., LP v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005). Where anonymous speech is alleged to be neither commercial nor political, but unlawful or wrongful, the speaker's right to remain anonymous generally gives way to a plaintiff's legitimate need to discover the speaker's identity in order to pursue her claim. *See*, *e.g.*, *Anonymous Online Speakers*, 661 F.3d at 1177 (finding no clear error in requiring disclosure of the identity of individuals alleged to have tortiously interfered with plaintiff's contracts by posting anonymous messages on internet blogs); *see also London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) ("Appellants cite no authority for the proposition that the First Amendment bars release of identifying data for email accounts used to solicit sex partners on the Internet.") (citations omitted).

Plaintiff seeks the identities of speakers who engaged in a campaign of harassment or who posted menacing and violent comments directed at Plaintiff, her family and other targets. Such messages are not core political speech. *See Meyer v. Grant*, 486 U.S. 414, 422 (1988) (describing core political speech as "interactive communications concerning political change"). At most, such speech is subject to a balancing test, any of which, as set out below, Plaintiff meets.

II.   **Plaintiff's Need To Identify Speakers Who Participated In Harassment Outweighs Their Right to Speak Anonymously.**

Defendant claims First Amendment protection in opposing discovery of documents revealing the identities of third-parties, notwithstanding that a party

5

"generally must assert his own legal rights and interests," not the legal rights and interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[3] At the outset, then, this Court should determine whether Defendant has standing to assert the constitutional rights of third parties.

Presuming Defendant meets his burden to assert the constitutional rights of non-parties, courts have applied a variety of standards in balancing the need for disclosure with anonymous speech rights. *Anonymous Online Speakers*, 661 F. 3d at 1175-76 (outlining different standards courts have used to guide their analysis). In this circuit, courts most often apply the test from either *Highfields Capital Mgmt.*, *supra,* or *Doe v. 2TheMart.com*, 140 F.Supp.2d 1088 (W.D. Wash. 2001). *See Awtry v. Glassdoor, Inc.*, 2016 WL 1275566, at *13 (N.D. Cal. 2016) (drawing on both *Highfields* and *2TheMart.com* because considerations from each were implicated where party was alleged to be anonymous speaker). Either weigh in favor of disclosure.

### A. Plaintiff meets the *Highfields* standard.

The Ninth Circuit has acknowledged, and some courts have applied, the *Highfields* test to speech not entitled to the most rigorous scrutiny. *See*, *Highfields*

---

[3] *And see E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 309 F. Supp. 3d 644, 662 (D. Minn. 2017) (rejecting website company's First Amendment argument that procedure employed by the court to notify and permit anonymous users to respond to plaintiff's motion to compel information revealing their identities was deficient).

6

*Capital Mgmt.,* 385 F.Supp.2d at 975-76; *Music Group Macao Commercial Offshore Ltd v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) ("The Ninth Circuit has indicated that the *Highfields* test is one of middling rigor, appropriate where…the challenged speech falls somewhere beneath the most protected realm of 'political, religious, or literary' discourse . . . but may be more safeguarded than pure 'fighting words and obscenity,' which is 'not protected by the First Amendment at all.'") (citations omitted).

Under the *Highfields* standard, (1) the party must "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" and (2) the court must then "assess and compare the magnitude of the harms that would be caused to the [plaintiffs' and defendants'] competing interests" by ordering that the defendant's identity be disclosed. *Highfields*, 385 F.Supp.2d at 975–76. Applied here, the messages themselves show that, by participating in a campaign of harassment and intimidation, the Admitted Harassers and Violent Posters engaged in wrongful conduct causing harm. There is little countervailing "harm" in reducing the likelihood that they would admit to engaging in "trolling" and harassment or post comments encouraging violence against Jewish people.

### B. Plaintiff meets the *2TheMart.com* Standard.

Some courts have found that "a higher standard should apply when a subpoena seeks the identity of an anonymous Internet user who is not a party to the underlying litigation." *2TheMart.com*, 140 F.Supp.2d at 1095; *see also Sines v. Kessler*, 2018 WL 3730434 (applying the *2TheMart.com* test, recognizing that "the Ninth Circuit has not explicitly recognized this test"). The standard articulated in *2TheMart.com*, described as a "flexible framework," requires a showing that:

> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or disprove that claim or defense is unavailable from any other source.

*2TheMart.com Inc.*, 140 F. Supp. 2d at 1094.

### i. Good Faith and No Improper Purpose Exists.

Plaintiff's discovery request was issued in good faith. The Complaint alleges that Defendant's actions resulting in more than 700 harassing and/or threatening communications directed at Plaintiff and her family. It is reasonable for Plaintiff to seek to identify those Daily Stormer users who indicated that they participated in this campaign of harassment. *Compare Sines v. Kessler*, 2018 WL 3730434, at *13 (finding no bad faith or improper purpose because it was "reasonable to believe that the information sought was relevant to their affirmative defense") *with 2TheMart*, 140 F.Supp.2d at 1095-96 (disclosure of personal emails and other

8

personal information had no relevance to the issues raised in the lawsuit). In *Sines*, the court recognized that "testimony and other discovery from other individuals involved in planning the Unite the Right event is highly relevant to understanding the Defendants' purpose and intent in organizing it, and Plaintiffs would for the most part be unable to obtain such testimony without knowing the identities of those individuals." *Sines*, 2018 WL 3730434, at *13. Similarly, the identifying information for the Admitted Harassers and Violent Posters is for the proper purpose of identifying witnesses on the issue of causation.

### ii. *Information Sought Relates to Core Claims.*

The identity of those who harassed and/or threatened Plaintiff goes to the causation element of the core claims of this lawsuit. As set out in the Complaint, each of Plaintiff's claims rest on the assertion that Defendant caused others to harass and threaten Plaintiff and her family.[4] It is certainly relevant to each of Plaintiff's core claims that she have an opportunity to identify essential witnesses who claim to have participated in the "troll storm" at Defendant direction.

### iii. *Information Sought Directly and Materially Relevant to Core Claims.*

---

[4] *See, e.g.*, Dkt. 1, at 61 ("Ms. Gersh has experienced serious and severe emotional distress as a direct and proximate result of Mr. Anglin's conduct"); *id.* ("Ms. Gersh was injured, harassed, and aggrieved by the troll storm Mr. Anglin orchestrated against her.").

9

Finally, the link between the information sought and the core claim must be clear. *2TheMart.com Inc.*, 140 F.Supp.2d at 1097 (plaintiff's "innuendos … do not suffice to overcome the First Amendment rights of the Internet users."). "[U]ncovering potential witnesses and participants is an integral part of Plaintiff's case." *Sines*, 2018 WL 3730434, at *14 (explaining that identities were particularly relevant because plaintiffs had reason to believe that the anonymous user was a coconspirator). The identity of witnesses who harassed Plaintiff, her family, and community members at Defendant's direction is directly and materially relevant to Plaintiff's core claims. Here, the anonymous speakers are not only potential witnesses regarding causation, but also potential defendants who participated in unlawful conduct.

### iv. *Information Is Unavailable From Any Other Source.*

Finally, there simply are no other known sources of the Daily Stormer users' identifying information. *Compare 2TheMart.com*, 140 F. Supp. 2d at 1097 (finding that publicly available chat room messages were alone sufficient to support the defense without revealing the identities of the users) *with Sines*, 2018 WL 3730434, at *14 (finding that Discord and the anonymous user were the only known sources of identifying information, and that plaintiff was entitled to test defendant's account of events by seeking information from the anonymous user).

## CONCLUSION

Disclosing the identity of the non-party online anonymous speakers identified in the attached Exhibit B does not violate the First Amendment.

DATED March 29, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Local Rule 7.1(d)(2). It contains 2,388 words, excluding the caption, certificates of service and compliance, tables of contents and authorities.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this date the foregoing document was filed through the Court's CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel of record, including:

Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, Montana 59801
matstevenson@bigskylegal.com
*Attorney for Defendant Andrew Anglin*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
mjr@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
jmw@randazza.com; ecf@randazza.com
*Attorney for Defendant Andrew Anglin*

Dale M. Schowengerdt
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
dales@mt.gov
*Attorney for Intervenor State of Montana*

Jonathan W. Bennion
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
jonbennion@mt.gov
*Attorney for Intervenor State of Montana*

Matthew T. Cochenour
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
mcochenour2@mt.gov
*Attorney for Intervenor State of Montana*

on this March 29, 2019.

/s/ Elizabeth Littrell
Attorney for Plaintiff Tanya Gersh
on behalf of all Attorneys for Plaintiff