Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: (702) 420-2001
ecf@randazza.com

Mathew M. Stevenson, St. Bar # 6876
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801
Tel: (406) 721-7000
matstevenson@bigskylegal.com

Attorneys for Defendant
Andrew Anglin

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| TANYA GERSH, | ) | Case No. 9:17-cv-50-DLC-JCL |
| | ) | |
| Plaintiff, | ) | **DEFENDANT ANDREW** |
| | ) | **ANGLIN'S ANSWER TO** |
| vs. | ) | **COMPLAINT AND** |
| | ) | **AFFIRMATIVE DEFENSES** |
| ANDREW ANGLIN, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT ANDREW ANGLIN'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Pursuant to Rule 12 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant Andrew Anglin ("Anglin" or "Defendant") hereby Answers Plaintiff's Complaint for Invasion of Privacy, Intentional Infliction of Emotional Distress, and Violations of the Anti-Intimidation Act (Dkt. No. 1).[1]

## ANSWER TO COMPLAINT

Defendant hereby answers the allegations in the Complaint, paragraph by paragraph, as follows:

1.      This paragraph contains a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

2.      Denied.

3.      Denied.

4.      Denied.

5.      Denied.

6.      Denied.

7.      This paragraph is unintelligible and can neither be admitted nor denied. To the extent a response is required, it is denied.

8.      Denied.

9.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

10.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

---

[1] Defendant has not previously been required to answer the Complaint as part of his motion to dismiss, regarding the constitutionality of the Montana Anti-Intimidation Act, remains pending. *See, e.g., Gamble v. Boyd Gaming Corp.*, No. 2:13-cv-01009-JCM-PAL, 2014 U.S. Dist. LEXIS 44561, at *8 (D. Nev. Mar. 31, 2014) (collecting cases).  However, Defendant is not precluded from filing an answer while that motion remains pending.

RANDAZZA | LEGAL GROUP

11.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

12.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

13.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

14.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

15.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

16.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

17.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

18.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

19.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

20.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

21.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

22.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

23.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

24.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

25.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

26.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

27.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

28.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

29.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

30.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

31.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

32.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

33.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

34.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

35.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, it is denied.

36.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

37.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

38.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

39.     Denied.

40.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

41.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

42.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

43.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

44.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

45.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

46.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

47.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

48.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

49.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

50.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

51.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

52.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

53.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

54.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

55.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

56.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

57.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

58.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

59.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

60.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

61.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

62.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

63.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

64.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

65.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

66.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

67.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

68.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

69.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

70.     Denied.

71.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

72.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

73.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

74.     Denied.

75.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

76.     Admitted.

77.     Denied.

78.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

79.     Denied.

80.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

81.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

82.     Denied.

83.     Admitted.

84.     The allegations in this paragraph are unintelligible and can neither be admitted nor denied.  To the extent a response is required, it is denied.

85.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

86.     Admitted.

87.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

88.     Admitted.

89.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

90.     Admitted.

91.     Admitted.

92.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

93.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

94.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

95.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

96.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

97.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

98.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

99.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

100.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

101.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

102.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

103.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

104.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

105.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

106.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

107.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

108.     Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

109.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

110.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

111.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

112.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

113.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

114.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

115.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

116.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

117.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

118.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

119.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

120.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

121.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

122.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

123.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

124.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

125.   Admitted, to the extent "tale" does not imply falsity.

126.   Denied.

127.   The allegations in this paragraph are unintelligible and cannot be admitted or denied.  To the extent a response is required, it is denied.

128.   The allegations in this paragraph are unintelligible and cannot be admitted or denied.  To the extent a response is required, it is denied.

129.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

130.   Denied.

131.   Admitted.

132.   Admitted to the extent "tale" does not imply falsity.

133.   Admitted to the extent "advocated confrontation" implies lawful conduct.

134.   Denied.

135.   Admitted.

136.   Denied.

137.   Admitted.

138.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

139.   Denied.

140.   Admitted to the extent "apparently believing" does not imply falsity.

141.    Denied.

142.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

143.    Admitted.

144.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

145.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

146.    Admitted.

147.    Admitted.

148.    Admitted.

149.    Admitted.

150.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

151.    Admitted.

152.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

153.    Admitted.

154.    Admitted.

155.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

156.    Denied.

157.    Denied.

158.    Admitted.

159.    Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

160.    Admitted.

161.   Admitted.

162.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

163.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

164.   Admitted.

165.   Admitted.

166.   Denied.

167.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

168.   Denied.

169.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

170.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

171.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

172.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

173.   Admitted.

174.   Admitted.

175.   Admitted.

176.   Admitted.

177.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

178.   Admitted.

179.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

180.   Admitted.

181.   Admitted.

182.   Admitted.

183.   Admitted.

184.   Admitted.

185.   Admitted.

186.   Admitted.

187.   Admitted.

188.   Admitted.

189.   Admitted to the extent "narrative" does not imply falsity.

190.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

191.   Admitted.

192.   Admitted.

193.   Admitted to the extent "narrative" does not imply falsity.

194.   Admitted.

195.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

196.   Denied.

197.   Admitted.

198.   This paragraph is unintelligible and can be neither admitted nor denied. To the extent a response is required, it is denied.

199.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

200.   Denied.

201.   This paragraph is unintelligible and can be neither admitted nor denied. To the extent a response is required, it is denied.

202.   Admitted.

203.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

204.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

205.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

206.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

207.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

208.   Defendant repeats his responses to the foregoing paragraphs as if fully set forth herein.

209.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

210.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

211.   Denied.

212.   Denied.

213.   Denied.

214.   Denied.

215.   Denied.

216.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

217.   Denied.

218.   Defendant repeats his responses to the foregoing paragraphs as if fully set forth herein.

219.   Denied.

220.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

221.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

222.   Denied.

223.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

224.   Denied.

225.   Defendant repeats his responses to the foregoing paragraphs as if fully set forth herein.

226.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

227.   Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  To the extent a response is required, it is denied.

228.   Denied.

229.   Denied.

230.   Defendant repeats his responses to the foregoing paragraphs as if fully set forth herein.

231.   Denied.

232.   Denied.

## AFFIRMATIVE DEFENSES

**1.0    FACTS COMMON TO ALL DEFENSES**

### 1.1    Mr. Anglin is Domiciled Outside the United States

1.      Before 2010, Mr. Anglin left the state of Ohio, with no intent to live there permanently again.  (Dkt. No. 64-1 at ¶ 7.)

2.      Mr. Anglin left Ohio, and the United States, for the last time on July 3-4, 2013, and he has not returned since.  (Dkt. No. 64-1 at ¶ 10.)

3.      Mr. Anglin does not own any real property in Ohio, maintain any residence in Ohio, own any motor vehicle registered in Ohio, hold any professional license issued by Ohio, pay income taxes to Ohio, pay consumption or property taxes to Ohio, carry any form of property or liability insurance produced in Ohio, or have loans with an Ohio billing address.  (Dkt. No. 64-1 at ¶¶ 12-19.)

4.      Before 2010, Mr. Anglin took up residency in the Philippines, with the intent to live there permanently.  (Dkt. No. 64-1 at ¶ 21.)

5.      In 2013, Mr. Anglin moved to Greece, with the intent to live there permanently, and obtained employment there.  He considered Greece to be his permanent home at that time.  (Dkt. No. 64-1 at ¶¶ 22-25.)

6.      On April 14, 2017, Mr. Anglin moved to the Kingdom of Cambodia, with the intent to live there permanently.  He was domiciled in Cambodia at the time Ms. Gersh filed her suit.  (Dkt. No. 64-1 at ¶¶ 26-30.)

### 1.2    Ms. Gersh is a Public Figure and Mr. Anglin's Statements Related to a Matter of Public Concern

7.      Following the 2016 presidential election, "infamous white nationalist" Richard Spencer gave a speech lauding the results of the election.  He received national attention for this speech, in which he stated "Hail Trump!  Hail our people! Hail victory!"  (Dkt. No. 1) at ¶¶ 15-16, 45; Joseph Goldstein, "Alt-Right Gathering

Exults in Trump Election With a Nazi-Era Salute," New York Times (Nov. 20, 2016), attached as **Exhibit 1**.[2]

8.      Richard Spencer's mother, Sherry Spencer, is a resident of Whitefish, Montana. (Dkt. No. 1 at ¶¶ 15, 42.)

9.      Following Richard Spencer's speech regarding the 2016 presidential election, discontent among Whitefish residents regarding the Spencer family "reached a fever pitch" and members of the Whitefish community planned a protest outside of Mrs. Spencer's property at 22 Lupfer Avenue. (Dkt. No. 1 at ¶¶ 15-17, 46-48, 56.)

10.      Discontent with Richard Spencer's white nationalism had been brewing for years, resulting in a Whitefish City Council resolution promoting diversity. (Dkt. No. 1 at ¶¶ 51-54.)

11.      In the week of November 13, 2016, Plaintiff Tanya Gersh voluntarily participated in a planning meeting to protest and boycott the businesses of Mrs. Spencer's tenants at 22 Lupfer Avenue. Ms. Gersh also began monitoring Mrs. Spencer's building at this time. (Dkt. No. 1 at ¶¶ 56-58.)

12.      Following this planning meeting, Ms. Gersh voluntarily contacted some of Mrs. Spencer's tenants to "warn them" of the impending protest. (Dkt. No. 1 at ¶¶ 18, 58-59.)

13.      Ms. Gersh then spoke with Mrs. Spencer and recommended that Mrs. Spencer "sell the building, make a donation [of the proceeds], and issue a statement disavowing her son's views." (Dkt. No. 1 at ¶ 21, 59-62.)

14.      Ms. Gersh agreed to act as Mrs. Spencer's real estate agent to sell the building at 22 Lupfer Avenue. (Dkt. No. 1 at ¶¶ 22, 62-67.)

---

[2]      Available      at:      https://www.nytimes.com/2016/11/21/us/alt-right-salutes-donald-trump.html (last accessed Apr. 29, 2019).

RANDAZZA | LEGAL GROUP

15.    Ms. Gersh publicized her efforts on behalf of Mrs. Spencer to sell the property and her involvement in this public controversy on social media, and publicly stated she was "spear heading" this effort and encouraged people who wanted details to contact her.  (Dkt. No. 1 at ¶ 68; Dkt. No. 32-3 at 4.)

16.    Ms. Gersh was involved in drafting a press release about the sale of 22 Lupfer Avenue and Richard Spencer, and notified the tenants of the building about her proposed resolution.  (Dkt. No. 1 at ¶¶ 65, 68; Dkt. No. 32-3 at 2, 5; November 23, 2016 text message from Ms. Gersh to Mrs. Spencer, PL002780.)[3]

17.    A few weeks later, Mrs. Spencer terminated Ms. Gersh's services.  (Dkt. No. 1 at ¶¶ 23, 71.)

18.    According to Ms. Gersh, at least as early as December 6, 2016, she was a public figure in the Whitefish community.  (December 6, 2016 text message from Ms. Gersh to David Winter, PL004732, attached as **Exhibit 2**.)

19.    On December 12, 2016, ABC FOX Montana aired a broadcast story and published an article on its web site regarding the proposed sale of the building at 22 Lupfer Avenue and the dispute that had arisen between Ms. Gersh and Mrs. Spencer.  These reports discussed Richard Spencer and the Whitefish community's animosity towards Mr. Spencer's white nationalist views.   They also provided quotes from Ms. Gersh, Mrs. Spencer, and Ina Albert, one of the founders of Love Lives Here, regarding this dispute.  (Dkt. Nos. 110-3, 139-6).

20.    At least as early as November 23, 2016, ABC FOX Montana was attempting to interview Mrs. Spencer and other Whitefish residents about the sale of 22 Lupfer Avenue, and the news station was coordinating their attempts to interview Mrs. Spencer with Ms. Gersh.  (November 23 to December 2, 2016 text

---

[3] *See* documents to be filed under seal, designated as attorneys' eyes only, in connection with the forthcoming Motion to Withdraw.  Anglin disputes whether they should be designated "attorneys' eyes only" or even confidential, and objects to such designation.  But, his counsel will respect the designation.

message exchange between Ms. Gersh, Ms. Roston, and Mr. Winter, PL004730-4731, attached as **Exhibit 3**.)

21.    On December 15, 2016, an article on the <medium.com> blogging web site describing Mrs. Spencer's reported account of what happened between her and Ms. Gersh was published.  (Dkt. No. 1 at ¶¶ 25, 74; Dkt. No. 32-1.)

22.    In the December 15, 2016 <medium.com> post, which was signed by Mrs. Spencer,[4] the following content was widely published:

> I had no intention of selling . . . until I started receiving terrible threats in the last couple of weeks.
>
> These threats came from Tanya Gersh, a local realtor with links to 'human rights' organizations Love Lives Here and the Montana Human Rights Network.
>
> On November 22[, 2018], Gersh and I spoke on the phone.  She relayed to me that if I did not sell my building, 200 protestors and national media would show up outside – which would drive down the property value – until I complied.  Gersh's other conditions included that I make a public denunciation of my son in a statement written by the Montana Human Rights Network and that I make a donation to this organization from the sale of the property.  As Gersh announced on Facebook, she was "spear heading" the campaign.
>
> Gersh followed up on her conditions in a number of emails, which I've just made public.  She even shamelessly suggested that she act as my realtor!  In other words, she and the local "human rights" organizations appeared to seek financial benefit from threats of protests and reputation damage.

(Dkt. No. 1 at ¶¶ 76-79; Dkt. No. 32-1.)

23.    As part of the December 15, 2016 <medium.com> post, multiple email communications between Mrs. Spencer and Ms. Gersh in which Ms. Gersh

---

[4] There is a dispute as to whether she truly authored it in whole or in part.  Nevertheless, there is no dispute that the post was published under Sherry Spencer's byline.

described her attempts to find a buyer for 22 Luper Avenue were published.  (Dkt. No. 32-3.)

24.    On December 15, 2016, the newspaper The Daily Mail published an article regarding the dispute between Mrs. Spencer and Ms. Gersh, including multiple quotes from Mrs. Spencer and Ina Albert of Love Lives Here regarding their views on the dispute.  (Liam Quinn, "White supremacist and alt-right leader Richard Spencer's mom claims her real estate business in rural Montana is being ruined by the angry backlash against her son for his 'extreme positions,'" DAILY MAIL (Dec. 15, 2016), attached as **Exhibit 4**.)[5]

### 1.3    The Factual Statements in Mr. Anglin's Articles

25.    Defendant Andrew Anglin is the publisher of the web site "The Daily Stormer," which Ms. Gersh alleges is a white nationalist site.  (Dkt. No. 1 at ¶¶ 3, 9.)

26.    On December 16, 2016, Defendant Andrew Anglin published an article on The Daily Stormer in which he summarized the contents of the Daily Mail article about the dispute between Mrs. Spencer and Ms. Gersh, and stated that Ms. Gersh's actions constituted "clear and obvious extortion."  (Dkt. No. 32-2).

27.    As part of the December 16, 2016 article, Mr. Anglin published the following: (1) the business address and phone number of Ms. Gersh; (2) the Twitter handle of Ms. Gersh's son, Jacob Gersh; and (3) the business address, phone number, fax number, and email address of the law firm of Ms. Gersh's husband, Judah Gersh.  (Dkt. No. 32-2 at 8-11.)

28.    This contact information was publicly available, and Ms. Gersh herself voluntarily provided her own contact information as part of regular email correspondence.  (Dkt. No. 32-3 at 2; Dkt. No. 110-1.)

---

[5]   Available at:  https://www.dailymail.co.uk/news/article-4037140/White-supremacist-Richard-Spencer-s-mother-says-suffering-financially.html (last accessed Apr. 29, 2019).

29.     In his December 16, 2016 article, Mr. Anglin stated "[a]nd as always: **NO VIOLENCE OR THREATS OF VIOLENCE OR ANYTHING EVEN CLOSE TO THAT**.  Just make your opinions known."  (Dkt. No. 32-2 at 7) (emphasis original.)

30.     At least as early as November 22, 2016, Ms. Gersh worked with Allen Secher, the founder of Love Lives here, and members of the Montana Human Rights Network to coordinate a protest of Mrs. Spencer at 22 Lupfer Avenue specifically due to recent publicity involving Richard Spencer, as well as to force Mrs. Spencer to sell the property.  This included contacting business owners at the property to turn them against Mrs. Spencer.  (*See* November 22, 2016 email from Ms. Gersh to Allen Secher, PL004720-4722; November 22, 2016 text messages from Ms. Gersh to Sarah Torgerson, PL002784; November 22, 2016 statement of Sarah Torgerson, PL002850; December 1, 2016 email from Ms. Gersh, PL002962; December 8, 2016 email exchange between Ms. Gersh and Rachel Carroll, PL002964.)[6]

31.     In coordination with Ms. Gersh, members of the Montana Human Rights Network contacted Mrs. Spencer to encourage her to sell 22 Lupfer Avenue. (*See* December 8, 2016 email from Rachel Carroll to Mrs. Spencer, PL002967.)[7]

**1.4     Lack of Causation**

32.     On December 13, 2016, Ms. Gersh told David Winter, a reporter for ABC FOX Montana, that after the ABC FOX Montana article was published, she was "being seriously threatened and harassed by white supremacists."  (December 13, 2016 text message exchange between Ms. Gersh and David Winter, PL004732, attached as **Exhibit 2**.)

---

[6] *See* documents to be filed under seal, designated as attorneys' eyes only, in connection with the forthcoming Motion to Withdraw.
[7] *See* documents to be filed under seal, designated as attorneys' eyes only, in connection with the forthcoming Motion to Withdraw.

33.     From Dec. 13 to 14, 2016, Ms. Gersh told Katie Mettler, a reporter for the *Washington Post*, that after the ABC FOX Montana article was published, she was "getting constant anti-Semitic threats."  (Dkt. Nos. 149-1, 149-6).

34.     On December 14, 2016, Ms. Gersh told Francine Roston, a member of Love Lives Here, that following the dispute with Mrs. Spencer, Ms. Gersh had "hate mail and threats from all over he [sic] country from Richard's followers." (December 14, 2016 email from Ms. Gersh to Francine Roston, PL004857, attached as **Exhibit 5**.)

35.     On December 14, 2016, Ms. Roston contacted Hillary Bernstein, the Anti-Defamation League Regional Director for the Pacific Northwest Region, stating that Ms. Gersh was the target of anti-Semitic attacks and asking for help from the ADL.  (December 14, 2016 email from Ms. Roston to Hillary Bernstein, PL004864, attached as **Exhibit 6**.)

36.     On December 14, 2016, Ms. Roston sent an email to Ms. Albert stating that Ms. Gersh had started receiving threatening phone calls and that, due to the ABC FOX Montana story, "she will be a target for a while."  (December 14, 2016 email from Ms. Roston to Ms. Albert (Dkt. No. 149-4).)

37.     On December 14, 2016, Ms. Gersh received an anti-Semitic email from a third party named Anthony Helal which specifically referenced Ms. Gersh's dispute with Sherry Spencer.  (Dkt. No. 149-3.)

38.     On December 14, 2016, a third party filed a complaint with the Montana Department of Labor & Industry regarding Ms. Gersh's dispute with Mrs. Spencer and asked that her realtor's license be revoked.  The complaint alleged that Ms. Gersh was "bullying Sherry Spencer into selling her property" due to a difference in views between Ms. Gersh and Richard Spencer.  (Dkt. No. 149-5.)

39.     On December 14, 2016, third party Marla Shaw sent an email to Ms. Gersh expressing her approval of Ms. Gersh's role in the dispute with Mrs. Spencer.

Judah Gersh responded by stating that "Tanya has been getting seriously harassed online by supporters of Richard Spencer . . . ." (December 14, 2016 email exchange between Ms. Gersh, Judah Gersh, Marla Shaw, and Van Shaw (PL004877-4879), attached as **Exhibit 7**.)

40.    On December 15, 2016, Ms. Roston told Ms. Bernstein that "Tanya Gersh is really under attack.  It's through emails, phone, websites . . . they focused their attention on me and the Jewish community as well . . . we have notified the local police, county sheriff and FBI is involved supposedly . . . It is all horrifying. If you want to see what is happening, google 'Tanya Gersh and Sherry Spencer.'" (December 15, 2016 email from Ms. Roston to Ms. Bernstein, PL004863, attached as **Exhibit 8**.)

41.    On December 15, 2016, Ms. Gersh thanked third party Dan Weinberg for his support in the face of Ms. Gersh becoming a "target of some of [Richard Spencer's] followers."  (Dkt. No. 149-2).

42.    Ms. Gersh alleges that, after the publication of the December 16, 2016 Daily Stormer article, she continued to receive hundreds of communications from third parties, though none of these communications mentioned Mr. Anglin or any article on The Daily Stormer.  (Dkt. No. 1 at ¶¶ 93-124.)

43.    On December 17, 2016, after Mr. Anglin published his first article calling for a troll storm Ms. Gersh, Ms. Gersh stated that she did not consider any allegedly threatening communication to be serious.  (*See* December 17, 2016 email from Ms. Gersh to Cherie Regev, PL004665, 4667.)[8]

44.    On December 17, 2016, Mr. Anglin published a second article again accusing Ms. Gersh of extorting Mrs. Spencer, and he encouraged his readers to call and email Ms. Gersh.  (Dkt. No. 1 at ¶¶ 125, 128; Dkt. No. 32-4.)

---

[8] *See* documents to be filed under seal, designated as attorneys' eyes only, in connection with the forthcoming Motion to Withdraw.

45.     On December 19, 2016, Mr. Anglin published a third article asking readers to contact Ms. Gersh.  In this article, Mr. Anglin specifically disclaimed calling for threats of harassment, but rather for a "campaign of making our voices heard," which is why he purposefully left out home addresses.  (Dkt. No. 32-5.)

46.     On December 21, 2016, an article was published on The Daily Stormer encouraging lawful confrontation with Ms. Gersh.  (Dkt. No. 32-6.)

47.     Also on December 21, 2016, Mr. Anglin published an article on The Daily Stormer criticizing Ms. Gersh's conduct.  In this article, he encouraged the same communications that Ms. Gersh's supporters encouraged, and also relayed a *New York Times* report that the Whitefish Police Department found that none of the alleged communications Ms. Gersh had received from third parties constituted a true threat.  (Dkt. No. 32-7.)

48.     On December 22, 2016, Mr. Anglin published an article on The Daily Stormer in which he encouraged his readers to make calls and send emails to Ms. Gersh without threats or suggestions of violence, and also outlined plans for a lawful protest.  (Dkt. No. 32-8.)

49.     On December 23, 2016, Mr. Anglin published an article reporting that Love Lives Here had apparently repudiated Ms. Gersh.  (Dkt. No. 32-9.)

50.     On December 23, 2016, Mr. Anglin published an article on The Daily Stormer expressing schadenfreude regarding a motor vehicle accident in Whitefish, but did not encourage any violence.  (Dkt. No. 32-10.)

51.     On December 23, 2016, an article was published on The Daily Stormer referencing the possibility of people in Whitefish attempting to target Richard Spencer by targeting his mother.  (Dkt. No. 32-11.)

52.     On December 27, 2016, Mr. Anglin published an article on The Daily Stormer recounting his belief expressed in an appearance on the David Duke Show that Ms. Gersh extorted Mrs. Spencer.  (Dkt. No. 32-12.)

53.     On December 28, 2016, Mr. Anglin published an article on The Daily Stormer addressing Ms. Gersh's conduct, finding it so offensive as to liken it to that of a terrorist group.  (Dkt. No. 32-13.)

54.     On January 5, 2017, Mr. Anglin published an article on The Daily Stormer in which he described plans for a lawful protest in Whitefish.  The purpose of the protest was not to confront Ms. Gersh.  (Dkt. No. 1 at ¶ 161; Dkt. No. 32-14.)

55.     On January 6, 2017, an article was published on The Daily Stormer providing a 2016 "year in review" that mentioned Ms. Gersh.  (Dkt. No. 32-15.)

56.     On January 8, 2017, an article was published on The Daily Stormer criticizing attacks on Mrs. Spencer.  (Dkt. No. 32-16.)

57.     On January 8, 2017, Mr. Anglin published an article on The Daily Stormer in which he condemned potential government interference with his planned protest in Whitefish based on viewpoint discrimination.  Mr. Anglin specifically insisted that the protest be lawful and peaceful.  (Dkt. No. 32-17.)

58.     On January 10, 2017, David Duke published an article on The Daily Stormer linking to an interview he had with Richard Spencer, in which the two characterized Ms. Gersh's actions as extortionate.  (Dkt. No. 1 at ¶¶ 177-184; Dkt. No. 32-18.)

59.     On January 10, 2017, Mr. Anglin published an article on The Daily Stormer in which he complained of what he claimed to be viewpoint discrimination by the City of Whitefish precluding the issuance of a permit for the planned march in Whitefish.  (Dkt. No. 32-19.)

60.     On January 11, 2017, Mr. Anglin published an article on The Daily Stormer announcing that the March on Whitefish would be postponed because Whitefish did not issue the necessary permit.  (Dkt. No. 32-20.)

61.     On January 18, 2017, an article was published on The Daily Stormer reporting on supporters of Ms. Gersh coming out in her support on the day the protest march was to have occurred.  (Dkt. No. 32-21.)

62.     On January 19, 2017, Mr. Anglin published an article on The Daily Stormer decrying an effort to have his publication classified as a terrorist group. Although the article states "Hitler was right," it also calls the Holocaust a hoax and disclaims making any threat.  (Dkt. No. 32-22.)

63.     On January 19, 2017, Mr. Anglin published an article on The Daily Stormer discussing the merits of peaceful protest.  (Dkt. No. 32-23.)

64.     On January 19, 2017, an article was published on The Daily Stormer speaking out against Ms. Gersh's extortion of Mrs. Spencer.  (Dkt. No. 32-24.)

65.     On February 3, 2017, an article was published on The Daily Stormer in which Mr. Anglin, in an editor's note, deplored the failure of the ACLU to help him obtain a permit for his planned March on Whitefish.  (Dkt. No. 32-25.)

66.     Ms. Gersh does not allege any particular response to any Daily Stormer article other than the article published December 16, 2016.

67.     The only evidence Ms. Gersh has of Daily Stormer readers purportedly contacting her or her family members is the allegation in an interrogatory response that a few unidentified people on the Daily Stormer's forums claim, without any substantiation, that they contacted Ms. Gersh's husband and some of his clients, with one user saying that Ms. Gersh was "involved in terrorist activities."  (Dkt. No. 135-3 at 36.)

## 2.0     SPECIFIC AFFIRMATIVE DEFENSES

### 2.1     First Affirmative Defense: Lack of Subject-Matter Jurisdiction

68.     Mr. Anglin is not a resident of the State of Ohio, or any other State within the United States.

69.     For purposes of subject matter jurisdiction, "[a] United States citizen who is domiciled abroad is 'stateless' . . . and cannot sue or be sued in federal court based on diversity jurisdiction."  2014 U.S. Dist. LEXIS 152574, *2 (D. Mont. Oct. 28, 2014) citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). This is because "[t]o be a citizen of a state within the meaning of Title 28 U.S.C. § 1332, a person must be domiciled within the state."  *Id*. at *3 citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).

70.     "An individual's domicile is the 'location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'  Courts evaluate domicile 'in terms of objective facts, and statements of intent are entitled to little weight when in conflict with facts.'"  *Id*. quoting *Lew, supra* at 749-50 (internal quotations marked and citations omitted).

71.     Mr. Anglin has not been present in Ohio or anywhere else in the United States since 2013, and has no intent to return to the United States.  He is thus not a citizen of any State, and this Court lacks subject matter jurisdiction over him.

## 2.2     Second Affirmative Defense: Lack of Personal Jurisdiction

72.     Mr. Anglin does not reside in Ohio, or any other State in the United States, and took no action in Ohio or any other State in the United States.

73.     The Court may not exercise general or specific personal jurisdiction over Mr. Anglin.

## 2.3     Third Affirmative Defense: Insufficient Service

74.     Ms. Gersh alleges she effected service of process by publication under Ohio R. Civ. P. 4.4(A)(1) and Fed. R. Civ. P. 4(e)(1).  Under Rule 4(e)(1) a plaintiff may only serve a defendant in a judicial district of the United States under the state law in "courts of general jurisdiction" where the district is located.  It is axiomatic that those state courts must have personal jurisdiction over the defendant.

75.     Mr. Anglin cannot show Mr. Anglin is a resident of Ohio, and so any alleged service in Ohio is ineffective.

76.     Ms. Gersh does not allege Mr. Anglin took any action on the State of Ohio.  There is thus no specific jurisdiction under the Ohio long-arm statute, Ohio Rev. Code Ann. § 2307.382.  Also, "Ohio law does not appear to recognize general jurisdiction over non-resident defendants."  *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012).  As a result, no matter what contacts Mr. Anglin has with Ohio, he is not subject to the general jurisdiction of the courts therein.  Thus, service in Ohio did not comport with Rule 4(e)(1).

## 2.4     Fourth Affirmative Defense: Improper Venue

77.     Defendant does not reside in the District of Montana.  Defendant did not publish any article or commit any action in the State of Montana.  And, Defendant is not subject to personal jurisdiction in the District of Montana.

78.     Therefore, this Court is an improper venue.

## 2.5     Fifth Affirmative Defense: Failure to State a Claim

79.     Ms. Gersh fails to state a claim for common law invasion of privacy, as Mr. Anglin did not engage in a "wrongful intrusion into [Ms. Gersh's] private activities."  *Bd. of Dentistry v. Kandarian*, 268 Mont. 408, 413 (1994).  All information Mr. Anglin published was publicly available and obtained from publicly accessible sources, and so Ms. Gersh did not have a reasonable expectation of privacy in such information.  (*See* Dkt. No. 32-2 at 8-11; Dkt. No. 32-3 at 2; Dkt. No. 110-1.)  Ms. Gersh voluntarily thrust herself into a public dispute and all information Mr. Anglin published about her she voluntarily offered as part of activities in her public life.  (*See id.*)  Neither was her seclusion intruded upon, for she voluntarily accessed all voicemail, e-mail, and other messages; she does not claim anyone physically approached her or her household or otherwise directly contacted her.

80.     Ms. Gersh fails to state a claim for intentional infliction of emotional distress, as he did not engage in outrageous or extreme conduct and any alleged harm was not reasonably foreseeable.   Mr. Anglin was exercising his First Amendment rights by expressing his opinion on a matter of public concern and encouraging others to do the same.   Such cannot be "extreme" or "outrageous." *Judd v. Burlington N. & Santa Fe Ry.*, 2008 MT 181, ¶¶ 30-31, 343 Mont. 416, 423, 186 P.3d 214, 218 (2008).   The allegedly harassing communications Ms. Gersh received are not foreseeable consequences of Mr. Anglin's speech, as he did no more than what Ms. Gersh did in arranging a protest of Mrs. Spencer's business at 22 Lupfer Avenue.

81.     Ms. Gersh fails to state a claim for violation of the Montana Anti-Intimidation Act, Mont. Code Ann. § 27-1-1503(2), as he did not injure, harass, or aggrieve Ms. Gersh by a threat or intimidation while she was attempting to exercise a legally protected right.   Mr. Anglin did not interfere with Ms. Gersh's right to privacy or her ability to practice her faith; her religious observance was never interfered with.   Mr. Anglin only published publicly available information, did not make any threats against Ms. Gersh, and expressly discouraged his readers from unlawful conduct.   To the extent the statute can by its terms prohibit the speech at issue here, it is unconstitutional on its face and as applied.

82.     All of Ms. Gersh's claims fail due to a lack of causation.   Ms. Gersh started to receive allegedly threatening and harassing communications immediately after the December 12, 2016 ABC FOX Montana article was published.   There is no evidence that any allegedly harmful statement was made by a third party who read Mr. Anglin's articles instead of a supporter of Richard Spencer who was exposed to this earlier news coverage or subsequent media coverage elsewhere.

83.     All of Ms. Gersh's claims fail because Mr. Anglin had no duty to prevent any third parties from contacting Ms. Gersh.   No special relationship existed

between Mr. Anglin and Ms. Gersh.   Mr. Anglin's speech only amounted to encouragement to political action, and he had no duty to repudiate the allegedly tortious speech of third parties.  *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 929 (1982).  He did not abet or ratify any particular communication Ms. Gersh claims to have received.

### 2.6    Sixth Affirmative Defense: Protected Speech

84.    Mr. Anglin's speech was on a matter of public concern.  Ms. Gersh voluntarily collaborated with Love Lives Here to arrange for a protest of Mrs. Spencer's property at 22 Lupfer Avenue, including by trying to turn some of Mrs. Spencer's tenants against her, in response to Richard Spencer's highly-publicized political statements following the 2016 presidential election.  Ms. Gersh initiated the dispute with Mrs. Spencer by contacting Mrs. Spencer's tenants with the intent that Mrs. Spencer would then contact her.  Ms. Gersh is the one who warned Mrs. Spencer of a protest and sought to act as Mrs. Spencer's real estate agent to sell 22 Lupfer Avenue.  Ms. Gersh then publicly provided status updates on the sale of the property on social media and contacted media outlets regarding it.  By the time Mr. Anglin wrote anything on this dispute, multiple media outlets had already reported on it and Ms. Gersh had received numerous messages from critics.

85.    Mr. Anglin's statements do not fall into any category of unprotected speech, and there are no grounds for creating any new category of unprotected speech here.

86.    None of the allegedly threatening or harassing communications received from third parties constitute a true threat or any other form of unprotected speech.

87.    To the extent any third-party statements are actionable, no third party acted as Mr. Anglin's agent or employee.

88.     Mr. Anglin's conduct does not constitute "substantial assistance" for any third-party statement, as there is no evidence any such statements were made by readers of the Daily Stormer or specifically in response to the articles concerning Ms. Gersh.  Even if they did, Mr. Anglin did not have knowledge that any Daily Stormer users planned to or did make such statements.

### 2.7     Seventh Affirmative Defense: Unclean Hands

89.     Ms. Gersh is not entitled to relief because she acted in bad faith both in the circumstances leading to the harm she allegedly suffered and in bringing and pursuing this suit.

90.     Ms. Gersh orchestrated a planned protest of Mrs. Spencer's business property for political reasons, then misrepresented her involvement in this protest to make herself seem like an innocent party.

91.     Ms. Gersh attempted to influence Mrs. Spencer into selling her property under conditions that were not in Mrs. Spencer's best interest, then stated both publicly and in this case that she had done nothing to bring this dispute to a boil.

### 2.8     Eighth Affirmative Defense: Lack of Actual Malice

92.     Mr. Anglin can be found liable only for false statements of fact, not mere expressions of opinion.

93.     Ms. Gersh is a voluntary limited-purpose public figure in the context of the dispute regarding Mrs. Spencer (or she is at least an involuntary public figure).  (*See* **Exhibits 2-4**; Dkt. No. 1 at ¶¶ 65, 68, 76-79; Dkt. No. 32-1; Dkt. No. 32-3 at 2, 5.)  Prior to November 2016, she was already established as a community leader.  She was then in voluntary contact with ABC Fox Montana prior to December 13, 2016, with the knowledge and desire that her views be shared with the community, and the world, at large.  Mr. Anglin may thus only be found liable

if he acted with actual malice, *i.e.*, knowledge that his statements were false or reckless disregard for their truth or falsity.

94.     Mr. Anglin's factual statements were either true, or he had good reason to believe they were true.  Ms. Gersh undeniably coordinated a planned protest of Mrs. Spencer's property and tried to turn her tenants against her in response to Richard Spencer gaining national media attention.  (*See* PL002780; PL002784; PL002850; PL002962; PL002964; PL002967; PL004720-4722.)[9]   This is the account of events Mrs. Spencer published on <medium.com> on December 15, 2016.  Mr. Anglin, choosing to believe this version of events, repeated Mrs. Spencer's allegations starting December 16, 2016 and expressed his views on these allegations.

### 2.9     Ninth Affirmative Defense: Intervening Cause

95.     Any harm Ms. Gersh allegedly suffered was the result of third parties over whom Mr. Anglin had no control or authority.

96.     Even accepting Ms. Gersh's "substantial assistance" theory of liability, any harm she suffered was the result of media coverage by other third parties, including ABC FOX Montana, The Daily Mail, and Mrs. Spencer herself.

### <u>JURY TRIAL DEMANDED</u>

Defendant hereby demands a trial by jury on all issues raised in the Complaint, this Answer, the Affirmative Defenses, and/or any other pleading, which are triable to a jury.

WHEREFORE Defendant respectfully requests this Honorable Court deny Plaintiff's Claim for Relief in its entirety.

---

[9] *See* documents to be filed under seal, designated as attorneys' eyes only, in connection with the forthcoming Motion to Withdraw.

Dated: April 29, 2019.           Respectfully submitted,


/s/ Marc J. Randazza
Marc J. Randazza (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

/s/ Jay M. Wolman
Jay M. Wolman (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103

/s/ Mathew M. Stevenson
Mathew M. Stevenson
STEVENSON LAW OFFICE
1120 Kensington, Suite B
Missoula, MT 59801

*Attorneys for Defendant,*
*Andrew Anglin*

Case No. 9:17-cv-50-DLC-JCL

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 29, 2019, a copy of the foregoing was served via CM/ECF upon all parties and their counsel of record.

/s/ Marc J. Randazza
Marc J. Randazza

RANDAZZA | LEGAL GROUP