IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TANYA GERSH,<br><br>    Plaintiff,<br><br> and<br><br>TIMOTHY C. FOX, in his official capacity as Attorney General of the State of Montana,<br><br>    Intervenor,<br><br>vs.<br><br>ANDREW ANGLIN,<br><br>    Defendant. | CV 17-50-M-DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

On April 18, 2017, Plaintiff Tanya Gersh filed this action against Defendant Andrew Anglin, alleging that he initiated an online anti-Semitic harassment and intimidation campaign against her and her family. Gersh invoked the Court's diversity subject matter jurisdiction under 28 U.S.C. § 1332, and alleged state law claims against Anglin for invasion of privacy, intentional infliction of emotional distress, violations of Montana's Anti-Intimidation Act, and punitive damages.

On April 5, 2019, the Court issued an order denying Anglin's motion for a protective order that would have excused him from having to appear for an in-

1

person deposition in the United States. (Doc. 173). Gersh noticed Anglin's deposition for April 30, 2019, and on April 22, 2019 the Court issued an order cautioning Anglin that if he failed to appear for his deposition, the Court would enter default against him in this matter. Anglin did not appear for his properly noticed deposition on April 30, 2019, and the Court issued an order directing the Clerk of Court to enter his default. (Doc. 186). On April 30, 2019, the Clerk of Court entered default against Anglin pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 188).

On June 21, 2019, Gersh filed the pending motion for default judgment pursuant to Rule 55(b)(2) and Rule 37(d) based on Anglin's failure to obey the Court's orders and comply with his discovery obligations. The Court held an evidentiary hearing on July 11, 2019. Anglin did not respond to Gersh's motion or appear at the hearing.

Under Rule 37(d)(1), "[t]he court where the action is pending may, on motion, order sanctions" if a party fails to appear for its own properly noticed deposition. The types of sanctions authorized may include "rendering a default judgment against the disobedient party." Rule 37(d)(2)(A)(vi). Rule 55(b) allows the court to enter default judgment following entry of a defendant's default.

Where, as here, default has been entered under Rule 55(a), the factual allegations of the complaint, except those relating to the amount of damages, are

taken as true for purposes of entering a default judgment. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Thus, while default establishes a defendant's liability on all well-pled claims, the court must determine the amount of damages to be awarded in the default judgment. See Fed. R. Civ. P. 55(b)(2).

Whether to grant default judgment is left to the court's sound discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate under Rule 55(b), the court considers the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The Ninth Circuit has also identified five factors that a district court must consider before declaring default as a terminating sanction under Rule 37: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Thompson v. Housing Authority*, 782 F.2d 829, 832 (9th Cir. 1986)).

The Court has considered the *Eitel* and *Malone* factors set forth above, and for the reasons stated convincingly by Gersh in her supporting brief (doc. 202, at 16-21), finds they weigh in favor of entering default judgment. With liability established, the Court's next task is to calculate the amount of damages to be awarded. Based on the evidence and testimony presented at the evidentiary hearing on July 11, 2019, the Court finds that Gersh is entitled to compensatory damages as follows:

(1)  Economic damages in the amount of $220,680 for past lost earnings, medical expenses, and other expenses;

(2)  Economic damages in the amount of $821,758 for future lost earning capacity;

(3)  Non-economic damages in the amount of $1,000,000 for past pain and suffering, and;

(4)   Non-economic damages in the amount of $2,000,000 for future pain and suffering and loss of enjoyment of life.

In addition to compensatory damages, Gersh seeks an award of punitive damages. In a diversity action like this one, the propriety of an award of punitive damages is a question of state law. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989).  The Court finds based on the well-pleaded factual allegations in the Complaint, as well as the evidence and testimony presented at the evidentiary hearing, that Anglin acted with actual malice as required to support a punitive damages award. Mont Code. Ann. § 27-1-

221(2).

Under Montana law, "[a]n award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less." Mont. Code Ann. § 27-1-220(3). The Montana Supreme Court has held that the limitation on punitive damage awards in excess of 3% of a defendant's net worth applies "only if the defendant first meets his burden of demonstrating an accurate calculation of his net worth." *Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 387 (Mont. 2008). Because Anglin has not met that burden here, the 3% limitation does not apply.

Having considered the factors set forth in Mont. Code Ann. § 27-1-221(7)(b), including the particularly egregious and reprehensible nature of Anglin's conduct, the Court finds that a punitive damages award in the amount of $10,000,000 is warranted to punish Anglin and deter him from engaging in such conduct in the future.[1]

Accordingly, and for the reasons set forth above,

IT IS RECOMMENDED that Gersh's Motion for Default Judgment (doc. 201) be GRANTED, and a judgment be entered awarding Gersh $4,042,438 in

---

[1] This award falls within the constitutionally permissible single-digit multiplier contemplated by the United States Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2002) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").

compensatory damages and $10,000,000 in punitive damages. In addition, because the atrocious conduct directed at Gersh and her family has not entirely abated, the Court should issue a permanent injunction ordering Anglin to remove from his website the blog posts encouraging his readers to contact Gersh, her family and, especially, her son, including all photographs and images of the family and comment boards associated therewith.

DATED this 15th day of July, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge